EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| RAMOT AT TEL AVIV UNIVERSITY LTD., | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | CIVIL ACTION NO. 2:19-CV-00225-JRG |
| CISCO SYSTEMS, INC., | § § | |
| *Defendant.* | § § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Cisco Systems, Inc.'s ("Cisco") Renewed Motion to Stay Pending *Ex Parte* Reexamination of U.S. Patent No. 10,270,535, No. 10,033,465, and No. 10,461,866 (the "Motion"). (Dkt. No. 221.) Having considered the Motion and the related briefing, the Court finds that the Motion should be and hereby is **GRANTED**.

### I.   BACKGROUND

Plaintiff Ramot at Tel Aviv University Ltd. ("Ramot") alleges Defendant Cisco Systems, Inc. ("Cisco") infringes U.S. Patent No. 10,270,535 (the "'535 Patent"); U.S. Patent No. 10,033,465 (the "'465 Patent"); and U.S. Patent No. 10,461,866 (the "'866 Patent") (collectively, the "Asserted Patents"). (Dkt. No. 48.)

Cisco previously filed an Opposed Motion to Stay Pending *Inter Partes* Review of U.S. Patent No. 10,270,535 and No. 10,033,465. (Dkt. No. 36.) The Court denied the Motion to Stay Pending IPR without prejudice, noting that no decision on institution of the *inter partes* reviews ("IPRs") had yet been made, and instructing Cisco that it could subsequently seek a stay "if and when IPR proceedings are instituted by the PTAB." (Dkt. No. 54.)

1

The Patent Trials and Appeal Board ("PTAB") subsequently denied institution of the IPRs, and Cisco filed Requests for *Ex Parte* Reexamination at the United States Patent and Trademark Office ("PTO") on all three patents-in-suit.  (Dkt. No. 107.)  In this Court, Cisco also filed a Motion to Stay Pending *Ex Parte* Reexamination.  (*Id.*)

In response to the Requests for *Ex Parte* Reexamination, the PTO found substantial new questions of patentability as to each of the asserted claims in the patents-in-suit, granting all Requests for Reexamination.  (*Id.*)  Subsequently, when the PTO had issued preliminary Office Actions rejecting all challenged claims of the '465 and '866 Patents but had not yet made an initial determination as to the '535 Patent, the Court denied Cisco's request for a stay without prejudice to refile the request if and when any relief by way of the reexams became less speculative or incomplete.  (Dkt. Nos. 171, 180, 205, 216.)

Cisco has now renewed its request for a stay pending the resolution of the *ex parte* reexaminations.

## II.    LEGAL STANDARD

"The district court has the inherent power to control its own docket, including the power to stay proceedings." *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)); *see also Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988) ("Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination." (internal citation omitted)). How to best manage the Court's docket "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254–55.

In deciding whether to stay litigation pending reexamination, courts typically consider: (1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify the issues in question and trial of the case, and (3) whether discovery is complete and whether a trial date has been set. *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005).

### III.   ANALYSIS

Cisco argues that this case should be stayed in light of the *ex parte* reexams because (1) all asserted claims now stand rejected in Office Actions; (2) the claims are likely to be modified in some way, and therefore it would not be expeditious to proceed to trial on the current claims; and (3) Ramot has been delaying the progression of the reexams by requesting extensions for its responses to the Office Actions.  (Dkt. No. 221.)  Ramot asserts that the case need not be stayed because (1) any rejections remain speculative, just as they did when the Court denied Cisco's previous request for a stay; and (2) separate counsel requested the extensions at the reexams and the extensions do not substantially delay the proceedings at all, but actually have the potential to speed them up.  (Dkt. No. 226.)

 "A stay is particularly justified when 'the outcome of a PTO proceeding is likely to assist the court in determining patent validity or eliminate the need to try infringement issues.'" *Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*, No. 2:15-cv-00011, 2016 WL 1162162, at *1 (E.D. Tex. Mar. 23, 2016) (quoting *NFC Tech. LLC v. HTC Am.*, No. 2:13-CV-1058, 2015 WL 1069111, at *1 (E.D. Tex. Mar. 11, 2015).  In the context of *ex parte* reexams, a stay is appropriate when there is a "significant likelihood that the outcome of the reexamination proceeding will streamline the scope of this case to an appreciable extent if not dispose of it entirely."  *Veraseal LLC v. Wal-Mart Sores, Inc. et al.,* No. 2:17-cv-00527 (E.D. Tex. May 10, 2018).

Having considered the factors outlined above and the unique facts and circumstances of this case, the Court is persuaded that the benefits of a stay outweigh the costs of postponing resolution of the litigation in this particular case. All asserted claims of all Asserted Patents have been rejected in preliminary Office Actions in the *ex parte* reexams. (Dkt. Nos. 171, 180, 209.) When claims are rejected in an *ex parte* reexamination proceeding, the patent owner can narrow, cancel, or submit new claims. *See* M.P.E.P. § 2258. Thus, the asserted claims that have been rejected in the reexamination proceedings are almost surely to be modified in some material way in response to their rejection, and they may be dropped completely. They will not likely stay as they were when this suit was filed. If the case were to proceed to trial on the current claims, there is a serious risk of wasted resources as to the parties and the Court.

As the Court previously noted in its denial of such a stay, "[g]iven the resources that the parties and the Court have already invested in this case, staying the case, based solely on speculation of what might possibly happen during reexamination, would be inefficient and inappropriate." (Dkt. No. 205 at 4 (citing *Soverain*, 356 F.Supp.2d at 663).) Ramot is entitled to its day in court and resolution of the present disputes. *See ThinkOptics, Inc. v. Nintendo of America, Inc.*, 2014 WL 4477400, at *1 (E.D. Tex. Feb. 27, 2014) (holding that patentees "ha[ve] an interest in timely enforcing [their] patents."). Nevertheless, the reexams have now progressed past the point of speculation, and simplification of the issues to be tried pending the resolution of the reexams is near certain.

