# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CISCO SYSTEMS, INC. and ACACIA COMMUNICATIONS, INC., <br><br> Plaintiffs and Counterclaim Defendants, <br><br> v. <br><br> RAMOT AT TEL AVIV UNIVERSITY LTD., <br><br> Defendant and Counterclaimant. | C.A. No. 21-1365-GBW <br><br> **JURY TRIAL DEMANDED** |
| CISCO SYSTEMS, INC. and ACACIA COMMUNICATIONS, INC., <br><br> Plaintiffs and Counterclaim Defendants, <br><br> v. <br><br> RAMOT AT TEL AVIV UNIVERSITY LTD., <br><br> Defendant and Counterclaimant. | C.A. No. 22-674-GBW <br><br> **JURY TRIAL DEMANDED** |

### REPLY BRIEF IN SUPPORT OF RAMOT'S MOTION TO DISMISS AND TRANSFER

*Of Counsel:*

Denise M. De Mory
Corey Johanningmeier
BUNSOW DE MORY LLP
701 El Camino Real
Redwood City, CA 94063
(650) 351-7248

Dated: September 23, 2022

ASHBY & GEDDES
John G. Day (#2403)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
jday@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Plaintiff*

{01840250;v1 }

## TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................................................ 1

II.  THE COURT SHOULD DECLINE DJ JURISDICTION ................................................. 2

    A.   Judicial familiarity and efficiency are paramount considerations. ......................... 3

III. CISCO PRESENTS NO VALID REASON TO LITIGATE IN DELAWARE ................. 6

    A.   These suits were filed in anticipation of Ramot's choice to file elsewhere ............ 6

IV.  CIRCUMSTANCES WARRANT TRANSFER TO TEXAS ............................................ 9

V.   CONCLUSION .................................................................................................................. 10

# TABLE OF AUTHORITIES

**CASES**

*Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931 (Fed. Cir. 1993) ............................................ 2, 3

*In re Aliphcom*, 449 Fed. Appx. 33 (Fed. Cir. 2011) ....................................................................... 3

*In re Cisco Systems, Inc.*, 834 Fed. Appx. 571 (Fed. Cir. 2020) ..................................................... 8

*In re Google*, No. 2017-107, 2017 WL 977038 (Fed. Cir. 2017) .................................................... 3

*In re Nitro Fluids*, LLC, 978 F.3d 1308 (Fed. Cir. 2020) .............................................................. 10

*Longhorn HD LLC v. NetScout Systems, Inc.*, C.A. No. 2:20-cv-00349-JRG,
    2022 WL 71652 (E.D. Tex. Jan. 6, 2022) .................................................................................. 8

*McRo, Inc. v. Activision Blizzard, Inc.*, C.A. No. 12-1508-LPS-CJB, 2013
    WL 6571618 (D. Del. Dec. 13, 2013) ................................................................................. 2, 10

*Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897 (Fed. Cir. 2008) ..................................... 3

*Roku, Inc. v. AlmondNet, Inc.*, C.A. No. 21-1035-MN, 2021 WL 5299247
    (D. Del. Nov. 15, 2021) ............................................................................................................ 3

*Shure Inc. v. ClearOne, Inc.*, C.A. No. 19-1343-RJA-CJB, 2020 WL
    3250176 (D. Del. Apr. 15, 2020) ..................................................................................... 1, 3, 9

*Temple v. Synthes Corp.*, 498 U.S. 5 (1990) .................................................................................... 5

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) .............................................................................. 2

*Woodbolt Distribution, LLC v. Natural Alternatives Intern., Inc.*, No. 11–
    1266 GMS, 2013 WL 247041 (D. Del. Jan. 23, 2013) ............................................................. 2

I.      INTRODUCTION

These cases should proceed with the Texas Court that presided over litigation of the related predecessor patents, all the way to six weeks before trial, in the pending but stayed 2019 Texas Action. Cisco has nothing to offer to counter the important judicial familiarity and economy considerations that warrant dismissal and transfer here—other than a bare forum preference that is canceled out by Ramot's opposite preference. *Shure Inc. v. ClearOne, Inc.*, C.A. No. 19-1343-RJA-CJB, 2020 WL 3250176 at *11 (D. Del. Apr. 15, 2020) ("The parties' respective forum preferences cancel each other out … .").

