IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CISCO SYSTEMS, INC. and ACACIA COMMUNICATIONS, INC., <br><br> Plaintiffs and Counterclaim Defendants, <br><br> v. <br><br> RAMOT AT TEL AVIV UNIVERSITY LTD., <br><br> Defendant and Counterclaimant. | C.A. No. 21-1365-GBW <br><br> **JURY TRIAL DEMANDED** |
| CISCO SYSTEMS, INC. and ACACIA COMMUNICATIONS, INC., <br><br> Plaintiffs and Counterclaim Defendants, <br><br> v. <br><br> RAMOT AT TEL AVIV UNIVERSITY LTD., <br><br> Defendant and Counterclaimant. | C.A. No. 22-674-GBW <br><br> **JURY TRIAL DEMANDED** |

**STIPULATION AND [PROPOSED] ORDER GOVERNING THE DISCOVERY OF ELECTRONICALLY STORED INFORMATION ("ESI")**

Declaratory-judgment plaintiffs Cisco Systems, Inc. and Acacia Communications, Inc. (collectively, "Cisco") and declaratory-judgment defendant Ramot at Tel Aviv University Ltd. ("Ramot") (together, "the Parties") hereby stipulate to the following concerning the production of documents and other electronically-stored information ("ESI") in the above-captioned action:

1. **General Provisions**

    **(a)** **Cooperation**.  Parties are expected to reach agreements cooperatively on how to conduct discovery under Fed. R. Civ. P. 26-36.  In the event that the parties are unable to agree on

1

the parameters and/or timing of discovery, the following default standards shall apply until further order of the Court or the parties reach agreement.

**(b)** **Proportionality**. Parties are expected to use reasonable, good faith and proportional efforts to preserve, identify and produce relevant information.[1] This includes identifying appropriate limits to discovery, including limits on Custodians, identification of relevant subject matter, time periods for discovery and other parameters to limit and guide preservation and discovery issues.

**(c)** **Preservation of Discoverable Information**. A party has a common law obligation to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody or control.

**(i)** Absent a showing of good cause by the requesting party, the parties shall not be required to modify, on a going-forward basis, the procedures used by them in the ordinary course of business to back up and archive data; provided, however, that the parties shall preserve the non-duplicative discoverable information currently in their possession, custody or control.

**(ii)** Absent a showing of good cause by the requesting party, the categories of ESI identified in Schedule A attached hereto need not be preserved.

**(d)** **Privilege**.

**(i)** The parties are to confer on the nature and scope of privilege logs for the case, including whether categories of information may be excluded from any logging requirements and whether alternatives to document-by-document logs can be exchanged.

---

[1] Information can originate in any form, including ESI and paper, and is not limited to information created or stored electronically.

      **(ii)**    The parties agree that privilege logs will not be required in this case, absent agreement made pursuant to section 1(d)(i) or a showing of good cause by the requesting party.

      **(iii)**    With respect to information generated after the filing of the original complaint in C.A. No. 14-1018-JRG (E.D. Tex.), parties are not required to include any such information in privilege logs absent agreement made pursuant to section 1(d)(i) or a showing of good cause by the requesting party.

      **(iv)**    Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

      **(v)**    Parties shall confer on an appropriate non-waiver order under Fed. R. Evid. 502. Until a non-waiver order is entered, information that contains privileged matter or attorney work product shall be immediately returned if such information appears on its face to have been inadvertently produced or if notice is provided within 30 days of inadvertent production.

      **(vi)**    If the producing party elects to use search terms to locate potentially responsive ESI, it shall not ordinarily be required to disclose the search terms to the receiving party. The parties will cooperate in good faith and will disclose whether search terms were employed, if asked in the context of a related discovery dispute. This disclosure is not required for document productions made in R*amot at Tel Aviv Univ., Ltd. v. Cisco Systems, Inc.*, Case. No. 2:19-cv-00225 (E.D. Tex.). A party may ask the court to order disclosure of search terms on good cause shown. If a party discloses such search terms, whether voluntarily, in response to court order, or for any other reason, such disclosure will not result in waiver of any subject matter privilege.

