IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CISCO SYSTEMS, Inc. and ACACIA COMMUNICATIONS, Inc., <br><br> Plaintiffs, <br><br> v. <br><br> RAMOT AT TEL AVIV UNIVERSITY, Ltd., <br><br> Defendant. | Civil Action No. 21-1365-GBW <br><br><br> Civil Action No. 22-0674-GBW |

## MEMORANDUM ORDER

Declaratory Judgment Plaintiffs Cisco Systems, Inc. ("Cisco") and Acacia Communications, Inc. ("Acacia") brought declaratory judgment actions against Defendant Ramot at Tel Aviv University, Ltd. ("Ramot") on September 28, 2021 and May 24, 2022 for noninfringement of U.S. Patent Nos. 11,133,872 (the "'872 patent") and 11,342,998 (the "'998 patent"), respectively. D.I. 1;[1] C.A. No. 22-674-GBW, D.I. 1. Ramot filed counterclaims, alleging Cisco and Acacia infringe the same patents. *See* D.I. 8 ¶ 79; No. 22-674, D.I. 10 ¶ 97. Pending now before the Court are Ramot's identical Motions to Dismiss and to Transfer (D.I. 19; No. 22-674, D.I. 15, collectively, the "Motion"). The Court has considered the parties' briefing, D.I. 20; D.I. 28; D.I. 35; D.I. 45; D.I. 46, and held oral argument on November 2, 2022, D.I. 49. For the reasons explained below, the Court denies the Motion.

## I.  BACKGROUND

This case arises from a large and complex patent family. Ramot owns by assignment the '872 and '998 patents, as well as U.S. Patent Nos. 10,270,535 (the "'535 patent") and 10,033,465 (the "'465 patent"). All four patents are entitled "Linearized Optical Digital-to-Analog

---

[1] All docket entries are citations to Civil Docket No. 21-1365, unless otherwise indicated.

1

Modulator" and relate to "converting digital data into a modulated optical signal . . . ." *See* D.I. 8-1; No. 22-674, D.I. 10-1; C.A. 19-225-JRG, D.I. 1-1 & D.I. 1-2. "Ramot is the Business Engagement Center of Tel Aviv University ('TAU') and acts as the University's liaison to industry. . . . Ramot provides the resources, as well as the business and legal frameworks for inventions made by TAU's faculty, students, and researchers, protecting the discoveries with IP and working jointly with industry and the venture community to bring scientific innovations to the global markets." D.I. 8 ¶ 81. Ramot alleges that "certain of Cisco's and Acacia's various optical networking modules, line cards, and associated circuitry and software" infringe the '872 and '998 patents. D.I. 8 ¶ 79; No. 22-674, D.I. 10 ¶ 98. Cisco and Acacia are Delaware corporations. D.I. 1 ¶¶ 8–9. Cisco acquired Acacia—a Cisco supplier—on March 1, 2021, such that Acacia became Cisco's wholly-owned subsidiary. D.I. 1 ¶ 5; D.I. 11 ¶ 85.

The Court next reviews the parties' litigious relationship. Ramot first sued Cisco in the U.S. District Court for the Eastern District of Texas ("E.D. Texas") on November 5, 2014 ("Case 1"). C.A. No. 14-1018-JRG, D.I. 1. Ramot voluntarily dismissed the case without prejudice on February 24, 2015. No. 14-1018, D.I. 16. Five years later, on June 12, 2019, Ramot sued Cisco in E.D. Texas again, alleging infringement of the '535 patent and the '465 patent ("Case 2"). No. 19-225, D.I. 1. Six weeks before trial, on January 13, 2021, Chief Judge Rodney Gilstrap granted Cisco's motion to stay that case because "[a]ll asserted claims of all Asserted Patents have been rejected in preliminary Office Actions in the [United States Patent and Trademark Office's ("PTO")] *ex parte* reexams." No. 19-225, D.I. 235 at 3. Chief Judge Gilstrap had previously issued a claim construction order in and had otherwise invested substantial time in that case. *See* 19-225, D.I. 83. Next, on February 26, 2021, Ramot sued Acacia, alone, in the District of Delaware for infringement of the same two patents ("Case 3"). *Compare* No. 19-225, D.I. 1 ¶

