IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CISCO SYSTEMS, INC. and | ) | |
| ACACIA COMMUNICATIONS, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 22-674 (GBW) |
| | ) | (CONSOLIDATED) |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| RAMOT AT TEL AVIV UNIVERSITY LTD., | ) | |
| | ) | |
| Defendant. | ) | |

**COUNTER-DEFENDANTS CISCO SYSTEMS, INC. AND ACACIA
COMMUNICATIONS, INC.'S AMENDED ANSWER TO COUNTER-CLAIMANT
RAMOT AT TEL AVIV UNIVERSITY LTD.'S COUNTERCLAIMS**

Plaintiffs and Counter-Defendants Cisco Systems, Inc. ("Cisco") and Acacia Communications, Inc. ("Acacia") hereby submit their Amended Answer and Affirmative Defenses to the Counterclaims for Patent Infringement (D.I. 10) of Defendant and Counter-Plaintiff Ramot at Tel Aviv University Ltd. ("Ramot") as follows using the same headings and paragraph numbers in Ramot's Counterclaims. To the extent not expressly admitted herein, Cisco and Acacia deny the allegations of the Counterclaims.

## RAMOT'S COUNTERCLAIMS FOR PATENT INFRINGEMENT

96.     The first paragraph of the Counterclaims is an introductory paragraph that does not require a response from Cisco and Acacia, but Cisco and Acacia state that they similarly request a trial by jury. To the extent that paragraph 96 contains any factual allegations, Cisco and Acacia deny them.

## NATURE OF ACTION

97.     Cisco and Acacia admit that the Counterclaims purport to set forth a claim for patent infringement, but otherwise deny that they infringe the Asserted Patent. Cisco and Acacia admit that what purports to be a copy of U.S. Patent No. 11,342,998 (the "'998 Patent" or the

"Asserted Patent") is attached to the Counterclaims as Exhibit A.  Cisco and Acacia deny the remaining allegations of paragraph 97.

98.    Cisco and Acacia admit that Ramot seeks damages and other relief in the Counterclaims, but Cisco and Acacia deny that they directly or indirectly infringe the Asserted Patent and deny that Ramot is entitled to any of the requested relief.  Cisco and Acacia deny the remaining allegations of paragraph 98.

## PARTIES

99.    Cisco and Acacia admit that Ramot purports to be a limited liability company organized under the laws of Israel with its principal place of business at Tel Aviv University, Senate Building at Gate no. 4, George Wise Street, Tel Aviv, Israel.  Cisco and Acacia are without knowledge or information sufficient to form a belief about any other allegations of paragraph 99, and therefore deny these allegations.

100.    Cisco and Acacia are without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 100, and therefore deny these allegations.

101.    Cisco and Acacia are without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 101, and therefore deny these allegations.

102.    Cisco and Acacia admit that, on its face, the Asserted Patent lists Yossef Ehrlichman, Ofer Amrani, and Shlomo Ruschin as inventors.  Cisco and Acacia are without knowledge or information sufficient to form a belief about the truth of the remaining allegations of paragraph 102, and therefore deny these allegations.

103.    Cisco admits that it is a corporation formed under the laws of the State of Delaware with its principal place of business at 170 West Tasman Drive, San Jose, California 95134.

104.     Cisco and Acacia admit that Acacia is a wholly-owned subsidiary of Cisco, and that Cisco completed its acquisition of Acacia on March 1, 2021 for approximately $4.5 billion.  Cisco and Acacia deny the remaining allegations of paragraph 104.

105.     Cisco and Acacia admit that Acacia is a corporation formed under the laws of the State of Delaware with its principal place of business at Three Mill and Main Place, Suite 400, Maynard, Massachusetts, 01754.

## JURISDICTION AND VENUE

106.     Cisco and Acacia admit that the Counterclaims purport to set forth a claim for patent infringement arising under Title 35 of the United States Code, but deny that they have committed any acts of infringement.  Cisco and Acacia admit that this Court has subject matter jurisdiction over civil actions arising under Title 35 under 28 U.S.C. §§ 1331 and 1338(a).

107.     Cisco and Acacia do not contest that this Court has jurisdiction over each of them in this action.  Cisco and Acacia admit that both Cisco and Acacia are incorporated in the State of Delaware.  Cisco and Acacia deny any remaining allegations in paragraph 107.

108.     Cisco and Acacia do not contest that venue is proper in this action.  Cisco and Acacia admit that both Cisco and Acacia are incorporated in the State of Delaware.  Cisco and Acacia deny any remaining allegations in paragraph 108.

## FACTUAL ALLEGATIONS

### Ramot Patents

109.     Cisco and Acacia are without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 109, and on that basis deny these allegations.

110.     Cisco and Acacia are without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 110, and on that basis deny these allegations.

111.    Cisco and Acacia are without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 111, and on that basis deny these allegations.

112.    Cisco and Acacia are without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 112, and on that basis deny these allegations.

113.    Cisco and Acacia are without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 113, and on that basis deny these allegations.

114.    Cisco and Acacia admit that the '998 Patent is entitled "Linearized Optical Digital-to-Analog Modulator" and that the face of the patent states that it was issued May 24, 2022.  Cisco and Acacia deny that the '998 Patent was duly and lawfully issued.  Cisco and Acacia admit that what purports to be a true and correct copy of the '998 Patent is attached to the Counterclaims as Exhibit A.  Cisco and Acacia are without knowledge or information sufficient to form a belief about the truth of the remaining allegations of paragraph 114, and on that basis deny these allegations.

115.    Cisco and Acacia deny that the '998 Patent claims novel and inventive technological improvements and solutions.  Cisco and Acacia are without knowledge or information sufficient to form a belief about the truth of the remaining allegations of paragraph 115, and on that basis deny these allegations.

116.    Cisco and Acacia deny that the '998 Patent claims novel and inventive technological improvements and solutions.  Cisco and Acacia are without knowledge or information sufficient to form a belief about the truth of the remaining allegations of paragraph 116, and on that basis deny these allegations.

117.    Cisco and Acacia deny that the '998 Patent claims novel and inventive technological improvements and solutions.  Cisco and Acacia are without knowledge or

information sufficient to form a belief about the truth of the remaining allegations of paragraph 117, and on that basis deny these allegations.

## CISCO AND ACACIA'S [ALLEGED] USE OF THE PATENTED TECHNOLOGY

### Acacia Optical Transceiver Modules and DSP Chips

118.    Cisco and Acacia deny that any of the referenced products infringe the Asserted Patent.  Cisco and Acacia admit that Acacia sells products characterized as coherent optical transceiver modules, Digital Signal Processing ("DSP") application specific integrated circuits ("ASICs"), and Silicon Photonic integrated circuits ("ICs").  Cisco and Acacia further admit that Ramot has referenced Acacia's website, but state that the materials accessible therein speak for themselves.  Cisco and Acacia deny that these materials support Ramot's claims of infringement. Cisco and Acacia otherwise deny the allegations of paragraph 118.

119.    Cisco and Acacia admit that certain of Acacia's products have been characterized as coherent optical transceiver modules.  Cisco and Acacia further admit that Ramot has referenced Acacia's website, but state that the materials accessible therein speak for themselves.  Cisco and Acacia deny that these materials support Ramot's claims of infringement.  Cisco and Acacia otherwise deny the allegations of paragraph 119.

120.    Cisco and Acacia admit that certain of Acacia's products have been characterized as DSP ASICs and/or Silicon Photonics ICs.  Cisco and Acacia further admit that Ramot has referenced Acacia's website, but state that the materials accessible therein speak for themselves. Cisco and Acacia deny that these materials support Ramot's claims of infringement.  Cisco and Acacia otherwise deny the allegations of paragraph 120.

121.    Cisco and Acacia admit that certain of Acacia's products are capable of enabling certain forms of high-speed optical communications.  Cisco and Acacia further admit that Ramot has referenced various materials on Acacia's website, but state that the materials accessible therein

speak for themselves.  Cisco and Acacia deny that these materials support Ramot's claims of infringement.  Cisco and Acacia otherwise deny the allegations of paragraph 121.

