EXHIBIT N

UNITED STATES PATENT AND TRADEMARK OFFICE

————————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

————————————

CISCO SYSTEMS, INC.,
Petitioner,
v.
RAMOT AT TEL AVIV UNIVERSITY LTD.,
Patent Owner.

————————————

Case IPR2022-01283
Patent No. 11,342,998

————————————

**RAMOT AT TEL AVIV UNIVERSITY LTD.'S
PATENT OWNER RESPONSE**

IPR2022-01283
Patent No. 11,342,998

# TABLE OF CONTENTS

Page

I.    Introduction and Procedural History ....................................................................1

II.   Overview, Prosecution, and Construction of the '998 Patent ........................8

      A.    The '998 Patent ..............................................................................8

      B.    The '998 Patent Challenged Claims.................................................10

            1.    Independent Claims................................................................11

            2.    Dependent Claims ..................................................................13

      C.    Prosecution History of the '998 Patent ...........................................15

      D.    Claim Construction..........................................................................21

      E.    Level of Ordinary Skill in the Art ....................................................27

III.  Cisco failed to prove that the challenged claims are obvious over
      *Roberts*, *Taraschuk,* and alleged background knowledge / *Wright*...............28

            1.    Petitioner failed to show that *Roberts* discloses or renders
                  obvious "mapping" according to the "deltas" or
                  "determined based on …" elements of the challenged
                  claims .....................................................................................30

            2.    Petitioner failed to show that *Taraschuk* discloses or
                  renders obvious "mapping" according to the "deltas" or
                  "determined based on …" elements of the challenged
                  claims .....................................................................................34

            3.    Dr. Blumenthal's obviousness opinions merely endorse
                  attorney argument and are unsupported by evidence ..............40

            4.    Petitioner failed to show that *Roberts* would be combined
                  with *Taraschuk*......................................................................53

            5.    Petitioner failed to show that *Roberts* and *Taraschuk*
                  would be combined with *Wright*, or that *Wright* renders
                  claim elements obvious.........................................................57

IPR2022-01283
Patent No. 11,342,998

IV. Conclusion ...................................................................................................61

IPR2022-01283
Patent No. 11,342,998

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Advanced Bionics, LLC v. MED-EL Elektromedizinische Geräte GmbH*,
   IPR2019-01469 (P.T.A.B. Feb. 13, 2020) ........................................................3, 21

*Apple Inc. v. Contentguard Holdings, Inc.*,
   IPR2015-00442 (P.T.A.B. July 13, 2015) ...........................................................54

*Apple Inc. v. Zipit Wireless, Inc.*,
   IPR2021-01124 *et al.*, (PTAB Dec. 21, 2022)....................................................40

*Arendi S.A.R.L. v. Apple Inc.*,
   832 F.3d 1355 (Fed. Cir. 2016).....................................................................5, 30

*BlephEx, LLC v. Myco Industries, Inc.*,
   24 F.4th 1391 (Fed. Cir. 2022) .........................................................................19

*Circuit Check Inc. v. QXQ Inc.*,
   795 F.3d 1331 (Fed. Cir. 2015)............................................................................4

*Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*,
   800 F.3d 1375 (Fed. Cir. 2015)............................................................................4

*Ex Parte Jutta Schomacher, et al.*,
   Appeal 2021-001691, Decision, 2022 WL 1186251  (P.T.A.B. April 11, 2022)29

*Facebook, Inc. v. Windy City Innovations, LLC*,
   973 F.3d 1321 (Fed. Cir. 2020).........................................................................47

*Facebook, Inc. v. Windy City Innovations, LLC*,
   IPR2016-01156, 2017 WL 6210806 (PTAB Dec. 6, 2017) ...............................47

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997)...........................................................................................52

*Graham v. John Deere Co.*,
   383 U.S. 1 (1966)...............................................................................................54

*Harmonic Inc. v. Avid Tech., Inc.*,
   815 F.3d 1356 (Fed. Cir. 2016).....................................................................4, 40

*Icon Health and Fitness, Inc. v. Strava, Inc.*,
   849 F.3d 1034 (Fed. Cir. 2017)........................................................................51

*In re Am. Acad. of Sci. Tech Ctr.*,
   367 F.3d 1359 (Fed. Cir. 2004)........................................................................52

*In re Cisco Systems, Inc.*,
   834 Fed. Appx. 571 (Fed. Cir. 2020) ..................................................................1

*In re Kahn*,
   441 F.3d 977 (Fed. Cir. 2006)................................................................... 33, 36

*In re Smith Int'l, Inc.*,
   871 F.3d 1375 (Fed. Cir. 2017)........................................................................34

*Infobionic, Inc. v. Braemer Manufacturing, LLC.*,
   IPR2015-01704, 2016 WL 1081571 (PTAB Feb. 16, 2016)..............................43

*Kinetic Technologies, Inc. v. Skyworks Solutions, Inc.*,
   IPR2014-00529, 2014 WL 4787238 (PTAB Sept. 23, 2014)............................43

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) ...........................................................................................21

*Pers. Web Techs., LLC v. Apple, Inc.*,
   848 F.3d 987 (Fed. Cir. 2017)..........................................................................54

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005)........................................................................21

*Rohm and Haas Co. v. Brotech Corp.*,
   127 F.3d 1089 (Fed. Cir. 1997)........................................................................52

*Samsung Electronics Co., Ltd. v. Rightquestion, LLC*,
   IPR2022-00251 (P.T.A.B. June 9, 2022)..........................................................43

*Univ. of Strathclyde v. Clear-Vu Lighting LLC*,
   17 F.4th 155 (Fed. Cir. 2021)................................................................. 5, 30, 36

**Statutes**

35 U.S.C. §312(a)(3) ...........................................................................................40

IPR2022-01283
Patent No. 11,342,998

35 U.S.C. §316(e) ...................................................................................4, 40

**Other Authorities**

M.P.E.P. §2145 ..............................................................................................51

M.P.E.P. §707.05 ...........................................................................................19

**Rules**

F.R.E. 702 .......................................................................................................52

**Regulations**

37 C.F.R. §42.22 ..............................................................................................4

37 C.F.R. §42.53 ............................................................................................47

37 C.F.R. §42.62 ............................................................................................52

37 C.F.R. §42.65(a) .......................................................................................52

83 Fed. Reg. 51341
  (Oct. 11, 2018) ...........................................................................................21

| Patent Owner's Exhibit List | |
|---|---|
| EX2001 | Declaration of Corey Johanningmeier in Support of Motion for *Pro Hac Vice* Admission |
| EX2002 | Excerpts of Prosecution History of U.S. Patent Application No. 17/481,904, issued as U.S. Patent No. 11,342,998 – Dec. 6, 2021 Partial List of References Considered by Examiner |
| EX2003 | Excerpt of Prosecution History of '998 Patent – March 14, 2022 Notice of Allowance |
| EX2004 | EX2010, IPR2020-00484, Paper 10, Decision Denying Institution (P.T.A.B. Aug. 18, 2020) |
| EX2005 | Declaration of Professor John Dallesasse, Ph.D. under 37 C.F.R. § 1.68 in support of Patent Owner's Preliminary Response in IPR2020-00123. |
| EX2006 | *Curriculum Vitae* of Professor Dallesasse |
| EX2007 | Memorandum Opinion and Order on Claim Construction, *Ramot at Tel Aviv University Ltd. v. Cisco Systems, Inc.*, Case No. 2:19-CV-225-JRG, Dkt. No. 83 (E.D. Tex. May 15, 2020) |
| EX2008 | Excerpt of Prosecution History of '872 Patent – Nov. 2, 2020 Office Action |
| EX2009 | Excerpt of Prosecution History of '872 Patent – April 30, 2021 Reply |
| EX2010 | Excerpt of Prosecution History of U.S. Patent Application No. 14/325,486, issued as U.S. Patent No. 9,031,417 – List of References Considered by Examiner |
| EX2011 | Excerpt of Prosecution History of U.S. Patent Application No. 14/662,343, issued as U.S. Patent No. 9,203,425 – List of References Considered by Examiner |
| EX2012 | Excerpts of Prosecution History of U.S. Patent Application No. 14/922,165, issued as U.S. Patent No. 9,479,191 – List of References Considered by Examiner |

IPR2022-01283
Patent No. 11,342,998

| **Patent Owner's Exhibit List** | |
|---|---|
| EX2013 | Excerpts of Prosecution History of U.S. Patent Application No. 15/298,327, issued as U.S. Patent No. 10,033,465 – List of References Considered by Examiner |
| EX2014 | Excerpts of Prosecution History of U.S. Patent Application No. 15/298,373, issued as U.S. Patent No. 10,205,527 – List of References Considered by Examiner |
| EX2015 | Excerpts of Prosecution History of U.S. Patent Application No. 16/234,635, issued as U.S. Patent No. 10,270,535 – List of References Considered by Examiner |
| EX2016 | Excerpts of Prosecution History of U.S. Patent Application No. 16/386,391, issued as U.S. Patent No. 10,461,866 – List of References Considered by Examiner |
| EX2017 | Excerpts of Prosecution History of U.S. Patent Application No. 16/532,567, issued as U.S. Patent No. 11,133,872 – List of References Considered by Examiner |
| EX2018 | Excerpts of Prosecution History of U.S. Patent Application No. 16/532,567, issued as U.S. Patent No. 11,133,872 – Notice of Allowance and Fee(s) Due |
| EX2019 (**New**)* | Notice of Allowance and Fees Due, March 9, 2023, U.S. Pat. App. No. 17/736,876 |
| EX2020 (**New**)* | Examiner's Search Notes, March 9, 2023, U.S. Pat. App. No. 17/736,876 |
| EX2021 (**New**)* | Amendment and Remarks in Response, February 28, 2023, U.S. Pat. App. No. 17/736,876 |
| EX2022 (**New**) | Declaration of Professor John Dallesasse, Ph.D in support of Patent Owner's Response, IPR2022-01283 |
| EX2023 (**New**) | Updated *Curriculum Vitae* of Professor Dallesasse |
| EX2024 (**New**) | Deposition Transcript of Daniel Blumenthal, Ph.D and Demonstratives, IPR2022-00575 and -00576 |
| EX2025 (**New**) | Blumenthal Deposition Demonstrative D |

vii

IPR2022-01283
Patent No. 11,342,998

| Patent Owner's Exhibit List | |
|---|---|
| EX2026 **(New)** | Blumenthal Deposition Demonstrative B-2 |
| EX2027 **(New)** | Blumenthal Deposition Demonstrative C |
| EX2028 **(New)** | Declaration of Professor John Dallesasse, Ph.D in support of Patent Owner's Response, IPR2022-00575 and -00576 |
| * Served and Submitted via Unopposed Motion to Submit Supplemental Information (Paper 22) | |

IPR2022-01283
Patent No. 11,342,998

## I.    Introduction and Procedural History

Cisco's Petition here is one of nearly twenty proceedings Cisco has brought seeking to avoid liability for infringement of Ramot at Tel Aviv University Ltd.'s ("Ramot") family of optical modulation patents.  The Office has, recently and repeatedly, looked at and upheld the Ramot patents in view of the same prior art references relied on here.

Cisco began by asserting *Roberts* against three related patents.  The Board dismissed those Petitions.  *See, e.g.*, EX2004, IPR2020-00484, Paper 10, Decision Denying Institution (P.T.A.B. Aug. 18, 2020), 10-16 ("We have reviewed the Petition and determine that its merits are not particularly strong here.").  Cisco took those non-appealable rejections to the Federal Circuit, only to be summarily dismissed.  *See, e.g.*, *In re Cisco Systems, Inc.*, 834 Fed. Appx. 571 (Fed. Cir. 2020). Cisco then re-filed the Petitions, along with other Requests, as *Ex Parte* Reexaminations with the Central Reexamination Unit.  The Board has already reversed one Examiner there—ending two of seven pending reexaminations and resulting in confirmation of claims of one patent.  *See* Appeal No. 2022-004880, Decision on Appeal (P.T.A.B. Jan. 23, 2023).  Another appeal presenting the same arguments is set for hearing by the Board in July.  *See* Appeal No. 2023-002104.

