EXHIBIT Q

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

CISCO SYSTEMS, INC.,
Petitioner

U.S. Patent No. 11,342,998

_____

**DECLARATION OF DANIEL BLUMENTHAL,
UNDER 37 C.F.R. § 1.68 IN SUPPORT OF PETITION FOR
*INTER PARTES* REVIEW**

Ex.1003
CISCO SYSTEMS, INC. / Page 1 of 211

TABLE OF CONTENTS

I.     Introduction ...................................................................................................7

II.    Qualifications and Professional Experience ..................................................9

III.   Level of Ordinary Skill in the Art ................................................................16

IV.    Relevant Legal Standards .............................................................................17

V.     Background ..................................................................................................19

       A.    Optical Transmission .........................................................................19

       B.    Fiber Optic and Integrated Optic Waveguides ..................................26

       C.    Laser Types and Pulsed Optical Sources ..........................................33

       D.    Optical Data Modulators ...................................................................41

       E.    Optical Data Modulation ...................................................................45

       F.    Baseband and Carriers .......................................................................54

       G.    Optical Multiplexing .........................................................................55

       H.    Coherent Optical Modulators ............................................................58

       I.    Modulator Linearization ....................................................................62

       J.    Channel Multiplexing ........................................................................71

VI.    The '998 Patent .............................................................................................73

VII.   Claim Construction ......................................................................................77

       A.    "digital" ..............................................................................................77

       B.    "digital to digital converter" / "digital-to-digital mapping" ..............77

       C.    "modulator" .......................................................................................78

VIII.  Identification of how the Claims are Unpatentable ......................................78

Ex.1003
CISCO SYSTEMS, INC. / Page 2 of 211

| | | |
|---|---|---|
| A. | Ground 1: Claims 1-63 are obvious under 35 U.S.C. § 103(a) over Roberts and Taraschuk. | 79 |
| | 1. Summary of Roberts | 79 |
| | 2. Summary of Taraschuk | 82 |
| | 3. Reasons to Combine Roberts and Taraschuk | 84 |
| | 4. Claim 1 | 90 |
| | 5. Claim 2 | 149 |
| | 6. Claim 3 | 156 |
| | 7. Claim 4 | 157 |
| | 8. Claim 5 | 159 |
| | 9. Claim 6 | 161 |
| | 10. Claim 7 | 164 |
| | 11. Claim 8 | 164 |
| | 12. Claim 9 | 165 |
| | 13. Claim 10 | 166 |
| | 14. Claim 11 | 166 |
| | 15. Claim 12 | 167 |
| | 16. Claim 13 | 170 |
| | 17. Claim 14 | 175 |
| | 18. Claim 15 | 177 |
| | 19. Claim 16 | 178 |
| | 20. Claim 17 | 179 |
| | 21. Claim 18 | 180 |

22. Claim 19 ................................................................................. 180

23. Claim 20 ................................................................................. 180

24. Claim 21 ................................................................................. 181

25. Claim 22 ................................................................................. 181

26. Claim 23 ................................................................................. 182

27. Claim 24 ................................................................................. 182

28. Claim 25 ................................................................................. 182

29. Claim 26 ................................................................................. 182

30. Claim 27 ................................................................................. 182

31. Claim 28 ................................................................................. 183

32. Claim 29 ................................................................................. 183

33. Claim 30 ................................................................................. 183

34. Claim 31 ................................................................................. 183

35. Claim 32 ................................................................................. 183

36. Claim 33 ................................................................................. 192

37. Claim 34 ................................................................................. 193

38. Claim 35 ................................................................................. 193

39. Claim 36 ................................................................................. 194

40. Claim 37 ................................................................................. 194

41. Claim 38 ................................................................................. 194

42. Claim 39 ................................................................................. 194

43. Claim 40 ................................................................................. 194

44. Claim 41 ................................................................................. 195

45. Claim 42 ................................................................................................ 195

46. Claim 43 ................................................................................................ 195

47. Claim 42 ................................................................................................ 195

48. Claim 45 ................................................................................................ 195

49. Claim 46 ................................................................................................ 200

50. Claim 47 ................................................................................................ 201

51. Claim 48 ................................................................................................ 201

52. Claim 49 ................................................................................................ 202

53. Claim 50 ................................................................................................ 202

54. Claim 51 ................................................................................................ 202

55. Claim 52 ................................................................................................ 202

56. Claim 53 ................................................................................................ 202

57. Claim 54 ................................................................................................ 203

58. Claim 55 ................................................................................................ 203

59. Claim 56 ................................................................................................ 204

60. Claim 57 ................................................................................................ 204

61. Claim 58 ................................................................................................ 204

62. Claim 59 ................................................................................................ 205

63. Claim 60 ................................................................................................ 206

64. Claim 61 ................................................................................................ 206

65. Claim 62 ................................................................................................ 206

66. Claim 63 ................................................................................................ 206

     B.    Ground 2: Claims 1-63 are obvious under 35 U.S.C. § 103(a) over Roberts, Taraschuk, and Wright. ............................................... 207

