# EXHIBIT R

UNITED STATES PATENT AND TRADEMARK OFFICE

————————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

————————————

CISCO SYSTEMS, INC.,
Petitioner,
v.
RAMOT AT TEL AVIV UNIVERSITY LTD.,
Patent Owner.

————————————

Case IPR2022-00575
Patent No. 11,133,872

————————————

**RAMOT AT TEL AVIV UNIVERSITY LTD.'S
PATENT OWNER RESPONSE**

## TABLE OF CONTENTS

Page

I.    Introduction...................................................................................1

II.   Overview, History, and Construction of the '872 Patent ................4

      A.    The '872 Patent ..................................................................4

      B.    The '872 Patent Challenged Claims (IPR2022-00575 Petition)...........7

      C.    Prosecution History of the '872 Patent .............................10

            1.    This proceeding should not have been instituted......................14

      D.    Claim Construction ..........................................................16

      E.    Effective Priority Date ......................................................22

      F.    Level of Ordinary Skill in the Art......................................22

III.  Cisco failed to prove that the challenged claims are obvious over *Roberts* in combination with *Taraschuk*....................................22

            1.    Petitioner failed to show that *Roberts* discloses or renders obvious "mapping . . . determined based on a pattern for actuating drive voltages that alters the linearity" ....................24

            2.    Petitioner failed to show that *Taraschuk* discloses or renders obvious "mapping . . . determined based on a pattern for actuating drive voltages that alters the linearity"................................................................28

            3.    Dr. Blumenthal's obviousness opinions merely endorse attorney argument and are unsupported by evidence ..............32

            4.    Petitioner has not shown that *Roberts* would be combined with *Taraschuk*.................................................................45

            5.    Petitioner failed to show that *Roberts* and *Taraschuk* teach or suggest compensating for optical fiber non-linearities ...............................................................................50

IPR2022-00575
Patent No. 11,133,872

IV.    Conclusion ......................................................................................................51

IPR2022-00575
Patent No. 11,133,872

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Apple Inc. v. Contentguard Holdings, Inc.*,
   IPR2015-00442 (P.T.A.B. July 13, 2015) ..........................................................47

*Apple Inc. v. Zipit Wireless, Inc.*,
   IPR2021-01124 (PTAB Dec. 21, 2022).............................................................33

*BlephEx, LLC v. Myco Industries, Inc.*,
   24 F.4th 1391 (Fed. Cir. 2022) .......................................................................15

*Dynatemp Int'l, Inc. v. R421A LLC*,
   IPR2020-01660 (P.T.A.B. Apr. 20, 2021)........................................................15

*Ex Parte Jutta Schomacher, et al.*,
   Appeal 2021-001691, Decision, 2022 WL 1186251  (P.T.A.B. April 11, 2022)24

*Facebook, Inc. v. Windy City Innovations, LLC*,
   973 F.3d 1321 (Fed. Cir. 2020)........................................................................40

*Facebook, Inc. v. Windy City Innovations, LLC*,
   IPR2016-01156, 2017 WL 6210806 Paper 52 at 30 (PTAB Dec. 6, 2017) ........40

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997)........................................................................................45

*Graham v. John Deere Co.*,
   383 U.S. 1 (1966)............................................................................................47

*Harmonic Inc. v. Avid Tech., Inc.*,
   815 F.3d 1356 (Fed. Cir. 2016).......................................................................33

*In re Am. Acad. of Sci. Tech Ctr.*,
   367 F.3d 1359 (Fed. Cir. 2004)........................................................................44

*In re Kahn*,
   441 F.3d 977 (Fed. Cir. 2006).........................................................................27

*In re Smith Int'l, Inc.*,
   871 F.3d 1375 (Fed. Cir. 2017)........................................................................28

*Infobionic, Inc. v. Braemer Manufacturing, LLC.*,
    IPR2015-01704, 2016 WL 1081571 (PTAB Feb. 16, 2016) ............................... 36

*Kinetic Technologies, Inc. v. Skyworks Solutions, Inc.*,
    IPR2014-00529, 2014 WL 4787238 (PTAB Sept. 23, 2014) ............................ 36

*Pers. Web Techs., LLC v. Apple, Inc.*,
    848 F.3d 987 (Fed. Cir. 2017) ................................................................ 47

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) .............................................................. 16

*Rohm and Haas Co. v. Brotech Corp.*,
    127 F.3d 1089 (Fed. Cir. 1997) .............................................................. 45

*Samsung Electronics Co., Ltd. v. Rightquestion, LLC*,
    IPR2022-00251 (P.T.A.B. June 9, 2022) .................................................. 36

*Stone Basket Innovations, LLC v. Cook Med. LLC*,
    892 F.3d 1175 (Fed. Cir. 2018) .............................................................. 14

**Statutes**

35 U.S.C. §282 ................................................................................... 15

35 U.S.C. §312 ................................................................................... 33

35 U.S.C. §314(a) ................................................................................ 2

35 U.S.C. §316(e) ................................................................................ 32

**Other Authorities**

M.P.E.P. § 707.05 ............................................................................... 14

**Regulations**

37 C.F.R. §1.131 ................................................................................. 22

37 C.F.R. §42.53 ................................................................................. 40

37 C.F.R. §42.62 ................................................................................. 44

37 C.F.R. §42.65 ................................................................................. 44

IPR2022-00575
Patent No. 11,133,872

83 Fed. Reg. 51341
 (Oct. 11, 2018) ....................................................................................................16

| Patent Owner's Exhibit List | |
|---|---|
| EX2001 | Declaration of Corey Johanningmeier in Support of Motion for *Pro Hac Vice* Admission |
| EX2002 | Excerpt of Prosecution History of '872 Patent – Nov. 4, 2019 Partial List of References Considered by Examiner |
| EX2003 | Excerpt of Prosecution History of '872 Patent – May 27, 2021 Notice of Allowance |
| EX2004 | EX2010, IPR2020-00484, Paper 10, Decision Denying Institution (P.T.A.B. Aug. 18, 2020) |
| EX2005 | Declaration of Professor John Dallesasse, Ph.D. under 37 C.F.R. § 1.68 in support of Patent Owner's Preliminary Response in IPR2020-00123. |
| EX2006 | *Curriculum Vitae* of Professor Dallesasse |
| EX2007 | [Reserved] |
| EX2008 | Excerpt of Prosecution History of '872 Patent – Nov. 2, 2020 Office Action |
| EX2009 | Excerpt of Prosecution History of '872 Patent – April 30, 2021 Reply |
| EX2010 | Excerpt of Prosecution History of U.S. Patent Application No. 14/325,486, issued as U.S. Patent No. 9,031,417 – List of References Considered by Examiner |
| EX2011 | Excerpt of Prosecution History of U.S. Patent Application No. 14/662,343, issued as U.S. Patent No. 9,203,425 – List of References Considered by Examiner |
| EX2012 | Excerpts of Prosecution History of U.S. Patent Application No. 14/922,165, issued as U.S. Patent No. 9,479,191 – List of References Considered by Examiner |
| EX2013 | Excerpts of Prosecution History of U.S. Patent Application No. 15/298,327, issued as U.S. Patent No. 10,033,465 – List of References Considered by Examiner |

| Patent Owner's Exhibit List | |
|---|---|
| EX2014 | Excerpts of Prosecution History of U.S. Patent Application No. 15/298,373, issued as U.S. Patent No. 10,205,527 – List of References Considered by Examiner |
| EX2015 | Excerpts of Prosecution History of U.S. Patent Application No. 16/234,635, issued as U.S. Patent No. 10,270,535 – List of References Considered by Examiner |
| EX2016 | Excerpts of Prosecution History of U.S. Patent Application No. 16/386,391, issued as U.S. Patent No. 10,461,866 – List of References Considered by Examiner |
| EX2017 | Excerpts of Prosecution History of U.S. Patent Application No. 17/481,934, issued as U.S. Patent No. 11,342,998 – List of References Considered by Examiner |
| EX2018 (**New**) | Declaration of Professor John Dallesasse, Ph.D in support of Patent Owner's Response |
| EX2019 (**New**) | Updated *Curriculum Vitae* of Professor Dallesasse |
| EX2020 (**New**) | Deposition Transcript of Daniel Blumenthal, Ph.D and Demonstratives |
| EX2021 (**New**) | Blumenthal Deposition Demonstrative D |
| EX2022 (**New**) | Blumenthal Deposition Demonstrative B-2 |
| EX2023 (**New**) | Blumenthal Deposition Demonstrative C |

Patent Owner Ramot at Tel Aviv University Ltd. ("Ramot" or "Patent Owner") respectfully submits this Response to Cisco Systems, Inc.'s ("Cisco" or "Petitioner") above-captioned Petition for *Inter Partes* Review of United States Patent No. 11,133,872 ("the '872 Patent").

## I.    Introduction

Cisco's Petition here is part of its third round of proceedings against Ramot's family of optical modulation patents.  The Office has, recently and repeatedly, looked at the Ramot patents and the prior art references relied on here.  For example, in the '872 Patent prosecution, Ramot presented the *Roberts* reference to the Examiner, ***it was used in a rejection***, and then was easily overcome after an amendment.  The *Taraschuk* reference that Cisco now relies on in improper combination with *Roberts* was also presented to the Examiner and considered during prosecution.  EX2002 at 1.  This prior art was considered by the Examiner and the claims were allowed ***less than two years ago***.  EX2003, May 27, 2021 Notice of Allowability at 2 ("the prior arts made of record fail to suggest: . . .").

