IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CISCO SYSTEMS, INC. and ACACIA COMMUNICATIONS, INC., | ) ) ) | |
| Plaintiffs, | ) ) | C. A. No. 21-1365 (GBW) |
| v. | ) ) | |
| RAMOT AT TEL AVIV UNIVERSITY LTD., | ) ) ) | |
| Defendant. | ) | |
| CISCO SYSTEMS, INC. and ACACIA COMMUNICATIONS, INC., | ) ) ) | |
| Plaintiffs, | ) ) | C. A. No. 22-674 (GBW) |
| v. | ) ) | (CONSOLIDATED) |
| RAMOT AT TEL AVIV UNIVERSITY LTD., | ) ) ) | |
| Defendant. | ) | |

**PLAINTIFFS' AMENDED NOTICE OF
RULE 30(B)(6) DEPOSITION TO RAMOT AT TEL AVIV UNIVERSITY LTD.**

PLEASE TAKE NOTICE THAT, pursuant to Federal Rule of Civil Procedure 30(b)(6), Plaintiffs Cisco Systems, Inc. ("Cisco") and Acacia Communications, Inc. ("Acacia") (collectively, "Plaintiffs"), shall take the deposition upon oral examination of Defendant Ramot at Tel Aviv University Ltd. ("Defendant" or "Ramot") on the topics set forth in the attached Schedule A, through one or more of its officers, directors, or managing agents, or other persons designated by Defendant to testify on its behalf.

The topics in Schedule A are based on information reasonably known and presently available to Plaintiffs. This case is ongoing, discovery has not closed, and Plaintiffs reserve the right to amend the topics and issue additional notices of deposition pursuant to Federal Rule of

Civil Procedure 30(b)(6) as necessary, as well as any further discovery that may be warranted and appropriate in this action.

Plaintiffs request that Defendant identify in writing at least five (5) business days in advance of the deposition of: (1) the name(s) of the person(s) who will testify on Defendant's behalf; (2) the job title of each such person, and (3) the topics set forth in Schedule A on which each person will testify.

The deposition will take place at on December 11, 2024 starting at 9:00 a.m. Eastern Time, or at some other reasonable time and place mutually agreed upon by counsel.

The deposition will take place via remote deposition means (e.g., Zoom or other videoconferencing platform). The oral examination shall be conducted before a Notary Public or other official authorized by law to administer oaths, and will continue from day to day, excluding weekends and holidays, until completed. The deposition is being taken from the purpose of discovery, for use at trial, and for such other purposes are permitted under the Federal Rules of Civil Procedure. The oral examination will be recorded by stenographic means, and may be recorded by audio and videography means, and shall continue day to day until completed. Some or all of the deposition testimony may involve real-time computer connection between the deposition taker and court reporter using software such as "LiveNote."

You are invited to attend and cross-examine.

# SCHEDULE A

# DEFINITIONS

Each of these definitions and instructions is incorporated into each of the following Topics to which it pertains.

1. "Patents-in-Suit" or "Patent-in-Suit" or "Asserted Patents" shall refer to U.S. Patent Nos. 11,133,872 and 11,342,998 either individually or in combination.

2. "Related Patents" means any patent application or issued patent filed or issued in any country or region (such as with the European Patent Office) that is in any way related to the Patents-in-Suit, including, but not limited to, foreign counterparts, continuations, continuations in part, divisionals, reexaminations, reissues, provisionals, parent applications or patents, child applications or patents, and PCT applications.

3. "Named Inventors" means Yossef Ehrlichman, Ofer Amrani, and Shlomo Ruschin.

4. "Plaintiffs" shall refer to Cisco Systems, Inc. and Acacia Communications, Inc.

5. "Ramot", "Defendant", "You" and "Your" shall mean Defendant Ramot at Tel Aviv University Ltd., including without limitation any predecessors, successors, wholly or partially owned subsidiaries, parent companies, the named inventors, and other persons from whom Ramot has the legal right to obtain the information sought in the below Topics of Examination.

6. "Accused Products" includes those products specifically identified in Ramot's definition of "Accused Products" and identified by product name or model number in Ramot's preliminary infringement contentions served December 16, 2022 and which include either or both of transmit DSP functionality and an optical modulator and operates at speeds at or above 100G.

7. "Relevant Product(s)" means products relating to optical modulators or optical modulation.

8. The terms "document(s)" and "thing(s)" are used in their broadest sense and include documents in any form, including those stored electronically. Any comment or notation appearing on any document or thing, and not part of the original is to be considered a separate document or thing.

9. "Person" or "persons" means an individual, proprietorship, partnership, firm, corporation, association, governmental agency, or other organization or entity.

10. "Communication" or "communications" means any transmittal or information, whether written (including electronic) or oral, in the form of facts, ideas, opinions, inquires, or otherwise.

