IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CISCO SYSTEMS, INC. and ACACIA COMMUNICATIONS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> RAMOT AT TEL AVIV UNIVERSITY LTD., <br><br> Defendant. | C.A. No. 21-1365-GBW |
| CISCO SYSTEMS, INC. and ACACIA COMMUNICATIONS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> RAMOT AT TEL AVIV UNIVERSITY LTD., <br><br> Defendant. | C.A. No. 22-674-GBW (consolidated) |

**LETTER TO THE HONORABLE GREGORY B. WILLIAMS
FROM ANDREW C. MAYO**

*Of Counsel:*

Denise De Mory
Corey Johanningmeier
Michael Flynn-O'Brien
Brenda Entzminger
BUNSOW DE MORY LLP
701 El Camino Real
Redwood City, CA 94063
(650) 351-7248
ddemory@bdiplaw.com
cjohanningmeier@bdiplaw.com
mflynnobrien@bdiplaw.com
bentzminger@bdiplaw.com

Dated: December 11, 2024

John G. Day (#2403)
Andrew C. Mayo (#5207)
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888
jday@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Defendant*

Dear Judge Williams:

Ramot respectfully requests an order compelling Cisco and Acacia (collectively "Cisco") to (1) produce revenue and invoice (or purchase order) data for accused switch and router chassis products that are sold together with accused line cards and transceiver modules, which have been identified as Accused Products since the inception of the case; and (2) technical information and financial data related to certain accused transceiver modules and line card products identified in correspondence (and which Cisco stated that it would produce) and/or Ramot's final contentions.

**1. Revenue and invoice data for the accused switch, router line card, or chassis products.**

This case is about Cisco's sales of infringing products that include transmit digital signal processing (DSP) functions, and optical modulator technology. The Accused Products include: *embedded* modules that include both optics and DSP functions, attached to a "line card" or chassis; *pluggable* modules that include both functions; and *pluggable* modules including optics, *paired with* line cards including DSP functionality. Ex. A (Sept. 9, 2022 Accused Products disclosure).

Ramot has *also accused* switch and router line cards and chassis products, that are designed for, and not functional without, accused pluggable modules. *Id.* at 4, 5-14; D.I. 10 at ¶¶139-141 (depicting, *e.g.*, 8201 router), ¶160 (depicting Nexus 400G switch with accompanying modules). Cisco's accused pluggable modules are almost always sold as a bundle with switch, router line cards and/or chassis products and these sales are significant to Ramot's damages case. As explained in its Sept. 9, 2022 damages model disclosure, Ramot accuses the bundled products of infringing: "[t]o the extent that the same product is also sold as part of a 'bundle' …those bundle and license sales are also accused." Ex. A at 4-5. Ramot further disclosed that a reasonable royalty in this case would "also account for sales of products adapted for use with infringing components" and "sold in bundles with infringing components." Ex. A at 19. Yet, Cisco will not produce revenue and invoice (or purchase order) data related to the accused switch and router line cards and chassis products without a Court order, thus Ramot requests the Court compel Cisco to do so.

Cisco's obstinance is confusing given that it previously produced documents depicting at least revenue for the switch, router line cards and/or chassis products (Cisco-Ramot_00065026-36), and thus it appeared at one point that Cisco was willing to provide the bundled sales data. But for some reason, Cisco now refuses to update that information, in addition to refusing to produce invoice (or purchase order) data that would enable Ramot to prove these are indeed bundled sales.

Cisco has offered no valid excuse for its refusal to produce the requested data. In August of 2023, Ramot served Interrogatory No. 25, asking Cisco for sales data and details about the Accused Products that Cisco believed "merely provide slots for pluggable or line cards." Cisco did not respond at all to the August 2023 interrogatories *for nearly 15 months* and then objected *only* on Nov. 22, 2024, arguing "Chassis, pluggable line cards, router and switch products that do not contain optical modulators or transmit DSP functionality are not within the proper scope of discovery in this case." Ex. B. Not only was that objection untimely (and led to this motion), it simply ignores Ramot's legitimate "bundled" (or convoyed sales) theory regarding these products.

To be clear, there is no doubt that Cisco bundles its sales, and that such convoyed sales are relevant and discoverable. Cisco corporate representative Steven Boyles testified that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

1



And just yesterday, Cisco's representative Ray Nering ▮▮▮ *Id.* Likewise, mere hours before this letter was due, Acacia's Vice President of Marketing Tom Williams testified ▮▮▮.

These bundled products are thus sold as a functional unit and their sales data is relevant to Ramot's convoyed or derivative sales theory. *See e.g., Juicy Whip, Inc. v. Orange Bang, Inc.,* 382 F.3d 1367, 1372 (Fed. Cir. 2004) (functional relationship between patented and unpatented article sufficient to pursue convoy sales); *Interactive Pictures Corp. v. Infinite Pictures, Inc.,* 274 F.3d 1371, 1385–86 (Fed. Cir. 2001) ("The 'extent of ... derivative or convoyed sales' is one of the often-cited *Georgia–Pacific* factors relevant to a determination of a reasonable royalty rate.") Indeed, Ramot's damages expert in the related Eastern District of Texas case set forth that theory.