Although this stay comes late in the progression of this case—with discovery complete, pretrial briefing submitted, and jury selection impending—there remain significant resources yet to be expended by the parties, including at the pretrial conference and preparations leading up to an actual trial of this case. In light of the high probability that the asserted claims will change in

4

scope as part of the reexamination proceedings noted above, the Court finds that considering the totality of the circumstances in this case at this time, a stay is warranted.

Accordingly, having considered prejudice to Ramot, simplification of the issues to be tried, and the stage of the case, the Court finds that the relevant factors weigh in favor of granting a stay of this case pending resolution of the *ex parte* reexaminations.

### IV.    CONCLUSION

In light of the foregoing, the Court finds that Defendant Cisco Systems, Inc.'s Renewed Motion to Stay Pending *Ex Parte* Reexamination of U.S. Patent No. 10,270,535, No. 10,033,465, and No. 10,461,866 (Dkt. No. 221) should be and hereby is **GRANTED**.

The parties are **ORDERED** to file a joint notice updating the Court as to the status of the claims within **thirty (30) days** of any ultimate resolution in the *ex parte* reexamination. The parties are further **ORDERED** to file periodic joint notices with the Court to report on the status of the reexamination proceeding **every 120 days** until this case is either unstayed or terminated.

**So ORDERED and SIGNED this 13th day of January, 2021.**

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE

# EXHIBIT 2



The Newsroom    Innovation + Impact ▾    Inside Cisco ▾    Press Room ▾    Blogs



Press Release

# Cisco and Acacia Communications Announce Amended Merger Agreement

Jan 14, 2021

 LinkedIn

 Twitter

 Facebook

## *News Summary:*

- The acquisition of Acacia reinforces Cisco's commitment to optics as a building block that will enhance Cisco's 'Internet for the Future' strategy with world class coherent optical solutions.
- Cisco is committed to supporting Acacia's existing customers around the world as well as new customers that require industry-leading coherent optics, digital signal processing / photonic integrated circuit modules and transceivers for use in networking products and data centers.
- Cisco has agreed to acquire Acacia for $115 per share in cash, or approximately $4.5 billion on a fully diluted basis, net of cash and marketable securities.

**SAN JOSE, Calif. – January 14, 2021**: Cisco (NASDAQ: CSCO) and Acacia Communications (NASDAQ: ACIA) today announced an amendment to the definitive merger agreement under which Cisco previously agreed to acquire Acacia. Under the terms of the amended agreement, Cisco would acquire Acacia for $115 per share in cash, or for approximately $4.5 billion on a fully diluted basis, net of cash and marketable securities. Cisco and Acacia expect to complete the acquisition by the end of the first

Case 1:22-cv-00674-GBW    Document 26-1    Filed 09/13/22    Page 9 of 37 PageID #: 667

calendar quarter of 2021, subject to closing conditions, including Acacia stockholder approval.

Upon completion of the acquisition, CEO Raj Shanmugaraj and Acacia employees will join Cisco's Optics business.

"I am delighted that Cisco and Acacia have decided to come together in this mutual deal," said Chuck Robbins, chairman and CEO, Cisco. "We look forward to welcoming Raj and the Acacia team to Cisco to offer our customers world-class coherent optical solutions to power the Internet for the future."

The pending acquisition of Acacia reinforces Cisco's commitment to optics as a critical building block that will enhance the company's 'Internet for the Future' strategy with world class coherent optical solutions for customers, further enabling them to address the unprecedented scale of modern IT. Cisco is committed to supporting Acacia's existing and new customers around the world that require industry-leading coherent optics, digital signal processing / photonic integrated circuit modules and transceivers for use in networking products and data centers.

"Both Cisco and Acacia have been focused on helping customers create a simpler operations environment, with a shared vision for the future of routing and switching with pluggable optics," said Bill Gartner, senior vice president and general manager, Cisco Optical Systems and Optics Group. "Together we will ignite our strategy to transform the optical world as we know it, with innovative solutions to boost network capacity inside and outside the data center."

"We maintain our strong conviction in the strategic benefits of joining the Cisco family and believe it will enable us to better support our existing customers, while reaching an expanded footprint of new customers globally," said Raj Shanmugaraj, president and CEO  of Acacia. "We are pleased to have reached this agreement with Cisco and are excited to move forward with the combination which we believe will transform the optical industry, while providing great opportunities for Acacia employees to continue their innovation."

### About Acacia Communications

Acacia Communications develops, manufactures and sells high-speed coherent optical interconnect products that are designed to transform communications networks through improvements in performance, capacity and cost. By implementing optical interconnect technology in a silicon-based platform, a process Acacia Communications refers to as the "siliconization of optical interconnect," Acacia Communications is able to offer products at higher speeds and density with lower power consumption, that meet the needs of cloud and service providers and can be easily integrated in a cost-effective manner with existing network equipment. For more information about Acacia, visit www.acacia-inc.com or follow on Twitter at @AcaciaComms.

### About Cisco

Cisco (NASDAQ: CSCO) is the worldwide leader in technology that powers the Internet. Cisco inspires new possibilities by reimagining your applications, securing your data, transforming your infrastructure, and empowering your teams for a global and inclusive future. Discover more on Network and follow us on Twitter at @Cisco.

*Cisco and the Cisco logo are trademarks or registered trademarks of Cisco and/or its affiliates in the U.S. and other countries. A listing of Cisco's trademarks can be found at www.cisco.com/go/trademarks.*

### Forward Looking Statements

Innovation +

Inside Cisco

Press Room

Blogs

Explore Cisco

*This press release may be deemed to contain forward-looking statements, which are subject to the safe harbor provisions of the Private Securities Litigation Reform Act of 1995. Any statements that are not statements of historical fact (including statements containing the words "believes," "plans," "anticipates," "expects," "estimates" and similar expressions) should be considered to be forward-looking statements, although not all forward-looking statements contain these identifying words. Readers should not place undue reliance on these forward-looking statements. Forward-looking statements may include statements regarding the expected timing of the closing of the acquisition of Acacia Communications, the enhancement to Cisco's strategy, support of Acacia's existing customers and new customers, and Acacia personnel. Statements regarding future events are based on the parties' current expectations and are necessarily subject to associated risks related to, among other things, the satisfaction of the closing conditions to the acquisition, including Acacia stockholder approval, litigation related to the transaction, general economic conditions, including as related to the ongoing COVID-19 pandemic, the retention of employees of Acacia and the ability of Cisco to successfully integrate Acacia's market opportunities, technology, personnel and operations and to achieve expected benefits. Therefore, actual results may differ materially and adversely from those expressed in any forward-looking statements. For information regarding other related risks, see the "Risk Factors" section of Cisco's most recent quarterly report on Form 10-Q filed with the SEC on November 17, 2020 and on its most recent annual report on Form 10-K filed with the SEC on September 3, 2020, as well as the "Risk Factors" section of Acacia's most recent quarterly report on Form 10-Q filed with the SEC on November 9, 2020 and on its most recent annual report on Form 10-K filed with the SEC on February 18, 2020. The parties undertake no obligation to revise or update any forward-looking statements for any reason.*