These declaratory judgment suits were anticipatory—and intended to preempt Ramot from repeating its prior choice of forum. Cisco followed the prosecution of Ramot's continuation patents and filed these suits on the day the patents issued—staying up into the middle of the night to file at 12:01 a.m., because Cisco didn't want Ramot to file another case in Texas first. There is no logical reason to lose sleep and file at 12:01 a.m. other than anticipation of Ramot's filing elsewhere. Cisco, not surprisingly, has not offered one. Cisco simply wanted to secure a first-filed status—as there are no other rational arguments to put forward against the obvious practical judicial inefficiency of moving this dispute from Texas and making this Court learn it and repeat much of it.

Cisco fails to offer any justification for its declaratory suits that comports with the purpose of the Declaratory Judgment Act. Cisco hasn't rebutted the "sound reasons" to decline jurisdiction detailed in Ramot's Motion. *See* Brief at 4-8. Cisco's only response to Ramot's arguments about lack of prejudice is to claim it needn't show prejudice. *Id.* at 8-9; Opp. at 6 fn. 5. There is no good reason for this Court to preside over a declaratory suit here—and plenty of sound reasons not to.

And the reasons to have picked Delaware that Cisco offers in its opposition just don't fit the facts. Cisco's alleged interest in getting a case on file—if it can be believed in view of the

stays it has sought in both Texas and Delaware—could have waited until daytime if Cisco wasn't worried about being first.  The acknowledged strong expertise in patent cases that this district shares with the Eastern District of Texas, as well as Cisco's incorporation in Delaware, would still be there when the sun came up.

On the transfer factors, Cisco offers only its forum preference for Delaware—spending the rest of its argument in a failed attempt to subtract weight from Ramot's offsetting forum preference, its party convenience, and its practical judicial efficiency arguments.  Opp. at 20.  But those efforts are for naught.  Ramot's forum preference is weighed according to its actual reasons, not the facts of another case as Cisco suggests.  *See* Opp. at 16; *McRo, Inc. v. Activision Blizzard, Inc.*, C.A. No. 12-1508-LPS-CJB, 2013 WL 6571618, at *4 (D. Del. Dec. 13, 2013) ("whether the defendant can articulate rational, legitimate reasons to support that preference").  The balance of the factors, that are not agreed to be neutral, is strongly in favor of transfer of Ramot's counterclaims against Cisco to Texas, and dismissal of Cisco and Acacia's declaratory claims.

## II.     THE COURT SHOULD DECLINE DJ JURISDICTION

Cisco admits and agrees that this Court can decline to hear the declaratory claims for any "sound reason."  Opp. at 6; Brief at 4-5.  As detailed in Ramot's Motion, both this Court's discretion to decline declaratory jurisdiction, and the exceptions to the first-to-file rule, exist to serve practical efficiency concerns.  *See, e.g.*, Brief at 2, 4-5, 9-12.  The Supreme Court has emphasized a pragmatic approach, and reasons involving "considerations of practicality and wise judicial administration."  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-88 (1995); *see also Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937-38 (Fed. Cir. 1993) ("considerations of judicial and litigant economy, and the just and effective disposition of disputes"); *Woodbolt Distribution, LLC v. Natural Alternatives Intern., Inc.*, No. 11–1266 GMS, 2013 WL 247041 at *1 (D. Del. Jan. 23, 2013) ("whether [the] investment of time and resources will be worthwhile").

### A. Judicial familiarity and efficiency are paramount considerations.

Ramot's Motion cites these and numerous other cases—emphasizing that the Court's purpose in deciding motions such as this should be, *e.g.*, discerning "the convenience and suitability of competing forums." *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 904-05 (Fed. Cir. 2008). Then, the dispute can be directed to the "forum in which all interests are best served." *Genentech*, 998 F.2d at 937-38. Here that forum is the Eastern District of Texas, for all the reasons given in Ramot's Motion and herein.

Cisco does not dispute that judicial economy is an important consideration. Indeed, even a case Cisco relies on states that it can be the dominant factor in some circumstances. *In re Google*, No. 2017-107, 2017 WL 977038 at *2 (Fed. Cir. 2017) ("That is not to say that judicial economy can never dominate the court's transfer analysis. As we have previously observed, it can play a significant role."); *see also In re Aliphcom*, 449 Fed. Appx. 33, 35 (Fed. Cir. 2011) (approving of a transfer based largely on the judicial economy of having the same judge handle co-pending litigation). At best, Cisco offers only a couple of cases where judicial economy didn't quite tip the balance enough. *See* Opp. at 13-14.