**2.** **Initial Discovery Conference**.

**(a)** **Timing**. The parties have discussed the parameters of their anticipated discovery at a discovery conference (the "Initial Discovery Conference") pursuant to Fed. R. Civ. P. 26(f) on June 1, 2022 and August 9, 2022.

**(b)** **Content**. The parties discussed the following:

**(i)** The issues, claims and defenses asserted in the case that define the scope of discovery.

**(ii)** The likely sources of potentially relevant information (i.e., the "discoverable information"), including witnesses, custodians and other data sources (e.g., paper files, email, databases, servers, etc.).

**(iii)** The handling of any privileged information

**(iv)** The matters listed in the Case Management Checklist at C.A. No. 22-cv-00674-GBW, D.I. 20-2.

**3.** **Initial Disclosures**. The parties have made their initial disclosures pursuant to Rule 26 of the Federal Rules of Civil Procedure in accordance with the deadline set forth in the Scheduling Order.

**4.** **Notice**. In conjunction with the service of their respective Rule 26 initial disclosures, and to the extent they are aware, the parties have identified any issues relating to:

**(a)** Any ESI (by type, date, custodian, electronic system or other criteria) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(C)(i).

**(b)** Third-party discovery under Fed. R. Civ. P. 45 and otherwise, including the timing and sequencing of such discovery.

  **(c)** Production of information subject to privacy protections, including information that may need to be produced from outside of the United States and subject to foreign laws.

  Lack of proper notice of such issues may result in a party losing the ability to pursue or to protect such information.

**5.** **Initial Discovery in Patent Litigation**. Initial discovery will be governed by the Scheduling Order entered in this action. Absent a showing of good cause, follow-up discovery shall be limited to a term of 6 years before the filing of the complaint, except that discovery related to asserted prior art, secondary considerations of obviousness, knowledge of or discussions concerning the ancestor patents of any patent-in-suit, design and development and operation of any products offered or sold within 6 years before the filing of the complaint, or the conception and reduction to practice of the inventions claimed in any patent-in-suit, or the prosecution history of any patent-in-suit, shall not be so limited.

**6.** **Format.** ESI and non-ESI shall be produced to the requesting party in the formats described in Schedule B. If particular documents warrant a different format, the parties will cooperate to arrange for a mutually acceptable production of such documents.

**7.** **Source code.** For the avoidance of doubt, this Stipulation does not govern the production or inspection of source code in any way.

**8.** **Requests for higher-resolution or color documents.** The parties agree to respond in good-faith to reasonable and specific requests for the production of higher resolution or color images.

**9.** **Foreign language documents.** All documents shall be produced in their original language. In addition, if the producing party has a certified translation of a foreign-language document that is being produced (whether or not the translation is prepared for purposes of litigation), the

producing party shall produce both the original document and the certified translation. Nothing in this agreement shall require a producing party to prepare a translation, certified or otherwise, for foreign language documents that are produced in discovery.

10.    **Reproduction of third-party ESI.** Notwithstanding anything to the contrary herein, any party that produces documents produced to it by a third party, such as in response to a subpoena, may produce such documents in the format in which they were produced by the third party.

11.    **Modification.** Unless specifically stated otherwise, the parties may jointly agree to modify this Stipulation without the Court's leave. Any such modification shall be in a writing signed by the parties or their respective counsel. If the parties cannot resolve their disagreements regarding a proposed modification, the parties reserve the right to seek relief from the Court.

12.    **Federal or local rules.** Except as expressly stated, nothing in this Order affects the parties' discovery obligations under the Federal or Local Rules.

## SCHEDULE A

1. Systems no longer in use that cannot be accessed.

2. Information from handsets, mobile devices, personal digital assistants, and tablets.

3. Backup systems and/or tapes or hard drives no longer in use.

4. Automatically saved versions of documents and emails.

5. Mobile device activity logs.

6. Information created or copied during the routine, good-faith performance of processes for the deployment, maintenance, retirement, and disposition of computer equipment.