1 (naming the '535 patent and the '465 patent), *with* C.A. No. 21-295-GBW, D.I. 1 ¶ 2 (naming the same patents). On September 3, 2021, this Court granted Acacia's motion to stay Case 3 pending *ex parte* reexaminations of both patents. No. 21-295, D.I. 23. As of the date this Memorandum Order issued, Case 3 remains stayed. No. 21-295, D.I. 27. Then, on the day Ramot obtained the '872 patent, September 28, 2021, Cisco and Acacia filed a declaratory judgment action against Ramot in this Court alleging noninfringement of the newly-issued '872 patent ("Case 4"). *See* D.I. 1; D.I. 8-1.[2] Ramot later filed counterclaims in Case 4 against Cisco and Acacia for infringement of the same patent. D.I. 8.

The parties' forum shopping machinations—already obvious—then became blatant. Ramot's '998 patent issued on May 24, 2022. No. 22-674, D.I. 10-1. That same day, at 12:01 a.m., Cisco and Acacia brought another declaratory judgment action against Ramot in this Court and alleged that Cisco and Acacia did not infringe the newly-issued '998 patent ("Case 5"). No. 22-674, D.I. 1. Ramot later brought counterclaims for infringement of the same patent against Cisco and Acacia. No. 22-674, D.I. 10. Meanwhile, at 1:23 a.m. on May 24, 2022, 82 minutes after Cisco and Acacia filed their Complaint in this District, Ramot also filed claims alleging infringement of the '998 patent against Cisco, alone, in E.D. Texas ("Case 6"). C.A. No. 22-168-JRG, D.I. 1. Case 6 is before Chief Judge Gilstrap.

Ramot has now moved for dismissal of the declaratory judgment claims against it and requests transfer of Cases 4 and 5 to E.D. Texas, pursuant to 28 U.S.C. § 1404(a). *See* D.I. 19; No. 22-674, D.I. 15. Cisco and Acacia oppose Ramot's Motion, and the parties have filed identical briefing in both cases. *See* D.I. 20, D.I. 28, D.I. 35; No. 22-674, D.I. 16, D.I. 25, D.I. 32. At the

---

[2] Cisco and Acacia filed "before the virtual ink was dry on a new Ramot patent." D.I. 20 at 5; *see, e.g.*, D.I. 1 ¶ 2 ("[A] copy of the '872 patent is not yet available from the [PTO] in downloadable form . . . .").

3

same time, in Case 6, Cisco has asked the E.D. Texas court to transfer Ramot's case to the District of Delaware, since the Delaware case was filed first. No. 22-168, D.I. 13 at 3 (arguing Case 5 was filed 82 minutes before Case 6).

## II.   LEGAL STANDARD

### A.   Declaratory Judgment and the First-to-File Rule

"[A]ny court of the United States . . . *may* declare the rights and other legal relations of any interested party . . . ." 28 U.S.C. § 2201 (emphasis added). "A declaratory action allows a party 'who is reasonably at legal risk because of an unresolved dispute, to obtain judicial resolution of that dispute without having to await the commencement of legal action by the other side.'" *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1345 (Fed. Cir. 2005) (quoting *BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 977 (Fed.Cir.1993)). "[I]t is well settled by a multitude of cases that the granting of a declaratory judgment rests in the sound discretion of the trial court exercised in the public interest." Mary Kay Kane, Charles Allan Wright & Arthur R. Miller, 10B *Federal Practice & Procedure: Civil* § 2759 (4th ed. 2022); *see Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995) ("[A] district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial . . . ." (footnote omitted)).