122.    Cisco and Acacia admit that certain of Acacia's products use modulation in some form.    Cisco and Acacia further admit that Ramot has referenced various documents and webpages, but state that these materials speak for themselves.  Cisco and Acacia deny that these documents and webpages support Ramot's claims of infringement.  Cisco and Acacia otherwise deny the allegations of paragraph 122.

123.    Cisco and Acacia admit that Acacia sells products that include components that have been characterized as DSP ASICs.  Cisco and Acacia further admit that Ramot has referenced various materials on Acacia's website, but state that the materials accessible therein speak for themselves.  Cisco and Acacia deny that these materials support Ramot's claims of infringement.  Cisco and Acacia otherwise deny the allegations of paragraph 123.

124.    Cisco and Acacia admit that Acacia sells products that include components that have been characterized as DSP ASICs and Silicon Photonics ICs.  Cisco and Acacia further admit that Ramot has referenced various materials on Acacia's website, but state that the materials accessible therein speak for themselves.  Cisco and Acacia deny that these materials support Ramot's claims of infringement.  Cisco and Acacia otherwise deny the allegations of paragraph 124.

125.    Cisco and Acacia deny that any of the referenced products infringe the Asserted Patent. Cisco and Acacia admit that Ramot has referenced various materials on Acacia's website, but state that the materials accessible therein speak for themselves.  Cisco and Acacia deny that these materials support Ramot's claims of infringement.  Cisco and Acacia otherwise deny the allegations of paragraph 125.

126.    Cisco and Acacia admit that Ramot has referenced various materials on Acacia's website, but state that the materials accessible therein speak for themselves.  Cisco and Acacia deny that these materials support Ramot's claims of infringement.  Cisco and Acacia otherwise deny the allegations of paragraph 126.

127.    Cisco and Acacia admit that Acacia participates in various industry standard organizations and admit that certain of Acacia's products adhere to industry implementation agreements.  Cisco and Acacia further admit that Ramot has referenced and purports to quote from various materials, but state that these materials speak for themselves.  Cisco and Acacia deny that these materials support Ramot's case of infringement against Cisco and Acacia.  Cisco and Acacia otherwise deny the allegations of paragraph 127.

128.    Cisco and Acacia admit that Acacia sells products that have been characterized as CFP2-ACO modules.  Cisco and Acacia admit that Ramot has referenced various materials on Acacia's website, but state that these materials the materials accessible therein speak for themselves.  Cisco and Acacia deny that these materials support Ramot's claims of infringement.  Cisco and Acacia deny that Acacia's products infringe the Asserted Patent and, therefore, deny the remaining allegations of paragraph 128.

129.    Cisco and Acacia admit that Acacia sells products that include components that have been characterized as Silicon Photonics ICs.  Cisco and Acacia admit that Ramot has referenced various materials on Acacia's website, but state that the materials accessible therein speak for themselves.  Cisco and Acacia deny that these materials support Ramot's claims of infringement.  Cisco and Acacia otherwise deny the remaining allegations of paragraph 129.

130.    Cisco and Acacia admit that Acacia sells products that include components that have been characterized as optical modulators.  Cisco and Acacia further admit that Ramot has

referenced figures and purports to quote from various materials, but state that these materials speak for themselves. Cisco and Acacia deny that these materials support Ramot's case of infringement. Cisco and Acacia otherwise deny the allegations of paragraph 130.

131.    Cisco and Acacia admit that certain of Acacia's products are capable of enabling high-speed optical communications. Cisco and Acacia further admit that Ramot purports to quote from a conference paper by H. Zhang et al., but state that this document speaks for itself. Cisco and Acacia deny that this document supports Ramot's claims of infringement. Cisco and Acacia deny that Acacia's products infringe the Asserted Patent and therefore deny the remaining allegations of paragraph 131.

132.    Cisco and Acacia admit that certain of Acacia's products contain components that have been characterized as DSP ASICs. Cisco and Acacia admit that Ramot has referenced various materials on Acacia's website, but state that the materials accessible therein speak for themselves. Cisco and Acacia deny that these materials support Ramot's claims of infringement. Cisco and Acacia deny that Acacia's products infringe the Asserted Patent and therefore deny the remaining allegations of paragraph 132.

133.    Cisco and Acacia admit that Acacia publishes marketing material. Cisco and Acacia further admit that Ramot has referenced figures and purports to quote from various materials, but state that these materials speak for themselves. Cisco and Acacia deny that these materials support Ramot's case of infringement against Acacia. Cisco and Acacia deny the remaining allegations of paragraph 133.

134.    Cisco and Acacia admit that Ramot has referenced a video on Acacia's website, but state that the video speaks for itself. Cisco and Acacia deny that this video supports Ramot's

claims of infringement.  Cisco and Acacia deny that Acacia's products infringe the Asserted Patent, and therefore deny the remaining allegations of paragraph 134.

135.    Cisco and Acacia admit that certain of Acacia's products use modulation in some form.  Cisco and Acacia deny that Acacia's products infringe the Asserted Patent and therefore deny the remaining allegations of paragraph 135.

136.    Cisco and Acacia admit that Ramot has identified generic product groups and "any similarly capable products under development by Acacia" as falling within a vague and ambiguous definition of "Acacia Accused Products," but deny that any such products infringe the Asserted Patent.  Cisco and Acacia otherwise deny the allegations of paragraph 136, and specifically deny that the Acacia Accused Products infringe any valid claim of the Asserted Patent.

137.    Because Ramot's definition of "Accused Products" is vague and ambiguous, Cisco and Acacia cannot admit or deny the first sentence of paragraph 137.  Cisco and Acacia admit that Ramot has referenced various materials, but state that these materials speak for themselves.  Cisco and Acacia deny that these materials support Ramot's case of infringement against Acacia.  Cisco and Acacia otherwise deny the allegations of paragraph 137.

**Cisco Optical Transceiver Modules and Line Cards**

138.    Cisco admits the allegations in paragraph 138.  Acacia is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 138, and on that basis denies these allegations.

139.    Cisco admits that it sells products capable of enabling certain forms of high-speed optical communications.  Cisco further admits that Ramot references various brochures and datasheets available on Cisco's website, but states that these documents speak for themselves and Cisco denies that these documents support Ramot's claims of infringement.  Cisco otherwise denies the allegations of paragraph 139.  Acacia is without knowledge or information sufficient to

form a belief about the truth of the allegations of paragraph 139, and on that basis denies these allegations.

140.    Cisco admits that certain of its products have been characterized as line cards and that certain of those products include optical networking ports.  Cisco further admits that Ramot has referenced various brochures and datasheets available on its website, but states that these documents speak for themselves and Cisco denies that these documents support Ramot's claims of infringement.  Cisco otherwise denies the allegations of paragraph 140.  Acacia is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 140, and on that basis denies these allegations.

141.    Cisco admits that it sells various optical transceiver modules for use with the optical networking ports on its routers and switches.  Cisco further admits that Ramot has referenced various brochures and datasheets available on its website, but states that these documents speak for themselves and Cisco denies that these documents support Ramot's claims of infringement. Cisco denies that the referenced products infringe the Asserted Patent.  Cisco otherwise denies the allegations of paragraph 141.  Acacia is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 141, and on that basis denies these allegations.

142.    Cisco admits that it sells optical transceiver modules in different configurations and at different communication speeds.  Cisco denies that these optical transceiver modules infringe the Asserted Patent.  Cisco otherwise denies the allegations of paragraph 142.  Acacia is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 142, and on that basis denies these allegations.

143.    Cisco admits that it participates in various industry standard organizations and admits that certain of its products conform to standardized physical form factors.  Cisco otherwise

denies the allegations of paragraph 143. Acacia is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 143, and on that basis denies these allegations.

144. Cisco denies that any of the referenced products infringe the Asserted Patent. Cisco admits that Ramot has referenced various brochures and datasheets available on its website, but states that these documents speak for themselves and Cisco denies that these documents support Ramot's claims of infringement. Cisco otherwise denies the allegations of paragraph 144. Acacia is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 144, and on that basis denies these allegations.

145. Cisco denies that it has acknowledged and or endorsed the need for adoption of the techniques that are allegedly set forth in the Asserted Patent. Cisco admits that Ramot has referenced various brochures and datasheets available on its website, but states that these documents speak for themselves and Cisco denies that these documents support Ramot's claims of infringement. Cisco otherwise denies the allegations of paragraph 145. Acacia is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 145, and on that basis denies these allegations.