 The Office has also repeatedly reviewed the cited art against the disputed "deltas" and "determined based on …" elements of the '998 Patent claims

1

challenged here. For example, during the parent '872 Patent prosecution, Ramot presented the *Roberts* reference to the Examiner, ***it was used in a rejection***, and then was overcome after an amendment adding the "determined based on …" elements and new claims with the "deltas" elements. EX2018, "Reasons for Allowance," 2-3.

Here, *Roberts*, and the *Taraschuk* reference that Cisco now relies on in improper combination, were also presented to the Examiner and considered during prosecution. EX2002, 1. The claims were allowed over this consideration ***just over a year ago***. EX2003.

Soon after Cisco filed the present Petition, Examiner Jeanglaude reviewed it in the context of Continuation Application No. 17/736,876—along with the cited *Roberts*, *Taraschuk*, and *Wright* references. EX2020, 2 ("paper # 2; 1005; 1006; … 1009"). He then rejected the pending claims—containing the same "deltas" limitations as in claims challenged here—using the alleged combination here of *Roberts* and *Taraschuk*, but ***not*** *Wright*. *See* Paper 11, Sur-Reply to Petition, 2. Ramot argued that the combination was improper, and that it anyway failed to render obvious at least the "deltas" elements of the continuation claims. EX2021, 17-20. The Examiner agreed and allowed the claims with the "deltas" elements, over his prior rejection based on *Roberts* in combination with *Taraschuk*—having

considered but not discussed *Wright*.  EX2019.[1]

Here, Cisco does not attempt to show that the claims would be obvious over *Roberts* and *Taraschuk* in combination alone—instead presenting non-analogous art *Wright* as alleged "background knowledge."  *See* Paper 12, 38 ("we agree that at this stage of the proceeding, there is little evidence of record that would support a finding that the teachings of Wright would have been known and understood as background knowledge").  Alternatively, Cisco tries to tack *Wright* on as part of a combination.  But Cisco fails to make the required showing that it is analogous art—or that there would be a motivation to combine if it were.  *Id.*, 37 ("the present record does not include argument on" reasonable pertinence).

---

[1] The Board cited the continuation rejection in its Institution Decision as suggestive of material error.  Paper 12, 14.  It would be manifestly unjust and inconsistent to consider the non-final rejection on institution, but not credit the Examiner's subsequent allowance for non-obviousness and lack of motivation to combine here.  *See, e.g.*, *Advanced Bionics, LLC v. MED-EL Elektromedizinische Geräte GmbH*, IPR2019-01469, Paper 6 (P.T.A.B. Feb. 13, 2020), 10 ("a commitment to defer to previous Office evaluations of the evidence"); USPTO, 2018-2022 Strategic Plan, 8 ("The reliability of patent grants also extends to the USPTO's decision consistency.").

IPR2022-01283
Patent No. 11,342,998

Cisco had the burden to show these things. 35 U.S.C. §316(e); 37 C.F.R. §42.22; *Harmonic Inc. v. Avid Tech., Inc.*, 815 F.3d 1356, 1363 (Fed. Cir. 2016) ("the petitioner has the burden from the onset to show with particularity why the patent it challenges is unpatentable"); *Circuit Check Inc. v. QXQ Inc.*, 795 F.3d 1331, 1335 (Fed. Cir. 2015) (fact question whether art is analogous). Cisco's failure to do so should be fatal to its Petition. *Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*, 800 F.3d 1375, 1378 (Fed. Cir. 2015) ("if the fact trier of the issue is left uncertain, the party with the burden loses").

Cisco has failed to prove obviousness of any claim. Cisco never explains how the relied-upon disclosures of *Taraschuk* might suggest the "deltas" mapping elements of independent claims, or the "mapping . . . determined based on a pattern for actuating drive voltages that alters a linearity of an optical response of the [optical] modulator" elements of certain dependent claims. The Petition relies on a single sentence of *Taraschuk* for these mapping elements, describing an empty "look-up table." Petition at 41. Everything else—about how a POSITA might allegedly fill that table with mapping values—comes entirely from Dr. Blumenthal's calculations and unsupported say-so. Petition at 48-55. But none of that discussion is referenced to or mentions disclosures of the prior art, because the references say nothing about any of it. *Id.* In fact, what *Taraschuk* does say about its mapping teaches away from Dr. Blumenthal's calculations, for example

4

by disclosing only a completely different approach.  *See, e.g.*, EX2022, ¶¶34-35, 49, 72, 78, 80-81, 86-87, 90, 104; EX1006, 7:34-39, 7:61-8:5, Figs. 5 & 6.

Cisco cannot find elements that go "to the heart of an invention," in the background—based on attorney argument or the conclusory say-so of a paid expert. *See, e.g.*, *Arendi S.A.R.L. v. Apple Inc.*, 832 F.3d 1355, 1363 (Fed. Cir. 2016). Dr. Blumenthal cites his own graphs as purported support for his own argument that his recreation of the inventive elements would be obvious.  EX1003, ¶194 ("It is readily visible in the graph below").  This approach could go in a textbook as an example of improper hindsight reasoning.  *Compare* EX1001, Figs. 2A & 2B *with* Petition, 49:



"[T]he inventor's own path itself never leads to a conclusion of obviousness; that is hindsight." *Univ. of Strathclyde v. Clear-Vu Lighting LLC*, 17 F.4th 155, 165 (Fed. Cir. 2021).  "What matters is the path that the person of ordinary skill in the art would have followed, as evidenced by the pertinent prior art."  *Id.*

Cisco and Dr. Blumenthal's approach is instead based on the premise that correcting a sinusoidal response with an inverse sinusoid via a digital-to-digital converter mapping as claimed is a "natural consequence" of the problem to be solved.  Petition, 48, 50, 56; Paper 12, 34-35.  But this is a trick, that amounts to recreating the patent's teaching, *e.g.* in Figs. 2A, 2B, and 4, and then once understood, making a bare claim that it was obvious.  Many things seem "obvious" in hindsight once they are pointed out—and this is precisely why the law requires reasoned analysis from disclosures of pertinent prior art.

As discussed below and in the testimony of Professor Dallesasse, *Taraschuk* does *not* disclose an approach that corrects for the sinusoidal response of the modulator in isolation, and "the combined non-linear effects of logic level mismatches through the D/A converter 12 and the sinusoidal response of the modulator 52" disclosed by *Taraschuk* are *not* represented by "the idealized, natural sinusoidal response curves derived by Dr. Blumenthal."  Paper 12, 34-35; EX2022, ¶¶43-47, 49-50 (no disclosure of "the possibility of compensating the 'sinusoidal response of the modulator' alone"), 86-88 (combined nonlinearities "together to present a complex response curve").

Cisco's expert-sponsored hindsight approach is improperly divorced from the disclosures of the pertinent prior art, which it barely mentions.  As the Examiner presumptively understood when he allowed the claims—here, in the parent

application, and in the continuation application—*Taraschuk* is not properly combined with *Roberts* or *Wright*. Cisco failed to show any motivation to combine, instead relying on improper hindsight-based reasoning—from an expert who should not be credited here, see Section III.3 below. *See, e.g.*, EX2022, ¶¶70-76, 96-106. Cisco's alleged combination cobbles together sparse, unrelated disclosures of different compensation functions in *Roberts* and *Taraschuk*—functions that aren't explained, aren't the inventive focus of those references, and aren't properly combined by a person of ordinary skill in the art.

In short, both *Roberts* and *Taraschuk* (alone or combined) fail to render obvious the specifics of the digital-to-digital mapping elements of the '998 Patent—including those elements allowed over consideration of *Roberts* and *Taraschuk* by the Examiner in the parent, current, and continuation applications. *Wright* is not part of the background knowledge, is not analogous art, isn't properly combined with the other references, and does not disclose or render the elements obvious either. *See, e.g.*, EX2022, ¶¶51-53, 96-106.

Cisco failed its burden of proof here, as explained in more detail in the arguments herein and in the expert testimony attached. All of the challenged claims should be upheld.

## II.    Overview, Prosecution, and Construction of the '998 Patent

### A.    The '998 Patent

The '998 Patent discloses and claims techniques for fast modulation of digital data onto optical streams—which is useful in a variety of high-performance, high-bandwidth optical communications applications. *See, e.g.*, EX1001 ("'998 Patent"), Abstract, 1:35-57. Known optical modulators at the time of the patent had characteristics that limited their performance, such as non-linear response. *Id.*, 1:64-2:5, Figure 2A. And known solutions for these problems were inefficient and complicated. *Id.*, 2:6-37.

The '998 Patent inventors taught and claimed a digital-to-digital converter to map input digital data into digital output data—in the form of digital vectors, the binary values of which would be associated with voltages actuating the electrodes of existing electro-optical modulators. *Id.*, Abstract, 7:13-33, Figure 1 ("DDC"):



This mapping enabled efficient, fast signal corrections via conversion of input values to different output values in the digital domain. *Id.*, 7:29-33, 7:39-8:3. The patent disclosed example methods for optimizing and performing the mapping, including via a Root Mean Square Error calculation to derive the best approximated selection of output value for a given input value. *Id.*, 11:29-12:22.

The '998 Patent teaches "using the digital to digital converter for mapping" "a set of possible digital input values to a set of possible digital output values, where the input and output values are non-identical." '998 Patent, 5:1-9 (defining and describing the digital-to-digital converter). This inventive feature can provide an improvement to module linearity or correct for other module characteristics, as illustrated via the descriptions and figures of the '998 Patent. *Id.*, Figs. 4 (detail annotated in red below), 2A & 2B:

FIG. 4

The effect on linearity made possible by the '998 Patent's digital-to-digital mapping is also illustrated by Figures 2A (detail annotated in red below to show mapping of input values to ideal linear response) and 2B (annotated in red below):





FIG. 2B

By changing which digital input values map to which digital output values, according to the formulas and techniques taught and claimed by the '998 Patent, a more desirable (*e.g.*, more linear) response curve can be achieved than was possible with the prior art. *See, e.g.*, '998 Patent, 7:41-8:7, 11:29-12:22.

## B.    The '998 Patent Challenged Claims

The challenged claims are all directed to variations of this solution.

10

### 1.    Independent Claims

Each of challenged independent claims 1, 16, and 58 contains elements delineating what the "digital-to-digital mapping comprises." '998 Patent, 17:37-55 (claim 1), 19:13-31 (claim 16), 23:55-24:14 (claim 58).  For example, challenged claim 1 recites (emphases added):

> 1.    An optical modulation system, the system comprising:
>
> …
>
> wherein the digital-to-digital mapping comprises, for each digital input value included in a set of possible digital input values for the plurality of N digital input data bits, a set of corresponding digital output values from a set of possible digital output values;
>
> ***wherein, within the digital-to-digital mapping, for a first subset of successively increasing digital input values specified in the digital-to-digital mapping, deltas between numerical values of successive digital outputs in the set of digital output values corresponding respectively to the successively increasing digital input values in the first subset, decrease***; and
>
> ***wherein, within the digital-to-digital mapping, for a second subset of successively increasing digital input values specified in the digital-to-digital mapping, deltas between numerical values of successive digital outputs in the set of digital output values corresponding***

11

IPR2022-01283
Patent No. 11,342,998

> *respectively to the successively increasing digital input*
>
> *values in the second subset, increase*.