     1.    Summary of Wright ........................................................................... 207

     2.    Reasons to combine Wright with Roberts and Taraschuk ................ 208

     3.    Claims 1-63 ....................................................................................... 210

Conclusion ................................................................................................................ 211

I, Daniel Blumenthal, do hereby declare as follows:

# I. INTRODUCTION

1. I am making this declaration at the request of Cisco Systems, Inc. in the matter of the *Inter Partes* Review of U.S. Patent No. 11,342,998 ("the '998 Patent") to Ehrlichman *et al*.

2. I am being compensated for my work in this matter at my standard hourly rate. I am also being reimbursed for reasonable and customary expenses associated with my work and testimony in this investigation. My compensation is not contingent on the outcome of this matter or the specifics of my testimony.

3. I have been asked to provide my opinions regarding whether claims 1-63 ("the Challenged Claims") of the '998 Patent are unpatentable as they would have been obvious to a person having ordinary skill in the art ("POSITA") at the time of the alleged invention, in light of the prior art. It is my opinion that all of the limitations of the Challenged Claims would have been obvious to a POSITA.

4. In the preparation of this declaration, I have studied:

   a. the '998 Patent, Ex.1001;

   b. the prosecution history of the '998 Patent ("'998 File History"), Ex.1002;

   c. U.S. Patent No. 7,277,603 to Roberts *et al.* ("Roberts"), Ex.1005;

   d. U.S Patent No. 6,781,537 to Taraschuk *et al.* ("Taraschuk"), Ex.1006;

choosing from a finite number of identified, predictable solutions, with a reasonable expectation of success; and (f) some teaching, suggestion, or motivation in the prior art that would have led one of ordinary skill to modify the prior art reference or to combine prior art reference teachings to arrive at the claimed invention.

## V.     BACKGROUND

### A.     Optical Transmission

28.     Optical fiber has proved a cost-efficient way to modulate and receive optical signals over distances since at least the 1970s, and the basic model of a fiber transmission link has remained essentially the same. *See generally* Ex.1019. The basic elements of a point-to-point fiber optic transmission link are shown in Fig. A[1] below. *See also*, Ex.1015, pp. 15-19.

---

[1] Figs. A-N are my own creations, some of which have been adapted from various references as indicated.

Blumenthal Declaration                    *Inter Partes* Review of U.S. 11,342,998



**Fig. A**

29.     The link includes an optical transmitter and receiver connected over an optical fiber and depending on the distance and link data capacity, may use optical amplification during transmission. The transmitter converts electrically modulated data to a modulated optical-carrier signal that is coupled to an optical transmission fiber via a physical link interface. The electrical data can externally modulate a continuous wave (cw) laser drive via an optical data modulator or direct drive the laser. In both cases, interface drive electronics are used to match the data source to the transmission modulation format and requirements for driving the external modulator or directly driving the laser. Two basic types of links are the digital and analog fiber link, the latter sometimes referred to as radio frequency or RF. In addition to the data modulated laser, transmitters may contain elements like

an optical amplifier, an optical filter, an optical isolator and other components based on the application requirements, data modulation type and data rate. *See e.g.*, Ex.1015, pp. 149 – 153.

30. After transmission over the fiber, an optical receiver is used to convert the optical data back to an electronic analog baseband electrical signal. This electrical signal is then amplified, filtered and demodulated. In the case of digital transmission, data and clock recovery circuits are used to deliver the original electronic data with as low a bit error (or error in transmitted and received bits) as required. With an analog transmission link, the receiver must accurately reproduce the original signal with high fidelity and low harmonic distortion (e.g., minimal distortion). In most cases, the signal to noise ratio (SNR) and distortion of the signals are of critical importance in low error rate digital data transmission or high fidelity, low distortion analog signal transmission. Noise sources and nonlinearities in the various transmitter, fiber and receiver portions must be considered and compensated for appropriately. *See e.g.*, Ex.1015, pp. 149 – 153.