Cisco was unhappy with and refused to accept the Office's determination, so it began preparing to file this proceeding the moment the '872 Patent issued, filing a declaratory judgment case in district court that same day, and then filing its two Petitions days after Ramot served its mandatory counterclaim.  *See* Request for Rehearing, Paper 12 at 2.  Cisco now asks the Office and Board to look at *Roberts*

1

IPR2022-00575
Patent No. 11,133,872

and *Taraschuk* yet again.[1]

But Cisco has failed to prove obviousness of the very elements Ramot added to the challenged claims—before the Office issued them over *Roberts* and *Taraschuk*. Cisco never explains how the cited disclosures of *Taraschuk* might suggest the "mapping . . . determined based on a pattern for actuating drive voltages that alters the linearity of an optical response of the modulator" element that was the basis for the Examiner's notice of allowance over *Roberts* and the other prior art of record. The Petition includes **only one paragraph** on the "determined based on a pattern for actuating. . ." part of this element. Petition at 51. And that

---

[1] When the Board last decided Cisco's *Roberts*-based challenges—reviewing the merits of related patent Petitions as one factor under 35 U.S.C. §314(a) and *Fintiv*—it stated that: "We have reviewed the Petition and determine that its merits are not particularly strong here." EX2004, IPR2020-00484, Paper 10, Decision Denying Institution (P.T.A.B. Aug. 18, 2020) at 10-16. Cisco took that and other rejections to the Federal Circuit, only to have its appeals summarily dismissed, and then Cisco refiled those Petitions as *ex parte* reexaminations. Currently, Appeal No. 2022-004880 from one of those reexaminations is pending with the PTAB, awaiting decision from the Board.

paragraph only cites to *Roberts*—even though the Examiner recently stated that *Roberts* (and the other art of record) does not suggest the element. *Id.*; EX2003.

As the Examiner presumptively understood when he allowed the claims, *Taraschuk* is not properly combined with *Roberts* to fill holes in the latter reference. Cisco failed to show any motivation to combine, instead relying on improper hindsight-based reasoning—from an expert who should not be credited here, see Section III.3 below. Cisco's alleged combination cobbles together sparse, unrelated disclosures of different compensation functions in *Roberts* and *Taraschuk*—functions that aren't explained, aren't the inventive focus of those references, and aren't properly combined by a person of ordinary skill in the art.

As explained below in Section III, and in the accompanying Declaration of John Dallesasse (EX2018), *Roberts* simply does not explain how the compensator it mentions works. And *Taraschuk* describes a compensation that depends on a different real-time analog sample feedback approach—one that bears resemblance to what the '872 Patent describes as admitted prior art. Cisco does not explain any of this. Its entire conclusory discussion of the added "mapping . . . determined based on a pattern for actuating drive voltages that alters the linearity" element is only a few paragraphs long. *See* Petition at 51-52.

In short, both *Roberts* and *Taraschuk* (alone or combined) fail to render obvious the specifics of the digital-to-digital mapping elements of the '872 Patent—

including those elements added by amendment prior to allowance of the claims over consideration of *Roberts* and *Taraschuk*. Cisco failed its burden of proof here, as explained in more detail in the arguments herein and in the expert testimony attached. All of the challenged claims should be upheld.

## II.    Overview, History, and Construction of the '872 Patent

### A.    The '872 Patent

The '872 Patent discloses and claims techniques for fast modulation of digital data onto optical streams—which is useful in a variety of high-performance, high-bandwidth optical communications applications. *See, e.g.*, EX1001 ("'872 Patent"), Abstract, 1:33-55. The claimed techniques included "a digital to digital converter enabled for converting" input data words to a vector of digital values associated with "drive voltage values." *Id.*, Abstract.

Known optical modulators at the time of the patent had characteristics that limited their performance, such as non-linear response. *Id.*, 1:62-2:3, Figure 2A. Known solutions for these problems were inefficient and complicated. *Id.*, 2:3-34.

The '872 Patent inventors taught and claimed a digital-to-digital converter to map input digital data into digital output data—in the form of digital vectors, the binary values which would be associated with voltages actuating the electrodes of existing electro-optical modulators. *Id.*, Abstract, 7:5-25, Figure 1 ("DDC"):



This mapping enabled efficient, fast signal corrections via conversion of input values to different output values in the digital domain. *Id.*, 7:21-25, 7:31-62. The patent disclosed example methods for optimizing and performing the mapping, including via a Root Mean Square Error calculation to derive the best approximated selection of output value for a given input value. *Id.*, 11:21-12:16.

The '872 Patent teaches "using the digital to digital converter for mapping" "a set of possible digital input values to a set of possible digital output values, where the input and output values are non-identical." '872 Patent, 4:63-5:4 (defining and describing the digital-to-digital converter). This inventive feature can provide an improvement to module linearity or correct for other optical system characteristics, as illustrated via the descriptions and figures of the '872 Patent. *Id.*, Figs. 4 (detail annotated in red below), 2A & 2B:

### FIG. 4



| Input Value (decimal) | DDC Input | DDC Output | Output Value (decimal) |
|---|---|---|---|
| 0 | 0000 | 0000 | 0 |
| 1 | 0001 | 0011 | 3 |
| 2 | 0010 | 0100 | 4 |
| 3 | 0011 | 0101 | 5 |
| 4 | 0100 | 0101 | 5 |
| 5 | 0101 | 0110 | 6 |
| 6 | 0110 | 0111 | 7 |

The effect on linearity made possible by the '872 Patent's digital-to-digital mapping is also illustrated by Figures 2A (detail annotated in red below to show mapping of input values to ideal linear response) and 2B (annotated in red below):

**DDC Mapping**



**After DDC Mapping (Using Output Values from Figure 4)**

FIG. 2B



6

By changing which digital input values map to which digital output values, according to the formulas and techniques taught and claimed by the '872 Patent, a more desirable (*e.g.*, more linear) response curve can be achieved than was possible with the prior art.  *See, e.g.*, '872 Patent, 7:33-66, 11:21-12:16.

In particular, this mapping in the digital domain could compensate for modulator non-linearity or other signal degradations simpler and faster than prior solutions.  *See, e.g.*, *id.*, 7:60-62.  Output range restrictions, complicated analog signal conditioning, or other inefficient aspects of prior solutions could be avoided.  *See, e.g.*, *id.*, 2:3-34.  The digital mapping as claimed in the '872 Patent could improve "linearity of response without sacrificing efficiency or dynamic range" as prior solutions required.  *Id.*

### B.    The '872 Patent Challenged Claims (IPR2022-00575 Petition)

Cisco improperly—and without permission—split its '872 Patent challenge into two Petitions.  This Petition covers independent claims 1, 11, and 15, and their dependents.   Each of the challenged independent claims contains elements delineating what the "digital-to-digital mapping comprises." '872 Patent, 17:30-37 (claim 1), 18:18-25 (claim 11), 19:20-27 (claim 15).  For example, challenged claim 1 recites (emphases added):

> … wherein *the digital-to-digital mapping comprises*,
> for each unique plurality of N digital input data bits, a
> mapping to a corresponding M digital output data bits,
>
> wherein, *for a given plurality of N digital input data*
> *bits, the mapping to the corresponding M digital output*
> *data bits is determined based on a pattern for actuating*
> *drive voltages that alters the linearity of an optical*
> *response of the modulator*.

The emphasized language above appears in the other challenged independent claims as well. *Id.* at 18:18-25 (claim 11), 19:20-27 (claim 15). It is not disclosed or rendered obvious by the prior art.

Independent claim 11 is a method claim with elements similar to system claim 1. *Id.* In each of these claims the modulator has "an input optical signal" provided by an "optical signal source." *Id.* For example, each of the input optical sources can be a laser. *Id.* at 20:57-58 (claim 30). The modulator can be the "Mach-Zehnder" variety. *Id.* at 17:43-45 (claim 3), 18:38-39 (claim 12). Independent claim 15 is another system claim wherein the modulator is "a semiconductor light generating device." *Id.* at 19:8-12.

Several claims depend from each of independent claims 1, 11, and 15, each of which is also challenged here. *See* '872 Patent, claims 2-10 (depending from claim 1), claims 12 and 30 (depending from claim 11), claims 16-22 (depending

from claim 15). For example, several claims require that the modulation system correct for distortion or non-linearities from the modulation system, the modulator, and/or the optical fibers. *Id.*, claim 2 ("correct for distortion introduced by non-linear characteristics of optical fibers during transmission and for distortion introduced by non-linear characteristics of the modulator"), claims 5-10, claims 16-18, claims 21-22. None of these corrections are disclosed in or obvious from the prior art. In particular, correcting for non-linearities introduced by optical fibers during transmission is not disclosed or rendered obvious by the cited combination.

Again—and as both *Roberts* and *Taraschuk* fail to disclose or suggest—each of the challenged claims requires, or depends from a claim that requires, "digital-to-digital mapping" wherein, among other things, "for a given plurality of N digital input data bits, the mapping to the corresponding M digital output data bits is determined based on a pattern for actuating drive voltages that alters the linearity of an optical response of the modulator." *See, e.g.*, '872 Patent, 17:30-37 (claim 1).

As discussed below, Cisco fails to explain how either the "non-linear compensator 18" of *Roberts*, or the "linearizer 44" of *Taraschuk*, disclose or suggest this element. As discussed below, the Examiner did not believe the elements were disclosed or suggested either—allowing the claims over a rejection citing those same compensator disclosures of *Roberts* and over consideration of the

disclosures in *Taraschuk*. Cisco's Petition fails completely in its burden to prove obviousness of this key element and each challenged claim should be upheld.

### C. Prosecution History of the '872 Patent

The '872 patent is the tenth of eleven patents in its family. The patent family comes out of work by professors and other researchers at Tel Aviv University— work that became the subject of patent applications and was also subsequently published in IEEE journals. *See, e.g.*, Ehrlichman, *et al.*, "*Improved Digital-to-Analog Conversion Using Multi-Electrode Mach–Zehnder Interferometer*," IEEE Journal of Lightwave Technology, vol. 26, no. 21, pp. 3567-3575, Nov. 1, 2008; Ehrlichman *et al.*, "*Generation of M-ary Signals Using a Single Mach Zehnder Interferometer*," SPIE Proc., 7218, Integrated Optics: Devices, Materials, and Technologies XIII, 72180L, Feb. 9, 2009.