11. "And" and "or" shall be construed either conjunctively or disjunctively necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

12. "Include" and "including" are to be read as followed by the phrase "without limitation," so as to acquire the broadest meaning possible.

13. The terms "concerning," "regarding," "relating to," or "related to" in regard to a particular subject shall mean, without limitation, assessing, analyzing, constituting, containing, comprising, describing, discussing, embodying, reflecting, evidencing, identifying, memorializing, stating, or referring to such subject.

14. All other terms, unless specifically defined, are to be give their ordinary meaning, except that any legal terms of art are to be interpreted according to their established legal definition.

## TOPICS OF EXAMINATION

1. Ramot's ownership of and/or interest in each of the Patents-in-Suit, including but not limited to the complete chain of title from the each of the Named Inventors to Ramot.

2. The facts and circumstances surrounding Ramot's acquisition of the rights to the inventions alleged claimed in the Patents-in-Suit or any Related Patents, including an identification of all persons involved and all communications relating thereto.

3. The prosecution (including the preparation and filing) of the applications leading to the Patents-in-Suit or any Related Patents.

4. The preparation of all invention disclosure(s) or other documents concerning the subject matter claimed in the Patents-in-Suit or any Related Patent.

5. The conception, design, development, and/or reduction to practice of any invention claimed in the Patents-in-Suit or any Related Patent.

6. The date(s) and circumstances of the conception and reduction to practice of the subject matter claimed in the Patents-in-Suit, any diligence in the reduction to practice thereof, and the identification of any evidence that corroborates the date(s) of such conception and reduction to practice or corroborates any diligence.

7. Any asserted priority date or priority documents relating to the Patents-in-Suit.

8. Any study, investigation, or other inquiry by Ramot or anyone on behalf of Ramot or obtained from anyone else, whether orally or in writing, concerning the validity, enforceability, scope or infringement of the Patents-in-Suit, or of any Related Patent, including, but not limited to, any patents, printed publications, products and other factual information discovered and/or considered during such study, investigation, or other inquiry.

9. Any and all prior art, and prior art searches, investigations, or analyses of which You are aware, relating to the validity, enforceability, scope, or infringement of the Patents-in-Suit or any Related Patent, and the identity of each Person with knowledge relating to the same.

10. Any and all due diligence searches, studies, evaluations, or opinions concerning the Patents-in-Suit, any Related Patent, or any subject matter disclosed or claimed therein.

11. Any research, development, testing, or work performed by or on behalf of Ramot relating to optical modulator technology, including but not limited to optical modulators or optical modulation.

12. The first manufacture, first use, first sale and/or first offer for sale in the United States and the first publication anywhere of any products, services, or methods that you contend are within the scope of the claims of the Patents-in-Suit or any Related Patent.

13. Any attempt to commercialize, sell, or explore the market for any alleged invention claimed in any of the Patents-in-Suit or any Related Patent, prior to the application for the patent thereof, including, without limitation, demonstrations, testing, bug reports, correspondence, sales reports, sales forecasts, strategic plans, budgeting documents, pricing policies, lost business reports, advertising or marketing materials, sales training materials, quotes, purchase orders, invoices, shipping orders, shipping logs, guarantees, and warranties.

14. Ramot's knowledge and awareness of Plaintiffs and Plaintiffs' activities.

15. Investigations, analyses, and comparison performed by You, or any other third party at Your direction, prior to the filing of this lawsuit, to determine if any product or service made, used, offered for sale, sold, and/or operated by Plaintiffs infringes the Patents-in-Suit.

16. The date that You first learned of each of the Accused Products or any alleged infringement of the Patents-in-Suit by Plaintiffs.

17. Any Accused Product, the use of which Ramot claims infringes the Patents-in-Suit.

18. The activities of any third party making, using or selling of all products, services, and methods that You contend are within the scope of the claims of the Patents-in-Suit in any form in the United States or any country, and all analyses performed by You or on Your behalf relating thereto.

19. The market for linearized optical modulators or modulation systems and the respective market share for each product or product manufacturer.

20. Any comparisons or analysis between any Accused Product or other product or offering by Plaintiffs and any product offered by any entity with an interest in the Patents-in-Suit, including but not limited to license, covenant not to sue, or any other interest.

21. Any comparisons or analysis between any Accused Product and any optical modulator or optical modulation system made, sold, or offered for sale by any third party.

22. All efforts to exploit, commercialize, license, sell or enforce the Patents-in-Suit or any Related Patent, including but not limited to Ramot's attempts to license and/or enforce the Patent-in-Suit or any Related Patents.

23. All agreements, covenants, or contracts relating to the Patents-in-Suit or any Related patents, including but not limited to license agreements, agreements to license, assurances, standstill agreements, covenants not to sue, or letters of intent entered into, attempted, or contemplated by Ramot, regardless of whether consummated or not.

24. The identity, substance, terms, circumstances, and negotiations concerning any license or covenant not to sue involving the Patents-in-Suit.