"Courts have granted motions to compel discovery requests extending to unaccused products where the plaintiff had asserted a derivative or convoyed sales theory of damages, and where the plaintiff has sufficiently articulated how the documents at issue are relevant to that theory." *Invensas Corp. v. Renesas Elecs. Corp.,* C.A. No. 11-448-GMS-CJB, 2013 WL 12146531, at *3-4 (D. Del. May 8, 2013) (granting motion in part and collecting cases); *see also Genuine Enabling Tech. LLC v. Sony Corp.,* C.A. No. 17-135, 2021 WL 1380307, at *3 (D. Del. Apr. 12, 2021) (granting motion to compel convoyed data). Ramot has always asserted a derivative or convoyed sales theory in this case, and the sales data for the convoyed sales are critical for this theory.

Accordingly, the Court should compel Cisco to produce sales data for the accused switch, router line cards, and chassis products (including bundled product IDs to the extent they exist), the invoice (or purchase order) information for all accused products (including the accused switch, router line cards, and chassis products), and to respond to Interrogatory No. 25. Cisco's production of data should also include any bundled product revenue for Cisco's own use of its products or services, for example in any cloud or data center implementations as accused (D.I. 10 ¶ 139-141).

**2. Technical and financial data for all products in Ramot's final infringement contentions.**

Ramot also requests the Court compel Cisco to produce complete technical and sales data for the products in Ramot's final infringement contentions, including those released in the last year. This includes but is not limited to information expressly identified as missing in Ramot's FICs.

There is no dispute about relevance. Ramot has accused Cisco's DSP and optical modulator technology of infringement. *See* D.I. 10; Exs. A, E (9/9/22 disclosure, PICs, FICs). Ramot's initial contentions and identification of accused products identified exemplary model numbers and stated

that it was accusing "similarly capable products under development" and "other modules that include similar functionality." Ex. A. As the case progressed and additional similar product models were released or identified, Ramot informed Cisco of the need to supplement its productions. Ex. F (9/13/23 Ramot letter). And in October 2023, Cisco expressly agreed that "to the extent such products have been released or are expected to be released by opening expert reports in these cases and to the extent such products contain either transmit DSP functionality and/or optical modulators, Cisco and Acacia will supplement their Interrogatory responses to identify such products and produce additional relevant documents should the stay be lifted." Ex. G (10/06/23 Cisco letter). Despite this promise, Cisco has refused to fully supplement its productions.

On Nov. 26, 2024, in accordance with the Court's Scheduling Order, Ramot served its Final Infringement Contentions (FICs) and properly "supplemented" its "identification of all accused products." *See* D.I. 92. Ramot's disclosure identified several additional variations on model numbers for the accused optical transceiver module and line card families, including several models that had been released during the pendency of this case. Ex. E (FIC Ex. A) at 4-8. Ramot notes that its infringement theory has not changed, and that the accused functionality in these supplemental product model numbers is similar to the functionality that Ramot has at all times accused of infringement in this case. Indeed, in many instances these are just additional model numbers within the same product families that were long ago explicitly accused. Despite its prior agreement, Ex. G, Cisco is now refusing to produce technical and financial data for some unknown subset[1] of those products. Accordingly, Ramot requests that the Court compel Cisco to produce technical and financial data for all the products in Ramot's FICs.

This request includes information expressly identified as missing in Ramot's FICs. This request also includes information sufficient to show how the DSP chips in the accused products are configured, including internal register settings programmed by the firmware to confirm features are turned on. Ramot served RFPs (Nos. 3, 8, 11) and followed up with a demand for configuration or firmware files and technical documents (including by letter dated Sept. 13, 2023). In August of 2023 Ramot served interrogatories to obtain this information, but Cisco did not respond for 15 months. When Cisco finally responded, it refused to provide the requested information and instead suggested that it was "more properly the subject of targeted questioning in a deposition setting." Ramot's willingness to credit that suggestion proved naive. Cisco designated Mark Nowell to testify on Ramot's 30(b)(6) topics 10-11 relating to this issue, but during his deposition last week, Mr. Nowell had not investigated and was unable to provide the answers. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Accordingly, the Court should compel Cisco to produce (a) technical and financial data for all products in Ramot's FICs; (b) all information identified as missing in Ramot's FICs; and (c) information sufficient to show how the DSP chips in the accused products are configured.

---

[1] This apparently includes at least the products that Cisco has moved to strike. *See* D.I. 143 at 2.

        Respectfully,

        */s/ Andrew C. Mayo*

        Andrew C. Mayo (#5207)

ACM/nlm
Attachments

cc:  All Counsel of Record; w/attachments

4