***Additional Information and Where to Find It***

*In connection with the proposed acquisition and required stockholder approval, Acacia will file with the SEC a preliminary proxy statement and a definitive proxy statement. The proxy statement will be mailed to Acacia stockholders. Acacia's stockholders are urged to read the proxy statement (including all amendments and supplements) and other relevant materials when they become available because they will contain important information. Investors may obtain free copies of these documents (when they are available) and other documents filed with the SEC at its website at www.sec.gov. In addition, investors may obtain free copies of the documents filed with the SEC by Acacia by going to Acacia's Investor Relations page on its corporate website at http://ir.acacia-inc.com/ or by contacting Acacia Investor Relations at (212) 871-3927.*

*The Company and its executive officers and directors may be deemed to be participants in the solicitation of proxies from Acacia's stockholders with respect to the acquisition. Information about Acacia's directors and executive officers, including their ownership of Acacia securities, is set forth in Acacia's annual report on Form 10-K filed with the SEC on February 18, 2020, as amended on April 29, 2020, and Acacia's other filings with the SEC. Investors may obtain more detailed information regarding the direct and indirect interests of Acacia and its respective executive officers and directors in the acquisition by reading the preliminary and definitive proxy statements regarding the transaction, which will be filed with the SEC.*

*In addition, Cisco and its executive officers and directors may be deemed to have participated in the solicitation of proxies from Acacia's stockholders in favor of the approval of the transaction. Information concerning Cisco's directors and executive officers is set forth in Cisco's proxy statement for its 2020 Annual Meeting of Shareholders, which was filed with the SEC on October 21, 2020, annual report on Form 10-K filed with the SEC on September 3, 2020, Form 8-Ks filed with the SEC on*

*November 13, 2020, November 30, 2020, December 11, 2020, December 17, 2020 and January 7, 2021, and Cisco's other filings with the SEC. These documents are available free of charge at the SEC's website at www.sec.gov or by going to Cisco's Investor Relations website at https://investor.cisco.com.*

Innovation +

Inside Cisco

Press Room

Blogs

___

Explore Cisco

## Media contacts

### Robyn Blum

+1 408 930 8548

rojenkin@cisco.com

### Carol Villazon

+1 408 527 6538

carolv@cisco.com

### Michael Piramoon

+1 408 526 6184

mpiramoo@cisco.com

### Kelly Karr

+1 408.718.9350

PR@acacia-inc.com

### Monica Gould

+1 212.871.3927

IR@acacia-inc.com

in  LinkedIn        Twitter        f  Facebook

## Related Articles








Media Center

...tes Acquisition of Socio Labs

Cisco Completes Acquisition of ... Security

...mpletes acquisition of Socio Labs,

News Summary: Cisco has completed the acquisition of Kenn...

## Related Media




Video

...: Dug Song

People@Cisco: Jon Oberheide

...founder Dug Song believes in the fundamental right of ...d his vision aligns with Cisco's.

Duo Security's Jon Oberheide reflects on the company's journe... family.

| About Cisco | Press Kit | News | Financial Info |
|---|---|---|---|
| Company Overview | Media Contacts | All News | Earnings & Acquisitions |
| Executive Team | Logo Guidelines | Upcoming Events | Investor Relations |
| Sustainability | Press Room | Press Releases | Analyst Relations |
| Cisco.com | | | |

Contacts   Feedback   Help   Site Map   Terms & Conditions   Statement   Cookies   Trademark

@2022 Cisco Systems Inc.

Explore Cisco

EXHIBIT 3

9/13/22, 3:3... Cisco Completes Acquisition of Acacia Communications, Inc.

Case 1:22-cv-00674-GBW     Document 26-1     Filed 09/13/22     Page 15 of 37 PageID #: 673



The Newsroom

Innovation + Impact ▾     Inside Cisco ▾     Press Room ▾     Blogs

🔍



Press Release

# Cisco Completes Acquisition of Acacia Communications, Inc.

Mar 01, 2021

 LinkedIn

 Twitter

f  Facebook

**News Summary:**

- Cisco completed the acquisition of Acacia Communications, Inc. following approval of the transaction by a majority of Acacia shareholders.
- The Acacia acquisition reinforces Cisco's commitment to optics as a building block that will enhance Cisco's 'Internet for the Future' strategy with world class coherent optical solutions.
- Cisco is committed to supporting and growing Acacia's existing customers around the world as well as new customers that require industry-leading coherent optics, digital signal processing/photonic integrated circuit modules and transceivers for use in networking products and data centers.

**SAN JOSE, Calif. – March 1, 2021**: Cisco (NASDAQ: CSCO) today announced the completion of the acquisition of Acacia Communications, Inc. (NASDAQ: ACIA) following approval by a majority of Acacia's shareholders. Acacia designs and manufactures high-speed, optical interconnect technologies that allow webscale companies, service providers and data center operators to meet the fast-growing consumer demand for data.

This acquisition reinforces Cisco's commitment to optics as a critical building block that will enhance Cisco's 'Internet for the Future' strategy with world class coherent optical solutions for customers, further enabling them to address the unprecedented scale of

modern IT. Cisco is committed to supporting Acacia's existing customers around the world as well as new customers that want industry-leading coherent optics, digital signal processing/photonic integrated circuit modules and transceivers for use in networking products and data centers.