Transfer motions are decided on facts, and so the particular outcome of the fact-specific weighing in Cisco's opposition cases is easily distinguished and is not dispositive here. For example, in *Roku, Inc. v. AlmondNet, Inc.*, C.A. No. 21-1035-MN, 2021 WL 5299247 at *4-5 (D. Del. Nov. 15, 2021), the court thought the suit could be legitimately within the purpose of the Declaratory Judgment Act, and there was no prior pending case that had gone nearly to trial. Similarly, in *Shure*, 2020 WL 3250176 at *11, the court said that familiarity made the balance close, and that it would have granted the Motion if "untoward forum shopping was what was motivating the instant case filing." *See id.*:

> So what this comes down to is whether the impact of the "practical considerations"

factor (i.e., the Northern District of Illinois' familiarity with two related cases) is enough to warrant transfer here.

Judge Gilstrap presided over the 2019 Texas Action to within six weeks of trial, and will do so again when the stay is lifted.  The continuation patents at issue here and in the 2022 Texas Action indisputably come from the same specification as those asserted in the prior case, have some of the same claim elements that Judge Gilstrap construed, and claim inventions related to the same accused technologies.  *See, e.g.*, *Ramot at Tel Aviv University Ltd. v. Cisco Systems, Inc.*, C.A. No. 19-cv-225-JRG, D.I. 83 at 9-19 (E.D. Tex. May 15, 2020) (construing, *inter alia*, digital "mapping" and "converting").

In opposition, Cisco fails to undermine the substance of the strong judicial economy arguments presented by Ramot here.  None of Cisco's purported reasons to discount the benefits of continuing to proceed in Texas hold water here.  *See* Opp. at 14, 18-20.  Cisco's opposition presents a misleadingly incomplete and speculatory picture—one that a court with experience with these patents and litigation histories would immediately see through, as explained below.  And to the extent Cisco does identify anything new about these cases vis a vis the 2019 Texas Action, judicial economy still favors the Texas Court, which has more background experience with this patent family on which to draw to address those new aspects.

For example, Cisco makes the vague assertion that claim amendments in the *ex parte* reexaminations of ancestor patents might somehow erase the judicial economy benefit of having construed and presided over litigation about those reexamined patents. (Opp. at 14, 18-19).  ***The asserted patents here are not in reexamination***.  And what Cisco does not say—because it flips the argument on its head—is that the amendments made during reexamination of the ancestor patents have involved inserting one of Judge Gilstrap's claim constructions into the claims.  Having construed claims in this patent family will be of use to the Texas Court when the patents

in the 2019 Texas Action come out of reexamination.

Cisco's suggestion that there are numerous claim terms that will need to be construed (Opp. at 14, fn. 6, 19) flies in the face of what happened last time—where only a few important terms were argued—and what Cisco said about the (lack of) need for construction in its *inter partes* review petitions on these continuation patents. *See, e.g.*, IPR2022-01283, Paper 2 at 10 (P.T.A.B. July 20, 2022) ("this Petition analyzes the claims consistent with their ordinary and customary meaning"). And again, even if Cisco were correct about the need to construe more terms, this would be less work for the Texas Court that has already construed similar claims with similar or overlapping language.

Finally, Cisco's unsupported speculation that the infringement and damages case would be different without Acacia as a party (Opp. at 19) ignores the fact that Acacia was already in the prior case as a supplier and third-party subpoena respondent. *See, e.g.*, Brief at 9; *Ramot at Tel Aviv University Ltd. v. Cisco Systems, Inc.*, C.A. No. 22-cv-168-JRG, D.I. 25 at 5 (E.D. Tex. Aug. 8, 2022). Acacia is not a necessary party—in Texas or here—for all of the reasons Ramot has demonstrated in response to Cisco's Motion to that effect in Texas. *Id.*[1]

Judicial familiarity is indisputably a key factor—central to both this Court's discretion to decline declaratory jurisdiction and to find exception to the first-filed rule. *Commc'ns Test Design, Inc. v. Contec, LLC*, 952 F.3d 1356, 1362-63 (Fed. Cir. 2020) ("The 'first-to-file' rule is a doctrine of federal comity, intended to avoid conflicting decisions and promote judicial efficiency"). On these facts, judicial economy strongly supports the dismissal and transfer that Ramot seeks.