7. Deleted, slack, fragmented , or other data only accessible by forensics although full forensic images may be provided as warranted.

8. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

9. On-line access data such as temporary internet files, history, cache, cookies, and the like.

10. Data in metadata fields that are frequently updated automatically, such as last-opened dates.

11. Voice messages, except to the extent transcribed and saved as business records.

12. Instant messages and chats.

13. Server, system or network logs.

14. Dynamic fields in databases or log files not stored or retained in the usual course of business.

15. Data remaining from systems no longer in use that is unintelligible on the systems in use.

16. Other forms of ESI whose preservation requires unreasonable, disproportionate, and/or non-routine, affirmative measures that are not utilized in the ordinary course of business.

## SCHEDULE B
## PRODUCTION FORMAT AND METADATA

1. **Production Components.** Productions shall include native files or single page TIFFs, Text Files, an ASCII delimited metadata file (.txt, .dat, or .csv) and an image load file (if applicable) that can be loaded into commercially acceptable production software (e.g., Concordance). If a particular document warrants a different production format, the parties will cooperate in good faith to arrange for a mutually acceptable production format.

2. **Metadata Fields and Metadata File.** The parties are only obligated to provide the following metadata for all ESI produced, to the extent such metadata exists. The parties are not obligated to populate manually any of the fields below if such fields cannot be extracted from a document, with the exception of the following: BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, and DOCUMENTCUSTODIAN. The metadata file shall be delimited according to the following characters:

   - Delimiter = ¶ (ASCII:020)
   - Text-Qualifier = þ (ASCII:254)
   - New Line = ® (ASCII:174)
   - Multi-value delimiter - ; (ASCII Code 059)

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| DOCUMENTCUSTODIAN | Individual from whom the documents originated. |
| CONFIDENTIALITY | Confidentiality designation assigned to document |
| FROM | The name and email address of the sender of the email |
| TO | All recipients that were included on the "To" line of the email |
| CC | All recipients that were included on the "CC" line of the email |

| BCC | All recipients that were included on the "BCC" line of the email |
|---|---|
| DATESENT | Date email was sent (format: MM/DD/YYYY) |
| DATECREATED | Date an electronic document was created (format: MM/DD/YYYY) (Edoc or attachment) |
| LASTMODIFIED | Date an electronic document was last modified (format: MM/DD/YYYY) (Edoc or attachment) |
| NATIVEFILEPATH | Native File Link (Native Files only) |
| TEXTFILEPATH | Path to extracted text/OCR file for document |
| HASHVALUE | MD5 hash value of document |

3. **TIFFs.** Documents that exist only in hard copy format shall be scanned and produced in single page TIFF or multi-page PDF format. Unless excepted below, documents that contain redactions shall be converted and produced as TIFFs with the redactions applied. Unless excepted below, single page Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Each TIFF image shall be named according to a unique corresponding Bates number associated with the document. Each image shall be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). TIFFs shall show all text and images that would be visible to a user of the original documents.

4. **Text Files.** A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF filename. A commercially acceptable technology for optical character recognition "OCR" shall be used for all scanned, hard copy documents. When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents and OCR text files will be substituted instead of extracted text files for redacted documents. All documents shall be produced with a link in the TextLink field.

5. **Image Load Files / Data Load Files.** Image Load Files shall contain the following comma-delimited fields: BEGBATES, VOLUME, IMAGE FILE PATH, DOCUMENT BREAK, PAGE COUNT. Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. All images

must be assigned a unique Bates number that is sequential within a given document and across the production sets. The Bates Numbers in the image load file must match the corresponding documents' beginning Bates numbers in the data load file. The total number of documents in a production should match the total number of records in the data load file. Load files shall not vary in format or structure within a production, or from one production to another.

6. **Bates Numbering.** All images must be assigned a unique Bates number that is sequential within a given document and across the production sets.