This Court must apply Federal Circuit case law when it determines whether to dismiss a declaratory judgment action in favor of "a later-filed suit for patent infringement . . . ." *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993), *abrogated on other grounds by Wilton*, 515 U.S. 277; *Lab'y Corp. of Am. Holdings v. Chiron Corp.*, 384 F.3d 1326, 1330 (Fed. Cir. 2004) (same); *Elecs. for Imaging*, 394 F.3d at 1345 (similar). The Federal Circuit has explained that district courts have discretion to dismiss declaratory judgment actions as long as they provide "well-founded reasons" for doing so, such as a "better or more effective" alternative remedy, and "act[] in accordance with the purposes of the Declaratory Judgment Act and the principles of sound

4

judicial administration . . . ." *Mitek Sys., Inc. v. United Servs. Auto. Ass'n*, 34 F.4th 1334, 1347 (Fed. Cir. 2022) (internal quotation marks and citations omitted). "'The considerations affecting transfer to or dismissal in favor of another forum do not change simply because the first-filed action is a declaratory action.'" *Elecs. for Imaging*, 394 F.3d at 1348 (quoting *Genentech*, 998 F.2d at 938).

When a district court decides whether to dismiss a declaratory judgment action, the court should consider "the reasonable apprehension created by a patentee's threats and the looming specter of litigation that results from those threats." *Id.* at 1347. The Court should also consider the following factors: "[1] whether a party intended to preempt another's infringement suit . . . [,] [2] 'the convenience and availability of witnesses, [3] [the] absence of jurisdiction over all necessary or desirable parties, [] [4] the possibility of consolidation with related litigation, [and] [5] considerations relating to the real party in interest.'" *Id.* at 1347–48 (citations omitted).

"The 'first-to-file' rule . . . generally favors pursuing only the first-filed action when multiple lawsuits involving the same claims are filed in different jurisdictions." *Commc'ns Test Design, Inc. v. Contec, LLC*, 952 F.3d 1356, 1362 (Fed. Cir. 2020) (internal quotation marks and citation omitted). The first-filed case must conduct the first-filed-rule assessment. *See Samsung Elecs. Co. v. Netlist, Inc.*, 2022 WL 3027312, at *3 (D. Del. Aug. 1, 2022) (holding that, since the "Delaware case was filed before the Texas Action" the Delaware court should "take the lead"); *see also RPost Holdings, Inc. v. Yesware, Inc.*, 2014 WL 12712410, at *2 (E.D. Tex. Sept. 4, 2014) (Gilstrap, J.). Courts in this District and other districts have dispensed with the first-to-file rule where "forum shopping was the only motive for the filing." *See Genentech*, 998 F.2d at 938.

"When one of two competing suits in a first-to-file analysis is a declaratory judgment action, district courts enjoy a 'double dose' of discretion: discretion to decline to exercise

5

jurisdiction over a declaratory judgment action and discretion when considering and applying the first-to-file rule and its equitable exceptions." *Commc'ns Test Design*, 952 F.3d at 1362.

**B.  Motions to Transfer**

Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). The Federal Circuit applies the law of the regional circuit on a motion to transfer pursuant to 28 U.S.C. § 1404(a). *See In re Apple Inc.*, 979 F.3d 1332, 1336 (Fed. Cir. 2020) (on mandamus review). Courts in the Third Circuit evaluate a motion to transfer under the factors outlined in *Jumara v. State Farm Insurance*, 55 F.3d 873, 879-80 (3d Cir. 1995). *See In re: Howmedica Osteonics Corp*, 867 F.3d 390, 402 (3d Cir. 2017) (citing *Jumara*, 55 F.3d at 879–80). The movant has the burden to establish that the interests favor transfer. *See Papst Licensing GmbH & Co. KG v. Lattice Semiconductor Corp.*, 126 F. Supp. 3d 430, 436 (D. Del. 2015) (quoting *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir.1970)) (citing *Jumara*, 55 F.3d at 879).

The District Court must first decide whether the case could have been brought in the district to which the movant wishes to transfer. *Jumara*, 55 F.3d at 878. If venue would have been proper in that district, the court then weighs whether the public and private interest factors favor transfer, keeping in mind that "'plaintiff's choice of venue should not be lightly disturbed.'" *Id.* at 879 (citations omitted). The private interest factors to consider include:

> [1] plaintiff's forum preference as manifested in the original choice; [2] the defendant's preference; [3] whether the claim arose elsewhere; [4] the convenience of the parties as indicated by their relative physical and financial condition; [5] the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and [6] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

The public interests [] include[]: [7] the enforceability of the judgment; [8] practical

6

considerations that could make the trial easy, expeditious, or inexpensive; [9] the relative administrative difficulty in the two fora resulting from court congestion; [10] the local interest in deciding local controversies at home; [11] the public policies of the fora; and [12] the familiarity of the trial judge with the applicable state law in diversity cases.