146. Cisco denies that any of the referenced products infringe the Asserted Patent. Cisco admits that Ramot has referenced a document from Cisco's website, but states that this document speaks for itself and Cisco denies that this document supports Ramot's claims of infringement. Cisco otherwise denies the allegations of paragraph 146. Acacia is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 146, and on that basis denies these allegations.

147.    Cisco admits Ramot has referenced various documents available on its website, but states that these documents speak for themselves, and Cisco denies that these documents support Ramot's claims of infringement.  Cisco otherwise denies the allegations of paragraph 147.  Acacia is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 147, and on that basis denies these allegations.

148.    Cisco admits that Ramot references various documents on Cisco's website, but states that these documents speak for themselves, and Cisco denies that these documents support Ramot's claims of infringement.  Cisco otherwise denies the allegations of paragraph 148.  Acacia is without knowledge or information sufficient to form a belief about the truth of the remaining allegations of paragraph 148, and on that basis denies these allegations.

149.    Cisco lacks knowledge regarding the allegations regarding IEEE standards and, therefore, denies those allegations.  Cisco denies that its products infringe the Asserted Patent and, therefore, denies the remaining allegations of paragraph 149.  Acacia is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 149, and on that basis denies these allegations.

150.    Cisco admits that Ramot has identified generic product groups, "and other modules that include similar functionality, along with the associated digital signal processing functionality, whether implemented in the module itself or in an associated circuit or processor," as falling within a vague and ambiguous definition of "Cisco Accused Products," but denies that any such products infringe the Asserted Patent. Cisco otherwise denies the allegations of paragraph 150, and specifically denies that the Cisco Accused Products infringe any valid claim of the Asserted Patent. Acacia is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 150, and on that basis denies these allegations.

151.    Cisco admits that Ramot has identified products as falling within its vague and ambiguous definition of "Cisco Accused Products," but denies that these products infringe the Asserted Patent. Cisco otherwise denies the allegations of paragraph 151, and specifically denies that the Cisco Accused Products infringe any valid claim of the Asserted Patent.  Acacia is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 151, and on that basis denies these allegations.

152.    Cisco admits that Ramot has referenced various documents on Cisco's website, but states that these documents speak for themselves, and Cisco denies that these documents support Ramot's claims of infringement.  Cisco otherwise denies the allegations of paragraph 152.  Acacia is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 152, and on that basis denies these allegations.

153.    Cisco admits that Ramot has referenced various documents on Cisco's website, but states that these documents speak for themselves, and Cisco denies that these documents support Ramot's claims of infringement.  Cisco otherwise denies the allegations of paragraph 153.  Acacia is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 153, and on that basis denies these allegations.

154.    Because Ramot's definition of "Accused Products" is vague and ambiguous, Cisco cannot admit or deny the first sentence of paragraph 154.  Cisco admits that Ramot has referenced various blog posts available on its website, but states that these documents speak for themselves and Cisco denies that such documents support Ramot's claims of infringement claims. Cisco otherwise denies the allegations of paragraph 154.  Acacia is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 154, and on that basis denies these allegations.

## COUNT I
## ([ALLEGED] INFRINGEMENT OF U.S. PATENT NO. 11,342,998)

155.     Cisco and Acacia incorporate by reference their answers to paragraphs 96-154 of the Counterclaims as though fully set forth herein.

156.     Cisco and Acacia admit that Ramot has identified generic product groups as falling within vague and ambiguous definitions of "Cisco Accused Products," "Acacia Accused Products," and "Accused Products," but deny that any such products infringe any claims of the Asserted Patent.  Cisco and Acacia deny the remaining allegations of paragraph 156.

157.     Because Ramot's definition of "Accused Products" is vague and ambiguous, Cisco and Acacia deny the first sentence of paragraph 157.  Cisco and Acacia admit that Ramot has referenced figures and purports to quote from various materials, but state that these materials speak for themselves.  Cisco and Acacia deny that these materials support Ramot's case of infringement against Cisco and Acacia.  Cisco and Acacia otherwise deny the allegations of paragraph 157.

158.     Because Ramot's definition of "Accused Products" is vague and ambiguous, Cisco and Acacia deny the first sentence of paragraph 158.  Cisco and Acacia admit that Ramot has referenced figures and purports to quote from various materials, but state that these materials speak for themselves.  Cisco and Acacia deny that these materials support Ramot's case of infringement against Cisco and Acacia.  Cisco and Acacia otherwise deny the allegations of paragraph 158.

159.     Cisco admits that certain of the products within the NCS 4000 portfolio allow for some form of optical transmission of data across a network.  Cisco admits that Ramot has referenced figures and purports to quote from various materials, but states that these materials speak for themselves.  Cisco denies that these materials support Ramot's case of infringement against Cisco.  Cisco otherwise denies the allegations of paragraph 159.  Acacia is without

knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 159, and on that basis denies these allegations.

160.    Cisco admits that certain of the products within the Nexus 400G portfolio allow for some form of optical transmission of data across a network.  Cisco admits that Ramot has referenced figures and purports to quote from various materials, but states that these materials speak for themselves.  Cisco denies that these materials support Ramot's case of infringement against Cisco.  Cisco otherwise denies the allegations of paragraph 160.  Acacia is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 160, and on that basis denies these allegations.

161.    Because Ramot's definition of "Accused Products" is vague and ambiguous, Cisco and Acacia deny the first sentence of paragraph 161.  Because Ramot's definition of "Acacia's Accused Products" is vague and ambiguous, Cisco and Acacia deny the second sentence of paragraph 161.  Cisco and Acacia admit that Ramot has referenced various figures and purports to quote from various materials, but state that these materials speak for themselves.  Cisco and Acacia deny that these materials support Ramot's case of infringement against Cisco and Acacia.  Cisco and Acacia otherwise deny the allegations of paragraph 161.

162.    Cisco and Acacia admit that Ramot purports to quote material and figures from the OIF-CFP2-ACO-01.0 Implementation Agreement, but state that this document speaks for itself. Cisco and Acacia deny that this document supports Ramot's claims of infringement against Cisco. Cisco and Acacia further admit that Ramot purports to quote from certain technical journal articles authored by Fluger, et al. and Mazzini, et al., but states that these documents speak for themselves. Cisco and Acacia deny that these documents support Ramot's claims of infringement against Cisco and Acacia.  Cisco and Acacia otherwise deny the allegations of paragraph 162.

163.    Because Ramot's definition of "Accused Products" is vague and ambiguous, Cisco and Acacia deny the first sentence of paragraph 163.  Cisco and Acacia admit that Ramot has referenced figures and purports to quote from various materials, but state that these materials speak for themselves.  Cisco and Acacia deny that these materials support Ramot's case of infringement against Cisco and Acacia.  Cisco and Acacia otherwise deny the allegations of paragraph 163.

164.    Cisco and Acacia admit that Ramot purports to quote material and figures from the OIF-CFP2-ACO-01.0 Implementation Agreement, but state that this document speaks for itself.  Cisco and Acacia deny that this document supports Ramot's claims of infringement against Cisco.  Cisco and Acacia otherwise deny the allegations of paragraph 164.

165.    Cisco admits that it sells optical transceiver modules that use modulation in some form.  Cisco further admits that Ramot has referenced various materials on Cisco's website, but states that these materials speak for themselves.  Cisco denies that these materials support Ramot's claims of infringement against Cisco.  Cisco otherwise denies the allegations of paragraph 165.  Acacia is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 165, and on that basis denies these allegations.

166.    Because Ramot's definition of "Accused Products" is vague and ambiguous, Cisco and Acacia deny the first sentence of paragraph 166.  Because Ramot's definition of "Acacia's Accused Products" is vague and ambiguous, Cisco and Acacia deny the second sentence of paragraph 166.  Cisco and Acacia admit that Ramot has referenced various figures and purports to quote from various materials, but state that these materials speak for themselves.  Cisco and Acacia deny that these materials support Ramot's case of infringement against Cisco and Acacia.  Cisco and Acacia otherwise deny the allegations of paragraph 166.