The emphasized language above—referred to herein as the "deltas" elements—appears in other challenged independent claims, as well as several dependent claims. *Id.,* 19:13-31 (claim 16), 23:55-24:14 (claim 58).

Independent claims 32 and 45 are different system claims wherein the individual waveguide branches of the modulator are modulated "based on at least a subset of the set of voltage values." *Id.,* 21:4-13 (claim 32); 22:38-42 (claim 45). Cisco attempts to but fails to demonstrate this element in *Roberts*, because it relies on signals $V_R(n)$ and $V_L(n)$, which are ***not distinct subsets*** of $V_X(n)$. Petition at 79-80. Rather they are a differential pair of the n values and their complements. *See* EX1005 (*Roberts*) at 2:29-33 ("In order to maximize the phase delay, the drive signal V(t) is commonly supplied as a differential signal pair ±V(t), which doubles the magnitude of the voltage across the electrodes 28."); 2:38-40 ("Voltage inverters 32 in each drive signal path convert the applied drive signals $V_X(t)$ into corresponding differential voltage pairs ±$V_X(t)$"); 5:56-60 ("a pair of multi-bit sample streams $V_X(n)$"). *Roberts*' signals $V_R(n)$ and $V_L(n)$ are complements of each other not subsets of $V_X(n)$—a fact the Petition simply ignores. Petition at 79.

Independent claim 45 also recites elements involving an "electro-absorption signal generation device" rather than a "Mach-Zehnder" modulator. '998 Patent,

22:22-47 (claim 45).  Cisco's Petition is manifestly deficient on these elements, simply alleging technical details that a POSITA would supposedly know, based on alleged knowledge and references outside the claimed Ground.  Petition at 82-83.

The Institution Decision purports to treat claims 32 and 45 as represented by the analysis of claim 1 (*see* Paper 12 at 42) without discussing the deficiencies in Cisco's Petition identified above, or the fact that these claims do not have the "deltas" elements of claim 1.  These claims, and their dependents, should be upheld.

## 2.    Dependent Claims

Several challenged claims depend from each of the independent claims—and include additional elements that are not rendered obvious by the alleged combination.  For example, several claims (*e.g.*, 12-13, 28-29, 36, 42-43, 49, 55-56) require that the modulation system correct for distortion or non-linearities of the modulation system, modulator, and/or optical fibers (emphasis added):

> 13.  The optical modulation system of claim 1, wherein, for a given digital input value, the mapping to a corresponding digital output value is ***determined based on a pattern for actuating drive voltages that alters a linearity of an optical response of the modulator***.

As discussed below, and in prior proceedings, Cisco fails to explain how either the "non-linear compensator 18" of *Roberts*, or the "linearizer 44" of

*Taraschuk*, alone or in combination, disclose or suggest these "deltas" elements or dependent "linearity" elements.[2]

As discussed above, the Examiner did not believe the "deltas" or "determined based on" elements were disclosed or suggested either.  The Examiner allowed the claims here over citation to and consideration of *Roberts* and of *Taraschuk*. EX2002.  He allowed similar claims in the parent '872 Patent prosecution, over a rejection citing the same compensator disclosures of *Roberts*, and over consideration of the linearizer disclosures in *Taraschuk*.  EX2018, 16-17; EX2017. And he allowed claims with the same "deltas" elements over a rejection based on *Roberts* and *Taraschuk* in combination, in Continuation Application No. 17/736,876.  EX2019; EX2021, 17-21.  That latest allowance occurred after considering Cisco's *inter partes* review Petition here, along with *Wright*.  EX2020.

---

[2] In particular, the "***determined based on a pattern for actuating drive voltages that alters a linearity of an optical response of the [optical] modulator***" elements of dependent claims 13, 29, 36, 43, 49, and 56 are central disputed elements in IPR2022-00576.  This Petition's cursory discussion of these elements does not meet Cisco's burden to prove invalidity—including because the Petition never explains what the alleged mapping is "determined based on," and the alleged combination discusses only a different approach.  Petition 69-70; EX2022, ¶¶29-36, 77-83.

Cisco's Petition fails completely on these key elements and each of these claims should be upheld.

## C.    Prosecution History of the '998 Patent

The '998 Patent is the tenth of eleven patents granted in its family.  The patent family comes out of work by professors and other researchers at Tel Aviv University—work that became the subject of patent applications and was also subsequently published in IEEE journals.  *See, e.g.*, Ehrlichman, *et al.*, "*Improved Digital-to-Analog Conversion Using Multi-Electrode Mach–Zehnder Interferometer*," IEEE Journal of Lightwave Technology, vol. 26, no. 21, pp. 3567-3575, Nov. 1, 2008; Ehrlichman *et al.*, "*Generation of M-ary Signals Using a Single Mach Zehnder Interferometer*," SPIE Proc., 7218, Integrated Optics: Devices, Materials, and Technologies XIII, 72180L, Feb. 9, 2009.

The '998 Patent is the fifth such patent from this family to be asserted against infringement by Cisco.  Cisco has brought in the Office six *inter partes* review petitions, four (summarily dismissed) appeals to the Federal Circuit from IPR denials, and seven *ex parte* reexamination proceedings challenging patents in this family.

Here, as in all of Cisco's other petitions and four of its requests to the Office, each Ground of this Petition relies on *Roberts* as a base reference, but alleges a combination with *Taraschuk* with respect to the "digital-to-digital mapping" and

"wherein, within the digital-to-digital mapping, deltas … [decrease / increase]" elements in the challenged claims.  Petition at 36-40, 41-55, 73-74, 77-79, 85.  Both references were already considered by the Office multiple times, including during prosecution of the '998 Patent—as well as by the same Examiner during prosecution of the parent '872 Patent, and prior to allowance of claims in Continuation Application No. 17/736,876.  EX2021, 17-21.

*Roberts* was the base reference alleged to disclose "mapping" elements in Cisco's three prior petitions on related patents—IPR2020-00123, IPR2020-00124, and IPR2020-00484.  The Board found the merits of those petitions to be "not particularly strong"—including because of Cisco's conclusory citation to multiple different parts of *Roberts*.  *See, e.g.*, EX2004, IPR2020-00484, Paper 10 at 10-16 ("Petitioner chooses features from multiple embodiments in Roberts with little explanation to support their combination").  Cisco re-filed those Petitions as *Ex Parte* Reexaminations.  Subsequently, the Board has reversed a Central Reexamination Unit Examiner's *Roberts*-based rejection in Appeal No. 2022-004880—resulting in confirmation of claims as amended.  Appeal No. 2023-002104 is pending and set for hearing.

During prosecution of the parent '872 Patent, *Roberts* (and *Taraschuk*) were included in an Information Disclosure Statement by Ramot.  EX2017.  The Examiner then rejected the pending claims based on citation to description of the

16

DSP 34 block of *Roberts*.  *See* EX2008, Nov. 2, 2020 Office Action at 4-5 (*citing Roberts* at 5:56-6:56, 2:43-55).  That block includes a function labeled "non-linear compensator 18."  EX1005 (*Roberts*), 6:34-40.  The internal functionality and implementation of this compensator is not described in *Roberts*—which merely states that the non-linear compensator compensates for non-linearities, without explaining how.  *See, e.g.*, *id.*  The only breadcrumb given is a reference to a compensation function employing a "pre-distorted signal."  *Id.* at 2:50-55.

Ramot amended the claims, replacing the "correct for non-linearities" elements in each of the then-pending independent claims—that are the subject of Cisco's IPR2022-00575 Petition—with "determined based on a pattern …" elements.  EX2009, April 30, 2021 Reply at 2, 4-5.  Ramot also added new claims containing "deltas" elements that are challenged in Cisco's IPR2022-00576 Petition.  *Id.* at 7-9.

As Ramot argued to the Examiner, the undescribed "compensation function c(t)" performed the linear compensation function, and *Roberts* failed to teach that this was "determined based on a pattern for actuating drive voltages that alters the linearity of the optical response of the modulator."  *Id.* at 11.  Also significant, this compensation operation was separate and not part of what has been (repeatedly and incorrectly in all prior proceedings) alleged by Cisco to be the "mapping" shown in *Roberts*—namely Table 1.  *Id.* at 11-12.  In other words, just as the Board noted in

17

its Decision Denying Institution of IPR2020-000484 (EX2004 at 10-16), the relied upon disclosures of *Roberts* were from different embodiments.  And there was no support for their combination—or for finding the claimed "mapping" in either.

With respect to the new claims, Ramot argued to the Examiner that *Roberts* did not disclose the "for a [first / second] subset of successively decreasing digital inputs in the set of $2^N$ digital inputs specified in the digital-to-digital mapping, deltas between numerical values of digital outputs in the set of digital outputs corresponding to the successively decreasing digital inputs in the [first subset decrease / second subset increase]" elements (referred to herein as the "deltas" elements).  EX2009 at 12.

The Examiner responded to these arguments by dropping the rejection and finding in the Notice of Allowance that "the prior arts made of record fail to suggest" these elements.  EX2018, May 27, 2021 Notice of Allowability at 2. Accordingly, Cisco does not allege that the *Roberts* DSP non-linear compensator meets the "deltas" elements on its own.  Petition at 47-55.  To do so would be to directly disagree with the Examiner, who allowed the claims over those exact disclosures of *Roberts*.

The *Taraschuk* reference was also considered by the Examiner in the '872 Patent prosecution and here during prosecution of the '998 Patent—but the Examiner did not deem it worthy of including in a rejection in either case.  EX2017;

18

EX2002 ("ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. / J.B.J /"). This same result occurred in seven other prosecutions in this family, showing consideration of *Taraschuk* by two different Examiners over a period from October of 2014 to February of 2022. *See, e.g.*, EX2010, 9,031,417 File History Excerpt ("/D.E.W./"); EX2011, 9,203,425 File History Excerpt ("ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /J.J./"); EX2012, 9,479,191 File History Excerpt (same); EX2013, 10,033,465 File History Excerpt (same); EX2014, 10,205,527 File History Excerpt (same); EX2015, 10,270,535 File History Excerpt (same); EX2016, 10,461,866 File History Excerpt (same).

The Examiner indisputably considered *Taraschuk*, alone and in combination, prior to allowing the claims here. "[W]hen prior art 'is listed on the face' of a patent, 'the examiner is presumed to have considered it.'" *BlephEx, LLC v. Myco Industries, Inc.*, 24 F.4th 1391, 1402 (Fed. Cir. 2022); M.P.E.P. §707.05 (emphasis added):

> The examiner **must consider all the prior art references (alone and in combination)** cited in the application or reexamination, including those cited by the applicant in a properly submitted Information Disclosure Statement.

The '998 Patent issued on May 24, 2022. Cisco filed a non-infringement

declaratory judgment action at 12:01 am that very day. *Cisco Systems, Inc. et al. v. Ramot at Tel Aviv University Ltd.*, C.A. 22-674-GBW, Dkt. 1 (D. Del., May 24, 2022). And then on July 29, 2022, Cisco filed this Petition. As a result, in less than two months from issuing—over Examiner consideration of *Roberts* and *Taraschuk*—Cisco sent the '998 Patent back to the Office for review by the Board in view of *Roberts* and *Taraschuk*.

Subsequently, on August 3, 2022, in Continuation Application No. 17/736,876, the Examiner reviewed Cisco's Petition here, including the cited *Roberts*, *Taraschuk*, and *Wright* references. EX2020, 2 ("paper # 2; 1005; 1006; … 1009"). The Examiner then rejected the pending claims there based on the alleged combination of *Roberts* and *Taraschuk*—but ***not*** *Wright*. *See* EX2021, 17-21. Ramot argued that the *Roberts* and *Taraschuk* combination did not disclose the "deltas" elements, and that no motivation to combine the references had been shown. *Id.*, 17-20. Fifteen days after this proceeding was instituted, on March 9, 2023, the Examiner allowed the claims over the combination. EX2019. While the allowance did not specify which of Ramot's arguments it credited, each argument was independently a sufficient basis to reject the combination and allow the claims.