31. A basic receiver includes a photodetector that receives the optical signal from the transmission fiber and converts the optical signal to a modulated electrical current representative of the received signal. Depending on the link design and transmission modulation format, there can be an optical filter and/or an optical demodulator prior to photodetection. A series of stages that perform

would have involved merely the use of known linearizer designs and known linearizer functionality. I also note that Taraschuk describes how its lookup table mapping may be either "calculated in advance" or updated "periodically" using a feedback loop. Taraschuk, 7:11-39. Thus, the linearizer concepts of Taraschuk could be combined with Roberts' system either with or without the use of a feedback loop.

115.  Because such techniques were well-known for use with linearizers, as noted by Taraschuk, a POSITA would have had reason to believe that using Taraschuk's mapping technique with the DSP of Roberts would have worked as expected. Roberts teaches that its DSP incorporates a "non-linear compensator" (i.e., a linearizer). Roberts, 6:31-37. Thus, a POSITA would have expected a reasonable likelihood of success when applying Taraschuk's linearizer mapping technique to Roberts' DSP, which includes a non-linear compensator. Success would have been expected regardless of the downstream mechanism by which the pre-distorted signal (i.e., the output of the compensator) is applied to the modulator.

116.  In addition to implementing Taraschuk's mapping techniques into Roberts's DSP, a POSITA would have found it obvious to implement known modulator variations as taught by Taraschuk. While Taraschuk notes that its optical modulator may be a Mach-Zehnder modulator, Taraschuk also notes that

linearization techniques are applicable and useful for other types of modulators, particularly directly driven lasers: "[I]t will be appreciated that the [linearization] techniques described above … may equally be used to drive an optical signal source [i.e., a laser]." Taraschuk, 8:62-65.

117. A POSITA would have recognized that Taraschuk's linearizer is applicable to optical modulators in general; Taraschuk confirms this understanding by stating that the linearizer is "designed in a known manner" (meaning that the linearizer's design is not specific to Taraschuk). Taraschuk, 6:61-65. As such, a POSITA would have recognized that Taraschuk's linearizer teaching could be applied to modulators with one or more electrodes, where direct drive would be used for a multi-electrode modulator or a DAC would be used with a single-electrode modulator. Therefore, a POSITA would have had a reasonable likelihood of success when applying the mapping techniques of Taraschuk to Roberts' DSP.

118. For example, Taraschuk in Fig. 6 illustrates a digital-to-analog converter (DAC) 16 that applies the pre-distorted output of the linearizer 44 to the modulator 52. Roberts in Fig. 4 illustrates the pre-distorted output of the DSP 34 to electrodes 40 of the MZM 4. While Taraschuk describes using a DAC to apply the pre-distorted signal to the MZM, a POSITA would have understood that Taraschuk's linearization techniques would be applicable to the teachings of Roberts. Indeed, Taraschuk also contemplates examples in which the linearizer

Blumenthal Declaration                    *Inter Partes* Review of U.S. 11,342,998

compensates for the non-linearities of an optical modulator alone:

"…compensating non-linearities of the A/D converter (and/**or the optical modulator** 52)…." Taraschuk, 8:49-52.

119.   A POSITA also would have expected success in the combination because Roberts illustrates in Fig. 2 a prior art device that, like Taraschuk, uses a DAC to drive a Mach-Zehnder modulator. Roberts describes that prior art device as using the same "non-linear compensator 18" that Roberts suggests integrated into the DSP of Roberts' Fig. 4 example (where the DSP directly, digitally drives the Mach-Zehnder modulator). Roberts, 6:31-56. Because Roberts suggests using the same non-linear compensator either with or without a DAC, a POSITA would have had a reasonable expectation of success in using Taraschuk's linearizer techniques without a DAC, such as in Roberts' Fig. 4.

120.   Applying Taraschuk's linearizer mapping technique to Roberts' DSP would have achieved the predictable result of compensating for non-linearities in a Mach-Zehnder optical modulator. This result is predictable because Taraschuk expressly teaches that its techniques are used to compensate for non-linearities of Mach-Zehnder optical modulators. Taraschuk, 7:56-60. Accordingly, the combination is simply a matter of applying a known technique (Tarashuk's mapping) to a known device (Roberts' DSP) ready for improvement to yield predictable results (compensating for non-linearities in a Mach-Zehnder optical

## CONCLUSION

**356.** This declaration and my opinions herein are made to the best of my knowledge and understanding, and based on the material available to me, at the time of signing this declaration. I declare that all statements made herein on my own knowledge are true and that all statements made on information and belief are believed to be true, and further, that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 or Title 18 of the United States Code.

Date: July 20, 2022