The '872 Patent is the fourth such patent from this family to be asserted against infringement by Cisco. Cisco has brought in the Office six *inter partes* review petitions, four (summarily dismissed) appeals to the Federal Circuit from IPR denials, and seven *ex parte* reexamination proceedings challenging patents in this family.

Here, as in all of Cisco's other petitions and four of its requests to the Office, the sole Ground of this Petition relies on *Roberts* as a base reference, but alleges a combination with *Taraschuk* with respect to the "converting, based on a digital-to-

10

digital mapping"-related elements in all challenged claims. Petition at 43-47, 50-52, 65-66, 72-73. Both references were already considered by the Office multiple times, including during prosecution of the '872 Patent. *Roberts* was the base reference alleged to disclose "converting" elements in Cisco's three prior petitions on related patents—IPR2020-00123, IPR2020-00124, and IPR2020-00484. The Board found the merits of those petitions to be "not particularly strong"—including because of Cisco's conclusory citation to multiple different parts of *Roberts*. *See, e.g.*, EX2004, IPR2020-00484, Paper 10 at 10-16 ("Petitioner chooses features from multiple embodiments in Roberts with little explanation to support their combination").

Here, *Roberts* (and *Taraschuk*) were included in an Information Disclosure Statement by Ramot. EX2002. The Examiner then rejected the pending claims based on citation to description of the DSP 34 block of *Roberts*. *See* EX2008, Nov. 2, 2020 Office Action at 4-5 (*citing Roberts* at 5:56-6:56, 2:43-55). That block includes a function labeled "non-linear compensator 18." EX1005 (*Roberts*), 6:34-40. The internal functionality and implementation of this compensator is not described in *Roberts*—which merely states that the non-linear compensator compensates for non-linearities, without explaining how. *See, e.g.*, *id.* The only breadcrumb given is a reference to a compensation function employing a "pre-distorted signal." *Id.* at 2:50-55.

Ramot amended the claims, replacing the "correct for non-linearities" elements in each of the then-pending independent claims challenged here, and inserting an element requiring that the mapping: "is determined based on a pattern for actuating drive voltages that alters the linearity of the optical response of the modulator." EX2009, April 30, 2021 Reply at 2, 4-5. Ramot also added new claims that are the subject of Cisco's unauthorized companion petition IPR2022-00576.

As Ramot argued to the Examiner, the undescribed "compensation function c(t)" performed the linear compensation function, and *Roberts* failed to teach that this was "determined based on a pattern for actuating drive voltages that alters the linearity of the optical response of the modulator." *Id.* at 11. Also significant, this compensation operation was separate and not part of what has been (repeatedly and incorrectly in all prior proceedings) alleged by Cisco to be the "mapping" shown in *Roberts*—namely Table 1. *Id.* at 11-12. In other words, just as the Board noted in its Decision Denying Institution of IPR2020-000484 (EX2004, 10-16), the relied upon disclosures of *Roberts* were from different embodiments. And there was no support for their combination—or for finding the claimed "mapping" in either.

The Examiner responded to these arguments by dropping the rejection and finding in the Notice of Allowance that "the prior arts made of record fail to suggest" these elements. EX2003, May 27, 2021 Notice of Allowability at 2. Accordingly, Cisco does not allege that the *Roberts* DSP non-linear compensator

meets the "determined based on a pattern for actuating drive voltages that alters the linearity of an optical response of the modulator" elements. Petition at 51-52. To do so would be to directly disagree with the Examiner, who allowed the claims over those exact disclosures of *Roberts*.

The *Taraschuk* reference was also considered by the Examiner—but the Examiner did not deem it worthy of including in a rejection. EX2002 ("ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. / J.B.J /"). This same result occurred in eight other prosecutions in this family, showing consideration of *Taraschuk* by two different Examiners over a period from October of 2014 to February of 2022. *See, e.g.*, EX2010, 9,031,417 File History Excerpt ("/D.E.W./"); EX2011, 9,203,425 File History Excerpt ("ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /J.J./"); EX2012, 9,479,191 File History Excerpt (same); EX2013, 10,033,465 File History Excerpt (same); EX2014, 10,205,527 File History Excerpt (same); EX2015, 10,270,535 File History Excerpt (same); EX2016, 10,461,866 File History Excerpt (same); EX2017, 11,342,998 File History Excerpt ("ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /J.B.J/").

The '872 Patent issued on September 28, 2021. Cisco filed a non-infringement declaratory judgment action that very day. *Cisco Systems, Inc. et al. v. Ramot at Tel Aviv University Ltd.*, C.A. 21-01365-GBW, Dkt. 1 (D. Del., Sept.

28, 2021).  Ramot then filed a mandatory counterclaim asserting infringement.  *Id.*, Dkt. 8 (D. Del., Feb. 7, 2022).  And then nine days later, Cisco filed this Petition. As a result, in less than five months from issuing—over Examiner consideration of *Roberts* and *Taraschuk*—through Cisco's machinations the '872 Patent came back to the Office for proposed review by the Board in view of *Roberts* and *Taraschuk*.

### 1.    This proceeding should not have been instituted.

The Federal Circuit has explained that when relying on art that was (here, very recently) considered by the Examiner, Cisco takes on a heightened burden, because the Examiner is presumed to have examined and competently interpreted the references:

> We have explained that, where a party only relies on prior art considered by an examiner in its invalidity contentions, that party has the burden to "overcome[e] the deference that is due to a qualified government agency presumed to have properly done its job, which includes one or more examiners who are assumed to have some expertise in interpreting the references and ... whose duty it is to issue only valid patents."

*Stone Basket Innovations, LLC v. Cook Med. LLC*, 892 F.3d 1175, 1179-80 (Fed. Cir. 2018).  The Examiner's presumptively "properly done" job includes considering all of the references and whether any should be combined.  *See* M.P.E.P. § 707.05 (emphasis added):

14

The examiner ***must consider all the prior art references (alone and in combination)*** cited in the application or reexamination, including those cited by the applicant in a properly submitted Information Disclosure Statement.

"[W]hen prior art 'is listed on the face' of a patent, 'the examiner is presumed to have considered it.'" *BlephEx, LLC v. Myco Industries, Inc.*, 24 F.4th 1391, 1402 (Fed. Cir. 2022). And of course, issued patents are presumed valid by statute. 35 U.S.C. §282 ("A patent shall be presumed valid.").

As Ramot explained in its Preliminary Response and its pending Request for Rehearing and Precedential Order Panel Review, in the Office these validity presumptions manifest in the Precedential requirement that Petitioner show "material error" in the Examiner's consideration. "At bottom, this framework reflects a commitment to defer to previous Office evaluations of the evidence of record unless material error is shown." Decision, Paper 10 at 31 (*quoting Advanced Bionics*, IPR2019-01469, Paper 8 at 9).

This proceeding should not have been instituted, and should be de-instituted now, because: "If reasonable minds can disagree regarding the purported treatment of the art or arguments, it cannot be said that the Office erred in a manner material to patentability." *Dynatemp Int'l, Inc. v. R421A LLC*, IPR2020-01660, Paper 15 at 10-26 (P.T.A.B. Apr. 20, 2021) (*quoting Advanced Bionics*, IPR2019-01469, Paper

6 at 9) (emphasis added); *see also* Patent Owner's Preliminary Response, Paper 8 at 11-12 (collecting cases); Rehearing Request, Paper 12 at 1-14.

As seen from the arguments herein, and in Patent Owner's Preliminary Response, reasonable minds can and have disagreed about the Examiner's treatment of, and allowance of the claims over, *Roberts* and *Taraschuk*. The Office's determination that the claims were novel over this art should be deferred to, and Cisco's request for a revisitation by a different part of the Office should be denied in the Board's and Director's discretion.

### D.    Claim Construction

For purposes of *inter partes* review disputed claim terms are construed to give them "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *See* 83 Fed. Reg. 51341 (Oct. 11, 2018 (adopting the standard of *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005)). The proper construction is considered in the context of, and must be consistent with, the specification—and the claim language should be read in light of the specification as it would be interpreted by one of ordinary skill in the art. *See, e.g.*, *Phillips*, 415 F.3d at 1313.

In its Institution Decision, the Board invited discussion on the meaning and application of the independent claim limitation: "wherein, for a given plurality of N digital input data bits, the mapping to the corresponding M digital output data

bits is determined based on a pattern for actuating drive voltages that alters the linearity of an optical response of the modulator."   Decision, Paper 10 at 24-25.   In that decision, the Board took the plain meaning of this term to encompass "the mapping being determined so as to *obtain*, a *desired* 'pattern for actuating drive voltages that alters the linearity . . .'"   *Id.* (emphasis Board's).   This reformulation seems to do away with or obscure the meaning and effect of the "determined based on" language in the claims—it should not be adopted as a construction of the element, for the reasons explained below.   *See also* EX2018 (Dallesasse Decl.) at ¶¶28-35.

### "mapping … determined based on a pattern for actuating …"

This limitation appears in each independent claim.   EX1001 ('872 Patent) at 17:30-37 (claim 1), 18:18-25 (claim 11), 19:20-27 (claim 15).   It was added by Amendment to overcome the Examiner's rejection based on *Roberts*.

Beginning with the claim language, the limitation itself requires that the mapping be determined "based on" a "pattern for actuating drive voltages."   *Id.* The patent specification uses the word "pattern" to refer to the M-bit digital word output from the digital-to-digital converter.   *See, e.g.*, EX1001 at 7:54-57 ("An output pattern of 0101 is thus chosen to correspond to an input of 0011.").   This pattern "corresponds to the electrode actuation pattern" in some embodiments.   *See, e.g.*, *id.* at 6:7-11.   The pattern corresponds to a "constellation point" within a

complex modulation in other embodiments. *See, e.g.*, *id.* at 6:48-49. In each case, the pattern is a digital word at the output from the digital-to-digital converter. *See also* EX2018 at ¶¶29-32.