25. The negotiation, drafting, and terms of any patent license agreement or covenant not to sue for any of the Patents-in-Suit.

26. Any patent licensing policy, procedure, or program on the part of Ramot, including oral and write presentations to potential licensees prepared or presented by Ramot concerning license negotiations relating to the Patents-in-Suit or any Related Patents.

27. Your patent policies or practices regarding licensing and/or sublicensing of the Patent-in-Suit and any other patents in which you claim an ownership interest.

28. Your knowledge of licensing customs and practices within the industry related to license terms, royalty amounts, profit shares, or other aspects of a patent license.

29. The factors considered by Ramot when negotiating patent license agreements, including factors or considerations utilized to negotiate royalty structures and rates.

30. The identity of all person(s) and entity(ies) with a pecuniary interest in the outcome of this case, the nature and amount of each such pecuniary interest and the expected allocation of any proceeds from this lawsuit.

31. The corporate structure, both inter- and intra- entity, and including ownership and control, of Ramot, and any corporate parents, subsidiaries, affiliates, predecessors or successors thereof, and the relationship between such entities.

32. Communications between You and any non-party to this lawsuit regarding any aspect of the Patents-in-Suit, any Related Patent, or any alleged infringement thereof.

33. Ramot's efforts to ensure that its licensees mark their products with the number of the Patents-in-Suit or any Related Patents.

34. All licensing revenue received or paid by Ramot related to the Patents-in-Suit or any Related Patents.

35. Any consideration ever paid, agreed upon, offered, demanded or received for any use of or rights or interest in any of the Patents-in-Suit, including the settlement of disputes or

litigation, licenses, potential licenses, royalties, potential royalty rates or royalty bases, alleged damages, enforcement, or assignment of any of the Patents-in-Suit.

36. Forecasts or projections of sales, revenues, costs, and profits for the licensing and/or enforcement of the Patents-in-Suit or any Related Patent.

37. The value Ramot or anyone else has assigned or ascribed to the Patents-in-Suit or Related Patent, or any claim for infringement of any of the Patents-in-Suit.

38. Any revenue forecasts, market share projections, consumer analysis, identification of potential customers, or other financial or market customer research, study, or analysis relating to any products, methods, or services allegedly are covered by the claims of the Patents-in-Suit.

39. Any agreement where Ramot is a party to the agreement, including any non-disclosure agreements, or agreements to share information, concerning the present litigation, the Patents-in-Suit or any Related Patent or technical information concerning any Relevant Products.

| | |
|---|---|
| OF COUNSEL:<br><br>L. Norwood Jameson<br>Matthew C. Gaudet<br>Sajid Saleem<br>Daniel Mitchell<br>DUANE MORRIS LLP<br>1075 Peachtree Street NE, Suite 1700<br>Atlanta, GA  30309-3929<br>(404) 253-6900<br><br>Joseph A. Powers<br>Aleksander J. Goranin<br>DUANE MORRIS LLP<br>30 South 17th Street<br>Philadelphia, PA  19103-4196<br>(215) 979-1000<br><br>Holly E. Engelmann, P.C.<br>DUANE MORRIS LLP<br>Terrace 7<br>2801 Via Fortuna, Suite 200<br>Austin, TX  78746-7567<br>(214) 257-7226<br><br>November 27, 2024 | MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>*/s/ Jennifer Ying*<br><br>Jennifer Ying (#5550)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE  19899<br>(302) 658-9200<br>jying@morrisnichols.com<br><br>*Attorneys for Plaintiffs Cisco Systems, Inc. and Acacia Communications, Inc.* |

8

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 27, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on November 27, 2024, upon the following in the manner indicated:

| | |
|---|---|
| John G. Day, Esquire<br>Andrew C. Mayo, Esquire<br>ASHBY & GEDDES<br>500 Delaware Avenue, 8th Floor<br>P.O. Box 1150<br>Wilmington, DE  19899<br>*Attorneys for Defendant Ramot at Tel Aviv University Ltd.* | *VIA ELECTRONIC MAIL* |
| Denise De Mory, Esquire<br>Corey Johanningmeier, Esquire<br>Michael Flynn-O'Brien, Esquire<br>Brenda Entzminger, Esquire<br>BUNSOE DE MORY LLP<br>701 El Camino Real<br>Redwood City, CA  94063<br>*Attorneys for Defendant Ramot at Tel Aviv University Ltd.* | *VIA ELECTRONIC MAIL* |
| James T. Wilson, Esquire<br>Wayne M. Helge, Esquire<br>BUNSOE DE MORY LLP<br>277 S. Washington St., Suite 210, #1088<br>Alexandria, VA  22314<br>*Attorneys for Defendant Ramot at Tel Aviv University Ltd.* | *VIA ELECTRONIC MAIL* |

*/s/ Jennifer Ying*

Jennifer Ying (#5550)