"We are thrilled to welcome the Acacia team to Cisco," said Chuck Robbins, Cisco chairman and CEO. "Our Internet for the Future strategy puts Acacia's high-speed coherent optics technologies front and center as we work to empower webscale companies, service providers and data center operators to meet today's fast-growing demands for data."

Cisco has agreed to acquire Acacia for $115.00 per share in cash, or approximately $4.5 billion on a fully diluted basis, net of cash and marketable securities. As a result of the transaction, Acacia is no longer a publicly traded company. Acacia has notified NASDAQ of the completion of the acquisition and has requested that NASDAQ file a notification of delisting with the Securities and Exchange Commission on Acacia's behalf.

Acacia employees join Cisco's Optics business as part of the Mass-Scale Infrastructure Group.

**Additional Resources**

- Read the blog for more information

**About Cisco**

Cisco (NASDAQ: CSCO) is the worldwide leader in technology that powers the Internet. Cisco inspires new possibilities by reimagining your applications, securing your data, transforming your infrastructure, and empowering your teams for a global and inclusive future. Discover more on Network and follow us on Twitter at @Cisco.

*Cisco and the Cisco logo are trademarks or registered trademarks of Cisco and/or its affiliates in the U.S. and other countries. A listing of Cisco's trademarks can be found at www.cisco.com/go/trademarks.*

**Forward Looking Statements**

*This press release may be deemed to contain forward-looking statements, which are subject to the safe harbor provisions of the Private Securities Litigation Reform Act of 1995. Any statements that are not statements of historical fact (including statements containing the words "believes," "plans," "anticipates," "expects," "estimates" and similar expressions) should be considered to be forward-looking statements, although not all forward-looking statements contain these identifying words.  Readers should not place undue reliance on these forward-looking statements. Statements regarding future events are based on the parties' current expectations and are necessarily subject to associated risks related to, among other things, general economic conditions, including as related to the ongoing COVID-19 pandemic, the retention of employees of Acacia and the ability of Cisco to successfully integrate Acacia's market opportunities, technology, personnel and operations and to achieve expected benefits. Therefore, actual results may differ materially and adversely from those expressed in any forward-looking statements. For information regarding other related risks, see the "Risk Factors" section of Cisco's most recent quarterly report on Form 10-Q filed with the SEC on February 16, 2021 and on its most recent annual report on Form 10-K filed with the SEC on September 3, 2020, as well as the "Risk Factors" section of Acacia's most recent quarterly report on Form 10-Q filed with the SEC on November 9, 2020 and on its most recent annual report on Form 10-K filed with the SEC on February 18, 2020. The parties undertake no obligation to revise or update any forward-looking statements for any reason.*

Innovation +

Inside Cisco

Press Room

Blogs

Explore Cisco

## Media contacts

### Robyn Blum

+1 408 930 8548
rojenkin@cisco.com

### Carol Villazon

+1 408 527 6538
carolv@cisco.com

### Michael Piramoon

+1 408 526 6184
mpiramoo@cisco.com

Innovation +

Inside Cisco

Press Room

Blogs

Explore Cisco

in  LinkedIn        Twitter        f  Facebook

# Related Articles





Innovation Impact

## ...op Capital Host a Tech Talk on ...al Business

...Cisco's Optical Business

## Earthlink Deploys Cisco 400G D... Coherent Optics in EMEAR

News Summary: Earthlink takes first step towards Routed

# Related Media



## : Dug Song

...ounder Dug Song believes in the fundamental right of
...d his vision aligns with Cisco's.



Video

## People@Cisco: Jon Oberheide

Duo Security's Jon Oberheide reflects on the company's journe...
family.

| **About Cisco** | **Press Kit** | **News** | **Financial Info** |
|---|---|---|---|
| Company Overview | Media Contacts | All News | Earnings & Acquisitions |
| Executive Team | Logo Guidelines | Upcoming Events | |
| Sustainability | Press Room | Press Releases | Investor Relations |
| Cisco.com | | | Analyst Relations |

Contacts     Feedback     Help     Site Map     Terms & Conditions     Statement     Cookies     Trademark

@2022 Cisco Systems Inc.

Innovation +

Inside Cisco

Press Room

Blogs

Explore Cisco

EXHIBIT 4

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

RAMOT AT TEL AVIV UNIVERSITY LTD.

　　　　　　　　Plaintiff,

　　　　v.

CISCO SYSTEMS, INC.,

　　　　　　　　Defendant.

Case No. 2:22-cv-00168-JRG

JURY TRIAL DEMANDED

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER PURSUANT TO THE FIRST-TO-FILE RULE

# TABLE OF CONTENTS

Page

I.     THE MOTION SHOULD BE DENIED ........................................................... 1

II.    COMPELLING CIRCUMSTANCES WARRANT DENIAL OF TRANSFER ............... 3

     A.    Judicial familiarity with Ramot's patent family supports venue in Texas............. 4

     B.    The other transfer factors also support venue in Texas ......................................... 5

     C.    The purely anticipatory nature of Cisco's suit excepts it from the rule.................. 6

III.   THE COURT SHOULD NOT TRANSFER TO A VACANT JUDGESHIP .................. 10

IV.   CONCLUSION............................................................................................................ 11

# TABLE OF AUTHORITES

Page(s)

## **CASES**

*American Employers' Ins. Co. v. Eagle Inc.*,
    122 Fed. App'x. 700 (5th Cir. 2004) .................................................................. 7

*Cerro Wire Inc. v. Southwire Co.*,
    777 F. Supp. 2d 1334 (N.D. Ga. 2011) ............................................................... 1

*Communications Test Design, Inc. v. Contec*, LLC,
    952 F.3d 1356 (Fed. Cir. 2020) .............................................................. 5, 6, 7, 9

*DataTreasury Corp. v. First Data Corp.*,
    243 F. Supp. 2d 591 (N.D. Tex. 2003) ............................................................... 4

*GAF Bldg. Materials Corp. v. Elk Corp. of Dallas*,
    90 F.3d 479 (Fed. Cir. 1996) ............................................................................. 1

*In re Amperex Tech. Ltd.*,
    No. 2022-105, 2022 WL 135431 (Fed. Cir. Jan. 14, 2022) ................................ 7