---

[1] Cisco moved to dismiss in Texas based on alleged failure to join, despite clear law holding to the contrary. *See Ramot at Tel Aviv University Ltd. v. Cisco Systems, Inc.*, C.A. No. 22-cv-168-JRG, D.I. 25, 29 (E.D. Tex.); *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990) ("It has long been the rule that it is not necessary to join all joint tortfeasors to be named as defendants in a single lawsuit."). That motion was mooted by a First Amended Complaint and has since been refiled, with Ramot's opposition due shortly.

### III. CISCO PRESENTS NO VALID REASON TO LITIGATE IN DELAWARE

#### A. These suits were filed in anticipation of Ramot's choice to file elsewhere

As explained in Ramot's Motion and further herein, the facts and procedural history of the broader dispute, leading up to the midnight filing of these declaratory judgment cases, strongly support the conclusion that Cisco filed in anticipation of Ramot filing in Texas. The 12:01 a.m. timing of the filing itself, in the middle of a protracted dispute between the parties that had been centered elsewhere, supports no other conclusion.

The question of whether a filing was done in pre-emptory anticipation is evaluated on the facts of each case—there is no bad faith requirement or particular fact pattern (or trickery) that must be shown. *See, e.g.*, *Commc'ns Test Design*, 952 F.3d at 1362-64 (finding that "regardless of [filing party's] motive or intent," no abuse of discretion to consider anticipatory nature of suit as revealed from communications and conduct); Brief at 4-8. Cisco attempts to confuse the issue by treating the particular facts of other cases as if they present some "threshold standard" that must be met by similar facts here. *See* Opp. at 8-10. This conflates particularized evidence with the conclusion evidenced. The question here is not whether Cisco "lulled" Ramot, or received specific indications, but rather whether Cisco filed for a pre-emptive, anticipatory purpose that doesn't warrant deference under the first-to-file rule and the cases applying it. Cisco never answers the facts that demonstrate that anticipatory forum selection purpose in *this* case.

The facts and circumstances also support the conclusion that Cisco chose this forum for an anticipated longer time to trial and in expectation of more favorable results regarding stays. Indeed, Cisco has publicly argued its preferred policy of always first litigating validity through post-grant PTO proceedings, while complaining about certain Texas venues. *See, e.g.*, *In re Cisco Systems, Inc.*, No. 20-148, D.I. 2 (Cisco's Petition for Writ of Mandamus) (Fed. Cir. Aug. 27, 2020) at 38:

>And certain venues popular with patent plaintiffs (PAEs in particular) are in a race to beat the Board. These venues "quickly push cases from filing to trial," set early dates for *Markman* hearings and discovery, and "typically deny motions to stay pending PTAB proceedings."

Ramot is not unfairly speculating or "posturing" about Cisco's motivations here—or as a company frequently accused of patent infringement. *See* Opp. at 11-12. Cisco has explained those motives to the world, and they have played out across the more than 20 proceedings related to Ramot's enforcement of its patents against Cisco here. Cisco's motives are not "misconduct" and Ramot never called them that. Opp. at 12. But as venue selection and litigation strategy, Cisco's motives don't deserve deference in a first-to-file analysis. In fact, they provide compelling reasons not to move this ongoing litigation away from the Court most familiar with it. *See* Brief at 7.

Attempting to avoid trial in the 2019 Texas Action, Cisco filed three stay motions, three *inter partes* review petitions, four appellate proceedings, and six *ex parte* reexaminations. When Ramot sued Acacia here, Cisco and Acacia immediately filed another *ex parte* reexamination and then moved to stay, angrily accusing Ramot of "gamesmanship" for allegedly attempting "an end-run around the stay in Texas." *Ramot at Tel Aviv University, Ltd. v. Acacia Communications, Inc.*, 21-cv-00295-GBW, D.I. 16 at 2 (D. Del. July 16, 2021).[2]

It is not difficult to discern from all of this Cisco's strategy toward district court trials, the Eastern District of Texas in particular,[3] and serial invalidity challenges in the Patent Office.