7. **Confidentiality Designation.** Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order in this matter. Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file.

8. **Redaction Of Information.** If documents are produced containing redacted information, an electronic copy of the original, unredacted data shall be securely preserved in such a manner so as to preserve without modification, alteration or addition the content of such data including any metadata therein.

9. **Native File Production.** Native files shall be designated by including a unique production number and appropriate confidentiality designation in the native document's file name. Documents produced in native format shall ordinarily be produced with the accompanying text and metadata files as set forth above. TIFF images need not be produced unless the files have been redacted, in which instance such files shall be produced in TIFF with OCR Text Files. Any native files that are produced shall be produced with a link in the NativeLink field, along with extracted text and applicable metadata fields set forth in Schedule B. To the extent that a party intends to use a document produced in native format for depositions, pleadings, trial or for any other purpose where the identification of individual pages is necessary, that party may sequentially number the individual pages of the document and include the appropriate confidentiality designation. For example, with respect to information produced in native format and marked with the Bates number "227543," a party wishing to use that document may number the individual pages as "227543.1; 227543.2; . . . ."

10. **Proprietary Files.** To the extent a response to discovery requires production of ESI accessible only through proprietary software, the parties should continue to preserve each version of such information. The parties shall meet and confer to finalize the appropriate production format.

11. **Production Media.** Documents shall be encrypted and produced through electronic means, such as secure file sharing methods (*e.g.* FTP), or on CD, DVD, flash drive or external hard drive ("Production Media"). Each piece of Production Media shall identify a production number corresponding to the production volume (*e.g.* "VOL001"). Each piece of Production Media shall also identify: (1) the producing party's name; (2) the production date; (3) the Bates Number range of the materials contained on the Production Media. Nothing in this Order will preclude or impair any and all protections provided the parties by any Protective Order agreed and entered into by the parties. Any data produced by the producing party must be protected in transit, in use, and at rest by all in receipt of such data. Parties will use best efforts to avoid the unnecessary copying or transmittal of produced documents. Any copies made of produced data must be kept on media or hardware employing whole-disk or folder level encryption or otherwise secured on information systems and networks in a manner consistent with the best practices for data protection. If questions arise, Parties will meet and confer to ensure security concerns are addressed prior to the exchange of any documents.

12. **Databases and Other Structured Data.** Notwithstanding the provisions of Paragraph 10 above, the parties shall meet and confer regarding the production format and scope of data contained in databases in order to ensure that any information produced is reasonably usable by the receiving party and that its production does not impose an undue burden on the producing party, by, for example, requiring development of reports and/or software code to extract the information. To avoid doubt, information will be considered reasonably usable when produced in CSV format, tab-delimited text format, Microsoft Excel format, or Microsoft Access format. To the extent a party is constrained from producing responsive ESI because of a third party license or because software necessary to view the ESI is hardware-dependent, the parties shall meet and confer to reach an agreement on alternative methods to enable the requesting party to view the ESI.

| | |
|---|---|
| MORRIS, NICHOLS, ARSHT & TUNNELL LLP | ASHBY & GEDDES |
| /s/ *Jennifer Ying* | /s/ *Andrew C. Mayo* |
| Jack B. Blumenfeld (#1014)<br>Jennifer Ying (#5550)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899<br>(302) 658-9200<br>jblumenfeld@morrisnichols.com<br>jying@morrisnichols.com | John G. Day (#2403)<br>Andrew C. Mayo (#5207)<br>500 Delaware Avenue, 8th Floor<br>P.O. Box 1150<br>Wilmington, DE 19899<br>(302) 654-1888<br>jday@ashbygeddes.com<br>amayo@ashbygeddes.com |
| *Attorneys for Cisco Systems, Inc. and Acacia Communications, Inc.* | *Attorneys for Ramot at Tel Aviv University Ltd.* |

September 28, 2022


SO ORDERED, this _____ day of _____, 2022.


_____
                                      J.