*Jumara*, 55 F.3d at 879–80 (citations omitted). "It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice should not be lightly disturbed." *Shutte*, 431 F.2d at 25 (cleaned up); *see Ceradyne, Inc. v. RLI Ins. Co.*, 2021 WL 3145171, at *4 (D. Del. July 26, 2021). While the plaintiff's forum choice remains "the most important factor[,]" other factors will influence the transfer decision. *Express Mobile, Inc. v. Web.com Grp., Inc.*, 2020 WL 3971776, at *2 (D. Del. July 14, 2020). "Thus, . . . when a plaintiff . . . has no connection to Delaware . . . other than its choice to sue here and its Delaware incorporation[,] . . . such a plaintiff's choice . . . will not dominate the balancing to the same extent as it otherwise might." *Id.*

### III.  DISCUSSION

For the reasons stated below, the Court need not consider Cisco's first-filer status as to Case 5; declines to dismiss Cisco's and Acacia's declaratory judgment action; and denies the motion to transfer to E.D. Texas.

#### A.  Declaratory Judgment Action

Ramot argues that "[n]either Cisco nor Acacia would be prejudiced, and no legitimate purpose would be frustrated, by the Court dismissing their declaratory claims here in view of [Case 6]." D.I. 20 at 5. Cisco and Acacia respond that Ramot cannot provide "sound" and "compelling" reasons for dismissal of this suit because their filing of Case 5 in this Court did not constitute an anticipatory suit or forum shopping. D.I. 28 at 5–12. Both parties agree that Case 5 was filed before Case 6 and, thus, Cisco and Acacia are the first filers. D.I. 20 at 2; D.I. 28 at 6. The Court has "discretion when considering and applying the first-to-file rule and its equitable exceptions"

7

and "discretion to decline to exercise jurisdiction over a declaratory judgment action . . . ." *Commc'ns Test Design*, 952 F.3d at 1362. While the Court may and does not consider Cisco's first-filer status as to Case 5, the Court declines to dismiss the declaratory judgment actions.

As an initial matter, Cisco argues that Case 5 is not anticipatory and that, even if it was, the Court lacks sufficient reasons to deviate from the first-to-file rule. D.I. 28 at 8–9. The Court disagrees with Cisco. This Court has explained that "a suit is anticipatory for the purposes of being an exception to the first-to-file rule if the plaintiff in the first-filed action filed suit on receipt of specific, concrete indications that a suit by the defendant was imminent." *Mitek Sys., Inc. v. United Servs. Auto. Ass'n*, 2012 WL 3777423, at *3 (D. Del. Aug. 30, 2012) (cleaned up).[3] This Court has considered the full context of the parties' relationship to determine whether the threat of a lawsuit was imminent, *see Woodbolt Distribution, LLC v. Nat. Alternatives Int'l, Inc.*, 2013 WL 247041, at *4 (D. Del. Jan. 23, 2013) (considering direct threats, failed negotiations, and party