167.    Because Ramot's definition of "Cisco's Accused Products" is vague and ambiguous, Cisco denies the first sentence of paragraph 167.  Cisco admits that Ramot has referenced various materials, but states that these materials speak for themselves.  Cisco denies that these materials support Ramot's claims of infringement against Cisco.  Cisco otherwise denies the allegations of paragraph 167.  Acacia is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 167, and on that basis denies these allegations.

168.    Because Ramot's definition of "Accused Products" is vague and ambiguous, Cisco and Acacia deny the first sentence of paragraph 168.  Cisco and Acacia admit that Ramot has referenced figures and purports to quote from various materials, but state that these materials speak for themselves.  Cisco and Acacia deny that these materials support Ramot's case of infringement against Cisco and Acacia.  Cisco and Acacia otherwise deny the allegations of paragraph 168.

169.    Cisco admits that Ramot purports to quote from certain technical journal articles authored by Fluger, et al. and Mazzini, et al., but states that these documents speak for themselves.  Cisco denies that these documents support Ramot's claims of infringement against Cisco.  Cisco otherwise denies the allegations of paragraph 169.  Acacia is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 169, and on that basis denies these allegations.

170.    Because Ramot's definition of "Accused Products" is vague and ambiguous, Cisco and Acacia deny the first sentence of paragraph 170.  Cisco and Acacia admit that Ramot has referenced figures and purports to quote from various materials, but state that these materials speak for themselves.  Cisco and Acacia deny that these materials support Ramot's case of infringement against Cisco and Acacia.  Cisco and Acacia otherwise deny the allegations of paragraph 170.

171.    Cisco admits that Ramot purports to quote material and figures from the OIF-CFP2-ACO-01.0 Implementation Agreement, but states that this document speaks for itself.  Cisco denies that this document supports Ramot's claims of infringement against Cisco.  Cisco otherwise denies the allegations of paragraph 171.  Acacia is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 171, and on that basis denies these allegations.

172.    Because Ramot's definition of "Accused Products" is vague and ambiguous, Cisco and Acacia deny the first and second sentences of paragraph 172.  Cisco and Acacia admit that Ramot has referenced various materials, but state that these materials speak for themselves.  Cisco and Acacia deny that these materials support Ramot's claims of infringement against Cisco and Acacia.  Cisco and Acacia otherwise deny the allegations of paragraph 172.

173.    Because Ramot's definition of "Accused Products" is vague and ambiguous, Cisco and Acacia deny the first sentence of paragraph 173.  Because Ramot's definition of "Acacia's Accused Products" is vague and ambiguous, Cisco and Acacia deny the second sentence of paragraph 173. Cisco and Acacia admit that Ramot has referenced various materials, but state that these materials speak for themselves.  Cisco and Acacia deny that these materials support Ramot's claims of infringement against Cisco and Acacia.  Cisco and Acacia otherwise deny the allegations of paragraph 173.

174.    Cisco and Acacia admit that Ramot has referenced video on Acacia's website, but state that the video speaks for itself.  Cisco and Acacia deny that this video supports Ramot's case of infringement against Cisco and Acacia.  Cisco and Acacia otherwise deny the allegations of paragraph 174.

175.     Cisco admits that Ramot has referenced a press release on Broadcom's website, but states that this document speaks for itself.  Cisco denies that this document supports Ramot's claims of infringement.  Cisco otherwise denies the allegations of paragraph 175.  Acacia is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 175, and on that basis denies these allegations.

176.     Because Ramot's definition of "Accused Products" is vague and ambiguous, Cisco and Acacia deny the first and second sentences of paragraph 176.  Cisco and Acacia admit that Ramot has referenced various materials, but state that these materials speak for themselves.  Cisco and Acacia deny that these materials support Ramot's claims of infringement against Cisco and Acacia.  Cisco and Acacia otherwise deny the allegations of paragraph 176.

177.     Because Ramot's definition of "Accused Products" is vague and ambiguous, Cisco and Acacia deny the first and second sentences of paragraph 177.  Cisco and Acacia admit that Ramot has referenced various materials, but state that these materials speak for themselves.  Cisco and Acacia deny that these materials support Ramot's claims of infringement against Cisco and Acacia.  Cisco and Acacia otherwise deny the allegations of paragraph 177.

178.     Cisco and Acacia deny the allegations of paragraph 178.

179.     Cisco and Acacia deny the allegations of paragraph 179.

180.     Cisco and Acacia deny the allegations of paragraph 180.

181.     Cisco and Acacia deny the allegations of paragraph 181.

182.     Cisco and Acacia deny the allegations of paragraph 182.

183.     Cisco and Acacia admit that on July 12, 2019, Ramot filed suit against Cisco in the United States District Court for the Eastern District of Texas for alleged patent infringement in the case styled *Ramot at Tel Aviv University Ltd. v. Cisco Systems, Inc.* Case No. 2:19-cv-225-JRG

(E.D. Tex.) (the "2019 Texas Litigation").  Cisco and Acacia admit that Acacia received a subpoena regarding that litigation.  Cisco and Acacia admit that on February 26, 2021, Ramot filed suit against Acacia in the United States District Court for the District of Delaware for alleged patent infringement in the case styled *Ramot at Tel Aviv University, Ltd. v. Cisco Systems, Inc.,* C.A. No. 21-295 (D. Del.).  Cisco and Acacia otherwise deny the allegations of paragraph 183.

184.    Cisco admits that in the 2019 Texas Litigation, Ramot has alleged infringement of three patents.  Cisco further admits that it defended against Ramot's infringement claims, and that claim construction, discovery, and expert discovery occurred in that litigation, that dispositive motions were filed, and that pre-trial preparations occurred.  Cisco further admits that the 2019 Texas Litigation was subsequently stayed and that the stay remains in place.  Cisco otherwise denies the allegations of paragraph 184.  Acacia is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 184, and on that basis denies these allegations.

185.    Cisco admits that it filed petitions for *Inter Partes* Review against the patents asserted in the 2019 Texas Litigation, that it filed an appeal, and that it filed Petitions for Writ of Mandamus.  Cisco further admits that it filed *Ex parte* Reexamination requests against the patents in the 2019 Texas Litigation.  Cisco and Acacia admit that they filed petitions for *Inter Partes* Review against the Asserted Patent and U.S. Patent No. 11,133,872.  Cisco and Acacia otherwise deny the allegations of paragraph 185.

186.    Cisco and Acacia admit that they filed this Action on the day the '998 Patent issued. The remaining allegations of paragraph 186 relate to privileged subject matter to which no response is required.

187.    Cisco admits that on November 5, 2014, Ramot filed suit against Cisco in the United States District Court for the Eastern District of Texas for alleged patent infringement in the case styled *Ramot at Tel Aviv University Ltd. v. Cisco Systems, Inc.,* Case No. 2:14-cv-1018 (E.D.Tex.).   Cisco admits that Cisco entered an appearance in that action, and that Ramot voluntarily dismissed its claims against Cisco.   Cisco also admits that certain patents were cited by the patent examiner during the prosecution of U.S. Patent No. 8,320,720.   Cisco otherwise denies the allegations of paragraph 187.   Acacia is without knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 187, and on that basis denies these allegations.

188.    Cisco and Acacia deny the allegations of paragraph 188.

189.    Cisco and Acacia deny the allegations of paragraph 189.

### GENERAL DENIAL

Cisco and Acacia further deny each allegation in Ramot's Counterclaims that is not specifically admitted, denied, or otherwise responded to in this Answer to Ramot's Counterclaims.

### PRAYER FOR RELIEF

Cisco and Acacia deny that Ramot is entitled to any relief against Cisco and Acacia.   To the extent the Prayer for Relief is interpreted to contain any factual allegations, Cisco and Acacia deny them.

### DEFENSES

Subject to the responses above, and without conceding that any of the following defenses are not already at issue by virtue of the foregoing denials, Cisco and Acacia assert the following defenses.   Cisco and Acacia undertake the burden of proof only as to those defenses deemed affirmative defenses by law. In addition to the defenses described below, Cisco and Acacia reserve the right to amend this Answer and defenses consistent with the facts discovered in the case.