The Board should consider and credit the Examiner's allowance of similar claims over the same references—in light of the Board's controlling precedents and the strategic "decisional consistency" goals of the Office. *See, e.g., Advanced*

*Bionics, LLC v. MED-EL Elektromedizinische Geräte GmbH*, IPR2019-01469, Paper 6 at 10 (PTAB Feb. 13, 2020) (precedential) ("a commitment to defer to previous Office evaluations of the evidence"); USPTO, 2018-2022 Strategic Plan at 8 ("The reliability of patent grants also extends to the USPTO's decision consistency.") Indeed, an administrative agency that treats similar situations differently risks reversal for arbitrariness. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 57 (1983).

As explained below, the asserted combination here is not supported by a showing of the required motivation to combine, and also does not render obvious the "deltas" elements and other elements of the challenged claims. The Board should uphold all of the challenged claims.

### D.    Claim Construction

For purposes of *inter partes* review disputed claim terms are construed to give them "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *See* 83 Fed. Reg. 51341 (Oct. 11, 2018) (adopting the standard of *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005)). The proper construction is considered in the context of, and must be consistent with, the specification—and the claim language should be read in light of the specification as it would be interpreted by one of ordinary skill in the art. *See, e.g.*, *Phillips*, 415 F.3d at 1313.

The Petition and the Board's Decision on Institution here did not deem any claim terms to need construction. Petition at 10; Decision on Institution, Paper 12 at 9-10.

In its Institution Decision on the pending IPR2022-00575 Petition, the Board invited discussion on the meaning and application of the independent claim limitation: "wherein, for a given plurality of N digital input data bits, the mapping to the corresponding M digital output data bits is determined based on a pattern for actuating drive voltages that alters the linearity of an optical response of the modulator." IPR2022-00575, Paper 10, Decision at 24-25. In that decision, the Board took the plain meaning of this term to encompass "the mapping being determined so as to *obtain*, a *desired* 'pattern for actuating drive voltages that alters the linearity . . .'" *Id.* (emphasis Board's). Ramot argued that this reformulation seems to do away with or obscure the meaning and effect of the "determined based on" language in the claims—and it should not be adopted as a construction of the element, for the reasons explained in Patent Owner's Response in IPR2022-00575. *See also* EX2022 (Dallesasse Decl.) at ¶¶29-36, 77-83.

The "determined based on a pattern for actuating…" language, from the independent claims challenged in IPR2022-00575, also appears in dependent claims 13, 29, 36, 43, 49, and 56 challenged here. Accordingly, the discussion of

how this language would be understood by a person of ordinary skill in the art is also included below:

### "mapping … determined based on a pattern for actuating …"

Beginning with the claim language, the limitation itself requires that the mapping be determined "based on" a "pattern for actuating drive voltages." *Id.* The patent specification uses the word "pattern" to refer to the M-bit digital word output from the digital-to-digital converter. *See, e.g.*, EX1001 at 7:62-65 ("An output pattern of 0101 is thus chosen to correspond to an input of 0011."). This pattern "corresponds to the electrode actuation pattern" in some embodiments. *See, e.g., id.* at 6:13-17. The pattern corresponds to a "constellation point" within a complex modulation in other embodiments. *See, e.g., id.* at 6:54-57. In each case, the pattern is a digital word at the output from the digital-to-digital converter. *See also* EX2022 at ¶¶30-33.

The mapping process of the patent is described as an optimization problem directed to this converter output. For example, the patent describes choosing an output word value for a particular input word that is "most closely approximating the corresponding theoretical linear response" or "much more closely approximates to a linear response" or "best approximates a desired ideal output for the given input." EX1001 at 7:29-33; 7:49-65. A simple example of this determining process is shown in Figures 2A, 2B, and 4. *Id.* A much more detailed mathematical

optimization of the control vectors is described as well. *See, e.g.*, *id.* at 11:11-12:24 (optimization based on applying "the root mean square error (RMSE) between an ideal output, represented by a straight line, and the converter output"), 15:21-26 ("digital mappings may be derived either by analytical methods or numerically"). This optimization can also apply even to complicated modulation schemes such as 64-QAM, with the control vectors output from the converter representing optimized constellation points in the modulation. *Id.; see also* EX2022 at ¶¶31-32.

As Prof. Dallesasse agreed and opined: "a person of ordinary skill in the art would understand, that what is being optimized for these claims is the output of the digital-to-digital converter. *See, e.g.*, [EX1001] at 11:12-15 ("the control vectors B be optimized"), 11:36-38 ("the converter output")." EX2022 at ¶33. For a particular "plurality of N digital input data bits" (*i.e.*, input word), a digital output word or constellation point is chosen based on an ideal or desired response. *See, e.g.*, EX1001 at 7:62-65. In short, the "determined based on a pattern …" limitations relate to a digital-to-digital mapping based on ***optimizing the digital output of the converter*** to give a more linear response. *See, e.g.*, *id.* at claim 13 ("for a given digital input value, the mapping to a corresponding digital output value is determined based on a pattern for actuating drive voltages that alters a linearity of an optical response of the modulator.").

24

As described above, the "determined based on a pattern …" limitations were added to the claims during prosecution of the parent '872 Patent, specifically to overcome an Examiner's rejection citing to the unexplained linear compensator disclosures of *Roberts*.    EX2018, May 27, 2021 Notice of Allowability at 2 ("*Roberts* and "the prior arts made of record fail to suggest" the "mapping . . . determined based on a pattern for actuating drive voltages that alters the linearity" element").   The disclosures overcome by the Amendment included the Examiner's citation to *Roberts*' mention of a compensation function that resulted in a "pre-distorted signal."  *See, e.g.*, EX2008 at 5-6 (*citing* EX1005 at 2:43-55).  Clearly the Examiner did not believe that the amended "determined based on a pattern …" language was disclosed by or obvious from *Roberts*' discussion of a "pre-distortion signal."  *Id.*; EX2018 (allowing claims).  Indeed, "use of an analog pre-distortion circuit to feed the modulator" is something the '998 Patent places in the inferior prior art.  EX1001 at 2:5-9.

And as Prof. Dallesasse agreed and opined: "a person of ordinary skill in the art reading the patent would understand that this [claimed] approach differs from pre-distortion based on real-time measured analog modulator output."  EX2022 at ¶34 (*citing* EX1001 at 2:5-9 (disparaging "use of an analog pre-distortion circuit to feed the modulator") and EX1006 at 7:67–8:5 ("a detected sample of the modulator output"), Fig. 6).  For example, *Taraschuk* does not generate or choose a digital

output word or constellation point at the output of a converter, but instead applies an analog feedback correction from the *modulator* output to the *input* word in order to make the intended input appear at the modulator output. EX1006 at 7:67–8:5, 7:7-11, 7:34-39, Fig. 6. According to this understanding, *Taraschuk*'s analog pre-distortion circuit approach is also not mapping "determined based on a pattern" of a digital converter output.

The Board applied an understanding of "determined based on a pattern" as "determined so as to *obtain*, a *desired* pattern." *See* IPR2022-00575, Paper 10, Decision at 24-26. This invites confusion as it seems to define the element according to its result and eliminate the effect of the "based on" language. If the Board's language were interpreted to apply to anything that resulted in a compensating pattern—that would be incorrect, and inconsistent with the Examiner's allowance over consideration of *Roberts* and *Taraschuk*. *See also* EX2022 at ¶36.

A person of skill in the art would understand the claimed optimization to be undertaken with at least some awareness or consideration of the output pattern of the digital-to-digital converter. *Id.* This is not to say that the mapping must "take as *input* the claimed pattern." IPR2022-00575, Paper 10, Decision at 24. Rather, the "mapping … determined based on a pattern…" language has no practical effect if the pattern is not either the subject, or object, of the mapping.

26

The proper understanding of this claim term matters to the outcome here. The limitation, properly understood, would not be disclosed or rendered obvious by the real-time analog pre-distortion approach described in *Taraschuk* (EX1006 at 7:67-8:5), mentioned in *Roberts* (EX1005 at 2:50-55), or which is also identified as an inferior prior art solution in the '998 patent (EX1001 at 2:5-9). *See also* EX2022 at ¶35. The Examiner believed the element distinct over these linear compensation disclosures when he allowed the claims.

The "determined based on" element of dependent claims here requires more than employing an unexplained linear compensation that merely results in obtaining a compensation pattern. Instead, by the straightforward reading and application of the claim language, the mapping must be "determined based on a pattern" for control vectors at the output of the converters. This distinction is further explained in Patent Owner's Response and Sur-Reply in IPR2022-00575.

## E.    Level of Ordinary Skill in the Art

As stated by Ramot's declarant Prof. Dallesasse, a person of ordinary skill in the art as of the effective priority date in 2007 would have had a Master of Science Degree in Electrical Engineering, or Electrical and Computer Engineering, and at least two years of academic or professional experience in engineering, specifically in the analysis and design of optoelectronic systems for optical communications. EX2022 (Dallesasse Decl.) at ¶¶22-26.

### III.    Cisco failed to prove that the challenged claims are obvious over *Roberts*, *Taraschuk,* and alleged background knowledge */ Wright*

As the Examiner found after the "determined based on …" elements and the new "deltas" claims were added in response to a *Roberts*-based rejection of parent '872 Patent claims, *Roberts* does not disclose or render obvious these elements as claimed. EX2018, "Reasons for Allowance," 2 ("the prior arts made of record fail to suggest: . . ."). *Roberts* does not disclose or suggest these elements. *Id.*; EX2002; *see also* Section 1 below.

And *Taraschuk*—also considered by the Examiner there, here, and in continuation—does not either.  EX2017; EX2002; EX2020; *see also* Section 2 below.  None of the lengthy explanation in the Petition of how a person of skill would allegedly derive values and implement the claimed mapping is discussed in or derived from *Taraschuk*.  Petition at 47-55 (claim 1).  Mention of an empty "look-up table" (*id.*, 47-48) is not enough, particularly when the only disclosure of how such a table might be filled discusses a different approach altogether. *See, e.g.*, EX2022, ¶¶34-35, 49, 72, 78, 80-81, 86-87, 90, 104; EX1006, 7:34-39, 7:61-8:5, Figs. 5 & 6.

The Board's Institution Decision faulted Ramot (wrongly) for attacking *Roberts* and *Taraschuk* individually with respect to these elements "instead of in the combination proposed by Petitioner."  Paper 12, 32.  But a properly established

motivation for a combination is a required prerequisite, missing here, to analyzing a combination of references together for obviousness purposes.  *Roberts* and *Taraschuk* (and *Wright*) are not properly combined.  Cisco has failed to prove otherwise.  *See* Sections 4 and 5 below.

The *Keller* and *Merck* cases cited by the Decision at page 32 are inapposite— only Dr. Blumenthal's calculations, allegedly inspired from background knowledge and/or *Wright*, is alleged to suggest the claimed "deltas" mapping calculation here. Cisco does *not* rely on *Roberts*' or *Taraschuk*'s teaching for the values of the "deltas" mapping elements.  Petition, 47-55; Paper 12, 32-33 ("Wright is relied upon to provide" … "a 'known manner' for determining the values").

Nor could it, because *Roberts* and *Taraschuk* don't teach the claimed mapping.  For Cisco to assert, or the Board to find, otherwise would directly contradict the Examiner's allowance of the elements over rejection based on *Roberts* in the parent application, or on *Roberts* and *Taraschuk* in the continuation application.  As another Board panel recently agreed: "reliance on *Keller* and *Merck* is inapposite" when only one of the combined references is relied on for the particular element.  *Ex Parte Jutta Schomacher, et al.*, Appeal 2021-001691, Decision, 2022 WL 1186251 at *10 (P.T.A.B. April 11, 2022).