The mapping process of the patent is described as an optimization problem directed to this converter output. For example, the patent describes choosing an output word value for a particular input word that is "most closely approximating the corresponding theoretical linear response" or "much more closely approximates to a linear response" or "best approximates a desired ideal output for the given input." EX1001 at 7:21-25; 7:41-57. A simple example of this determining process is shown in Figures 2A, 2B, and 4. *Id.* A much more detailed mathematical optimization of the control vectors is described as well. *See, e.g.*, *id.* at 11:3-12:18 (optimization based on applying "the root mean square error (RMSE) between an ideal output, represented by a straight line, and the converter output"), 15:15-21 ("digital mappings may be derived either by analytical methods or numerically"). This optimization can also apply even to complicated modulation schemes such as 64-QAM, with the control vectors output from the converter representing optimized constellation points in the modulation. *Id.; see also* EX2018 at ¶¶30-31.

As Prof. Dallesasse agreed and opined: "a person of ordinary skill in the art would understand, that what is being optimized for these claims is the output of the digital-to-digital converter. *See, e.g.*, [EX1001] at 11:3-6 ("the control vectors B

be optimized"), 11:30-32 ("the converter output")." EX2018 at ¶32. For a particular "plurality of N digital input data bits" (*i.e.*, input word), a digital output word or constellation point is chosen based on an ideal or desired response. *See, e.g.*, EX1001 at 7:54-57. In short, the "determined based on a pattern …" limitations relate to a digital-to-digital mapping based on ***optimizing the digital output of the converter*** to give a more linear response. *See, e.g.*, *id.* at claim 1 ("wherein, for a given plurality of N digital input data bits, the mapping to the corresponding M digital output data bits is determined based on a pattern for actuating drive voltages that alters the linearity of an optical response of the modulator").

As described above, the "determined based on a pattern …" limitations were added to the claims during prosecution, specifically to overcome an Examiner's rejection citing to the unexplained linear compensator disclosures of *Roberts*. EX2003, May 27, 2021 Notice of Allowability at 2 ("*Roberts* and "the prior arts made of record fail to suggest" the "mapping . . . determined based on a pattern for actuating drive voltages that alters the linearity" element"). The disclosures overcome by the Amendment included the Examiner's citation to *Roberts*' mention of a compensation function that resulted in a "pre-distorted signal." *See, e.g.*, EX2008 at 5-6 (citing EX1005 at 2:43-55). Clearly the Examiner did not believe that the amended "determined based on a pattern …" language was disclosed by or

19

obvious from *Roberts*' discussion of a "pre-distortion signal." *Id.*; EX2009 (allowing claims). Indeed, "use of an analog pre-distortion circuit to feed the modulator" is something the '872 Patent places in the inferior prior art. EX1001 at 2:3-7.

And as Prof. Dallesasse agreed and opined: "a person of ordinary skill in the art reading the patent would understand that this [claimed] approach differs from pre-distortion based on real-time measured analog modulator output." EX2018 at ¶33 (*citing* EX1001 at 2:3-7 (disparaging "use of an analog pre-distortion circuit to feed the modulator") and EX1006 at 7:67–8:5 ("a detected sample of the modulator output"), Fig. 6). For example, *Taraschuk* does not generate or choose a digital output word or constellation point at the output of a converter, but instead applies an analog feedback correction from the ***modulator*** output to the ***input*** word in order to make the intended input appear at the modulator output. EX1006 at 7:67–8:5, 7:7-11, 7:34-39, Fig. 6. According to this understanding, *Taraschuk*'s analog pre-distortion circuit approach is also not mapping "determined based on a pattern" of a digital converter output.

The Board applied an understanding of "determined based on a pattern" as "determined so as to *obtain*, a *desired* pattern." *See* IPR2022-00575, Paper 10, at 24-26. This invites confusion as it seems to define the element according to its result and eliminate the effect of the "based on" language. If the Board's language

were interpreted to apply to anything that resulted in a compensating pattern—that would be incorrect, and inconsistent with the Examiner's allowance over consideration of *Roberts* and *Taraschuk*.  *See also* EX2018 at ¶35.

A person of skill in the art would understand the claimed optimization to be undertaken with at least some awareness or consideration of the output pattern of the digital-to-digital converter.  *Id.*  This is not to say that the mapping must "take as *input* the claimed pattern."  Decision, Paper 10 at 24.  Rather, the "mapping … determined based on a pattern…" language has no practical effect if the pattern is not either the subject, or object, of the mapping.

The proper understanding of this claim term matters to the outcome here. The limitation, properly understood, would not be disclosed or rendered obvious by the real-time analog pre-distortion approach described in *Taraschuk* (EX1006 at 7:67-8:5), mentioned in *Roberts* (EX1005 at 2:50-55), or which is also identified as an inferior prior art solution in the '872 patent (EX1001 at 2:3-7).  *See also* EX2018 at ¶34. The Examiner believed the element distinct over these linear compensation disclosures when he allowed the claims.

The "determined based on" claim language requires more than employing an unexplained linear compensation that merely results in obtaining a compensation pattern.  Instead, by the straightforward reading and application of the claim

language, the mapping must be "determined based on a pattern" for control vectors at the output of the converters.  This distinction is further explained below.

### E.    Effective Priority Date

Cisco does not dispute that the '872 Patent is entitled to at least the effective priority date of U.S. Provisional Application No. 60/943,559, filed June 13, 2007. Petition at 14.  As Cisco acknowledges, the Examiner dropped a rejection based on the *Burchfiel* reference, after Ramot submitted an inventor declaration under 37 C.F.R. §1.131 swearing behind the March 23, 2007 date of that reference.  *Id.* at 13.  Petitioner asserts that each of *Roberts* and *Taraschuk* was prior art as of the earliest claimed priority date, and Ramot does not dispute that statement for purposes of this response.

### F.    Level of Ordinary Skill in the Art

As stated by Ramot's declarant Prof. Dallesasse, a person of ordinary skill in the art as of the effective priority date in 2007 would have had a Master of Science Degree in Electrical Engineering, or Electrical and Computer Engineering, and at least two years of academic or professional experience in engineering, specifically in the analysis and design of optoelectronic systems for optical communications. EX2018 (Dallesasse Decl.) at ¶¶22-26.

### III.   Cisco failed to prove that the challenged claims are obvious over *Roberts* in combination with *Taraschuk*

As the Examiner found after the language was added to the claims in

response to a rejection citing *Roberts*, *Roberts* does not disclose or render obvious the "mapping . . . determined based on a pattern for actuating drive voltages that alters the linearity" elements as claimed. EX2003, May 27, 2021 Notice of Allowability at 2 ("the prior arts made of record fail to suggest: . . ."). *Roberts* does not disclose or suggest this element. *Id.*; *see also* Section 1 below.

And *Taraschuk*—also considered by the Examiner—does not either. *Id.*; *see also* Section 2 below. The Board's Decision faulted Ramot (wrongly) for "attack[ing] Roberts and Taraschuk individually" with respect to this element "instead of in the combination proposed by Petitioner." Decision, Paper 10 at 24. But a properly established motivation for a combination is a required prerequisite, missing here, to analyzing a combination of references together for obviousness purposes. *Roberts* and *Taraschuk* are not properly combined. Cisco has failed to prove otherwise. *See* Section 4 below.

The cases cited by the Decision at page 24 are inapposite—only *Taraschuk* is alleged to suggest the claimed mapping as amended here. *See id.* at 36 ("Petitioner does *not* appear to rely on Roberts' teaching …"). For Cisco to assert, or the Board to find, otherwise would directly contradict the Examiner's allowance of the amended language over *Roberts*. As another Board panel recently agreed: "reliance on *Keller* and *Merck* is inapposite" when only one of the combined references is relied on for the particular element. *Ex Parte Jutta Schomacher, et*

23

*al.*, Appeal 2021-001691, Decision, 2022 WL 1186251 at *10 (P.T.A.B. April 11, 2022); *see also* Request for Rehearing, Paper 12, at 15-17.

There are numerous additional substantive deficiencies in the Petition, including with respect to dependent claims. *See* Section 5 below. But Cisco's failure of proof with respect to the "determined based on a pattern …" elements impact all of the arguments on all challenged claims, and are sufficient alone to warrant upholding all of the claims.

### 1. Petitioner failed to show that *Roberts* discloses or renders obvious "mapping . . . determined based on a pattern for actuating drive voltages that alters the linearity"

*Roberts* discusses an optical modulator that performs modulation by using multiple electrodes to vary how much of the length of a waveguide arm of a Mach-Zehnder Interferometer modulator is activated. EX2018 at ¶37. It uses a binary format translation to thermometer-encoding that turns on successively more or less of the electrodes to effect the modulation. *Id.* at ¶38. Cisco has previously asserted that this was a mapping according to other claims in the Ramot patent family, but Cisco was wrong, and anyway doesn't say that here—where the claims have been allowed over a rejection based on *Roberts*. *Id.* at ¶39.

Cisco failed to show that *Roberts* discloses or suggests the "for a given plurality of N digital input data bits, the mapping to the corresponding M digital output data bits is determined based on a pattern for actuating drive voltages that

alters the linearity of an optical response of the modulator" elements as disclosed and claimed. *See, e.g.*, '872 Patent, 17:30-37 (claim 1). This element is recited in the body or included by dependency in all challenged claims. *Id.*; *see also id.*, 18:18-25 (claim 11), 19:20-27 (claim 15).

As described above in Section II.C, *Roberts* was presented to the Examiner by Ramot (EX2002), and the "DSP 34" and "non-linear compensator 18" disclosure of *Roberts* was used in a rejection of the then-pending claims. *See* EX2008, Nov. 2, 2020 Office Action at 4-5 (*citing Roberts* at 5:56-6:56, 2:43-55). The internal functionality and implementation of this compensator is nowhere described in *Roberts*—only the capability of providing non-linear compensation by some means is disclosed. EX1005 (*Roberts*), 6:34-40 ("non-linear compensator 18 used to compensate non-linearities"). Nothing in *Roberts* indicates how the compensation is done or describes the mechanism of calculating "compensation function c(t)." EX2018 at ¶¶39-41.