*In re Cisco Systems, Inc.*,
    834 Fed. Appx. 571 (Fed. Cir. 2020) .................................................................. 9

*In re Nitro Fluids, LLC*,
    978 F.3d 1308 (Fed. Cir. 2020) .............................................................. 1, 2, 5, 6

*In re Toyota Hybrid Brake Litigation*,
    No. 4:20-CV-127, 2020 WL 6161495 (E.D. Tex. Oct. 21, 2020) ............................ passim

*International Union v. Dana Corp.*,
    No. 3:99-CV-7603, 1999 WL 33237054 (N.D. Ohio 1999) ................................ 7

*Kmart Corp. v. Key Industries, Inc.*,
    877 F. Supp. 1048 (E.D. Mich. 1994) ............................................................... 7

*Micron Tech., Inc. v. Mosaid Techs., Inc.*,
    518 F.3d 897 (Fed. Cir. 2008) ........................................................................... 5

*Mobility Electronics, Inc. v. American Power Conversion Corp.*,
    No. 5:07-CV-83, 2007 WL 9724768 (E.D. Tex. Oct. 10, 2007) .................................. 2, 4

*Network-1 Sec. Solutions, Inc. v. D-Link Corp.*,
    433 F. Supp. 2d 795 (E.D. Tex. 2006) ............................................................... 2

*Nobelbiz, Inc. v. Global Connect, LLC*,
   No. 6:13-cv-804-MHS, 2014 WL 12613389 (E.D. Tex. Feb. 26,
   2014) ........................................................................................................................ 1

*Parallel Networks, LLC v. Microsoft Corp.*,
   No. 2:09-cv-172, 2009 WL 10708739 (E.D. Tex. Aug. 3, 2009) .................................... 11

*Sherwin-Williams Co. v. Holmes Cty.*,
   343 F.3d 383 (5th Cir. 2003) ...................................................................................... 7, 8

*Texas Instruments Inc. v. Micron Semiconductor, Inc.*,
   815 F. Supp. 994 (E.D. Tex. 1993) .................................................................................. 3

*Traxxas, L.P v. Sunny Days Entertainment, LLC*,
   No. 2:18-cv-00035-JRG, 2018 WL 10716502 (E.D. Tex. May 30,
   2018) ...................................................................................................................... 10

## I.   THE MOTION SHOULD BE DENIED

Cisco's Delaware local counsel stayed up until the wee hours of the morning on May 24, 2022—in order to file a declaratory judgment action at 12:01 am on the day the '998 Patent was supposed to issue.  This was the second issue-day declaratory judgment action Cisco has filed. Cisco made the same venue pre-emptive filing in Delaware when Ramot's related '872 Patent was due to issue on Sept. 28, 2021.  Meanwhile, Ramot filed the above-captioned action in this district shortly after verifying via the USPTO website that the '998 Patent had indeed issued.[1]  As Cisco argues, its declaratory suit was indeed first in absolute time.

But an undesirable race to hit the "file" button, and the mechanical awarding of venue to the winner, is not always the answer under settled law.  Courts in this district—as well as the Fifth Circuit, Federal Circuit, and elsewhere—recognize a "compelling circumstances" exception to application of the first-to-file rule.  *See, e.g.*, *In re Nitro Fluids, LLC*, 978 F.3d 1308, 1311, fn. 2 (Fed. Cir. 2020).  Such circumstances exist here, where Cisco asks for transfer from a Court that has presided over litigation on related patents all the way to pretrial—to a judgeship that is currently vacant, in a district chosen solely to avoid Ramot's venue choice.

Contrary to Cisco's suggestion, "bad faith" is not required to be shown.  Anticipatory filing solely to preempt the patent owner's choice of venue—as indisputably occurred here—is an established factor supporting application of the compelling circumstances exception, particularly

---

[1] Courts in this district have presumed that patents issue at midnight in the Eastern time zone on the day noticed for issuance.  *See, e.g.*, *Nobelbiz, Inc. v. Global Connect, LLC*, No. 6:13-cv-804-MHS, 2014 WL 12613389, *2 (E.D. Tex. Feb. 26, 2014).  Neither this district or the District of Delaware appear to have directly addressed a ***dispute*** on the question of whether "the stroke of midnight, or the patent's appearance on the PTO website" should govern—but other courts have and have opted for the former.  *See, e.g.*, *Cerro Wire Inc. v. Southwire Co.*, 777 F. Supp. 2d 1334, 1338 (N.D. Ga. 2011).  But even if the midnight rule were followed, Cisco's tactic of pressing "file" as the chimes are still ringing risks launching a suit without standing if the patent does not in fact issue.  *Id.* at 1336.  Filing before issuance is a jurisdictional defect not cured by later issue.  *GAF Bldg. Materials Corp. v. Elk Corp. of Dallas*, 90 F.3d 479, 482 (Fed. Cir. 1996).

when other considerations are also present. *See, e.g.*, *Mobility Electronics, Inc. v. American Power Conversion Corp.*, No. 5:07-CV-83, 2007 WL 9724768 at *3-4 (E.D. Tex. Oct. 10, 2007) ("**considerations of judicial and litigant economy**, and the just and effective disposition of disputes"); *see also Nitro Fluids,* 978 F.3d at 1311 ("We further accept that a **balance of the transfer factors** can support such an exception") (emphases added). In the case of anticipatory filings, such other considerations include a court's familiarity with a patent family through other pending litigation, as this Court has developed here. *Mobility Electronics*, 2007 WL 9724768 at *4 (*citing*, *e.g.*, *Network-1 Sec. Solutions, Inc. v. D-Link Corp.*, 433 F. Supp. 2d 795, 802 (E.D. Tex. 2006)).

Cisco omits discussion of these relevant circumstances, and does not engage with the "transfer factors" at all—arguing for a mechanical application of the rule based solely on filing time of day and substantial overlap. But more is required when compelling circumstances—such as those discussed herein—are shown. *See, e.g.*, *In re: Toyota Hybrid Brake Litigation*, No. 4:20-CV-127, 2020 WL 6161495 at *5-9 (E.D. Tex. Oct. 21, 2020) ("But Alaniz's assertion that a finding of substantial overlap is 'the end of this Court's inquiry' is patently wrong []. Mechanical application of the first-to-file rule is not required on every occasion and may very well be inappropriate in specific instances … .") (internal citations omitted).