---

[2] Cisco complains about allegations of "forum shopping" in its opposition (Opp. at 11), but has been more than willing to make that sort of allegation itself—about Ramot or those who own and enforce patents in general. *See, e.g.*, *Cisco Systems, Inc. v. Ramot at Tel Aviv University, Ltd.*, Nos. 20-2047, 20-2049, D.I. 30 (Cisco's Reply Regarding Order to Show Cause) at 13 (Fed. Cir. Oct. 30, 2020) ("encourages forum- and judge-shopping and other gamesmanship"); *In re Cisco Systems, Inc.*, No. 20-148, D.I. 2 at 38 ("exacerbates the already serious problem of forum-shopping"), 39-40 ("gamesmanship by patent owners").

[3] Cisco is indisputably subject to venue in the Eastern District of Texas, but moves to transfer from there whenever possible, having done so at least nine times in recent memory—although

Indeed, when Cisco appealed from the non-appealable discretionary denial of its first round of *inter partes* reviews here, the Federal Circuit responded with an order to show cause, summary dismissals, and a comment on Cisco's preference for administrative challenge over trial. *In re Cisco Systems, Inc.*, 834 Fed. Appx. 571, 574 (Fed. Cir. 2020) ("While Cisco prefers to raise those arguments before the Board, it has no clear and indisputable right to do so.").

In opposition to Ramot's Motion, Cisco ignores the fact that it complained to the Federal Circuit *in proceedings related to this litigation* that the Eastern District of Texas moves too fast and "typically den[ies] motions to stay pending PTAB proceedings," pointing to its third-time's-the-charm stay ruling in the 2019 Texas Action. Opp. at 12. But Cisco doesn't mention how Judge Gilstrap has described that outlier ruling when it was subsequently cited back to him by other accused infringers seeking a stay. *See, e.g.*, *Longhorn HD LLC v. NetScout Systems, Inc.*, C.A. No. 2:20-cv-00349-JRG, 2022 WL 71652 at *3 (E.D. Tex. Jan. 6, 2022):

> Specifically, both Ramot and AGIS were decided during the early stages of an unprecedented global pandemic when the Court had suspended all jury trials and other in-person proceedings. … the Court does not envision a blanket cancellation of all trials for a period of several months as in Ramot … .

Judge Gilstrap went on to point out that: "Notwithstanding its prior decisions, including Ramot and AGIS, the Court has not adopted a bright-line rule that a stay will be granted because a single examiner at the PTO has initially rejected the claims at issue in an EPR." *Id.*

---

usually not to Delaware. *See Uniloc USA, Inc. et al v. Cisco Systems, Inc.*, 6:15-cv-01175-JRG, D.I. 28 (seeking transfer to W.D. Wa.); *Uniloc 2017 LLC v. Cisco Systems, Inc.*, 2:18-cv-00505-JRG, D.I. 37 (seeking transfer to S.D.N.Y.); *Dexon Computer, Inc. v. Cisco Systems, Inc.*, 5:22-cv-00053-RWS-JBB, D.I. 21 (seeking transfer to N.D. Cal.); *Monarch Networking Solutions LLC v. Cisco Systems, Inc. et al.*, 2:20-cv-00015-JRG, D.I. 77 (seeking transfer to N.D. Cal.); *SSL Services, LLC vs. Cisco Systems, Inc.*, 2:15-cv-00433-JRG-RSP, D.I. 23 (seeking transfer to D. Mass.); *Proven Networks, LLC v. Cisco Systems, Inc.*, 2:20-cv-00074-JRG, D.I. 29 (seeking transfer to N.D. Cal.); *BillJCo, LLC v. Cisco Systems, Inc.*, 2:21-cv-00181-JRG, D.I. 36 (seeking transfer to N.D. Cal.); *Oyster Optics, LLC v. Cisco Systems, Inc. et al.*, 2:16-cv-01301-JRG, D.I. No. 28 (seeking transfer to N.D. Cal.); *Ramot at Tel Aviv University Ltd. v. Cisco Systems, Inc.*, 2:22-cv-00168-JRG, D.I. 13 (seeking transfer to D. Del.).

Ramot is not trying, and would not presume, to predict how this Court or Judge Gilstrap might respond to a stay request once venue is settled in these cases. But the stay result Cisco obtained six weeks before trial in the 2019 Texas Action has been disclaimed as specific to its particular history by the very Court that ordered it. Nothing about that result undermines Cisco's publicly stated preference to litigate only in the Patent Office and in courts it thinks will wait for that. And here, nothing about that result undermines the conclusion, supported by the evidence of Cisco's statements and conduct, that it filed at 12:01 a.m. on the day of issue to preemptively select this forum—in anticipation of, and avoidance of, Ramot filing in Texas.