---

[3] This quote traces its roots to a 1998 district court case from the Central District of California that cited a 1994 Northern District of California case that, in turn, applied Ninth Circuit law and cited a 1967 Fifth Circuit decision. *See Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc.*, 179 F.R.D. 264, 271 (C.D. Cal. 1998) (citing *Ward v. Follett Corp.*, 158 F.R.D. 645, 648 (N.D. Cal. 1994), in turn citing *Amerada Petroleum Corp. v. Marshall*, 381 F.2d 661, 663 (5th Cir. 1967) ("That Amerada's petition for declaratory judgment apparently was in anticipation of the New York suit is an equitable consideration which the district court was entitled to take into account.")); *see also Mitek Sys.*, 2012 WL 3777423, at *3 (quoting *Pittsburgh Logistics Sys., Inc. v. C.R. England, Inc.*, 669 F. Supp. 2d 613, 623 (W.D. Pa. 2009), in turn quoting *Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*, 544 F. Supp. 2d 949, 960 (N.D. Cal. 2008), in turn quoting *Guthy-Renker Fitness*, 179 F.R.D. at 271). The cases teach that a letter threatening suit is sufficient to consider a suit anticipatory, but a suit is not anticipatory if the later-filer admits that it did not intend to file litigation imminently. *Compare Amerada Petroleum*, 381 F.2d at 663 ("[T]he filing of the declaratory judgment action in the court below was triggered by the letter stating that Amerada would be sued . . . ."); *Pittsburgh Logistics*, 669 F. Supp. 2d at 623–24 (finding that filing a suit after a threat of litigation "satisfies the definition of an anticipatory suit"), *with Guthy-Renker Fitness*, 179 F.R.D. at 271 (finding insufficient "veiled threats of legal action" when defendant admitted that it did not intend to bring suit). This Court does not read these persuasive authorities to *require* a letter that threatens litigation.

statements), and it has found that infringement accusations, alone, without accompanying "threats of litigation" are insufficient to make a suit anticipatory, *Mitek Sys.*, 2012 WL 3777423, at *3. Here, Ramot had filed two patent infringement lawsuits against Cisco in E.D. Texas in recent years and had filed another infringement suit against Acacia in this District. *See* No. 14-1018; No. 19-225; No. 21-295. The parties also have disputes as to the '535 and '465 patents that are before the PTO. Further, Ramot brought Case 6 against Cisco in E.D. Texas a mere 82 minutes after Cisco and Acacia filed Case 5 here. No. 22-168, D.I. 13 at 3. Ramot, as is obvious, explains that it "did prepare a complaint" to file against Cisco before the issuance of the '998 patent. D.I. 20 at 2. In short, the parties' litigious history as to patents in the '998 patent's family gave Cisco a strong indication that Ramot would file suit, Cisco's efforts to file suit at 12:01 a.m. show that Cisco believed Ramot's suit was imminent, and Ramot's filing 82 minutes later demonstrates that Ramot, indeed, was prepared to litigate quickly. Thus, the Court concludes that Case 5 was anticipatory.

However, the Court may "not rely solely on the anticipatory nature of [plaintiff]'s declaratory action." *Elecs. for Imaging*, 394 F.3d at 1348. Here, there is sufficient reason to set aside Cisco's first-filer status as to Case 5. Federal Circuit precedent "favors the first-to-file rule in the absence of circumstances making it 'unjust or inefficient' to permit a first-filed action to proceed to judgment . . . ." *Id.* Here, consolidation could occur in E.D. Texas or in the District of Delaware, Cisco admits that the convenience of witnesses and parties is neutral in the Court's transfer analysis, D.I. 28 at 17–18, and whether jurisdiction over Acacia is relevant (and, thus, whether Acacia is a real party in interest) remains in dispute in Case 6, *see* No. 22-168, D.I. 35 at 1 ("This case is about *Cisco's* infringement of Ramot's newly issued '998 Patent." (emphasis in original)).