## First Defense

Cisco and Acacia do not infringe and have not infringed, directly, contributorily, or by inducement, any valid and/or enforceable claim of the '998 Patent either literally or under the doctrine of equivalents, willfully or otherwise.

## Second Defense

The asserted claims of the '998 Patent are invalid for failure to comply with one or more of the requisite statutory and/or decisional requirements and/or conditions for patentability under Title 35 of the United States Code, including without limitation 35 U.S.C. §§ 101, 102, 103, and/or 112, the rules, regulations, and laws pertaining thereto, and/or under other judicially-created bases for invalidity.

## Third Defense

Ramot's claims are barred, in whole or in part, by 28 U.S.C. § 1498 to the extent they relate to use or manufacture of the alleged invention of the Asserted Patent by or for the government of the United States.

## Fourth Defense

The Asserted Patent is unenforceable due to inequitable conduct committed during the prosecution of U.S. Patent Nos. 8,044,835 (the "'835 Patent") and 8,797,198 (the "'198 Patent"). This inequitable conduct renders unenforceable the asserted '998 Patent, which is based on a series of continuation applications from the '835 Patent. The defense of inequitable conduct is shown as follows:

1.     On June 13, 2007, Yossef Ehrlichman, Ofer Amrani, and Shlomo Ruschin (collectively, the "Ramot Inventors") filed U.S. Provisional Patent Application No. 60/943,559 (the "Provisional Application") with the U.S. Patent & Trademark Office ("USPTO") through their attorneys (referred to collectively—for purposes of this defense—with the Ramot Inventors and

anyone substantively involved in the prosecution of Ramot's patents as "Ramot"), to which the '835 Patent claims priority.

2.      Prior to the June 13, 2007 filing of the Provisional Application, the Ramot Inventors provided an "Invention Disclosure Form" to Ramot.  The Invention Disclosure Form states in a section called the "Abstract" that the alleged invention discloses a "method for converting digital signals into analog form by employing optical means" and this method is superior to "state-of-the-art-all-electrical digital-to-analog conversion."  Page 3 of the Invention Disclosure Form contains a section called "Related Documents" that includes an instruction "List all known relevant art references."

3.      On June 12, 2008, Ramot filed a Patent Cooperation Treaty application PCT/IL/2008/000805 (the "PCT Application") claiming priority to the Provisional Application.

4.      On December 18, 2008, the PCT Application was published under International Publication Number WO 2008/152642.

5.      On November 3, 2008, the International Searching Authority issued its International Search Report along with the Written Opinion of the International Searching Authority regarding the PCT Application.

6.      On December 14, 2009, Ramot filed a patent application with the USPTO through their attorneys, which application the USPTO assigned U.S. Patent Application No. 12/636,805 (the "'805 Application").  The '805 Application purports to be a continuation-in-part of the PCT Application and claims priority to the Provisional Application.  The '805 Application ultimately issued as the '835 Patent.

7.      On December 17, 2009, the International Searching Authority issued its International Preliminary Report on Patentability, which included the Written Opinion.

8.     Ramot failed to cite the Written Opinion to the USPTO in the '835 Patent prosecution, even though Ramot was aware of Written Opinion and the Search Report, as evidenced at least by Ramot's citation to references D1 to D5 from the Written Opinion and Search Report in an August 9, 2010 Information Disclosure Statement it filed with the USPTO.

9.     The Written Opinion indicated that the same or substantially identical claims that were eventually allowed in the '835 Patent were not patentable.

10.     The Written Opinion explained two bases for its finding of unpatentability of the claims in Ramot's PCT application: (i) lack of support for a limitation found in multiple independent claims, and (ii) lack of novelty and/or inventiveness of each claim, primarily in view of D1 (EP 1036302), which is an EP patent in the German language.  The Search Report indicated that D1 has a corresponding English language patent, specifically U.S. Patent No. 6,760,111.

11.     With respect to the Searching Authority's finding that the claims lacked support, the Searching Authority found that the following limitation from three independent claims (1, 6, and 17) in the PCT application was not supported—"wherein said electrode actuating device actuates at least one of said actuating electrodes as a function of values of more than one bit of the input data word"—and it provided a detailed discussion of its reasoning.  Ultimately, the Searching Authority concluded that for purposes of its prior art analysis, it would interpret the limitation along the lines of what was claimed in dependent claim 2, specifically that the claims required the "electrode actuating device includes a digital-to-digital converter."

12.     With respect to the prior-art finding of unpatentability, the Searching Authority found that the same three independent claims and dependent claim 2 (as well as other claims) were anticipated (lacked novelty) by D1.  The report also found that the rest of the claims were obvious

(lacked an inventive step) based on this reference and other references, some of which are also in a foreign language.

13.    The foregoing PCT communications were issued before or while the '805 Application was pending in the USPTO (i.e., before the '835 Patent issued).

14.    The Invention Disclosure Form the Ramot Inventors submitted to Ramot included a section called Related Documents, with instructions to "List all known relevant art references (patents, publications, abstracts, internal reports, Master/PhD dissertations, seminars including departmental seminars, commercially available products, etc.)."

15.    The Invention Disclosure Form identifies three United States Patents in the section called Related Documents, including U.S. Patent No. 6,760,111. U.S. Patent No. 6,760,111 is the English language patent that corresponds to reference D1 identified in paragraphs 8 through 12 above.

16.    During the prosecution of the '805 Application, Ramot never disclosed at least the following: (i) the fact that the Searching Authority issued its International Preliminary Report on Patentability; (ii) the Written Opinion; (iii) the Search Report; (iv) the Searching Authority's opinions that claims of the PCT Application lacked support in the specification, were anticipated, and/or obvious over prior art; and (v) the English language patent corresponding to D1, which was at the heart of the Searching Authority's prior-art-based opinions that the claims of the PCT application were not patentable. Ramot also never disclosed the rejections, arguments, or amendments made during the prosecution of a corresponding European application, as discussed below.

17.    The opinion of the Searching Authority regarding lack of support for the claims in the PCT application is information that a U.S. Examiner examining the '805 Application, which ultimately issued as the '835 Patent, would have considered material to his or her analysis.

18.    For example, the '805 Application as filed included 37 claims, including independent claims 1 and 19, which are substantively identical to independent claims 1 and 17, respectively, of the PCT application. Dependent claim 2 of the '805 Application is also identical to claim 2 of the PCT application. In an Office Action dated February 16, 2011, the USPTO Examiner allowed claims 1-29 of the '805 Application and rejected claims 30-37.

19.    Importantly, the very limitation that the Searching Authority found lacked support was the basis for the Examiner's allowance of these claims: "[T]he prior art of record fails to teach a modulator device that comprises, inter alia, an electrode actuating device associated with an electronic input and the modulator, the actuating device is responsive to an input data word to supply an actuating voltage to the [sic] actuating electrodes and the electrode actuating device actuates at least one of the actuating electrodes as a function of values of more than one bit of the input data word." The rejected independent claim 30 and its dependent claims 31-37 did not recite the limitation that the Examiner found allowable in claims 1-29.

20.    In a May 10, 2011 Response, Ramot amended independent claim 30 to recite "wherein said electrode actuating device actuates at least one of said actuating electrodes as a function of values of more than one bit of the input data word," i.e., to recite the feature on which the USPTO allowed claims 1-29. The Patent Office then allowed claims 30-37.

21.    The materiality of the Searching Authority's opinions regarding the lack of support for the claims and on the unpatentability of the claims based on prior art is illustrated by Ramot's

prosecution of a European patent application (EP Appl. 08763563.7) (the "European Application") that is a national stage of the Ramot PCT Patent Application.

22.     The set of claims that Ramot originally presented in the European Application for examination included claims 1-14. Of these claims, independent claims 1 and 2 are identical or substantively identical to claims 1 and 19 of the '835 Patent.  Claim 4 of the European Application is substantively similar to claim 2 of the '835 Patent.

23.     Specifically, during prosecution of the European Application, the European Patent Office ("EPO") issued a Communication dated April 26, 2010 rejecting all pending claims as lacking support and also as being anticipated (lacking novelty) or obvious (lacking an inventive step) in view of D1 alone or in combination with other art cited in the PCT Written Opinion and Search Report.  Of particular note, Ramot was unable to overcome these rejections without making numerous and significant amendments to the claims over the course of years of prosecution before the EPO.