Here *no* reference disclosure is relied on.  *See* Paper 12, 33 (suggesting that there is no need to show "how to derive the mapping" in reference disclosure if it

is "persuasively shown that such calculation and such derivation would have been understood"). First, Cisco has not made a persuasive showing of knowledge. *Id.*, 38 ("there is little evidence of record"). Second, this is not the law regarding background knowledge, which cannot be used to fill in missing elements "where the missing limitation goes to the heart of an invention." *See, e.g.*, *Arendi*, 832 F.3d at 1363-64. Paying an expert to derive an inventive element and then declare the derivation to have been obvious to a POSITA more than 15 years ago is the definition of improper hindsight. *Univ. of Strathclyde*, 17 F.4th at 165; EX2022, ¶¶70, 75.

### 1. Petitioner failed to show that *Roberts* discloses or renders obvious "mapping" according to the "deltas" or "determined based on …" elements of the challenged claims

*Roberts* discusses an optical modulator that performs modulation by using multiple electrodes to vary how much of the length of a waveguide arm of a Mach-Zehnder Interferometer modulator is activated. EX2022 at ¶38. It uses a binary format translation to thermometer-encoding that turns on successively more or less of the electrodes to effect the modulation. *Id.* at ¶39. Cisco has previously asserted that this was a mapping according to other claims in the Ramot patent family, but Cisco was wrong, and does not argue that here—where the claims have been allowed over a rejection based on *Roberts*. *Id.* at ¶40.

Cisco failed to show that *Roberts* discloses or suggests the "deltas" mapping elements as disclosed and claimed. *See, e.g.*, EX1001, 17:42-55 (claim 1). These elements are recited in the body or included by dependency in challenged claims 1, 16, 58, as well as their dependents, and certain other dependents. *Id.*; *see also id.*, 21:23-36 (claim 33), 22:54-67 (claim 46). Cisco also failed to show that *Roberts* suggests the "determined based on …" elements of dependent claims here.

As described above in Section II.C, *Roberts* was presented to the Examiner in the '872 Patent application by Ramot (EX2018), and the "DSP 34" and "non-linear compensator 18" disclosure of *Roberts* was used in a rejection of the then-pending claims. *See* EX2008, Nov. 2, 2020 Office Action at 4-5 (*citing Roberts* at 5:56-6:56, 2:43-55). The internal functionality and implementation of this compensator is nowhere described in *Roberts*—only the capability of providing non-linear compensation by some means is disclosed. EX1005 (*Roberts*), 6:34-40 ("non-linear compensator 18 used to compensate non-linearities"). Nothing in *Roberts* indicates how the compensation is done or describes the mechanism of calculating "compensation function c(t)." EX2022, ¶¶40-42.

The then-pending claims of the '872 Patent application similarly required that the mapping "correct for non-linearities," without differentiating how. *See, e.g.*, EX2009, 2. Ramot amended the claims, inserting an element requiring that the output mapping be "determined based on a pattern for actuating drive voltages

that alters the linearity of the optical response of the modulator." *Id.* at 2, 4-5. This language also appears in dependent claims 13, 29, 36, 43, 49, and 56 here. *See, e.g.*, EX1001, 18:52-57. Ramot also added new claims with the "deltas" elements at issue in challenged claims here. EX2009, 7-9.

Ramot argued that *Roberts* doesn't disclose or suggest these elements. *Id.*, 11-12. Again, *Roberts* doesn't explain in any way the details of its mentioned compensation function. *See, e.g.*, EX1005, 6:34-40 ("non-linear compensator 18 used to compensate non-linearities"); EX2022 at ¶41. The Examiner agreed and responded a few weeks later by dropping the rejection, allowing both the amended and new claims, and finding that "the prior arts made of record fail to suggest" these elements. EX2003, "Reasons for Allowance," 2-3.

Here, in its only substantive discussions of these independent "deltas" claim elements, the Petition does not discuss disclosures of *Roberts* (or *Taraschuk*) at all—instead merely referring to an empty look-up table from *Taraschuk*, allegedly importable into *Roberts*, and a complicated and lengthy example derivation of an alleged "known manner" for mapping. Petition at 47-55. Cisco simply juxtaposes Dr. Blumenthal's derivation with conclusory assertions that: "Roberts and Taraschuk render this limitation obvious"—supported only by Dr. Blumenthal's paid say-so. *See, e.g.*, Petition, 55. The Petition's analysis of the "determined based on …" elements also merely asserts obviousness, while ignoring that aspect of the

claim language entirely and never explaining what any alleged mapping is "determined based on." *Id.*, 69-71.

The conclusory analysis of the Petition should not be credited. "[R]ejections on obviousness grounds cannot be sustained by mere conclusory statements; instead, there must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness." *In re Kahn*, 441 F.3d 977, 988 (Fed. Cir. 2006).

*Roberts* says nothing about the compensation it mentions in passing, and anyway, as discussed above, is about something else entirely. EX2022 at ¶¶38-39, 41-42. Again, as Ramot argued and the Examiner found in three subsequent prosecutions including this one, *Roberts* and the other cited art did not disclose or render obvious the "deltas" mapping elements.

In sum, Petitioner's *Roberts* arguments are facially deficient, and fail to prove that *Roberts* could render obvious any challenged claim. There is simply no teaching or suggestion in *Roberts* of the claimed "deltas" or "determined based on …" mapping elements—as the Examiner agreed when allowing the claims after these elements were added. EX2003, EX2018, EX2019; *see also* EX2022 at ¶¶41-42 ("I agree that *Roberts*, including in the brief discussion of a known compensator, does not teach or suggest the claimed mappings."). Petitioner's Grounds, each of which rely on *Roberts* and the (missing) motivation to combine it with *Taraschuk*

and *Wright*, must fail. *See, e.g.*, *In re Smith Int'l, Inc.*, 871 F.3d 1375, 1381 (Fed. Cir. 2017) (all claim elements must be shown).

### 2. Petitioner failed to show that *Taraschuk* discloses or renders obvious "mapping" according to the "deltas" or "determined based on …" elements of the challenged claims

*Taraschuk* is about a "high speed digital to analog converter," and the phase aligner and vector addition aspects of such a device. EX2022 at ¶43. The aligner compensates for phase differences between individual bits of a parallel digital signal and the vector addition block is weighted to account for logic level mismatches between individual bits of a parallel digital signal. *Id.* at ¶¶44-46. Deep in the specification of *Taraschuk*, there is a very brief discussion of an optical modulator application. *Id*. at ¶49.

Cisco also fails to show how *Taraschuk* could suggest a claimed mapping according to the "deltas" or "determined based on…" elements of the claims. Petition, 47-55, 69-71. Cisco mentions the "look-up table" of *Taraschuk* repeatedly without citing to the corresponding disclosure. *See, e.g.*, *id.*, 53. This is perhaps because that disclosure is so sparse and it plainly does not support the weight of alleged obvious understanding and background knowledge Cisco is attempting to put on it. The *only* disclosure of this look-up table in *Taraschuk* merely states that it exists: "The linearizer 44 is designed in a known manner (e.g., using a random access memory look-up table)" to perform the mapping. *See* EX1006, 6:61-65.

34

Instead of discussing *Taraschuk*, or showing how it could be understood to disclose or suggest the elements, Cisco embarks on a lengthy discussion of "Dr. Blumenthal's analysis" of the alleged background knowledge of a person of skill in the art.  Petition, 44-55.  "Dr. Blumenthal's analysis provides an illustration of the sinusoidal response curve of an MZM."  *Id.* at 45.  Dr. Blumenthal's analysis "outlines the step-by-step process of modeling the sinusoidal response curve for an MZM and calculating a non-linear compensation function to counteract" it.  *Id.* at 46.  "Dr. Blumenthal's analysis produces a mapping table based on a generic sinusoidal response curve."  *Id.*  Cisco and Dr. Blumenthal fill in tables and draw graphs—declaring it all to be obvious to a POSITA at the time.  *Id.* at 47-55:



Ex.1003, ¶191.

Dr. Blumenthal may show his work in describing his calculations, but Cisco's claims that a person of skill would find all of this obvious are just unsupported assertion from hindsight—not proper evidence from pertinent art.  The

graphs Dr. Blumenthal drew—even if they are readily understandable—are not proper evidence of what a person of ordinary skill would find obvious from *Taraschuk* or *Wright*. And that is the required inquiry here—what a person of skill would find obvious from the cited art. *Univ. of Strathclyde*, 17 F.4th at 165.

There is nothing in the references to suggest a motivation to apply Dr. Blumenthal's calculation. EX2022, ¶¶96, 105-106 ("there is nothing in *Roberts*, *Taraschuk*, or *Wright* to suggest doing it"). The allegations of obviousness in the declaration and Petition are too conclusory to be accepted here. *See, e.g.*, *In re Kahn*, 441 F.3d at 988.

*Taraschuk* does have its own brief description of its mapping—but Cisco doesn't cite it because it points away from Dr. Blumenthal's analysis. EX2022, ¶¶49, 86-90 ("Reading *Taraschuk,* they would eventually be told to use sampled analog feedback to pre-distort the input words. EX1006 at 7:67-8:5. This also points away from attempts to mathematically pre-calculate a complementary function."). For example, *Taraschuk*'s disclosures are directed to compensating "for the combined non-linear effects of **logic level mismatches through the D/A converter 12 and** the sinusoidal response of the modulator 52." EX1006, 7:61-67 (emphasis added); EX2022, ¶86. When Cisco quotes this disclosure with respect to earlier elements, it pointedly omits the text emphasized above. Petition at 42.

The omitted disclosure suggests a combined compensation that accounts for

logic level mismatches in the D/A converter as well as the real response curve of the modulator, not the separate idealized sinusoidal graphs Dr. Blumenthal calculates. EX2022, ¶¶51 ("There is no disclosure in *Taraschuk* about the possibility of compensating the 'sinusoidal response of the modulator' alone, as Dr. Blumenthal does in his calculations in his declaration. See EX1003 at ¶¶ 170-176. And of course, there is no disclosure of any of the approach or math that Dr. Blumenthal uses there"), 86-87, 105-106.

Cisco and Dr. Blumenthal also completely ignore the mention in *Taraschuk* of "computation of the suitable mapping," which involves receiving an input and "comparing it to a detected sample" of the analog modulator output. EX1006, 7:67-8:5, Fig. 6 (annotated in red below):



Figure 6

*See also id.* at 7:34-38 ("sampled analog signal level (S)"), Fig. 5.

What *Taraschuk* actually describes as an input into its mapping computation is an analog sample detected and fed back from the modulator output—***not*** graphs drawn by and derived table values calculated by Dr. Blumenthal. *Id.* EX2022 at ¶¶49, 86-87, 90. *Taraschuk* actually teaches away from the approach, and its complicated derivation, that Cisco and Dr. Blumenthal claim that a person of skill would adopt. *Id.* at ¶¶50, 87-88. Cisco's failure to address this disclosure, or indeed to cite any disclosure from *Taraschuk*, shows that the Petition is completely without evidentiary foundation in the art on these important elements of all challenged claims. All of the claims should be upheld.

The existence of the need for non-linear compensation in the prior art was known, as the '998 Patent itself explains. EX1001, 1:64-2:5. And the '998 Patent mentions some of the various inefficient prior art solutions for providing non-linear compensation. *Id.*, 2:5-9 (*e.g.*, "biasing of the device into a quasi linear regime coupled with reducing the modulation range" or "use of an analog pre-distortion circuit").