The then-pending claims of the '872 Patent application similarly required that the mapping "correct for non-linearities," without differentiating how. *See, e.g.*, EX2009, March 30, 2021 Reply at 2. Ramot amended the claims, inserting into each of the independent claims challenged here an element requiring that for each input, the output mapping: "is determined based on a pattern for actuating

drive voltages that alters the linearity of the optical response of the modulator." *Id.* at 2, 4-5.

Ramot argued that *Roberts* doesn't disclose or suggest this element. *Id.* at 11-12. The Examiner agreed and responded a few weeks later by dropping the rejection and finding that "the prior arts made of record fail to suggest" these elements. EX2003, May 27, 2021 Notice of Allowability at 2.

In its only (quite short) substantive discussion of this claim element, the Petition also cites to disclosures of *Roberts*' mentioning "DSP 34" and its "non-linear compensator 18." Petition at 51 (*citing Roberts*, EX1005, 6:40-42). But that discussion never explains how "determined based on" could be met—tellingly omitting that "based on" language from all but the quotation of the claim element. *Id.* The portion of *Roberts* that Cisco cites with regard to the "pattern for actuating voltages" is about the *output* of the DSP mapping—not what it is "determined based on." *Id.* ("the DSP's output"). Cisco has chopped up the claim element into pieces to obscure the missing explanation.

Cisco's cursory discussion also does absolutely nothing to explain how the alleged mapping occurs, or how for each "plurality of N digital input bits, the mapping to the corresponding" output is "determined based on a pattern for actuating drive voltages that alters the linearity" as the claim requires. Cisco (and *Roberts*) fails to explain at all what the alleged mapping is "determined based on."

Petition at 51. *Roberts* says nothing about the compensation it mentions in passing, and anyway, as discussed above, is about something else entirely. EX2018 at ¶¶37-38, 40-41. Again, as Ramot argued and the Examiner found, *Roberts* and the other cited art does not disclose or suggest the added element of the amended claims.

Next, Cisco simply states that a person of skill would have somehow found the element obvious from the presence of a "look-up table"—with nothing to indicate why or how. Petition at 51. The conclusory analysis of the Petition on this point should not be credited. "[R]ejections on obviousness grounds cannot be sustained by mere conclusory statements; instead, there must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness." *In re Kahn*, 441 F.3d 977, 988 (Fed. Cir. 2006).

In sum, Petitioner's *Roberts* arguments are facially deficient, and fail to prove that *Roberts* could render obvious any challenged claim. There is simply no teaching or suggestion in *Roberts* of the claimed "mapping" being "determined based on a pattern" "that alters the linearity" of the modulator—as the Examiner agreed when allowing the claims after that element was added. EX2004; *see also* EX2018 at ¶¶33, 40-41 ("I agree that *Roberts*, including in the brief discussion of a known compensator, does not teach or suggest the claimed mappings."). Petitioner's Grounds, each of which rely on *Roberts* and the missing motivation to

combine it with *Taraschuk*, must fail.  *See, e.g.*, *In re Smith Int'l, Inc.*, 871 F.3d 1375, 1381 (Fed. Cir. 2017) (all claim elements must be shown).

 **2.  Petitioner failed to show that *Taraschuk* discloses or renders obvious "mapping . . .  determined based on a pattern for actuating drive voltages that alters the linearity"**

*Taraschuk* is about a "high speed digital to analog converter," and the phase aligner and vector addition aspects of such a device.  EX2018 at ¶42.  The aligner compensates for phase differences between individual bits of a parallel digital signal and the vector addition block is weighted to account for logic level mismatches between individual bits of a parallel digital signal.  *Id.* at ¶¶43-44. Deep in the specification of *Taraschuk*, there is a very brief discussion of an optical modulator application.  *Id*. at ¶48.

 Cisco also completely fails to show how *Taraschuk* could suggest a "mapping . . . based on a pattern for actuating drive voltages that alters the linearity."  Petition at 51-52.  Cisco doesn't even argue that *Taraschuk* discloses the first part of this element, or explain what the alleged mapping in *Taraschuk* is "determined based on."  *Id.*  Again, as with *Roberts*, Cisco relies on nothing more than an unexplained disclosure of the capability of compensating for modulator non-linearity.  Petition at 51 ("linearizer 44 can also be used to compensate non-linearities").  This doesn't suggest or disclose the as-amended claim element.  There could be ways to correct for non-linearities that do not meet the "determined based

on a pattern …" elements added to the claims, as the '872 Patent itself admits. EX1001 at 2:3-7; EX2018 at ¶78.

The Petition tellingly attempts to obscure *Taraschuk*'s own brief description of its mapping, constructing a quotation from language before and after it.  *See* Petition at 52 (*citing* EX1006 (*Taraschuk*), 7:61-67, 8:13-15).  But the reference explains, in between those citations, that the *Taraschuk* solution is based on obtaining an analog "sample of the modulator output 56."  *See* EX1006, 7:67-8:5, Fig. 6 (annotated in red below):



Figure 6

This is self-evidently not disclosure of "mapping . . . determined based on a pattern for actuating drive voltages."  If anything, the cited disclosures of *Taraschuk* describe analog pre-distortion, determined based on an analog sample

29

feedback loop. *Id.*; EX2018 at ¶77 ("The extremely sparse discussion in *Taraschuk* on 'mapping' only mentions input pre-distortion based on feedback of an analog modulator output sample."). Other disclosures not mentioned by Cisco confirm this understanding. *See, e.g.*, EX1006, 7:25-38 ("sampled analog signal level (S)"), Fig. 5.

Cisco fails to identify or explain these disclosures of *Taraschuk*, and fails to show how *Taraschuk* could suggest the added "determined based on a pattern for actuating…" elements of the independent claims. *See, e.g.*, Petition at 51-52. As Prof. Dallesasse points out: "The only explanatory discussion of *Taraschuk*'s mapping suggests that it is instead determined based on 'calculating a difference between the received M-bit word and the sampled analog output signal level (S).'" EX2018 at ¶79 (citing EX1006 at 7:34-39, 7:67-8:5, Fig. 6) ("In other words, if the *Taraschuk* mapping is 'determined based on' anything, it is the real-time sampled analog modulator output"). In other words, *Taraschuk* suggests the prior art "use of an analog pre-distortion circuit to feed the modulator" solution mentioned in the '872 Patent background, not the "determined based on a pattern for actuating…" elements of the amended claims. *Id.* at ¶80 (*citing* EX1001 at 2:3-7).

The existence of the need for non-linear compensation in the prior art was known, as the '872 Patent itself explains. *See, e.g.*, '872 Patent, 1:62-2:3. And the '872 Patent mentions some of the various inefficient prior art solutions for

providing non-linear compensation. *Id.*, 2:3-7 (*e.g.*, "biasing of the device into a quasi linear regime coupled with reducing the modulation range" or "use of an analog pre-distortion circuit").

Mentioning non-linear compensation (or mapping) in the context of an admitted, inefficient prior art solution does not render obvious the specific and new solution of the '872 Patent challenged claims as amended. This is true whether that mention appears in the '872 Patent or *Roberts* or *Taraschuk*. *See, e.g.*, EX2018 at ¶33 (mapping determined "based on the converter output pattern, differs from pre-distortion based on real-time measured analog modulator output"); EX1001 at 2:3-7 (disparaging "use of an analog pre-distortion circuit to feed the modulator"); EX1006 at 7:67–8:5 ("a detected sample of the modulator output"); EX1005 at 2:53 ("pre-distorted signal"). To hold otherwise would result in the nonsensical outcome of invalidating patents based on their background statements of the problems they were invented to solve.

Cisco fails to explain any of this. Cisco concludes its cursory analysis of this element with the bare unsupported statement that a person of skill would have found it obvious to map "where input bits are mapped to output bits such that the output bits compensate for the non-linear effects of the optical modulator." Petition at 52. But this completely overlooks the amended claim language. That language requires a mapping that is "***determined based on a pattern for actuating*** drive voltages that

31

alters the linearity of an optical response of the modulator."  EX2018 at ¶¶34-35, 78, 81.

It is not enough simply to accomplish linear compensation, when that could be based on a different or admitted prior art implementation.  *Id.*; *see also* Section II.D above.  Cisco fails to elaborate or explain anywhere in the Petition the origin of that mapping it alleges *Taraschuk* performs, *e.g.*, what it is "determined based on."  Petition at 52.  As discussed above, *Roberts* is silent about implementation and *Taraschuk* suggests a real-time analog feedback approach.  EX1006 at 7:34-39, 7:67-8:5.

In sum, Cisco's *Taraschuk* arguments are also facially deficient, including for the same reasons and in the same way as its *Roberts* arguments.  Cisco has failed to prove that *Roberts* and *Taraschuk* could render obvious any challenged claim.  There is simply no teaching or suggestion in *Taraschuk* of the claimed "mapping" being "determined based on a pattern" "that alters the linearity" of the modulator—as the Examiner agreed when stating that "the prior arts made of record," including *Taraschuk*, failed to suggest this element.  EX2003.  Cisco's Grounds, each of which rely on *Taraschuk* for this important element, must fail.  EX2018 at ¶82.

### 3. Dr. Blumenthal's obviousness opinions merely endorse attorney argument and are unsupported by evidence

Cisco has the burden of proof in this proceeding.  35 U.S.C. §316(e):

> In an inter partes review . . . , the petitioner shall have the burden of proving a proposition of unpatentability by a preponderance of the evidence.

*Harmonic Inc. v. Avid Tech., Inc.*, 815 F.3d 1356, 1363 (Fed. Cir. 2016) ("the petitioner has the burden from the onset to show with particularity why the patent it challenges is unpatentable") (*citing* 35 U.S.C. §312(a)(3) (2012) (requiring *inter partes* review petitions to identify "with particularity . . . the evidence that supports the grounds for the challenge to each claim")).