Notably, Cisco fails to tell the Court that each of the Delaware actions it mentions are currently assigned to a VACANT judgeship—as-yet unfilled since Judge Stark was confirmed to the Federal Circuit. Ramot has told Cisco that it intends to seek transfer of Cisco's two declaratory judgment actions from Delaware to this Court—based largely on the same judicial economy factors as discussed herein. But as of now, there is no Article III judge assigned to consider that contemplated motion—or for this Court to defer to for decision on venue in this case as Cisco suggests. Mot. at 8.

As discussed below, in similar situations the court has stayed pending word from the would-be transferee court.  Here, there is no practical reason that this case cannot proceed through early stages rather than wait.

Under the circumstances, Cisco's ask, and preference for the District of Delaware, is nothing more than forum shopping and a bid for further delay.  Cisco claims no urgency here on its part driving its alleged need to resolve infringement via declaratory suits.  Nor could it credibly do so.  Cisco filed at 12:01 am in Delaware expecting to get sued immediately in Texas.  Also, Cisco has repeatedly sought *stays* of infringement actions brought by Ramot on this patent family—so that it could serially litigate validity in the Patent Office, filing five *inter partes* review petitions and seven *ex parte* reexamination requests so far.  In view of this, Cisco's Delaware non-infringement suits are clearly "no more than a race to the courthouse" and "further[] none of the purposes of a declaratory judgment action."  Rather they exist solely to deny "the injured party the right to choose the forum in which to seek redress."  *Texas Instruments Inc. v. Micron Semiconductor, Inc.*, 815 F. Supp. 994, 997-98 (E.D. Tex. 1993).

## II.    COMPELLING CIRCUMSTANCES WARRANT DENIAL OF TRANSFER

As shown herein, Ramot's opposition is supported by compelling circumstances that include substantially more than just Cisco's obvious forum shopping—such this Court's familiarity with patents in this family that share a specification, the absence of a judge in Delaware who could decide a transfer motion, Ramot's choice of forum, and other convenience factors.  All of this suggests that transfer would be inappropriate, and Cisco has provided nothing to counter it other than the fact of its minutes-earlier filing.  "Blindly applying the first-to-file rule only on the basis of the actual filing dates ... would not further the goals of the rule."  *In re: Toyota Hybrid Brake Litigation*, 2020 WL 6161495 at *6-7.

## A.    Judicial familiarity with Ramot's patent family supports venue in Texas

Judicial familiarity with the patent family at issue has often been deemed a compelling circumstance against mechanical application of the first-to-file rule.  *See, e.g.*, *Mobility Electronics*, 2007 WL 9724768 at *3-4 ("federal courts will recognize the wisdom of allowing a judge who has familiarity with the subject matter at issue to preside over subsequent litigation"). The benefits to judicial economy and avoidance of competing result grow even stronger when, as here, there is other pending litigation before the same judge within a patent family.  *See DataTreasury Corp. v. First Data Corp.*, 243 F. Supp. 2d 591, 595-97 (N.D. Tex. 2003). Consolidation of related patent cases before a single judge with familiarity promotes "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation."  *In re Toyota Hybrid Brake Litigation*, 2020 WL 6161495 at *7.

This Court presided over litigation of three related patents through discovery, claim construction, expert disclosure, motions, and pre-trial filings to within weeks of trial—before the Court granted Cisco's third motion to stay (pending *ex parte* reexamination).  *Ramot at Tel Aviv University Ltd. v. Cisco Systems, Inc.*, Case No 2:19-cv-00225-JRG, Dkt. 235 (E.D. Tex. Jan. 13, 2021).  Those related patents share a specification, and indeed many claim elements, with the newly-issued '998 Patent here.  That case is still pending.  *Id.* at Dkt. 241.  And while Cisco has acquired former third-party supplier Acacia Communications for $4.5 billion, and has released new accused products, since this Court stayed the prior case—substantial overlap with the currently pending litigation in this Court is inevitable with respect to at least infringement and invalidity theories, claim construction arguments, and damages models.  There would be substantial and undeniable benefits to judicial economy, and to the parties, in proceeding with litigation over Ramot's newly issued patents in this Court as well.  Cisco has not suggested, and could not show, otherwise.

**B.       The other transfer factors also support venue in Texas**

Courts often look to the § 1404(a) convenience factors by analogy as additional sources of compelling circumstance to support exemption from mechanical application of the first-to-file rule.    "'[T]rial courts have discretion to make exceptions to this general rule in the interest of justice or expediency,' and we have recognized that such 'exceptions are not rare.'" *Communications Test Design, Inc. v. Contec*, LLC, 952 F.3d 1356, 1362 (Fed. Cir. 2020) (*quoting Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 904 (Fed. Cir. 2008)). "'Other factors include the convenience and availability of witnesses, the absence of jurisdiction over all necessary or desirable parties, and the possibility of consolidation with related litigation.'" *Id.*; *see also In re Toyota Hybrid Brake Litigation*, 2020 WL 6161495 at *7, fn. 8 (collecting cases).  Establishing a favorable balance of factors is not required to avoid the first-to-file rule, but when "the balance of convenience favors the second-filed action," it "can be" the basis for an exception to the rule. *See Nitro Fluids*, 978 F.3d at 1311.

Here, the balance of factors clearly favors this Court, and Cisco offers no analysis of the factors to say otherwise.

With respect to the public interest factors, as discussed above, this Court's prior experience—including claim construction and other rulings—concerning other patents in this family plainly and strongly support venue in this Court under the familiarity and avoidance of conflict factors.  And as discussed below, even without resort to time-to-trial statistics—which consistently favor this Court—the current vacancy to which these matters are assigned in Delaware supports venue here under the court congestion factor.  The local interest factor is also served by venue in this Court, for all the reasons given to support venue in Ramot's Complaint.  Dkt. 1 at ¶¶ 10-12, 14-15.