Cisco's undeniable anticipatory forum selection purpose here is a compelling reason to grant Ramot's request to dismiss or transfer. *See, e.g.*, Brief at 7, 10; *Shure*, 2020 WL 3250176 at *11 ("If the Court could have clearly discerned that some sort of untoward forum shopping was what was motivating the instant case filing, it would have granted the Motion.").

## IV. CIRCUMSTANCES WARRANT TRANSFER TO TEXAS

Ramot's Motion explained how a 1404(a) analysis, applying the *Jumara* factors, strongly favors venue in Texas. *See* Brief at 9-14. Cisco and Ramot agree that private factors 3, 4, and 6, and public factors 7, 10, 11, and 12 are neutral or not applicable. *Id.*; Opp. at 17-18.

Cisco's alleged reasons to be in Delaware (credited as rational for the purposes of argument) and Ramot's reasons to prefer Texas—shorter time to trial and judicial familiarity/economy, *e.g.*, not starting over in a new court—at best cancel each other out. Opp. at 15-16; Brief at 13-14. In the *Shure* case that Cisco repeatedly relies on, Judge Andrews agreed that: "The parties' respective forum preferences cancel each other out … ." C.A. No. 19-1343-RJA-CJB, 2020 WL 3250176 at *11. In opposition, Cisco goes into tangents concerning facts relevant to a completely different case, and its view that Acacia would be needed in Texas. Opp at 16-17. But these have nothing to do with Ramot's actual reasons for preferring to continue to

litigate in Texas, and even Cisco's cited case says the Court should look at Ramot's actual reasons. *See McRo*, 2013 WL 6571618, at *4 ("whether the defendant can articulate rational, legitimate reasons to support that preference"). A likely shorter time to trial, before a judge with experience presiding over related patents and disputes, are rational and legitimate reasons to prefer Texas here.

In opposition, Cisco wrongly suggests that factor 5 (convenience of the parties) is neutral absent a showing of undue hardship. Opp. at 18. Cisco does not dispute the facts supporting Ramot's conclusion that trial in Texas is more convenient for both parties. *See* Brief at 14; Woodbolt, No. 11–1266 GMS, 2013 WL 247041 at *3 ("The court first notes that Texas likely represents a more convenient forum for both parties."). This factor supports transfer.

With respect to factor 9 (court congestion), this Court just entered a scheduling order in these cases that runs through dispositive motion briefing concluding May 3, 2024, but does not set a trial date thereafter. *See, e.g.*, D.I. 21 (C.A. No. 22-674). Judge Gilstrap will hold a scheduling conference in the 2022 Texas Action on Monday, September 26, 2022, and based on recent such conferences is expected to set a trial date in late 2023 or early 2024. This factor supports transfer.

And importantly, as discussed at length above and in Ramot's opening Brief, the practical considerations surrounding judicial familiarity and economy from continuing in Texas—which fall under factor 8—strongly support transfer here. The balance of the *Jumara* factors strongly favors venue in Texas, providing additional compelling circumstances justifying an exception to the first-to-file rule. *See, e.g.*, *In re Nitro Fluids*, LLC, 978 F.3d 1308, 1311 (Fed. Cir. 2020).

## V.   CONCLUSION

For all of these reasons and those detailed in Ramot's opening Brief, Ramot respectfully requests that the Court dismiss the claims for declaratory judgment. Ramot also requests that the Court transfer its counterclaims against Cisco to be consolidated with the 2022 Texas Action.

|  |  |
|---|---|
| | ASHBY & GEDDES |
| | */s/ Andrew C. Mayo* |
| *Of Counsel:* | John G. Day (#2403)<br>Andrew C. Mayo (#5207)<br>500 Delaware Avenue, 8th Floor<br>P.O. Box 1150<br>Wilmington, DE  19899<br>(302) 654-1888<br>jday@ashbygeddes.com<br>amayo@ashbygeddes.com |
| Denise M. De Mory<br>Corey Johanningmeier<br>BUNSOW DE MORY LLP<br>701 El Camino Real<br>Redwood City, CA  94063<br>(650) 351-7248 | |
| | *Attorneys for Plaintiff* |
| Dated:  September 23, 2022 | |