9

However, Cisco abused the Declaratory Judgment Act by running to the courthouse at 12:01 a.m. on the day that Ramot's patent was released. "A declaratory action allows a party 'who is reasonably at legal risk because of an unresolved dispute, to obtain judicial resolution of that dispute without having to await the commencement of legal action by the other side.'" *Elecs. for Imaging*, 394 F.3d at 1345 (quoting *BP Chems.*, 4 F.3d at 977). In other words, "the very purpose of [the Declaratory Judgement] Act is to ameliorate the dilemma posed by putting one who challenges a patent's scope to the choice between abandoning his rights or risking suit." *Medtronic, Inc. v. Mirowski Fam. Ventures*, LLC, 571 U.S. 191, 201 (2014) (internal quotation marks and citation omitted). The purpose of a declaratory judgment action is not, then, for the defendant to select its chosen forum when it faces no risk that any meaningful time—much less mere minutes—will elapse between a patent's issuance and the filing of a suit. *See generally Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am.-UAW v. Dana Corp.*, 1999 WL 33237054, at *4 (N.D. Ohio Dec. 6, 1999) ("'The misuse of the Declaratory Judgment Act to gain a procedural advantage and preempt the forum choice of the plaintiff in the coercive action militates in favor of dismissing the declaratory judgment action.'" (quoting *PAJ, Inc. v. Yurman Design, Inc.*, 1999 WL 68651, at *3 (N.D. Tex. Feb. 9, 1999))); *Cath. Health Partners v. CareLogistics, LLC*, 973 F. Supp. 2d 787, 792 (N.D. Ohio 2013) ("[The Court] cannot reward the first-filer by allowing him to select the forum of his choosing because he is not the 'natural' or 'true' plaintiff."). Here, two equally convenient fora were available to resolve all disputes between Cisco and Ramot, and Cisco rushed to the courthouse for the sole purpose of selecting its chosen forum. If the Court lacked the discretion to dismiss such a declaratory judgment action, nothing would prevent these or future parties from leveraging the Declaratory Judgment Act to play jurisdictional games that waste judicial and party resources.

However, even when the Court ignores Cisco's first-filer status as to Case 5, the Court does not exercise its discretion and dismiss the declaratory judgment actions filed here in Cases 4 and 5. First, Ramot admits that Case 4 was not anticipatory, since "Ramot did not in fact have a suit waiting to be triggered with respect to the '872 Patent . . . ." D.I. 20 at 1. Second, and relatedly, no parallel action exists in E.D. Texas as to Case 4, and Ramot waited nearly 11 months to request transfer of Case 4 to E.D. Texas. *See* D.I. 1; D.I. 19. Third, both E.D. Texas and this District are equally convenient to resolve this dispute. Ramot argues that E.D. Texas is "geographically more convenient" for an inventor on the patents-in-suit, the parties' experts, and "Ramot's corporate representative." D.I. 20 at 14. Ramot also argues that Cisco "has substantial offices in Eastern Texas." *Id.* However, Cisco and Acacia are incorporated in Delaware, D.I. 28 at 16, and Ramot's willingness to file suit in this forum on a patent in the same family demonstrates that Ramot finds this forum convenient, *see* No. 21-295; *see also* D.I. 49 at 13:9–10, 14:3–7 (admitting Ramot could litigate here). Since the Court does not dismiss the declaratory judgment actions in Case 4, consolidation of all cases would disfavor dismissal of the declaratory judgment actions in Case 5. Thus, the Court declines Ramot's request that it exercise its discretion to dismiss Cisco's and Acacia's declaratory judgment claims.

**B.    Motion to Transfer**

Ramot argues that the Court should transfer Cases 4 and 5 to E.D. Texas primarily because judicial economy favors consolidation of these cases and Chief Judge Gilstrap has greater familiarity with the patent family at issue. D.I. 20 at 9–10. Cisco responds that Ramot cannot meet its burden to show that the Court should transfer these cases. D.I. 28 at 15. The Court finds that the ease of consolidating cases in this District and Ramot's prior use of this District outweigh the now-diminished value of the knowledge Chief Judge Gilstrap acquired through diligent management of Case 2. Thus, the Court denies the Motion.