24.     Ramot did not disclose any aspect of this European prosecution to the USPTO for consideration in the examination of '805 Application that issued as the '835 Patent.

25.     In both the International and EPO cases, the examining authorities indicated that the proposed claims—which were later allowed in the '835 Patent—were not allowable, focusing on the same key element that was ultimately the basis for allowance in the United States.  Indeed, the claims that were eventually allowed in Europe, in view of the material that Ramot withheld in the prosecution of the '835 Patent, are very different from the claims of the '835 Patent.

26.     During the prosecution of the '805 Application that issued as the '835 Patent, Ramot did disclose reference D1, on which both the International and European authorities relied on in rejecting claims, but Ramot never indicated to the USPTO that this reference had any special

significance (*e.g.*, by submitting the PCT Written Opinion, PCT Search Report or EPO Communication relying on that reference), nor advised the USPTO that an English language patent corresponding to this reference was available (as specifically cited in the withheld Search Report), and therefore Ramot provided the USPTO Examiner no basis to evaluate the reference's potential significance (nor even read the English words of the reference). An applicant is required to disclose a written English language translation or a concise explanation of relevance for a non-English language document cited to the USPTO. 37 C.F.R. § 1.98; MPEP § 609.

27.    The USPTO Examiner would certainly have considered the PCT and EPO materials and the English language patent corresponding to D1 to be information material to the patentability of the claims of the '805 Application under 35 U.S.C. §§ 102, 103 and 112. Had the Examiner been aware of this information, the Examiner would not have issued the claims of the '835 Patent in its present form. Failure to disclose the rejection from the prosecution of a related application is a material withholding. *See Mediostream, Inc. v. Microsoft Corp.*, No. 2:08-cv-369-CE, 2010 WL 4239196, at *6 (E.D. Tex. Oct. 27, 2010) ("The rejection itself is material to patentability, and in this case the same examiner was examining the prior rejected claims."); *McKesson Info. Sol'n, Inc. v. Bridge Medical, Inc.*, 487 F.3d 897, 919 (Fed. Cir. 2007) (prior rejection of a substantially similar claim in a co-pending application was material and should be disclosed).

28.    Because it did have a more complete picture, the EPO allowed a set of very different and significantly amended claims, and it would not have allowed the claims as issued in the '835 Patent.

29.    On October 25, 2011, the USPTO issued the '835 Patent based on the '805 Application. The '835 Patent was issued in its current form by the USPTO because the Examiner

was entirely unaware of the opinions and rejections at the PCT and EPO stages or the prior art because Ramot did not disclose this information.

30.    At least one of the named inventors of the '835 Patent and/or others substantively involved in the prosecution of the '805 Application were aware of information material to the patentability of the claims of the '835 Patent, and they and Ramot withheld that information from USPTO with the intent to deceive the USPTO.

31.    The foregoing facts demonstrate inequitable conduct that renders the '835 Patent unenforceable.  Because the '998 Patent claims priority to the '835 Patent through a series of continuation applications, it is thus infected by the same inequitable conduct as the '835 Patent and is likewise unenforceable.

32.    The '998 Patent claims priority to the '835 Patent as follows:

- The '998 Patent is a continuation of U.S. Patent Application No. 16/532,567, filed August 6, 2019 and issued as U.S. Patent No. 11,133,872 (the "'872 Patent") on September 28, 2021;

- The '872 Patent is a continuation of U.S. Patent Application No. 16/386,391, filed April 17, 2019 and issued as U.S. Patent No. 10,461,866 (the "'866 Patent") on October 29, 2019;

- The '866 Patent is a continuation of U.S. Patent Application No. 16/234,635, filed December 28, 2018, which issued as U.S. Patent No. 10,270,535 (the "'535 Patent") on April 23, 2019;

- The '535 Patent is a continuation of U.S. Patent Application No. 15/298,373 filed October 20, 2016 and issued as U.S. Patent No. 10,205,527 (the "'527 Patent") on February 12, 2019;

- The '527 Patent is a continuation of U.S. Patent Application No. 14/922,165 filed October 25, 2015 and issued as U.S. Patent No. 9,479,191 (the "'191 Patent") on October 25, 2016;

- The '191 Patent is a continuation of U.S. Patent Application No. 14/662,343 filed March 19, 2015 and issued as U.S. Patent No. 9,203,425 (the "'425 Patent") on December 1, 2015;

- The '425 Patent is a continuation of U.S. Patent Application No. 14/325,486 filed July 8, 2014 and issued as U.S. Patent No. 9,031,417 (the "'417 Patent") on May 12, 2015;

- The '417 Patent is a continuation of U.S. Patent Application No. 13/280,371 filed October 25, 2011 and issued as U.S. Patent No. 8,797,198 (the "'198 Patent") on August 5, 2014; and

- The '198 Patent is a continuation of the '835 Patent.

33.     At no time during prosecution of all applications claiming priority to the '835 Patent, including prosecution of the applications leading to the '998 Patent, did Ramot advise the USPTO of its omission of material prior art during prosecution of the '835 Patent or identify to the USPTO the relevance of the omitted and material prior art.  Instead, Ramot merely included the omitted and material prior art in an Information Disclosure Statement filed in each of the continuation applications.  These disclosures were not enough to cure the inequitable conduct.

34.     For example, during the prosecution of the '198 Patent, Ramot eventually cited various EPO Communications issued by the EPO and the International Preliminary Report on Patentability; however, Ramot cited neither the arguments and amendments it submitted to the EPO nor the English language patent corresponding to D1. Ramot did not advise the USPTO of

the omission of these documents during prosecution of the '835 Patent and did not identify the relevance of these documents to the USPTO during prosecution of the '198 Patent.

35.    Ramot's inequitable conduct during prosecution of the '835 Patent has an immediate and necessary relation to its assertion and enforcement of the Asserted Patent against Cisco and Acacia in this matter.  Notably, the Asserted Patent and the '835 Patent each share a common disclosure, assert a common priority date, and claim a common invention.

36.    As but one example of the close relationship between the claims of the Asserted Patent and the claims of the '835 Patent that were secured through inequitable conduct, Claim 1 of the '835 Patent recites "[a] modulator device for converting digital data into modulation of an optical signal, the modulator device comprising: (a) an electronic input for receiving an input data word of N bits."  In comparison, Claim 32 of the '998 Patent is directed to "[a]n optical modulation system for converting a plurality of input digital data words into a modulated optical output stream."

37.    The system recited in the claims of the '998 Patent is either closely related to the apparatuses recited in claims of the '835 Patent, or recites systems intended for performing the methods recited in other claims of the '835 Patent. For example, Claims 1-18 of the '835 Patent recite common or similar features and concepts with Claims 1-15 of the '998 Patent.  More specifically, claim 1 of the '998 patent requires "a digital-to-digital mapping [that] maps the plurality of N digital input data bits to a set of M digital output data bits," and claim 13 further requires that "the mapping . . . is determined based on a pattern for actuating drive voltages that alters a linearity of an optical response of the modulator."  Similarly, claims 1 and 17 of the '835 patent recite "receiving an input data word of N bits" and "generat[ing] an improved approximation to a linear modulation of the optical signal as a function of the input data word."

38.     The prior art that was withheld by Ramot during prosecution of the '835 Patent—namely the PCT Written Opinion, PCT Search Report, EPO Communication, and English language patent corresponding to the D1 reference—is highly material not only to the claims of the '835 Patent but also to the closely related claims of the '998 Patent and thus Ramot's concealment permeated prosecution of the '998 Patent and renders it unenforceable.  For example, as explained in the withheld documents, both the International Searching Authority and EPO found the respective claims to require actuating the electrodes of a signal modulator by means of a digital-to-digital converter, an element clearly disclosed by reference D1 and its corresponding English language patent. Subsequently, the Searching Authority and the EPO rejected the claims as either anticipated by D1 or rendered obvious by D1 in view of additional references.

39.     As a result of the close relation of the claims of the '998 Patent to the claims of the '835 Patent, the inequitable conduct committed during the prosecution of the '835 Patent infects and renders unenforceable the '998 Patent.