Mentioning non-linear compensation (or mapping) in the context of an admitted, inefficient prior art solution does not render obvious the specific and new solution of the '998 Patent challenged claims. This is true whether that mention appears in the '998 Patent or *Roberts* or *Taraschuk*. *See, e.g.*, EX2022 at ¶34

(mapping determined "based on the converter output pattern, differs from pre-distortion based on real-time measured analog modulator output"); EX1001 at 2:3-7 (disparaging "use of an analog pre-distortion circuit to feed the modulator"); EX1006 at 7:67–8:5 ("a detected sample of the modulator output"); EX1005 at 2:53 ("pre-distorted signal"). To hold otherwise would result in the nonsensical outcome of invalidating patents based on their background statements of the problems they were invented to solve. Cisco fails to explain any of this.

In sum, Petitioner's *Taraschuk* arguments are facially deficient, just like its *Roberts* arguments, and do not show that *Roberts* and *Taraschuk* could render obvious any challenged claim, alone or in combination. There is simply no teaching or suggestion in *Taraschuk* of the claimed "deltas" or "determined based on …" mapping elements—as the Examiner agreed when allowing claims with these elements over those references. EX2003; EX2018; EX2019; EX2021. Prof. Dallesasse's testimony confirms that there is nothing in the cited references to disclose or suggest applying the calculation that Dr. Blumenthal derives, and indeed *Taraschuk*'s thin disclosures of its mapping solution teach away from such a solution. EX2022 at ¶¶50, 84-91, 105-106. Petitioner's Grounds, each of which rely on *Taraschuk* for these important elements, must fail.

### 3.  Dr. Blumenthal's obviousness opinions merely endorse attorney argument and are unsupported by evidence

Cisco has the burden of proof in this proceeding.  35 U.S.C. §316(e):

> In an inter partes review . . . , the petitioner shall have the burden of proving a proposition of unpatentability by a preponderance of the evidence.

*Harmonic Inc. v. Avid Tech., Inc.*, 815 F.3d 1356, 1363 (Fed. Cir. 2016) ("the petitioner has the burden from the onset to show with particularity why the patent it challenges is unpatentable") (*citing* 35 U.S.C. §312(a)(3) (2012) (requiring *inter partes* review petitions to identify "with particularity . . . the evidence that supports the grounds for the challenge to each claim")).

If Cisco fails its burden to provide evidence that proves invalidity, it loses the instituted trial, even if Ramot were to offer no response beyond identifying that failure.  *Apple Inc. v. Zipit Wireless, Inc.*, IPR2021-01124 *et al.*, Paper 14, Decision on Director Review (PTAB Dec. 21, 2022) (designated precedential: Jan. 4, 2023).

Here Cisco alleges only obviousness via a prior art combination.  Petition, 17.  Accordingly, Cisco must prove, *inter alia*: the level of ordinary skill in the art; that a person of ordinary skill in the art would be motivated to and would combine those references; and that the references disclose or render obvious to a person of ordinary skill in the art each and every element.  Each of Cisco's core arguments that it must prove depends on what a person of ordinary skill—here someone with

at least a Master of Science degree in Electrical Engineering and two years of experience working in optics, see EX1003, ¶22; EX2022, ¶¶22-26—would find obvious or combine in 2007. On each of Cisco's core arguments, Cisco offers only the Declaration of Dr. Daniel Blumenthal as "evidence." Petition, 9-10 (level of ordinary skill), 22-27, 85-86 (POSITA reasons to combine), 47-55, 69-71 (what would be obvious to POSITA).

But the Declaration of Dr. Daniel Blumenthal is not properly evidence here, because the opinions of Dr. Daniel Blumenthal are attorney argument affixed with the signature and CV of Dr. Blumenthal. *See, e.g.*, EX2025 (Blumenthal Deposition, Demonstrative D) (reproduced in part below, verbatim material highlighted); IPR2022-00575 Petition, 30, 34; IPR2022-00575, EX1003, ¶¶110, 119:

| Petition, pg. 30 | Declaration of Daniel Blumenthal ¶ 110 |
|---|---|
| The combination is merely a matter of applying a known technique—Taraschuk's look-up table—to a known device, method, or product—Roberts' DSP including a non-linear compensator—ready for improvement to yield predictable results. .... See Ex.1006, 7:15-23. The resulting combination provides the predictable benefits of permitting the non-linearity compensation to be calculated in advance, adjusted during device operation, or both. | Second, the combination is merely a matter of applying a known technique (Taraschuk's look-up table) to a known device, method, or product (Roberts' DSP, including a non-linear compensator) ready for improvement to yield predictable results (allowing non-linear compensation mapping to be computed in advance, during device operation, or both). |
| **Petition, pg. 34** | **Declaration of Daniel Blumenthal ¶ 119** |
| Applying Taraschuk's linearizer mapping technique to Roberts' DSP would have | Applying Taraschuk's linearizer mapping technique to Roberts' DSP would have |

| | |
|---|---|
| achieved the predictable result of compensating for non-linearities in a Mach-Zehnder optical modulator. Ex.1003, ¶ 119. This result is predictable because Taraschuk expressly teaches that its techniques are used to compensate for non-linearities of Mach-Zehnder optical modulators. Ex.1006, 7:56-60. Thus, the combination is merely a matter of applying a known technique (implementing Tarashuk's mapping) to a known device (Roberts' non-linear compensator of the DSP) to yield predictable results (compensating for non-linearities in a Mach-Zehnder optical modulator). Ex.1003, ¶ 119. The combination of Roberts and Taraschuk also represents use of a known technique (Taraschuk's linearizer mapping) to improve similar devices (Roberts' DSP, including a non-linear compensator) in the same way. Ex.1003, ¶ 119. Accordingly, a POSITA would have found it obvious for Roberts' DSP to map between an input digital signal and an output digital signal using the mapping techniques described by Taraschuk. Ex.1003, ¶ 119. | achieved the predictable result of compensating for non-linearities in a Mach-Zehnder optical modulator. This result is predictable because Taraschuk expressly teaches that its techniques are used to compensate for non-linearities of Mach-Zehnder optical modulators. Ex.1006, 7:56-60. Accordingly, the combination is simply a matter of applying a known technique (Taraschuk's mapping) to a known device (Roberts' DSP) ready for improvement to yield predictable results (compensating for non-linearities in a Mach-Zehnder optical modulator). Additionally, the combination of Roberts and Taraschuk represents use of a known technique (Taraschuk's linearizer mapping) to improve similar devices (Roberts' DSP, including a non-linear compensator) in the same way. Thus, a POSITA would have found it obvious for the DSP of Roberts to map between an input digital signal and an output digital signal using the mapping techniques described by Taraschuk. |

Dr. Blumenthal testified that he wrote the declarations "collaboratively" with counsel. EX2024 at 36:18-37:16. He could not recall participating in drafting the Petitions, however. *Id.* at 84:7-10. When asked to comment on the similarity between the Petitions and his Declarations, Dr. Blumenthal was uncooperative—demanding time to verify that what was in Demonstrative D was from the Petition and Declaration. *Id.* at 78:18-80:12, 84:11-88:14. It was.

Attorney argument is not evidence, even if copied into a declaration. *See, e.g.*, *Kinetic Technologies, Inc. v. Skyworks Solutions, Inc.*, IPR2014-00529, 2014

WL 4787238, Paper 8 at 15 (PTAB Sept. 23, 2014) ("***merely repeating an argument from the Petition in the declaration of a proposed expert does not give that argument enhanced probative value***") (emphasis added); *Infobionic, Inc. v. Braemer Manufacturing, LLC.*, IPR2015-01704, 2016 WL 1081571, Paper 11 at 6 (PTAB Feb. 16, 2016).

Dr. Blumenthal's signature—endorsing attorney argument—is not evidence, and declarations like his are frequently and properly ignored. *See, e.g.*, *Samsung Electronics Co., Ltd. v. Rightquestion, LLC*, IPR2022-00251, Paper 17 at 25 (P.T.A.B. June 9, 2022) (declining to credit testimony where "declarant makes these same statements verbatim, without more, and with no additional citations to evidence"). The Board gives such conclusory, unsupported assertions by experts little or no weight. *Id.*

There can be no doubt that the "opinions" in Demonstrative D—taken from the portion of the Petition and "Dr. Blumenthal's" declaration concerning motivation to combine *Roberts* and *Taraschuk*—were largely drafted by counsel. Proof of this can be seen in other Cisco IPR declarations, including those that involve different experts but use the same template. For example, Dr. Blumenthal was also shown demonstratives containing several statements of opinions on motivation to combine, from five different Cisco Petitions with the same counsel, two of which he participated in, and three of which he did not. All have identical

format, with legal language interspersed with parentheses containing nouns, actions, effects, etc. *See, e.g.*, EX2022 (Demonstrative B-2) (reproduced in part below):

> **83**. Accordingly, the combination of Hardcastle and Wurst is merely applying a known technique (Wurst's reference voltage) to a known method (using a threshold) ready for improvement to yield predictable results (triggering an alarm when the power output voltage falls below the reference voltage).

> *Cisco Systems, Inc. v. Oyster Optics, LLC*, Declaration of Daniel Blumenthal, Ex. 1003, IPR2021-00238

> **304**. … The combination is simply applying a known technique (using an array of fold over micromirror devices, per the combined teachings of Tomlinson and Riza) to a known device (Rose's OADM 3100) ready for improvement to yield predictable results (obtain additional alignment for finer power control).

> *Cisco Systems, Inc. v. Capella Photonics, Inc.*, Declaration of Dr. Paul R. Prucnal, Ex. 1003, IPR2021-00290

> **110**.… the combination is simply a matter of applying a known technique (Taraschuk's look-up table) to a known device, method, or product (Roberts' DSP, including a non-linear compensator) ready for improvement to yield predictable results (allowing non-linear

compensation mapping to be computed in advance, during device operation, or both).

*Cisco Systems, Inc. v. Ramot at Tel Aviv University, Ltd.*, Declaration of Daniel Blumenthal, Ex. 1003, IPR2022-00575

**113**.… Accordingly, the combination of Salim with Carter and Maria represents applying a known technique (using programmable logic) to a known device (packet filter) ready for improvement to yield predictable results.

*Cisco Systems, Inc. v. 802 Systems, Inc.*, Declaration of Dr. Henry Houh, Ex. 1003, IPR2021-00619

**78**. … the combination of Aggarwal and Hussain merely applies a known technique (pseudo-wires) to a known method (establishing LSPs) ready for improvement (network efficiency) to yield predictable results.

*Cisco Systems, Inc. v. Monarch Networking Solutions LLC*, Declaration of Dr. Henry Houh, Ex. 1003, IPR2020-01226

*See also* EX2024 at 48:18-58:9 (discussing Demonstrative B-2); EX2026 (Demonstrative C) (showing five similar, and similarly formatted, opinions on the level of skill from different Cisco IPRs and experts); EX2024 at 61:7-62:11.

45

In other words, being a declarant for Cisco in an IPR, which Dr. Blumenthal has done more than twenty times (see EX20204 at 16:1-22:1, page 32-34: Demonstrative A), appears to involve participating in Cisco's fill-in-the-blank "Mad Libs" style of declaration drafting.  EX2025; EX1003, ¶120:

> the combination is simply a matter of applying a known technique [    technique    ] to a known device [    device    ] ready for improvement to yield predictable results [    result    ]

*See also* EX2026; EX1003 at ¶22:

> A person of ordinary skill in the art ("POSITA") in the field of the [    number    ] Patent, as of its earliest possible filing date of [    date    ], would have been someone knowledgeable and familiar with the [    field    ] arts that are pertinent to the [    number    ] Patent.[3] A POSITA would have been familiar with the field of [    field description    ], during the [    timeframe    ]. [] a POSITA would have had a [    degree level    ] degree in [    subject    ], or equivalent training, and approximately [    number    ] years of experience working in the field of [    field description    ]. Lack of work experience can be remedied by additional education, and vice versa.