If Cisco fails its burden to provide evidence that proves invalidity, it loses the instituted trial, even if Ramot were to offer no response beyond identifying that failure. *Apple Inc. v. Zipit Wireless, Inc.*, IPR2021-01124 *et al.*, Paper 14, Decision on Director Review (PTAB Dec. 21, 2022) (designated precedential: Jan. 4, 2023).

Here Cisco alleges only obviousness via a prior art combination. Petition at 24. Accordingly, Cisco must prove, *inter alia*: the level of ordinary skill in the art; that a person of ordinary skill in the art would be motivated to and would combine those references; and that the references disclose or render obvious to a person of ordinary skill in the art each and every element. Each of Cisco's core arguments that it must prove depends on what a person of ordinary skill—here someone with at least a Master of Science degree in Electrical Engineering and two years of experience working in optics, see EX1003, ¶22; EX2018, ¶¶22-26—would

understand or find obvious in 2007.  On each of Cisco's core arguments, Cisco offers only the Declaration of Dr. Daniel Blumenthal as "evidence."  Petition at 14-15 (level of ordinary skill), 29-35 (POSITA reasons to combine), 50-52 (what would be obvious to POSITA).

But the Declaration of Dr. Daniel Blumenthal is not properly evidence here, because the opinions of Dr. Daniel Blumenthal are attorney argument affixed with the signature and CV of Dr. Blumenthal.  *See, e.g.*, EX2021 (Blumenthal Deposition, Demonstrative D) (reproduced in part below, verbatim material highlighted); Petition at 29, 30, 34; EX1003 at ¶¶109-111, 119:

| Petition, pg. 29 | Declaration of Daniel Blumenthal ¶ 109 |
|---|---|
| As a preliminary matter, Roberts and Taraschuk are analogous prior art in the same field of endeavor—optical communications—and are directed to solving the same technical problem: compensating for non-linearities in a Mach-Zehnder optical modulator. See Ex.1005, 1:15-17, 2:44-47; Ex.1006, 7:54-56, 7:56-60 | First, as discussed above, Roberts and Taraschuk are analogous prior art in the same field of endeavor (optical communications) and are directed to solving the same technical problem (compensating for non-linearities in a Mach-Zehnder optical modulator). See Ex.1005, 1:15-17, 2:44-47; Ex.1006, 7:54-56, 7:56-60 |
| **Petition, pg. 30** | **Declaration of Daniel Blumenthal ¶ 110** |
| The combination is merely a matter of applying a known technique—Taraschuk's look-up table—to a known device, method, or product—Roberts' DSP including a non-linear compensator—ready for improvement to yield predictable results. .... See Ex.1006, 7:15-23. The resulting combination provides the predictable benefits of permitting the non-linearity compensation to be calculated in advance, adjusted during device operation, or both. | Second, the combination is merely a matter of applying a known technique (Taraschuk's look-up table) to a known device, method, or product (Roberts' DSP, including a non-linear compensator) ready for improvement to yield predictable results (allowing non-linear compensation mapping to be computed in advance, during device operation, or both). |

34

| **Petition, pg. 30** | **Declaration of Daniel Blumenthal ¶ 110** |
|---|---|
| Additionally, the combination of Roberts and Taraschuk is simply the use of a known technique—Taraschuk's mapping—to improve similar devices, method, or products in the same way. Ex.1003, ¶ 110 | Additionally, the combination of Roberts and Taraschuk is simply the use of a known technique (Taraschuk's mapping) to improve similar devices, method, or products in the same way. |

| **Petition, pg. 30** | **Declaration of Daniel Blumenthal ¶ 111** |
|---|---|
| Roberts describes a known method ready for improvement. Ex.1003, ¶ 111. Roberts describes a digital signal processor (DSP) with a non-linear compensator that receives an input digital data signal x(m) and produces multi-bit sample streams $V_L(n)$ and $V_R(n)$ representative of the desired phase modulation to be applied to each branch of an MZ modulator. See Ex.1005, 1:58-63; 5:56-60. | Roberts describes a known method ready for improvement. As noted above, Roberts describes a digital signal processor (DSP) 34 that receives an input digital data signal x(m) and produces multi-bit sample streams $V_L(n)$ and $V_R(n)$ representative of the desired phase modulation to be applied to each branch of a MZ modulator. See Ex.1005, 1:58-63; 5:56-60. |

| **Petition, pg. 34** | **Declaration of Daniel Blumenthal ¶ 119** |
|---|---|
| Applying Taraschuk's linearizer mapping technique to Roberts' DSP would have achieved the predictable result of compensating for non-linearities in a Mach-Zehnder optical modulator. Ex.1003, ¶ 119. This result is predictable because Taraschuk expressly teaches that its techniques are used to compensate for non-linearities of Mach-Zehnder optical modulators. Ex.1006, 7:56-60. Thus, the combination is merely a matter of applying a known technique (implementing Tarashuk's mapping) to a known device (Roberts' non-linear compensator of the DSP) to yield predictable results (compensating for non-linearities in a Mach-Zehnder optical modulator). Ex.1003, ¶ 119. The combination of Roberts and Taraschuk also represents use of a known technique (Taraschuk's linearizer mapping) to improve similar devices (Roberts' DSP, including a non-linear compensator) in the same way. Ex.1003, ¶ 119. Accordingly, a POSITA would have found it obvious for Roberts' DSP to map between an input | Applying Taraschuk's linearizer mapping technique to Roberts' DSP would have achieved the predictable result of compensating for non-linearities in a Mach-Zehnder optical modulator. This result is predictable because Taraschuk expressly teaches that its techniques are used to compensate for non-linearities of Mach-Zehnder optical modulators. Ex.1006, 7:56-60. Accordingly, the combination is simply a matter of applying a known technique (Taraschuk's mapping) to a known device (Roberts' DSP) ready for improvement to yield predictable results (compensating for non-linearities in a Mach-Zehnder optical modulator). Additionally, the combination of Roberts and Taraschuk represents use of a known technique (Taraschuk's linearizer mapping) to improve similar devices (Roberts' DSP, including a non-linear compensator) in the same way. Thus, a POSITA would have found it obvious for the DSP of Roberts to map between an input digital signal and an output digital signal using the mapping techniques |

| | |
|---|---|
| digital signal and an output digital signal using the mapping techniques described by Taraschuk. Ex.1003, ¶ 119. | described by Taraschuk. |

Dr. Blumenthal testified that he wrote the declaration "collaboratively" with counsel. EX2020 at 36:18-37:16. He could not recall participating in drafting the Petition, however. *Id.* at 84:7-10. When asked to comment on the similarity between the Petition and his Declaration, Dr. Blumenthal was uncooperative—demanding time to verify that what was in Demonstrative D was from the Petition and Declaration. *Id.* at 78:18-80:12, 84:11-88:14. It was.

Attorney argument is not evidence, even if copied into a declaration. *See, e.g.*, *Kinetic Technologies, Inc. v. Skyworks Solutions, Inc.*, IPR2014-00529, 2014 WL 4787238, Paper 8 at 15 (PTAB Sept. 23, 2014) ("**merely repeating an argument from the Petition in the declaration of a proposed expert does not give that argument enhanced probative value**") (emphasis added); *Infobionic, Inc. v. Braemer Manufacturing, LLC.*, IPR2015-01704, 2016 WL 1081571, Paper 11 at 6 (PTAB Feb. 16, 2016).

Dr. Blumenthal's signature—endorsing attorney argument—is not evidence, and declarations like his are frequently and properly ignored. *See, e.g.*, *Samsung Electronics Co., Ltd. v. Rightquestion, LLC*, IPR2022-00251, Paper 17 at 25 (P.T.A.B. June 9, 2022) (declining to credit testimony where "declarant makes these same statements verbatim, without more, and with no additional citations to

evidence"). The Board gives such conclusory, unsupported assertions by experts little or no weight. *Id.*

There can be no doubt that the "opinions" in Demonstrative D—taken from the portion of the Petition and "Dr. Blumenthal's" declaration concerning motivation to combine *Roberts* and *Taraschuk*—were largely drafted by counsel. Proof of this can be seen in other Cisco IPR declarations, including those that involve different experts but use the same template. For example, Dr. Blumenthal was also shown demonstratives containing several statements of opinions on motivation to combine, from five different Cisco Petitions with the same counsel, two of which he participated in, and three of which he did not. All have identical format, with legal language interspersed with parentheses containing nouns, actions, effects, etc. *See, e.g.*, EX2022 (Demonstrative B-2) (reproduced in part below):

> **83**. Accordingly, the combination of Hardcastle and Wurst is merely applying a known technique (Wurst's reference voltage) to a known method (using a threshold) ready for improvement to yield predictable results (triggering an alarm when the power output voltage falls below the reference voltage).
>
> *Cisco Systems, Inc. v. Oyster Optics, LLC*, Declaration of Daniel Blumenthal, Ex. 1003, IPR2021-00238
>
> **304**. … The combination is simply applying a known technique (using an array of fold over micromirror devices, per the combined teachings of Tomlinson and Riza) to a known device (Rose's OADM 3100) ready

for improvement to yield predictable results (obtain additional alignment for finer power control).

*Cisco Systems, Inc. v. Capella Photonics, Inc.*, Declaration of Dr. Paul R. Prucnal, Ex. 1003, IPR2021-00290

**110**.… the combination is simply a matter of applying a known technique (Taraschuk's look-up table) to a known device, method, or product (Roberts' DSP, including a non-linear compensator) ready for improvement to yield predictable results (allowing non-linear compensation mapping to be computed in advance, during device operation, or both).

*Cisco Systems, Inc. v. Ramot at Tel Aviv University, Ltd.*, Declaration of Daniel Blumenthal, Ex. 1003, IPR2022-00575

**113**.… Accordingly, the combination of Salim with Carter and Maria represents applying a known technique (using programmable logic) to a known device (packet filter) ready for improvement to yield predictable results.