With respect to the private interest factors, the parties have already demonstrated, through

discovery and pretrial proceedings in the prior case here, that the sources of proof and necessary witnesses are available and amenable to attendance at trial in this Court.  Cisco cannot show, and has not attempted to show, that any of its proof or witnesses are resident in or more available in Delaware.  Several of Ramot's likely witnesses, including inventor Dr. Ehrlichman as well as Ramot's corporate representative and both experts in the prior stayed case, are resident in the Western or Mid-Western United States (*see* Dkt. 1 at ¶ 18), making this Court cheaper and geographically more convenient to attend than Delaware.  Cisco is based in California and has substantial offices in this district.  *Id.* at ¶¶ 8-11.

The balance of factors under § 1404(a) strongly favors venue in the Eastern District of Texas.  Cisco cannot show otherwise and has not tried.  Accordingly, the balance of convenience factors here provides additional compelling circumstances justifying an exception to the first-to-file rule.  *See, e.g.*, *Nitro Fluids*, 978 F.3d at 1311.

### C.    The purely anticipatory nature of Cisco's suit excepts it from the rule

Compelling circumstances also arise because of the purely anticipatory nature of Cisco's filings in Delaware.  This is a recognized "compelling circumstance" in Fifth Circuit cases and elsewhere, separate from the "bad faith" exception.  *In re Toyota Hybrid Brake Litigation*, 2020 WL 6161495 at *7.  The cases Cisco cites do indeed establish that the mere fact of filing of a declaratory action isn't enough.  But they also do not require a showing of "bad faith" beyond an intention to preempt.  *See, e.g.*, *Communications Test Design*, 952 F.3d at 1362-64 (finding that "regardless of [filing party's] motive or intent," no abuse of discretion to consider anticipatory nature of suit as revealed from communications and conduct).  "We have recognized that the first-to-file rule is not absolute, that a declaratory judgment action in particular may even be dismissed though filed first, and that a 'court may consider whether a party intended to preempt another's infringement suit … .'"  *In re Amperex Tech. Ltd.*, No. 2022-105, 2022 WL 135431, at *2 (Fed.

Cir. Jan. 14, 2022).

In *Sherwin-Williams Co. v. Holmes Cty.*, 343 F.3d 383, 397 (5th Cir. 2003), the court looked at a federal suit filed in anticipation of state cases, and noted that the "mere fact" of anticipation "does not require" dismissal of the declaratory suit. Instead, the court looked to whether the **sole purpose** of the suit was "improper 'procedural fencing' undermining 'the wholesome purposes' of declaratory actions" *Id.*; *see also American Employers' Ins. Co. v. Eagle Inc.*, 122 Fed. App'x. 700, 703 (5th Cir. 2004) (in *Sherman-Williams*, "we were concerned with whether there was a legitimate reason" to be in the court). Here, Cisco hasn't provided any legitimate reason at all to be in court in Delaware rather than Texas—other than that it prefers to, and it filed at 12:01 am hoping to preemptively secure that result.

As Cisco's own cases suggest, facts showing that no motivation exists other than anticipatory forum shopping, along with other factors, can make such a filing unworthy of deference under the rule. *See also Kmart Corp. v. Key Industries, Inc.*, 877 F. Supp. 1048, 1053 (E.D. Mich. 1994) ("For example, a suit brought **purely in anticipation** of a filing by the defendant in another forum should be dismissed") (emphasis added). Forum shopping is its own disfavored practice, as is often recognized. *See, e.g.*, *International Union v. Dana Corp.*, No. 3:99-CV-7603, 1999 WL 33237054, at *6 (N.D. Ohio 1999) (collecting cases, and noting that: "Such motive is found most readily, and viewed most unenthusiastically, where the first filer acted on the basis of an anticipation that its opponent was about to file a substantive suit against it.").

Anticipating an infringement suit with a declaratory judgment action in another forum is not a legitimate purpose under the Declaratory Judgment Act. *See, e.g.*, *Communications Test Design*, 952 F.3d at 1362-64. And when the facts indicate, as here, that anticipatory forum shopping was the only reason for the filing, these are compelling circumstances that (along with the other factors shown herein) warrant departure from mechanical application of the rule.

Cisco has not disputed that it filed in Delaware at 12:01 am on the day of scheduled issuance of the patent solely in anticipation of, and to attempt to preempt, Ramot's filing here. Indeed, this is the second time Cisco has filed before the virtual ink was dry on a new Ramot patent. *See, e.g.*, *Cisco Sys. Inc. v. Ramot at Tel Aviv Univ. Ltd.*, No. 1:21-cv-01365-VAC-CJB, Dkt. 1 at ¶ 2 (D. Del. Sept. 28, 2021) ("a copy of the '872 patent is not yet available from the United States Patent and Trademark Office ("USPTO") in downloadable form").

Further, Cisco cannot, and does not, claim in its Motion a desire or need to resolve any dispute without waiting to be sued. Courts recognize urgency of resolution as a legitimate purpose for an anticipatory suit. *See, e.g.*, *Sherwin-Williams*, 343 F.3d at 397 ("to allow potential defendants to resolve a dispute without waiting to be sued"). But here, the only urgency was in avoiding Ramot's intended venue. Cisco filed at 12:01 am in Delaware, expecting to get sued in Texas and intending to use the first-to-file rule for its advantage. There is no other reasonable explanation offered, or available, for staying up late to file as it did.

Further, as this Court well knows, there are numerous other proceedings, in this Court, in the Patent Office, and in Delaware, involving Ramot's optical modulation patent family and its enforcement against Cisco's ongoing infringement. Already concluded are three *inter partes* review petitions and four appellate petitions from their denial. Still pending are five district court matters, seven *ex parte* reexamination requests, and two more *inter partes* reviews (on the '872 Patent). Both of Ramot's infringement actions on three ancestor patents of the '998 Patent—the case that nearly reached trial in this Court, and the case Ramot filed in Delaware against Acacia Communications when it was still a separate entity from Cisco with no Texas offices or other Texas acts or connections—are stayed at Cisco's request. *Ramot at Tel Aviv University Ltd. v. Cisco Systems, Inc.*, Case No 2:19-cv-00225-JRG, Dkt. 235 (E.D. Tex. Jan. 13, 2021); *Ramot at Tel Aviv University Ltd., v. Acacia Communications, Inc.*, 1:21-cv-00295-VAC, Dkt. No. 23 (Oral

Order) (D. Del. Sept. 3, 2021).