11

The Court must first decide whether the case could have been brought in E.D. Texas. *Jumara*, 55 F.3d at 878. Section 1404(a) provides that "a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). The general venue statute provides that "[a] civil action may be brought in . . . a judicial district in which a substantial part of the events . . . giving rise to the claim occurred . . . ." 28 U.S.C. § 1391(b)(2). By comparison, the patent venue statute provides that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). "'Venue in a declaratory judgment action for patent noninfringement and invalidity is governed by the general venue statute, 28 U.S.C. § 1391(b) and (c), and not the special patent infringement venue statute, 28 U.S.C. § 1400(b).'" *Bristol-Myers Squibb Co. v. Mylan Pharms. Inc.*, 2017 WL 3980155, at *6 n.8 (D. Del. Sept. 11, 2017) (citation omitted), *overruled on other grounds by Valeant Pharms. N. Am. LLC v. Mylan Pharms. Inc.*, 978 F.3d 1374, 1383 (Fed. Cir. 2020); D.I. 1 ¶ 48 (applying the general venue statute). Here, since the Court declines to dismiss the declaratory judgment claims, the general venue statute applies. D.I. 1 ¶ 48; D.I. 45 at 1. Ramot is an Israeli corporation and, thus, "Cisco's and Acacia's declaratory action would have proper venue in, and could therefore be transferred to, Eastern Texas." D.I. 45 at 1 (emphases omitted); *see* D.I. 1 ¶ 47 (alleging personal jurisdiction as to Ramot throughout the United States). In at least one case—to which Cisco and Ramot point, D.I. 46 at 1—the district court explained in *dicta* that, if a declaratory judgment plaintiff would not be subject to jurisdiction in the transferee venue and if the declaratory judgment plaintiff dismisses its declaratory judgment claims, the transferee court "would not have personal jurisdiction to adjudicate the [declaratory judgment defendant's] counterclaim independently." *Grupke v. Linda Lori Sportswear, Inc.*, 174 F.R.D. 15,

12

17–18 (E.D.N.Y. 1997). Since Cisco and Acacia have not dismissed their counterclaims here, the Court need not consider that hypothetical. In short, jurisdiction in E.D. Texas would be proper.

The Court next turns to the private and public interest factors outlined in *Jumara*. Cisco and Acacia are incorporated in Delaware and have chosen to sue here (Factor 1),[4] but Cisco and Acacia cannot point to any other connections to this forum, such as employees or production facilities. D.I. 28 at 15–16; D.I. 49 at 28:9–16, 33:3–20. Thus, Cisco's and Acacia's preference cuts against transfer, but their "choice . . . will not dominate the balancing to the same extent as it otherwise might." *Express Mobile*, 2020 WL 3971776, at *2. Ramot prefers E.D. Texas because it believes that E.D. Texas is less likely to stay patent cases, that E.D. Texas is more familiar with this case, and that Ramot will get a faster time to trial (Factor 2). D.I. 49 at 42:22–43:6; D.I. 35 at 9. However, E.D. Texas has already stayed Case 2, which undercuts Ramot's argument, *see* D.I. 35 at 4, and the Court will consider time to trial and judicial familiarity below, *see Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 201 (D. Del. 1998) (declining to double-count the reasons for the movant's forum preference). The only connections Ramot alleges between Acacia and Cisco, on the one hand, and its preferred forum, on the other, are that "sales of products" occurred in and Cisco has "substantial offices" in "Eastern Texas" (which may or may not mean E.D. Texas). D.I. 20 at 8, 14; D.I. 45 at 1; *see also* D.I. 35 at 9–10. Ramot alleges no connection between itself and E.D. Texas. Thus, the Court will reduce the weight assigned to Ramot's choice of forum. *See Ceradyne*, 2021 WL 3145171, at *5 ("[C]ourts usually examine whether the defendant can articulate rational, legitimate reasons to support its preferred venue.").

Most of the *Jumara* factors are neutral. The claims at issue did not arise in either this District or E.D. Texas (Factor 3). Cisco and Acacia argue that the two fora are equally convenient

---

[4] The Court references the numbers assigned to each *Jumara* factor listed in Section II.B., *supra*.

for the parties and their witnesses and records, *see* D.I. 28 at 17–18, and Ramot's willingness to avail itself of this forum to litigate infringement claims against Acacia in Case 3, No. 21-295, demonstrates that Ramot finds this forum convenient as well (Factors 4–6), *see* D.I. 49 at 13:9–10 (admitting that Ramot is willing to bring its case in Delaware). Both parties agree that enforceability, local interest, and public policies are neutral (Factors 7, 10, and 11), D.I. 28 at 18; D.I. 20 at 13, and these cases involves questions of federal law, not state law (Factor 12), *see* D.I. 8 ¶ 78; No. 22-674, D.I. 10 ¶ 97 (both alleging patent infringement).