### Fifth Defense

Ramot is precluded from recovering costs under 35 U.S.C. § 288.

### Sixth Defense

Ramot's enforcement of the '998 Patent is barred, in whole or in part, by the doctrines of prosecution disclaimer and/or prosecution history estoppel based on amendments, statements, admissions, omissions, representations, disclaimers, and/or disavowals made during prosecution of the '998 Patent and/or related U.S. patent applications.

### Seventh Defense

Ramot's claims of infringement against Cisco and Acacia of the '998 Patent are barred, and the '998 Patent is unenforceable against Cisco and Acacia due to the doctrines of estoppel, license, waiver, and/or acquiescence.

32

**Eighth Defense**

Ramot has not set forth any facts supportive of a claim to recover attorneys' fees from Cisco and Acacia under 35 U.S.C. § 285 and, therefore, Ramot is not entitled to recover attorneys' fees.

**Ninth Defense**

Ramot has not set forth any facts supportive of a claim to recover enhanced damages from Cisco and Acacia under 35 U.S.C. § 284 and, therefore, Ramot is not entitled to recover enhanced damages.

**Tenth Defense**

Ramot's claims of infringement against Cisco and Acacia are barred, and the '998 Patent is unenforceable against Cisco and Acacia due to the doctrine of unclean hands.

**Eleventh Defense**

Ramot's claims of infringement against Cisco and Acacia are barred, and the '998 Patent is unenforceable against Cisco and Acacia, due to the doctrine of prosecution laches. *See, e.g., Personalized Media Communs., LLC v. Apple Inc.*, 57 F.4th 1346 (Fed. Cir. 2023); *In re Bogese*, 303 F.3d 1362 (Fed. Cir. 2002); *Sonos, Inc. v. Google LLC*, No. C 20-06754 WHA, 2023 U.S. Dist. LEXIS 181177 (N.D. Cal. Oct. 6, 2023).

The doctrine of prosecution laches renders unenforceable the asserted '998 Patent, which is based on a series of continuation applications from the '835 Patent that claim priority to the Provisional Application. The defense of prosecution laches is shown as follows:

1.    As discussed above regarding the Fourth Defense, Ramot filed the Provisional Application with the USPTO on June 13, 2007.

2.    Ramot filed the PCT Application on June 12, 2008, claiming priority to the Provisional Application.

3.     On December 14, 2009, Ramot filed the '805 Application with the USPTO as a continuation-in-part of the PCT Application and claiming priority to the Provisional Application.

4.     On October 25, 2011, the USPTO issued the '835 Patent based on the '805 Application.

5.     Ramot filed U.S. Patent Application No. 13/280,371 (the "'371 Application") with the USPTO on October 25, 2011 as a continuation of the '835 Patent.

6.     On July 8, 2014, Ramot filed U.S. Patent Application No. 14/325,486 (the "'486 Application") with the USPTO as a continuation of the '371 Application.

7.     On August 5, 2014, the '371 Application issued as the '198 Patent.

8.     On November 5, 2014, Ramot filed a complaint against Cisco in the U.S. District Court for the Eastern District of Texas alleging that Cisco infringed the '835 and '198 Patents in *Ramot at Tel Aviv University Ltd. v. Cisco Systems, Inc.*, Case No. 2:14-cv-01018-JRG (E.D. Tex.) ("2014 Action").

9.     In the 2014 Action, Ramot alleged that Cisco's CPAK 100G products infringed the '835 and '198 Patents, specifically the CPAK-SR10 and CPAK-LR4 products.

10.     From January 13, 2015 until February 24, 2015, Cisco explained to Ramot why the products did not infringe the '835 and '198 Patents and confirmed that Cisco did not sell a product with an optical pulse-amplitude modulator (PAM) modulator for converting digital data into modulation of an optical signal, as required by the asserted claims of the '835 and '198 Patents. Cisco disclosed to Ramot details about its products, including the subset of Cisco products that Ramot accused that used analog drive technology (e.g., Cisco's Analog Coherent Optics (ACO) products). Cisco explained to Ramot that its disclosed and claimed invention in the asserted patent

(and confirmed by the prosecutions) does not cover analog-drive techniques and thus did not cover the set of analog-driven products from Cisco that they accused.

11.     On February 24, 2015, Ramot voluntarily dismissed the 2014 Action.

12.     Cisco continued to invest in, develop and sell its analog products, with the knowledge that they did not infringe Ramot's patents.

13.     On March 19, 2015, Ramot filed U.S. Patent Application No. 14/662,343 (the "'343 Application") with the USPTO as a continuation of the '486 Application.

14.     On May 12, 2015, the '486 Application issued as the '417 Patent.

15.     On December 1, 2015, the '343 Application issued as the '425 Patent.

16.     On August 22, 2016, Ramot wrote to Cisco regarding its two new patents, the '417 Patent and the '425 Patent, asserting that these patents may cover the Cisco products Ramot originally accused in the 2014 Action, as well as new Cisco product offerings including but not limited to products that use Quadrature Amplitude Modulation (16-QAM), and requesting a meeting.

17.     From the August 22, 2016 letter through October 2017, Cisco and Ramot exchanged correspondence, had at least one telephone call and conducted an in-person meeting. Through these exchanges, Ramot continued to allege infringement of the '835 and '198 Patents, as well as the more recently issued '417 and '425 Patents.  During these exchanges with Ramot, Cisco disclosed details about its products, including specific information regarding the subset of accused products that used analog drive technology (e.g., Cisco's Analog Coherent Optics (ACO) products).  Cisco explained that Ramot's patent claims did not cover the set of Cisco's analog-driven products that they accused of infringement. More specifically, Cisco repeatedly informed Ramot that, *inter alia*, Ramot's patent claims cannot cover analog drive techniques, such as where

the modulator is driven with an analog signal generated by a digital-to-analog converter (DAC). Put another way, Cisco explained that unlike the disclosed and claimed invention of the Ramot patents—where the modulator itself is used as the DAC—the digital-to-analog conversion performed by the Cisco products was done in the electrical (not optical) domain, followed by analog driving of the modulator.

18.     Ramot never filed suit against Cisco on the '417 and '425 Patents.

19.     Following these exchanges with Ramot, Cisco continued to invest in, develop and sell its analog products, with the knowledge that they did not infringe Ramot's patents.

20.     On October 20, 2016—while Cisco and Ramot were engaged in the interactions regarding Cisco's products described above—Ramot filed U.S. Patent Application No. 15/298,327 (the "'327 Application") with the USPTO claiming priority through a series of continuations (including the '417 and '425 Patents) to the '835 and '198 Patents originally asserted against Cisco in the 2014 Action.

21.     On July 4, 2018, the '327 Application issued as U.S. Patent No. 10,033,465 (the "'465 Patent").

22.     On December 28, 2018, Ramot filed U.S. Patent Application No. 16/234,635 (the "'635 Application") with the USPTO claiming priority through a series of continuations (including the '417 and '425 Patents) to the '835 and '198 Patents originally asserted against Cisco in the 2014 Action.

23.     On April 17, 2019, Ramot filed U.S. Patent Application No. 16/386,391 (the "'391 Application") with the USPTO as a continuation of the '635 Application.

24.     On April 23, 2019, the '635 Application issued as the '535 Patent.

36

25. On June 12, 2019, without any advanced notice to Cisco, Ramot filed another complaint against Cisco in the U.S. District Court for the Eastern District of Texas alleging that Cisco infringed the '465 and '535 Patents in *Ramot at Tel Aviv University Ltd. v. Cisco Systems, Inc.*, Case No. 2:19-cv-00225-JRG (E.D. Tex.) ("2019 Texas Action").

26. On August 6, 2019, Ramot filed U.S. Patent Application No. 16/532,567 (the "'567 Application") with the USPTO as a continuation of the '391 Application.

27. On October 29, 2019, the '391 Application issued as the '866 Patent.

28. On December 12, 2019, Ramot amended its complaint in the 2019 Texas Action to add the '866 Patent.

29. On February 26, 2021, Ramot filed a complaint against Acacia in the U.S. District Court for the District of Delaware alleging infringement of '535 and '465 patents in *Ramot at Tel Aviv University, Ltd. v. Acacia Comm'ns, Inc.*, C.A. No. 1:21-cv-295-LPS (D. Del.) ("February 2021 Delaware Action").

30. On September 22, 2021, Ramot filed U.S. Patent Application No. 17/481,904 (the "'904 Application") with the USPTO as a continuation of the '567 Application.

31. On September 28, 2021, the '567 Application issued as the '872 Patent.

32. On September 28, 2021, upon issuance of the '872 Patent, Cisco and Acacia filed a declaratory judgment complaint against Ramot in this District, seeking a declaration that Cisco's and Acacia's optical transceiver modules, components thereof, and networking equipment incorporating such modules did not infringe the '872 patent. *Cisco Systems Inc. & Acacia Comm'ns, Inc. v. Ramot at Tel Aviv Univ. Ltd.*, C.A. No. 1:21-cv-1365-LPS (D. Del.) ("September 2021 Delaware Declaratory Judgment Action").

33. On May 24, 2022, the '904 Application issued as the '998 Patent.

34.    On May 24, 2022, upon issuance of the '998 Patent, Cisco and Acacia filed this declaratory judgment action against Ramot in this District, seeking a declaration that Cisco's and Acacia's optical transceiver modules, components thereof, and networking equipment incorporating such modules did not infringe the '998 Patent. ("May 2022 Delaware Declaratory Judgment Action").

35.    On May 24, 2022, Ramot filed another complaint against Cisco in the U.S. District Court for the Eastern District of Texas alleging that Cisco infringed the '998 Patent in *Ramot at Tel Aviv University Ltd. v. Cisco Systems, Inc.*, Case No. 2:22-cv-00168-JRG (E.D. Tex.) ("2022 Texas Action"). Cisco moved to transfer the 2022 Texas Action, which was granted, and the action is now pending in this Court at *Ramot at Tel Aviv University Ltd. v. Cisco Systems, Inc.*, Case No. 1:23-cv-0012-GBW (DDE).

36.    Through the claims of the '998 Patent, and after an unreasonable and inexcusable delay, Ramot attempted—more than 14 years after its asserted 2007 priority date and after extensive discussions with Cisco about its analog products—to capture analog driven products by removing clear digital limitations from their earlier patents that directly tied the output of the digital-to-digital mapping to digital drive voltages for the corresponding modulator electrodes and instead trying to claim an indirect loose "association" between the output of the digital-to-digital mapping (i.e., "digital output ***data bits***") and "voltage values" based on which the input optical signal is modulated. *See, e.g.,* '998 Patent claim 1 ("wherein a digital-to-digital mapping maps the plurality of N digital input data bits to a set of ***M digital output data bits associated with a plurality***

*of voltage values*" and "wherein the input optical signal *is modulated based on the plurality of voltage values*).[1]

37.    In other words, Ramot drafted the claims of the '998 Patent in an attempt to cover a system that allows for pure digital manipulation of data, followed by a digital-to-analog conversion to provide analog drive signal(s) for a modulator. Thus, Ramot uses the '998 Patent to attempt to claim an invention that performs digital-to-analog conversion in the electrical domain rather than through digitally driving the modulator with the output of the digital-to-digital mapping, which appears to be an essential aspect of Ramot's original invention and initially claimed in its early patents, including those originally asserted against Cisco.

38.    The facts listed above demonstrate that Ramot committed an unreasonable and inexcusable delay in its prosecution of the '998 Patent. While Ramot filed the Provisional Application with the USPTO on June 13, 2007, it did not file the application for the '998 Patent— through which Ramot attempts (at least based on Ramot's infringement allegations) to capture analog products in its claims—until September 22, 2021. Thus the '998 Patent was filed *over fourteen years* after Ramot filed the Provisional Application and only after Cisco disclosed to Ramot details regarding its analog-driven products, products that Cisco had developed, invested in and marketed for years. Such a magnitude of delay in prosecuting its claims clearly suffices to render the '998 Patent unenforceable due to prosecution laches.

---

[1] Cisco and Acacia do not agree that these claims, properly construed, cover analog-driven products. However, Ramot uses claim language in the '998 Patent that is different from its earlier patents, the purpose of which appears to be to capture analog-driven products in view of Ramot's current infringement allegations. If the Court finds that these claims do cover analog-driven modulator products, then they are unenforceable due to the doctrine of prosecution laches. *See, e.g., 01 Communique Lab., Inc. v. Citrix Sys., Inc.*, 889 F.3d 735, 742 (Fed. Cir. 2018).

39.     The fact that Ramot prosecuted other patent applications in the interim does not render the delay reasonable or excusable.  Instead, Ramot's ability to prosecute other patent applications in the interim further demonstrates that the delay is unreasonable and inexcusable. Ramot could have easily amended the claims of the earlier patent applications to attempt to cover analog products or file parallel applications with new claims that attempted to cover analog products.[2]

40.     Cisco and Acacia have suffered prejudice due to Ramot's unreasonable and inexcusable delay.

41.     Cisco and Acacia began investing in, developing, and selling their analog products since at least 2014, if not earlier.

42.     As evidenced by the numerous communications between Ramot and Cisco as well as Ramot's voluntary dismissal of the 2014 Action, the earlier Ramot Patents (e.g., the '835, '198, '417 and '425 Patents) never claimed analog drive techniques and did not cover analog-driven products.

43.     Cisco and Acacia continued to invest in, develop, and sell their analog products, with the knowledge that they did not infringe Ramot's earlier patents.

44.     It was only after Cisco disclosed details to Ramot about its products that used analog drive technology and Ramot's unreasonable and inexcusable over fourteen-year delay did

---

[2] While Ramot also appears to try to capture analog driven products in the claims of the '872 Patent, which was filed approximately two years before the '998 Patent, the difference between an over twelve-year delay and an over fourteen-year delay to prosecute claims that attempt to cover analog products does not impact the prosecution laches analysis.  Therefore, both the '872 Patent and the '998 Patent are unenforceable against Cisco and Acacia, due to the doctrine of prosecution laches.

Ramot attempt to capture—through linguistic gymnastics—analog products in the claims of the '998 Patent.

45.     Ramot's claims of infringement against Cisco and Acacia are therefore barred, and the '998 Patent is unenforceable against Cisco and Acacia, due to the doctrine of prosecution laches.

## <u>Reservation of Rights</u>

Cisco and Acacia are presently investigating the facts relating to the procurement of the Asserted Patent and the assertions of infringement against Cisco and Acacia and will continue to do so throughout the discovery process.   To the extent that this investigation reveals any improprieties in connection with such matters, Cisco and Acacia reserve the right to seek leave to amend to assert such allegations and/or defenses based thereon that may be appropriate.

In addition to the defenses described above, Cisco and Acacia reserve all defenses under Rule 8(c) of the Federal Rules of Civil Procedure, the patent laws of the United States and any other defenses, at law or in equity, which may now exist or in the future become available based on discovery and further factual investigation in this case.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

_____

Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com

OF COUNSEL:

L. Norwood Jameson
Matthew C. Gaudet
Sajid Saleem
DUANE MORRIS LLP
1075 Peachtree Street NE, Suite 2000
Atlanta, GA  30309-3939
(404) 253-6900

*Attorneys for Plaintiffs Cisco Systems, Inc.
and Acacia Communications, Inc.*

Joseph A. Powers
Aleksander J. Goranin
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, PA  19103-4196
(215) 979-1000

Holly Engelmann
DUANE MORRIS LLP
100 Crescent Court, Suite 1200
Dallas, TX  75201
(214) 257-7226

January 26, 2024

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 26, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on January 26, 2024, upon the following in the manner indicated:

John G. Day, Esquire                              *VIA ELECTRONIC MAIL*
Andrew C. Mayo, Esquire
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
*Attorneys for Defendant Ramot at Tel Aviv*
*University Ltd.*

Denise De Mory, Esquire                           *VIA ELECTRONIC MAIL*
Corey Johanningmeier, Esquire
BUNSOE DE MORY LLP
701 El Camino Real
Redwood City, CA  94063
*Attorneys for Defendant Ramot at Tel Aviv*
*University Ltd.*

*/s/ Jennifer Ying*
_____
Jennifer Ying (#5550)