---

[3] A search on the phrase "arts that are pertinent to the" in the Lex Machina database of all PTAB filings hits on 51 PTAB trials, 21 of which also hit on "Cisco," suggesting widespread use of this formula.

IPR expert declarations are meant to be independent ***testimony***—see 37 C.F.R. §42.53—here in a trial proceeding that could result in Ramot losing valuable, and presumptively valid, intellectual property rights that it worked very hard to develop, disclose, obtain, and enforce. In place of independent and supported testimony, Cisco has instead offered reusable attorney argument, copied in large part verbatim from the Petition (see above, Demonstrative D), and drafted using an apparent script for the opinion statements—one that Cisco and others seem to have adopted for widespread use in their many petitions (see also above, Demonstrative B-2 and C).

The Board should reject this manufactured "testimony" and not credit the obviousness and level of skill opinions in the declaration. *See, e.g.*, *Facebook, Inc. v. Windy City Innovations, LLC*, 973 F.3d 1321 (Fed. Cir. 2020) (upholding finding that copied testimony "did not 'add materially to Petitioner's unpersuasive attorney argument'"); *Facebook, Inc. v. Windy City Innovations, LLC*, IPR2016-01156, 2017 WL 6210806 at *12, Paper 52 at 30 (PTAB Dec. 6, 2017) ("merely repeats Petitioner's argument, nearly verbatim, without citation to the basis for his testimony"). Dr. Blumenthal's "collaborative" involvement in many of the key statements of opinion in the declaration was, at most, participating in the Mad Libs—offering nouns and actions from the prior art to put in the blanks in Cisco's template. EX2025-EX2027. There is no other explanation for the demonstratives,

to which Dr. Blumenthal had no satisfactory answers on cross-examination.  *See, e.g.*, EX2024 at 61:7-62:14; 84:7-88:14.

Their apparent origin as attorney argument is not the only problem with Dr. Blumenthal's core opinions about obviousness and the knowledge of a person of skill in the art.  The "opinions" are also completely bereft of outside support beyond Dr. Blumenthal's say so and references to his CV.  For example, when asked about the lack of citations or support for his opinion about the level of skill in EX1003 ¶22, Dr. Blumenthal referred at length to his credentials as the sole basis for his opinions in the declaration.  EX2024 at 74:9-76:12 (emphases added):

> Q.  Well, let's say that I understand what they mean but I want to check your judgment and your assertion that a person with a master's degree in EE and two years of experience would be familiar with these things.
>
> You haven't given us a single example of any evidence, other than your say-so, that would allow us to check your say-so in this paragraph; right?  There is simply nothing cited here other than your experience.
>
> A.  You have my CV. ***My CV is 43 pages long***. My CV lists in great detail all of the work that I've done, what I've -- the places that I've taught at, the honors and awards that I've had, the consulting that I've done, the publications that I've had. And the publications themselves detail the fields and the -- and the publications that they are in.

48

IPR2022-01283
Patent No. 11,342,998

Many of my publications are in the highest impact journals in the world that go through rigorous peer review, more difficult than most disciplines.

Nature -- in particular, I have many Nature publications. There are many invited papers here. There are -- there are book chapters.

And I think that my CV, which is referenced in my declaration, is very clear -- very clearly points to the specific experience in these different fields, that I could certainly provide the documents for every single one of these. And it would probably constitute 5,000 or 10,000 pages.

I think that's why we do a CV, is because it's supposed to summarize our work experience and our other experience on paper.

You can see Professional Activities.  We're looking at societies and workshops and -- and conferences that span from 1993.

You can see publications reviewer, you know, since 1993.

I mean, ***there's untold amount of material here that is hard document that you or anybody else could go to to see the evidence of my experience behind these statements***.

So I think, actually, that clearly there is a lot of evidence that supports what's in my declaration.

Then, immediately after this, Dr. Blumenthal was asked to confirm that he was "asking the reader, the board, to accept your opinion here based on your credibility and your experience as evidenced by your CV," and he inexplicably denied it.  *Id.* at 76:13-78:6:

49

Q. You're asking the board to accept this opinion based on your credibility in -- in this field; right?

A. I cannot agree with your statement.

Q. Well, then, what's wrong with my statement?

I -- I thought -- I was trying to agree with you. I don't understand what's wrong with my statement.

A. I just can't agree with your statement.

Q. Why not?

A. I -- I -- I think I've answered your question.

*See also id.* at 65:3-18 ("I have 40 years of experience. I'm considered a world expert. And I think that my experience counts for an awful lot. And that's what I used").

In another example, when asked about the lack of citations or support for his statements that optical links may be described as "RF" by those of ordinary skill in the art (EX1003 ¶¶29, 50), Dr. Blumenthal again referred to his "wide knowledge of the art" and his CV. EX2024 at 89:9-93:17 ("I am an expert in these fields"); *see also id.* at 98:7-99:7 ("A. Okay. Let's go to my CV so that I can answer your question.").

Numerous other opinions supporting Cisco's arguments are presented without any citation to evidence beyond Dr. Blumenthal's say so. *See, e.g.*, EX1003 at ¶¶22 (level of skill), 111, 114, 120 (conclusory statements about combining references), 186, 189-190, 198 (conclusory obviousness assertions).

And these core opinions are also verbatim copied from the Petition, suggesting that

they are not even Dr. Blumethal's say-so, but counsel for Cisco's:

| Petition, 48 | EX1003, ¶110 |
|---|---|
| A POSITA would have recognized that the mapping performed by the combination of Roberts and Taraschuk teaches this limitation because having a digital-to-digital mapping in which the differences (i.e., *deltas*) between successive output values either increase, decrease, or stay the same is merely an obvious aspect of compensating for the nonlinear response curve of Roberts' Mach-Zehnder modulator. As discussed in the Background section above, a POSITA would have been familiar with the sinusoidal response curve of an MZM—that is, that an MZM produces a sinusoidal intensity response relative to the applied input voltage. Ex.1003, ¶189. | A POSITA would have recognized that the mapping performed by the combination of Roberts and Taraschuk teaches this limitation because having a digital-to-digital mapping in which the differences (i.e., *deltas*) between successive output values either increase, decrease, or stay the same is merely an obvious aspect of compensating for the nonlinear response curve of Roberts' Mach-Zehnder modulator. As discussed in the Background section above, a POSITA would have been familiar with the sinusoidal response curve of an MZM—that is, that an MZM produces a sinusoidal intensity response relative to the applied input voltage. |

"Attorney argument is not evidence," even if signed by Dr. Blumenthal. *Icon Health and Fitness, Inc. v. Strava, Inc.*, 849 F.3d 1034, 1043 (Fed. Cir. 2017); M.P.E.P. §2145 ("arguments of counsel cannot take the place of factually supported objective evidence").

Dr. Blumenthal's CV is not evidence. It reflects many professional accomplishments, as he readily points out. His experience also reflects invited talks for Cisco (EX2024 at 31:3-32:4), Cisco's past funding of his lab (*id.* at 32:6-33:21), and more than twenty IPR declarations for Cisco (*id.* at 16:1-22:1). He could not recall an expert assignment where he was not on the side arguing invalidity, nor

IPR2022-01283
Patent No. 11,342,998

one he may have turned down because he didn't think the patent was invalid. EX2024 at 26:4-27:13. Cisco, and Dr. Blumenthal, file and declare in a lot of Petitions. There is nothing wrong with that in itself, unless they neglect the requirement of providing *evidence* to prove their repeated arguments, as has happened here.

The Federal Rules of Evidence, including F.R.E. 702 requiring expert testimony to be reliable and supported, apply in this proceeding. 37 C.F.R. §42.62. "Expert testimony that does not disclose the underlying facts or data on which the opinion is based is entitled to little or no weight." 37 C.F.R. §42.65(a); *In re Am. Acad. of Sci. Tech Ctr.*, 367 F.3d 1359, 1368 (Fed. Cir. 2004) ("[T]he Board is entitled to weigh the declarations and conclude that the lack of factual corroboration warrants discounting the opinions expressed in the declarations."); *Rohm and Haas Co. v. Brotech Corp.*, 127 F.3d 1089, 1092 (Fed. Cir. 1997) (noting that a fact finder is not required to "credit the unsupported assertions of an expert witness").

Regardless of their CV or qualifications, experts cannot offer opinions based solely on their say-so, as Dr. Blumenthal repeatedly does here. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (courts not required to "admit opinion evidence that is connected to existing data only by the ipse dixit of the expert.") This is even more true when substantial portions of that unsupported say-so was drafted by counsel on a template, as discussed above.

52

For all of these reasons, in addition to the lack of merit in the arguments themselves, the Board should give no weight to Dr. Blumenthal's obviousness opinions and unsupported statements about the knowledge of a person of ordinary skill in the art.

### 4. Petitioner failed to show that *Roberts* would be combined with *Taraschuk*

Neither *Roberts* nor *Taraschuk,* nor the combination of the two, renders obvious the "deltas" or "determined based on…" elements as claimed, for all of the reasons explained above in Sections 1 and 2. *Taraschuk* does nothing to cure the facial deficiencies of *Roberts*—acknowledged repeatedly by the Examiner via claim allowance—with respect to these elements.

Cisco failed to show that a person of ordinary skill would have been motivated to combine *Roberts* and *Taraschuk*, especially with respect to the "deltas" elements of the challenged claims, the alleged implementation of which is not explained in either reference in any way that would suggest combination (other than via impermissible hindsight). *See* Petition at 47-55.

Cisco does not identify problem statements or specific motivations that would have led from *Roberts*' poorly-described "linear compensator 18" to the sparse disclosures of "linearizer 44" in *Taraschuk*. Petition, 22-27. Instead, the Petition merely cites the two references in proximity—suggesting circularly that a

person of skill would "apply Taraschuk's mapping techniques to Roberts' non-linear compensator to compensate for non-linear effects". *Id.*, 24; EX1003, ¶151 ("both used to compensate for non-linearities").

But this is, at best, an improper invitation to engage in result-based hindsight reasoning—attributing specific elements missing from one reference to the other—while neither reference actually has any supporting disclosure beyond sparse mention of the broad concept of compensation. Cisco must not use the disclosure of the challenged patent as a roadmap, and hindsight analysis does not support obviousness. *See, e.g.*, *Apple Inc. v. Contentguard Holdings, Inc.*, IPR2015-00442, Paper 9 at 11-12, 17 (P.T.A.B. July 13, 2015) ("analysis infected with impermissible hindsight cannot form the basis of an obviousness finding"); *see also, e.g.*, *Graham v. John Deere Co.*, 383 U.S. 1, 36 (1966); *Pers. Web Techs., LLC v. Apple, Inc.*, 848 F.3d 987, 993-94 (Fed. Cir. 2017) ("[T]hat reasoning seems to say no more than that a skilled artisan, once presented with the two references, would have understood that they could be combined. And that is not enough: it does not imply a motivation to pick out those two references and combine them to arrive at the claimed invention.").

The elements of the alleged combination "would not have seemed obvious to an engineer of ordinary skill, reviewing *Roberts* with no advance knowledge of the inventive solution." EX2022 at ¶70. Neither *Roberts* nor *Taraschuk* are

"directed to" linear compensation as Dr. Blumenthal claims. *Id.* at ¶71 (*citing* EX1003 at ¶111). The references put up obstacles to their ever being combined, including the complete lack of explanation in *Roberts*, the different primary objective of *Taraschuk*, and how deeply any optical modulator discussion is buried in it. *Id.* at ¶72 ("if they did somehow read far enough into *Taraschuk* to encounter discussion of modulator non-linearity, they would merely find an approach based on analog feedback from the output of the modulator deriving input pre-distortion"). *Roberts* doesn't cite or refer to *Taraschuk* even though they share an inventor. *Id.* at ¶71.

As discussed above, Cisco has failed to show how either *Roberts* or *Taraschuk* explain how their alleged mapping could work. In fact they don't explain, with the sparse disclosure of *Taraschuk* pointing only to an analog sample of the modulator output that is not disclosed in *Roberts*—because *Roberts* gives no explanation at all. *See, e.g.*, EX1006, 7:67-8:5 ("comparing it to a detected sample of the modulator output"), Fig. 6, 7:34-39 ("sampled analog signal level (S)").

Cisco and Dr. Blumenthal mischaracterize the "logic level mismatches" of *Taraschuk*, attempting wrongly to attribute them to the disclosed modulator. *See* EX2022 at ¶74 (*citing* EX1003 at ¶113). The discussion of logic level mismatch in *Taraschuk* is directed to a completely different purpose—of aligning logic levels between individual bits of a parallel digital signal through bitwise adjustments. *Id.*

at ¶¶45, 47-48. Cisco and Dr. Blumenthal also repeatedly cite a disclosure of "known" technique as if what is known is somehow the claimed mapping elements, when in fact the only known technique explained in *Taraschuk* is the real-time analog output sample feedback approach. *Id.* at ¶75; EX1006 at 7:34-39, 7:67-8:5.

Cisco has failed to show any reason why a person of skill looking at *Roberts* would be motivated to look to the different approach of *Taraschuk* (*e.g.*, Figure 6). EX2022 at ¶¶70-75. Cisco's conclusory statements and recitations of what each reference allegedly individually discloses fail to supply the required motivation—the motivation that it must show to support the combination. *Id.* at ¶76.

Finally, Cisco overlooks significant evidence of non-obviousness, such as the fact that the research leading to the patents was published in peer reviewed journals (*see* EX2022 at ¶108) and that patents in this family were approved by USPTO Examiners eleven times (*see id.* at ¶107).

Neither *Roberts* nor *Taraschuk* is alleged to render any challenged claim obvious on its own. For these additional reasons, including because the Petition depends entirely on the alleged combination of *Roberts* and *Taraschuk* and those references would not be combined, Cisco has failed to demonstrate the required motivation to combine and the claims should be upheld. EX2022 at ¶¶70-76.

IPR2022-01283
Patent No. 11,342,998

> **5.    Petitioner failed to show that *Roberts* and *Taraschuk* would be combined with *Wright*, or that *Wright* renders claim elements obvious**

Cisco includes a cursory second Ground that seeks to add the unrelated cellular radio amplifier *Wright* reference (*see* Petition, 85-86)—implicitly acknowledging that Cisco's reliance on it as evidence of the alleged background knowledge of a POSITA in its first Ground is improper. *See* Petition, 85.

*Wright* is directed to electrical signal power amplifiers used in radio frequency (RF) communications in cellular networks. EX2022 at ¶51. As Prof. Dallesasse explains, it uses "digital pre-distortion to make the gain response curve of the power amplifier more linear." *Id.*; EX1009 at 3:7-15, 6:27-29. The response curve shown in Figure 6A is typical of RF power amplifiers. EX2022 at ¶51.

The typical power amplifier curve as shown in Figure 6A is not sinusoidal. *Id.*, ¶52; EX2024 at 104:2-105:9 (with hedging); EX1009 at Figure 6A.

*Wright* is not within the background knowledge of a person of ordinary skill in the art, and Cisco failed to prove otherwise. *See* Paper 10, Decision at 37-38 ("there is little evidence of record that would support a finding that the teachings of Wright would have been known and understood as background knowledge of a POSITA"); EX2022 at ¶¶52, 96-101. As Prof. Dallesasse explains, "an ordinarily skilled engineer at the time would not have turned to wireless RF amplifier patents looking for solutions to problems in the field of optical modulators for fiber optic

communications" and "there is nothing in Roberts or Taraschuk to suggest doing so." EX2022, ¶96. Further, "the different field of wireless RF communications," would not be "something a person of ordinary skill in optics would turn to." *Id.*, ¶97. "Opto-electronics and wireless RF electronics are typically taught (at the time and today) within separate specialties within Electrical Engineering, with different courses." *Id.*, ¶¶99-100 (providing examples); *id.* ("Because these different fields within Electrical Engineering are taught on different well-defined course paths, engineers of ordinary skill taught from one path are unlikely to be familiar with the other, and can and do become conditioned against looking across specializations to research done in other areas").

*Wright* is not in the same field of endeavor as *Roberts* or *Taraschuk*. EX2022, ¶¶53, 102. Cisco and Dr. Blumenthal do not claim otherwise. Petition at 85-86; EX1003, ¶350.

The Board instituted—despite Cisco's failure to establish *Wright* as within the background of a person of skill in the art (it is not) or the same field of endeavor (it is not)—suggesting that it might be "reasonably pertinent." *See* Paper 12, 37-38. The lack of a record on this point was Cisco's failure of its burden to produce evidence. Wright is not reasonably pertinent, as explained below and by Prof. Dallesasse in his testimony.

*Wright* is not analogous art, because it is not in the same field of endeavor and is "not reasonably pertinent to the problem of optical modulator linearization being solved in the '998 Patent." EX2022, ¶102. *Wright* is not addressed to the same problem. *Id.*, ¶53 ("The techniques and devices used in wireless amplifiers were very different from those in optical modulators. And a person of ordinary skill in the art of optical communication would not be motivated to look at, and would not find reasonably pertinent, discussions of distortion in wireless power amplifier circuits in *Wright*"), ¶103 ("Wright concerns RF power amplifiers and linearizing gain. The distortion appearing in an amplifier response curve comes from a different source, and has different characteristic curves than non-linearities appearing in opto-electronic modulators such as Mach-Zehnder Interferometers").

Dr. Blumenthal's testimony lacks any assertion that *Wright* is analogous art. *See* EX1003, ¶105 (Roberts), ¶109 (Taraschuk), ¶350. His statement of opinion on motivation to combine is another "collaborative" Mad Lib. *Id.* at ¶354:

> Thus, the combination of Wright with Roberts and Taraschuk is merely the use of known technique (Wright's technique for designing a non-linear compensation look-up table) to improve similar methods (Taraschuk's non-linear compensation look-up table) in the same way.

It is also the definition of improper hindsight, finding something mentioned in the '998 Patent (non-linear compensation) and asserting that as an alleged link between references that happen to mention it.

Again, *Wright* is not analogous art—or within the background knowledge of a person or ordinary skill in the art—and Cisco has failed its burden to prove otherwise. *See, e.g.*, EX2022, ¶¶52-53, 96-102. A person of ordinary skill in the art would not have been motivated to and would not combine *Wright* with *Taraschuk* or *Roberts*. *See, e.g.*, *id.*, ¶¶53, 104-106.

As Prof. Dallesasse explains, "distortion appearing in an amplifier response curve comes from a different source, and has different characteristic curves than non-linearities appearing in opto-electronic modulators." *Id.*, ¶103.

And *Taraschuk* teaches a mapping that is measured from the modulator output, which is completely different and teaches away from the calculation approach Dr. Blumenthal is applying. *See, e.g.*, EX1006, 7:67-8:5 ("comparing it to a detected sample of the modulator output"), Fig. 6, 7:25-38 ("sampled analog signal level (S)"); EX2022, ¶¶104-105.

Neither *Wright's* Fig. 6A disclosures nor Dr. Blumenthal's graphs and table values have any relation to the real-time analog sample feedback pre-distortion that is mentioned in *Taraschuk*. *Id.* The actual disclosures of *Taraschuk*, which Cisco ignores, teach away from *Wright's* disclosures in the same way they teach away from Dr. Blumenthal's "analysis." *Wright* is not properly considered in combination with the other references here for the same reason it isn't proper evidence of background knowledge. *Wright* is in a different field, not reasonably

pertinent, and uses a different approach to compensation as what is discussed (briefly) in *Taraschuk*. EX2022, ¶¶104-105. Also, "there is nothing in Roberts, Taraschuk, or Wright to suggest doing" Dr. Blumenthal's sinusoidal compensation function calculation. *Id.*, ¶106.

Cisco's brief discussion of reasons to combine with *Wright* (*see* Petition at 85-86) again simply juxtaposes disclosures without identifying any problem statements or specific motivations that would have led from *Roberts* or *Taraschuk* into the separate field of cellular RF amplifier circuits. Cisco's argument boils down to alleging that both *Taraschuk* and *Wright* mention "non-linear compensation" and a "look-up table." *Id.*, 86. Again, these are unrelated references from different fields of endeavor. No reason is given to look from one to the other. Nothing is given to counter the detailed and supported testimony of Prof. Dallesasse here. EX2022 at ¶¶51-53, 96-106.

On the substance, Cisco's second Ground merely references the claim analysis of the first. Petition at 86. It is also deficient and inherits all of the failures of proof discussed above. The claims should be upheld.

## IV.    Conclusion

For all of the reasons detailed in Patent Owner's Preliminary Response (Paper 7), Sur-Reply (Paper 11), Motion (Paper 14), and for all of the reasons given

IPR2022-01283
Patent No. 11,342,998

above, including because Cisco has failed to meet its burden of proof or even supply

credible evidence, the Board should uphold each of the challenged claims.


Dated:  June 14, 2023                    Respectfully submitted,


/s/ Corey Johanningmeier
Brenda Entzminger, Lead Counsel
Reg. No. 76,896
Corey Johanningmeier, Back-Up Counsel
(*pro hac vice*)
**BUNSOW DE MORY LLP**
701 El Camino Real
Redwood City, CA 94063
Telephone: 650-351-7248
Facsimile: 415-426-4744
bentzminger@bdiplaw.com
cjohanningmeier@bdiplaw.com

*Counsel for Patent Owner*

IPR2022-01283
Patent No. 11,342,998

## 37 C.F.R. §42.24(d) CERTIFICATION

The undersigned hereby certifies that this submission, excluding the tables

of contents, certificate of word count, exhibit list, and certificate of service,

contains 13,475 words, as determined using the standard word counting feature of

the Microsoft Word program.

Dated:  June 14, 2023

/s/ Brenda Entzminger
Brenda Entzminger
Reg. No. 76,896
**BUNSOW DE MORY LLP**
701 El Camino Real
Redwood City, CA 94063
Telephone: 650-351-7248
Facsimile: 415-426-4744
bentzminger@bdiplaw.com

*Lead Counsel for Patent Owner*

63

IPR2022-01283
Patent No. 11,342,998

## CERTIFICATE OF SERVICE

Petitioner has consented to e-mail service in this proceeding.  Pursuant to 37

C.F.R. §42.6, the undersigned certifies that on June 14, 2023, a copy of the foregoing

document was served by email upon the following counsel at the below email

addresses:

Theodore M. Foster (USPTO Reg. No. 57,456)
ipr.theo.foster@haynesboone.com
HAYNES AND BOONE, LLP
2323 Victory Ave. Suite 700
Dallas, TX 75219
Phone: (972) 739-8649

David L. McCombs (USPTO Reg. No. 32,271)
David.mccombs.ipr@haynesboone.com
HAYNES AND BOONE, LLP
2323 Victory Ave. Suite 700
Dallas, TX 75219
Phone: (214) 651-5533

Calmann J. Clements
calmann.clements.ipr@haynesboone.com
HAYNES AND BOONE, LLP
2323 Victory Ave. Suite 700
Dallas, TX 75219
Phone: (972) 739-8638

*/s/ Brenda Entzminger*
Brenda Entzminger
Reg. No. 76,896
**BUNSOW DE MORY LLP**
701 El Camino Real
Redwood City, CA 94063

IPR2022-01283
Patent No. 11,342,998

Telephone: 650-351-7248
Facsimile: 415-426-4744
bentzminger@bdiplaw.com

*Lead Counsel for Patent Owner*