*Cisco Systems, Inc. v. 802 Systems, Inc.*, Declaration of Dr. Henry Houh, Ex. 1003, IPR2021-00619

**78**. … the combination of Aggarwal and Hussain merely applies a known technique (pseudo-wires) to a known method (establishing LSPs) ready for improvement (network efficiency) to yield predictable results.

*Cisco Systems, Inc. v. Monarch Networking Solutions LLC*, Declaration of Dr. Henry Houh, Ex. 1003, IPR2020-01226

*See also* EX2020 at 48:18-58:9 (discussing Demonstrative B-2); EX2023 (Demonstrative C) (showing five similar, and similarly formatted, opinions on the level of skill from different Cisco IPRs and experts); EX2020 at 61:7-62:11.

In other words, being a declarant for Cisco in an IPR, which Dr. Blumenthal has done more than twenty times (*see* EX2020 at 16:1-22:1, page 32-34: Demonstrative A), appears to involve participating in Cisco's fill-in-the-blank "Mad Libs" style of declaration drafting.  EX2021; EX1003 at ¶110:

> the combination is simply a matter of applying a known technique [____technique____] to a known device, method or product [____device____] ready for improvement to yield predictable results [____result____]

*See also* EX2023; EX1003 at ¶22:

> A person of ordinary skill in the art ("POSITA") in the field of the [____number____] Patent, as of its earliest possible filing date of [____date____], would have been someone knowledgeable and familiar with the [____field____] arts that are pertinent to the [____number____] Patent.[2] A POSITA would have been familiar with the field of [____field description____], during the [____timeframe____]. [] a POSITA would have had a [____degree level____] degree in [____subject____], or equivalent training, and approximately [____number____] years of experience working in the field of [____field description____]. Lack of work experience can be remedied by additional education, and vice versa.

---

[2] A search on the phrase "arts that are pertinent to the" in the Lex Machina database of all PTAB filings hits on 51 PTAB trials, 21 of which also hit on "Cisco," suggesting widespread use of this formula.

IPR expert declarations are meant to be independent ***testimony***—see 37 C.F.R. §42.53—here in a trial proceeding that could result in Ramot losing valuable, and presumptively valid, intellectual property rights that it worked very hard to develop, disclose, obtain, and enforce.  In place of independent and supported testimony, Cisco has instead offered reusable attorney argument, copied in large part verbatim from the Petition (see above, Demonstrative D), and drafted using an apparent script for the opinion statements—one that Cisco and others seem to have adopted for widespread use in their many petitions (see also above, Demonstrative B-2 and C).

The Board should reject this manufactured "testimony" and not credit the obviousness and level of skill opinions in the declaration.  *See, e.g.*, *Facebook, Inc. v. Windy City Innovations, LLC*, 973 F.3d 1321 (Fed. Cir. 2020) (upholding finding that copied testimony "did not 'add materially to Petitioner's unpersuasive attorney argument'"); *Facebook, Inc. v. Windy City Innovations, LLC*, IPR2016-01156, 2017 WL 6210806 at *12, Paper 52 at 30 (PTAB Dec. 6, 2017) ("merely repeats Petitioner's argument, nearly verbatim, without citation to the basis for his testimony").  Dr. Blumenthal's "collaborative" involvement in many of the key statements of opinion in the declaration was, at most, participating in the Mad Libs—offering nouns and actions from the prior art to put in the blanks in Cisco's template.  EX2021-EX2023.  There is no other explanation for the demonstratives,

to which Dr. Blumenthal had no satisfactory answers on cross-examination.  *See, e.g.*, EX2020 at 61:7-62:14; 84:7-88:14.

Their apparent origin as attorney argument is not the only problem with Dr. Blumenthal's core opinions about obviousness and the knowledge of a person of skill in the art.  The "opinions" are also completely bereft of outside support beyond Dr. Blumenthal's say so and references to his CV.  For example, when asked about the lack of citations or support for his opinion about the level of skill in EX1003 ¶22, Dr. Blumenthal referred at length to his credentials as the sole basis for his opinions in the declaration.  EX2020 at 74:9-76:12 (emphases added):

> Q.   Well, let's say that I understand what they mean but I want to check your judgment and your assertion that a person with a master's degree in EE and two years of experience would be familiar with these things.
>
> You haven't given us a single example of any evidence, other than your say-so, that would allow us to check your say-so in this paragraph; right?  There is simply nothing cited here other than your experience.
>
> A.   You have my CV. ***My CV is 43 pages long***.  My CV lists in great detail all of the work that I've done, what I've -- the places that I've taught at, the honors and awards that I've had, the consulting that I've done, the publications that I've had.  And the publications

41

themselves detail the fields and the -- and the publications that they are in.

Many of my publications are in the highest impact journals in the world that go through rigorous peer review, more difficult than most disciplines.

Nature -- in particular, I have many Nature publications. There are many invited papers here. There are -- there are book chapters.
And I think that my CV, which is referenced in my declaration, is very clear -- very clearly points to the specific experience in these different fields, that I could certainly provide the documents for every single one of these. And it would probably constitute 5,000 or 10,000 pages.

I think that's why we do a CV, is because it's supposed to summarize our work experience and our other experience on paper.

You can see Professional Activities.  We're looking at societies and workshops and -- and conferences that span from 1993.

You can see publications reviewer, you know, since 1993.

I mean, **there's untold amount of material here that is hard document that you or anybody else could go to to see the evidence of my experience behind these statements**.

So I think, actually, that clearly there is a lot of evidence that supports what's in my declaration.

42

Then, immediately after this, Dr. Blumenthal was asked to confirm that he was "asking the reader, the board, to accept your opinion here based on your credibility and your experience as evidenced by your CV," and he inexplicably denied it. *Id.* at 76:13-78:6:

> Q.  You're asking the board to accept this opinion based on your credibility in -- in this field; right?
>
> A.  I cannot agree with your statement.
>
> Q.  Well, then, what's wrong with my statement?
>      I -- I thought -- I was trying to agree with you. I don't understand what's wrong with my statement.
>
> A.  I just can't agree with your statement.
>
> Q.  Why not?
>
> A.  I -- I -- I think I've answered your question.

*See also id.* at 65:3-18 ("I have 40 years of experience. I'm considered a world expert. And I think that my experience counts for an awful lot. And that's what I used").

In another example, when asked about the lack of citations or support for his statements that optical links may be described as "RF" by those of ordinary skill in the art (EX1003 ¶¶29, 50), Dr. Blumenthal again referred to his "wide knowledge of the art" and his CV.  EX2020 at 89:9-93:17 ("I am an expert in these fields"); *see also id.* at 98:7-99:7 ("A. Okay.  Let's go to my CV so that I can answer your question.").

43

Numerous other opinions supporting Cisco's / Dr. Blumenthal's arguments are presented without any citation to evidence beyond Dr. Blumenthal's say-so. *See, e.g.*, EX1003 at ¶¶22 (level of skill), 110, 113, 119 (conclusory statements about combining references), 149, 166-167 (conclusory obviousness assertions).

Dr. Blumenthal's CV is not evidence.  It reflects many professional accomplishments, as he readily points out.  His experience also reflects invited talks for Cisco (EX2020 at 31:3-32:4), Cisco's past funding of his lab (*id.* at 32:6-33:21), and more than twenty IPR declarations for Cisco (*id.* at 16:1-22:1).  He could not recall an expert assignment where he was not on the side arguing invalidity, nor one he may have turned down because he didn't think the patent was invalid.  EX2020 at 26:4-27:13.  Cisco, and Dr. Blumenthal, file and declare in a lot of Petitions.  There is nothing wrong with that in itself, unless they neglect the requirement of providing evidence to prove their repeated arguments, as has happened here.

The Federal Rules of Evidence, including FRE 702 requiring expert testimony to be reliable and supported, apply in this proceeding.  37 C.F.R. §42.62.  "Expert testimony that does not disclose the underlying facts or data on which the opinion is based is entitled to little or no weight."  37 C.F.R. §42.65(a); *In re Am. Acad. of Sci. Tech Ctr.*, 367 F.3d 1359, 1368 (Fed. Cir. 2004) ("[T]he Board is entitled to weigh the declarations and conclude that the lack of factual corroboration

warrants discounting the opinions expressed in the declarations."); *Rohm and Haas Co. v. Brotech Corp.*, 127 F.3d 1089, 1092 (Fed. Cir. 1997) (noting that a fact finder is not required to "credit the unsupported assertions of an expert witness").

Regardless of their CV or qualifications, experts cannot offer opinions based solely on their say-so, as Dr. Blumenthal repeatedly does here. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (courts not required to "admit opinion evidence that is connected to existing data only by the ipse dixit of the expert."). This is even more true when substantial portions of that unsupported say-so were drafted by counsel on a template, as discussed above.

For all of these reasons, in addition to the lack of merit in the arguments themselves, the Board should give no weight to Dr. Blumenthal's obviousness opinions and unsupported statements about the knowledge of a person of ordinary skill in the art.

### 4. Petitioner has not shown that *Roberts* would be combined with *Taraschuk*

Neither *Roberts* nor *Taraschuk,* nor the combination of the two, renders obvious at least "mapping . . . determined based on a pattern for actuating drive voltages that alters the linearity" as claimed, for all of the reasons explained above in Section III.1 and .2. *Taraschuk* does nothing to cure the facial deficiencies of

*Roberts*—acknowledged by the Examiner via claim allowance over *Roberts*—with respect to this element.

For example, the Petition has not shown that a person of ordinary skill would have been motivated to combine *Roberts* and *Taraschuk*, especially with respect to the "determined based on a pattern for actuating drive voltages that alters the linearity" elements of the challenged claims, the alleged implementation of which is not explained in either reference in any way that would suggest combination (other than via impermissible hindsight).  *See* Petition at 51-52.

Cisco does not identify problem statements or specific motivations that would have led from *Roberts*' poorly-described "linear compensator 18" to the sparse disclosures of "linearizer 44" in *Taraschuk*.  Petition at 29-34.  Instead, the Petition merely cites the two references in proximity—suggesting circularly that a person of skill would "apply Taraschuk's mapping techniques to Roberts' non-linear compensator to compensate for non-linear effects".  *Id.* at 31-32; EX1003 at ¶149 ("both used to compensate for non-linearities").

But this is, at best, an improper invitation to engage in result-based hindsight reasoning—attributing specific elements missing from one reference to the other—while neither reference actually has any supporting disclosure beyond sparse mention of the broad concept of compensation.  Cisco must not use the disclosure of the challenged patent as a roadmap, and hindsight analysis does not support

obviousness. *See, e.g.*, *Apple Inc. v. Contentguard Holdings, Inc.*, IPR2015-00442, Paper 9 at 11-12, 17 (P.T.A.B. July 13, 2015) ("analysis infected with impermissible hindsight cannot form the basis of an obviousness finding"); *see also, e.g.*, *Graham v. John Deere Co.*, 383 U.S. 1, 36 (1966); *Pers. Web Techs., LLC v. Apple, Inc.*, 848 F.3d 987, 993-94 (Fed. Cir. 2017) ("[T]hat reasoning seems to say no more than that a skilled artisan, once presented with the two references, would have understood that they could be combined. And that is not enough: it does not imply a motivation to pick out those two references and combine them to arrive at the claimed invention.").

The elements of the alleged combination "would not have seemed obvious to an engineer of ordinary skill, reviewing *Roberts* with no advance knowledge of the inventive solution." EX2018 at ¶69. Neither *Roberts* nor *Taraschuk* are "directed to" linear compensation as Dr. Blumenthal claims. *Id.* at ¶70 (*citing* EX1003 at ¶109). The references put up obstacles to their ever being combined, including the complete lack of explanation in *Roberts*, the different primary objective of *Taraschuk*, and how deeply any optical modulator discussion is buried in it. *Id.* at ¶71 ("if they did somehow read far enough into *Taraschuk* to encounter discussion of modulator non-linearity, they would merely find an approach based on analog feedback from the output of the modulator deriving input pre-

distortion").  *Roberts* doesn't cite or refer to *Taraschuk* even though they share an inventor.  *Id.* at ¶71.

As discussed above, Cisco has failed to show how either *Roberts* or *Taraschuk* explain what their alleged mapping is "determined based on."  In fact they don't explain, with the sparse disclosure of *Taraschuk* pointing only to an analog sample of the modulator output that is not disclosed in *Roberts*—because *Roberts* gives no explanation at all.  *See, e.g.*, EX1006, 7:67-8:5 ("comparing it to a detected sample of the modulator output"), Fig. 6, 7:34-39 ("sampled analog signal level (S)").

Cisco and Dr. Blumenthal mischaracterize the "logic level mismatches" of *Taraschuk*, attempting wrongly to attribute them to the disclosed modulator.  *See* EX2018 at ¶73 (*citing* EX1003 at ¶112).  The discussion of logic level mismatch in *Taraschuk* is directed to a completely different purpose—of aligning logic levels between individual bits of a parallel digital signal through bitwise adjustments.  *Id.* at ¶¶44, 46-47.  Cisco and Dr. Blumenthal also repeatedly cite a disclosure of a "known" technique as if what is known is somehow the claimed mapping elements, when in fact the only known technique explained in *Taraschuk* is the real-time analog output sample feedback approach.  *Id.* at ¶74; EX1006 at 7:34-39, 7:67-8:5.

Simply juxtaposing the two figures of the embodiments accused of disclosing the claim elements—*Roberts*' "non-linear compensator 18" and *Taraschuk*'s

"linearizer 44"—reveals that they disclose different approaches.  EX1005, Fig. 2; EX1006, Fig. 6:



Cisco's Petition never explains these figures, or addresses the relevance of their differences, or explains how either alleged mapping works.  *See, e.g.*, Petition at 29-34, 51-52.  Cisco has failed to show any reason why a person of skill looking at *Roberts* (*e.g.*, Figure 2) would be motivated to look to the different approach of *Taraschuk* (*e.g.*, Figure 6).  Cisco's conclusory statements and recitations of what each reference allegedly individually discloses fails to supply the required motivation—the motivation that it must show to support the combination.

Finally, Cisco overlooks significant evidence of non-obviousness, such as the fact that the research leading to the patents was published in peer reviewed journals (*see* EX2018 at ¶107) and that patents in this family were approved by USPTO Examiners eleven times (*see id.* at ¶106).

49

Neither *Roberts* nor *Taraschuk* is alleged to render any challenged claim obvious on its own.  For these additional reasons, including because the Petition depends entirely on the alleged combination of *Roberts* and *Taraschuk* and those references would not be combined, Cisco has failed to demonstrate the required motivation to combine and the claims should be upheld.

### 5. Petitioner failed to show that *Roberts* and *Taraschuk* teach or suggest compensating for optical fiber non-linearities

Challenged dependent claims 2, 6, 8, 9, 17, 18, 22, and 26 each have variously-phrased claim elements, each requiring that the mapping of the digital-to-digital converter correct for, *e.g.*, "distortion introduced by non-linear characteristics of optical fibers" or "non-linearities due to non-linear characteristics of the one or more optical fibers," during transmission. *See, e.g.*, EX1001 at 17:38-42 (claim 2).  Neither *Roberts* nor *Taraschuk* teaches or renders obvious correcting for non-linearities in the transmission optical fibers.

For example, the only compensation solution mentioned by *Taraschuk*—discusses using an analog sample of the optical modulator output, that is sampled ***before*** the optical fiber transmission.  *See* EX1006 at 7:67-8:5, Fig. 6.  A measurement taken ***before*** the fiber and fed back to the input cannot be used to correct for distortion ***through*** the fiber.  EX2018 at ¶92.  No mechanism is discussed or suggested in *Taraschuk* (or *Roberts*) that could take a sample from the

far end of the fiber, which could be kilometers away. *Id.* at ¶93. Cisco does not argue that these elements are disclosed or suggested in *Taraschuk*. *See, e.g.*, EX1003 at ¶¶ 173-174.

Instead, Cisco and Dr. Blumenthal point to *Roberts* and its completely unexplained "compensation function c(t)." EX1003 at ¶¶ 173-174. *Roberts* says only that this function results in a "pre-distorted signal," that somehow compensates for some impairments of the link. EX1005 at 2:50-55. *Roberts* does not say which impairments or how any of it is accomplished. Again, there is no disclosure of how one could measure or calculate for a "pre-distorted signal" from the far end of a fiber that could be kilometers away. EX2018 at ¶¶92-94. Cisco has failed to provide any evidence, and thus failed to prove, that *Roberts* or *Taraschuk* disclose or render obvious the optical fiber correction elements of these dependent claims. *See also id.* at ¶94.

For this additional reason, challenged dependent claims 2, 6, 8, 9, 17, 18, 22, and 26 should be upheld.

## IV.    Conclusion

For all of the reasons detailed in Patent Owner's Preliminary Response (Paper 8) and its Request for Rehearing (Paper 12), the Board should not have instituted, and should now de-institute this cumulative proceeding in its discretion. If not, then for all of the reasons given above, including because Cisco has failed to

meet its burden of proof or even credible evidence, the Board should uphold each of the challenged claims.

Dated:  January 20, 2023                  Respectfully submitted,

*/s/ Corey Johanningmeier*
Brenda Entzminger, Lead Counsel
Reg. No. 76,896
Corey Johanningmeier, Back-Up Counsel
(*pro hac vice*)
**BUNSOW DE MORY LLP**
701 El Camino Real
Redwood City, CA 94063
Telephone: 650-351-7248
Facsimile: 415-426-4744
bentzminger@bdiplaw.com
cjohanningmeier@bdiplaw.com

*Counsel for Patent Owner*

IPR2022-00575
Patent No. 11,133,872

### 37 C.F.R. §42.24(d) CERTIFICATION

The undersigned hereby certifies that this submission, excluding the tables

of contents, certificate of word count, exhibit list, and certificate of service,

contains 11,518 words, as determined using the standard word counting feature of

the Microsoft Word program.


Dated:  January 20, 2023

/s/ Brenda Entzminger
Brenda Entzminger
Reg. No. 76,896
**BUNSOW DE MORY LLP**
701 El Camino Real
Redwood City, CA 94063
Telephone: 650-351-7248
Facsimile: 415-426-4744
bentzminger@bdiplaw.com

*Lead Counsel for Patent Owner*

IPR2022-00575
Patent No. 11,133,872

## CERTIFICATE OF SERVICE

Petitioner has consented to e-mail service in this proceeding.  Pursuant to 37

C.F.R. §42.6, the undersigned certifies that on January 20, 2023, a copy of the

foregoing document was served by email upon the following counsel at the below

email addresses:

Theodore M. Foster (USPTO Reg. No. 57,456)
ipr.theo.foster@haynesboone.com
HAYNES AND BOONE, LLP
2323 Victory Ave. Suite 700
Dallas, TX 75219
Phone: (972) 739-8649

David L. McCombs (USPTO Reg. No. 32,271)
David.mccombs.ipr@haynesboone.com
HAYNES AND BOONE, LLP
2323 Victory Ave. Suite 700
Dallas, TX 75219
Phone: (214) 651-5533

Calmann J. Clements
calmann.clements.ipr@haynesboone.com
HAYNES AND BOONE, LLP
2323 Victory Ave. Suite 700
Dallas, TX 75219
Phone: (972) 739-8638

*/s/ Brenda Entzminger*
Brenda Entzminger
Reg. No. 76,896
**BUNSOW DE MORY LLP**
701 El Camino Real
Redwood City, CA 94063

54

IPR2022-00575
Patent No. 11,133,872

Telephone: 650-351-7248
Facsimile: 415-426-4744
bentzminger@bdiplaw.com

*Lead Counsel for Patent Owner*