Cisco cannot reasonably argue that its declaratory judgment actions in Delaware are based on an urgent need to resolve infringement of either new patent, when its core strategy in the course of litigation between the parties has been to delay or stay proceeding on infringement while repeatedly seeking to re-litigate validity in the Patent Office.[2]

Cisco has not cited to a single convenience or other factor in support of the transfer it requests—or given any other reason to prefer Delaware. Cisco has failed to mention or consider both the effect of the judicial vacancy in Delaware, and this Court's judicial familiarity with these parties and patent family.

In short, these facts strongly suggest, as Ramot asserts, that Cisco filed solely in anticipation and entirely to forum-shop in avoidance of further proceedings in this Court. Cisco's midnight filing was not an ordinary declaratory judgment case, but rather a purely anticipatory forum-grab of the sort courts find to be compelling circumstances warranting an exception to the first-to-file rule.

Further, the expanding course of litigation described above calls out for some manner of efficient consolidation—and the judicially efficient and just location for that is clearly with the Court that already has substantial experience presiding over litigation between these parties about this patent family. The "possibility of consolidation with related litigation" is a further compelling circumstance warranting exception to the first-to-file rule. *Communications Test Design*, 952 F.3d

---

[2] Cisco has not done particularly well in the Patent Office or on appeal here, but also has not given any indication that it intends to stop. *See, e.g.*, IPR2020-00484, Paper 10, Decision Denying Institution (PTAB Aug. 18, 2020) ("We have reviewed the Petition and determine that its merits are not particularly strong here."); *In re Cisco Systems, Inc.*, 834 Fed. Appx. 571, 574 (Fed. Cir. 2020) (Cisco "clearly has a readily available alternative legal channel to raise its arguments concerning the validity of the asserted patents. While Cisco prefers to raise those arguments before the Board, it has no clear and indisputable right to do so.").

at 1362.

For all of these reasons, the Court should find that Ramot has established compelling circumstances in exception to operation of the first-to-file rule.

## III. THE COURT SHOULD NOT TRANSFER TO A VACANT JUDGESHIP

As discussed above—and as Cisco fails to mention and leaves off its citations—all three of the Delaware actions between Ramot and Cisco and/or Acacia are assigned to a judgeship that is vacant.  *See, e.g.*, *Cisco Sys., Inc. v. Ramot at Tel Aviv Univ. Ltd.*, No. 1:22-cv-00674-VAC (D. Del.); *Cisco Sys. Inc. v. Ramot at Tel Aviv Univ. Ltd.*, No. 1:21-cv-01365-VAC-CJB (D. Del.); *Ramot at Tel Aviv University Ltd., v. Acacia Communications, Inc.*, 1:21-cv-00295-VAC (D. Del.).  This unusual situation of a vacancy in the first-filed court presents further compelling circumstances warranting denial of Cisco's motion.

Ramot has read this Court's prior decisions on the first-to-file rule and recognized an admirable desire to promote collegial judicial relations and confer with or defer to the Court's colleagues on the bench—but that is not yet possible here.  At a minimum, the situation warrants denial of Cisco's Motion to Transfer, and proceeding with this case until the Delaware court can be consulted about its views on judicial economy here.  As detailed above, the factors supporting further infringement proceedings in this Court rather than Delaware are compelling and undisputed.  Ramot does not perceive any likely harm to judicial comity in proceeding with this litigation—and would prefer to do so given its strong interest in timely enforcement against long-time accused infringer Cisco.  But Ramot acknowledges that some courts have responded to similar circumstances with a stay.

For example, in *Traxxas, L.P v. Sunny Days Entertainment, LLC*, No. 2:18-cv-00035-JRG, 2018 WL 10716502 at *2 (E.D. Tex. May 30, 2018), this Court stayed rather than transfer where the would-be transferee court had a potential jurisdictional defect to resolve that could have

prevented proceeding there.  Similarly, in *Parallel Networks, LLC v. Microsoft Corp.*, No. 2:09-cv-172, 2009 WL 10708739 at *3 (E.D. Tex. Aug. 3, 2009), the court stayed pending the Delaware court's decision on both a jurisdictional motion and motion to transfer to Texas.

Again, should the Court wish to defer to or confer with its new colleague in Delaware once confirmed, Ramot respectfully suggests that there is no practical reason this case cannot proceed here whilst waiting for that confirmation and conference.  In any event, the case should not be transferred to a judgeship that could remain vacant for an indefinite period of time, or be transferred before Ramot (by motion) or this Court can solicit the views of the new judge on whether to proceed here or transfer in the interests of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation."  *In re: Toyota Hybrid Brake Litigation*, 2020 WL 6161495 at *7.

## IV.    CONCLUSION

For all of these reasons, Ramot respectfully requests that the Court deny the Motion in its entirety.

Dated:  July 19, 2022                                   Respectfully Submitted,

By:  /s/ *Corey Johanningmeier*

S. Calvin Capshaw
State Bar No. 03783900
Elizabeth L. DeRieux
State Bar No. 05770585
**CAPSHAW DERIEUX, LLP**
114 E. Commerce Ave.
Gladewater, TX 75467
Telephone: 903-845-5770
Email: ccapshaw@capshawlaw.com
Email: ederieux@capshawlaw.com

Denise De Mory
Corey Johanningmeier
**BUNSOW DE MORY LLP**
701 El Camino Real
Redwood City, CA 94063

Telephone: (650) 351-7248
Facsimile: (415) 426-4744
ddemory@bdiplaw.com
cjohanningmeier@bdiplaw.com

Attorneys for Plaintiff
**RAMOT AT TEL AVIV UNIVERSITY LTD.**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) with a copy of this document via the Court's CM/ECF system.

Dated:  July 19, 2022

By: /s/ *Corey Johanningmeier*
Corey Johanningmeier