Two public interest factors remain. According to the Administrative Office of the U.S. Courts, Delaware's weighted case filings per judgeship stood at 873 for the 12-month period ended June 30, 2022, while the comparable number in E.D. Texas was 693.[5] Thus, administrative difficulty from court congestion favors transfer (Factor 9). *See Gen. Sci. Corp. v. Den-Mat Holdings, LLC*, 2021 WL 4622548, at *3 (D. Del. Oct. 7, 2021) (looking to weighted case filings). Ramot points to Chief Judge Gilstrap's prior work and ruling as to claim construction in Case 2 as a practical consideration that could ease or expedite trial (Factor 8). D.I. 20 at 14. The Court appreciates Chief Judge Gilstrap's thoughtful claim construction opinion in Case 2, along with Chief Judge Gilstrap's other efforts to learn the technology and patents in this case. *See, e.g.*, No. 19-225, D.I. 83 (Claim Construction Memorandum Opinion and Order); D.I. 235 (Memorandum

---

[5] *United States District Courts—National Judicial Caseload Profile*, 14, 35, Admin. Off. U.S. Crts. (June 30, 2022), https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0630.2022_0.pdf. "Weighted filings statistics account for the different amounts of time district judges require to resolve various types of civil and criminal actions. . . . Average civil cases or criminal defendants each receive a weight of approximately 1.0; for more time-consuming cases, higher weights are assessed (e.g., a death-penalty habeas corpus case is assigned a weight of 12.89); and cases demanding relatively little time from judges receive lower weights (e.g., an overpayment and recovery cost case involving a defaulted student loan is assigned a weight of 0.10)." *Explanation of Selected Terms*, 1, Admin. Off. U.S. Crts. (Mar. 2022), https://www.uscourts.gov/sites/default/files/explanation_of_selected_terms_march_2022_0.pdf.

Opinion and Order granting motion to stay). However, as Chief Judge Gilstrap explained, there is a "high probability that the asserted claims will change in scope as part of the [] proceedings" currently before the PTO because "the asserted claims that have been rejected . . . are almost surely to be modified in some material way . . . ." No. 19-225, D.I. 235 at 4–5. In fact, during oral argument, the parties admitted that the claims in the '465 and '535 patents will be amended; therefore, it is unlikely that Chief Judge Gilstrap's previous claim construction will "hold." D.I. 49 at 16:13–24, 22:22–23:6. The '872 and '998 patents also have different claims than do the '465 and '535 patents. While some of the terms Chief Judge Gilstrap construed as to the '465 and '535 patents appear in the '872 and '998 patents, *compare* No. 19-225, D.I. 83 at 31–32 (construing "mapping," "converting," and "modulator"), *with* D.I. 8-1 at 17:15–37 (reciting all three terms in Claim 1); No. 22-674, D.I. 10-1 at 17:22–55 (reciting "mapping" and "modulator"), other terms are likely to be new. Thus, while this factor favors transfer, it does so only somewhat.

In summation, three *Jumara* factors favor transfer, one factor disfavors transfer, and eight factors are neutral. The Court places less weight than it otherwise would on both Ramot's preference for E.D. Texas and Cisco's and Acacia's preference for Delaware. However, the Court finds that Cisco's and Acacia's incorporation in Delaware and Ramot's willingness to avail itself of this District in Case 3 give the parties a notably greater connection to Delaware than to E.D. Texas. The Court acknowledges that court congestion and Chief Judge Gilstrap's prior efforts as to Case 2 favor transfer; however, in light of the parties' relatively greater connection to Delaware, the Court finds that Ramot cannot meet its burden to establish that the public and private interest factors favor transfer. *See Papst Licensing*, 126 F. Supp. 3d at 436.

For the above reasons, the Court denies Ramot's Motion to dismiss Cisco's and Acacia's declaratory judgment claims and to transfer this case to E.D. Texas. The Court does not, however, base these findings on Cisco's status as first-filer.

Therefore, at Wilmington this 14th day of November 2022, **IT IS HEREBY ORDERED** that Ramot's Motions to Dismiss and to Transfer (D.I. 19; No. 22-674, D.I. 15) are **DENIED**.

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE