IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CISCO SYSTEMS, INC. and ACACIA COMMUNICATIONS, INC., <br> Plaintiffs, <br> v. <br> RAMOT AT TEL AVIV UNIVERSITY LTD., <br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | C.A. No. 21-1365-GBW |
| CISCO SYSTEMS, INC. and ACACIA COMMUNICATIONS, INC., <br> Plaintiffs, <br> v. <br> RAMOT AT TEL AVIV UNIVERSITY LTD., <br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) | C.A. No. 22-674-GBW (consolidated) |

**RAMOT'S RESPONSE LETTER BRIEF TO THE HONORABLE GREGORY B. WILLIAMS IN OPPOSITION TO CISCO'S MOTION TO STRIKE**

*Of Counsel:*

Denise De Mory
Corey Johanningmeier
Michael Flynn-O'Brien
Brenda Entzminger
BUNSOW DE MORY LLP
701 El Camino Real
Redwood City, CA 94063
(650) 351-7248
ddemory@bdiplaw.com
cjohanningmeier@bdiplaw.com
mflynnobrien@bdiplaw.com
bentzminger@bdiplaw.com

John G. Day (#2403)
Andrew C. Mayo (#5207)
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888
jday@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Defendant*

Dated: December 17, 2024

{02075941;v1 }

Dear Judge Williams:

  This case has been pending for more than 3 years (C.A. 1365, D.I. 1; C.A. 674, D.I. 1). Trial is set to occur 4 years after the cases were filed on November 3, 2025. *See* D.I. 132.[1] Given this length of time and the nature of products at issue, it is not surprising that Cisco has released new products (or that Ramot would discover additional products) that also infringe the asserted claims during the pendency of the case, which notably included a stay pending Cisco's failed bids to invalidate the patents with the PTO. Indeed, this was anticipated by both parties. And so, it was addressed by correspondence, in October and November 2023, wherein Cisco agreed:

> 2. **"Missing Accused Products."**
>
> You allege that technical information about certain products has not been produced. Cisco and Acacia disagree with your characterization, and refer you to Cisco's and Acacia's responses to Ramot's Interrogatory No. 1, which identifies specific technical documents, and Interrogatory No. 5. Cisco and Acacia further note that the products you identify were not identified in Ramot's preliminary infringement contentions. Cisco and Acacia do not have an obligation to identify accused products for Ramot, particularly where the products are publicly available. *See, e.g., Honeywell Int'l Inc. v. Audiovox Commc'ns Corp.*, C.A. No. 04-1337-KAJ, 2005 WL 3988905, at *1 n.2 (D. Del. Oct. 7, 2005); *Invensas Corp. v. Renesas Elecs. Corp.*, 287 F.R.D. 273, 286 (D. Del. 2012). Nevertheless, in the spirit of compromise, to the extent such products have been released or are expected to be released by opening expert reports in these cases and to the extent such products contain either transmit DSP functionality and/or optical modulators, Cisco and Acacia will supplement their Interrogatory responses to identify such products and produce additional relevant documents should the stay be lifted.

Ex. F (10/6/23 Cisco Ltr.).[2] In other words, regardless of whether it was disclosed in Ramot's preliminary infringement contentions served on December 16, 2022, Cisco agreed to identify and produce documents for products released through opening expert reports (January 21, 2025) that contain either (1) transmit DSP functionality and/or (2) optical modulators. *Id.*; D.I. 131, 132.

  Ramot relied on that agreement, and Cisco's failure to abide by that agreement by, *inter alia*, refusing to supplement its responses or produce documents as promised before the close of fact discovery cannot reasonably support a motion to strike. Instead, Cisco's failure supports Ramot's pending motion to compel that is, in part, related to these products. *See* D.I. 146, 159.

***Corrected Procedural History***. There are additional reasons to deny Cisco's motion to strike, including but not limited to the fact that Ramot always identified products by category with non-limiting exemplary PIDs, that Cisco understood and interpreted Ramot's disclosures in such a manner—indeed, it produced documents and sales data for several of the products that it claims are "new" months and sometimes years ago, and that Ramot expressly identified many of the specific PIDs at issue here in a letter to Cisco on September 13, 2023—more than a year ago.

  To avoid this conclusion, Cisco's motion mischaracterizes the procedural history leading up to this dispute. To ensure the Court has an accurate picture, Ramot recounts the events below:

---

[1] All docket cites herein are to C.A. 1365 unless otherwise indicated.

[2] The first highlighted statement is wrong in at least one respect. Cisco's 400G BiDi module (QDD-400G-SR4.2-BD) was accused in Ramot's Counterclaim (D.I. 8, ¶129), identification of accused products (Ex. A at 3) ("400G BiDi"), and initial contentions (Ex. B at p. 13 to Ex. A). Cisco has produced revenue, technical details, and testimony about this product and the DSP chip therein, indicating Cisco previously agreed and understood it to be within the scope of this case.

Feb. 7, 2022/July 29, 2022 – Ramot served counterclaims of infringement wherein it provided detailed disclosure of accused products by category. *See* C.A. 1365, D.I. 8; C.A. 674, D.I. 10.

Sept. 9, 2022 – Ramot served its disclosure of accused products wherein it again identified the accused products by category (*e.g.*, "transceiver modules and associated DSP functionality that support advanced mapping and modulation techniques, including without limitation…"), provided non-limited exemplary model names and/or by product IDs where those were known at the time, and made clear that it encompassed products "that include similar functionality." Ex. A.

Dec. 16, 2022 – Ramot served its preliminary infringement contentions wherein it identified the accused products with reference to its September 9, 2022 disclosure of accused products. Ex. B. Ramot disclosed infringement reads that were consistent across those product categories. *See id*.

Apr. 21, 2023 – Cisco responded to Ramot's first set of interrogatories by, *inter alia*, providing model names and product IDs corresponding with several of the model names and categories, thereby recognizing that Ramot's accusations were not limited to specific product IDs. Ex. C. In an email, Cisco also acknowledged that Ramot's contentions were directed to categories, e.g., "the CIM 8 pluggables, 1.2T pluggable modules, 400G Coherent pluggables, etc." *See* Ex. D.

Sep. 13, 2023 – After several attempts to confer about Cisco's deficient interrogatory responses and document productions, Ramot summarized those in a letter wherein it complained of Cisco's "improper unilateral redefinition of 'accused products'" and identified several "missing accused products," including QDD-400G-SR4.2-BD, QDD-8X100G-FR, QDD-2X400G-FR4. Ex. E.

Oct. 6, 2023 – After complaining that some of those products were "not identified in Ramot's preliminary infringement contentions" and disputing it had "an obligation to identify accused products for Ramot," Cisco agreed "in the spirit of comprise" to identify "such products" in interrogatory responses and to produce related documents, "to the extent such products have been released or are expected to be released by opening expert reports in these cases." Ex. F. But Cisco never followed through. Indeed, Cisco never supplemented those interrogatory responses.[3]

Mar. 20, 2024 - Cisco produced revenue data for the AC100 modules in the spreadsheets that it prepared as ███████████████████████████████████████ even though that product had not specifically been identified by PID. Ex. J (12/12/2024 Boyles Tr. at 112:6-18, referring to Ex. K (Boyles Ex. 16)). Cisco thus understood that the AC100 product at issue was among the accused products.

Nov. 11, 2024 – Consistent with the Scheduling Order's deadline to "provide final infringement contentions and *final identification of accused products*," (D.I. 132), Ramot duly served its final contentions, wherein it identified the 15 products that Cisco complains of in the instant motion. All of these were previously disclosed to Cisco or a variation on product previously so disclosed, and all of these fall within the ***categories*** of products previously identified in Ramot's PICs.

---

[3] Cisco unduly delayed other discovery responses too. For example, it did not respond to Ramot's Aug. 29, 2023 second set of interrogatories until November 12, 2024 (15 months after service).

{02075941;v1 }   2

***Pennypack factor #1 (prejudice or surprise) and 4 (bad faith/willfulness)***. For the ease of the court, Pennypack factors #1 and #3 are addressed in sets of the accused products at issue.[4]

400G Pluggables (QDD-400G-SR4.2-BD, QDD-400G-SR8-S). Cisco cannot complain of any prejudice or surprise (or lack of diligence) as these were disclosed in, or are variations of the 400G QDD pluggables identified in, Ramot's answer and PICs. Indeed, the QDD-400G-SR4.2-BD was disclosed therein as "BiDi modules that communicate at or above 100Gbps, including 100G BiDi or 400G BiDi products" and the QDD-400G-SR8-S as "400G pluggable QSFP-DD transceiver modules." Ex. A at 3-4, 16-17; D.I. 8, ¶129. The QDD-400G-SR4.2-BD was also specifically identified by PID in Ramot's Sept. 13, 2023 letter more than a year ago. *See e.g.*, Ex. E at 2. On December 9, 2024 Cisco produced some sales data for the QDD-400G-SR4.2-BD, further confirming Cisco's understanding that it has always been an accused product in this case. *See* Ex. L (Excerpt of Cisco-Ramot_10023193), Ex. M (Excerpt of Cisco-Ramot_10023195)

800G Pluggables (QDD-8X100G-FR, QDD-2X400G-FR4). Cisco cannot complain of prejudice or surprise (or lack of diligence) as to these either. While these were not released as of Ramot's answer or PIDs and thus not identified therein, they were specifically identified by PID in Ramot's Sept. 13, 2023 letter over a year ago, long before Ramot's FICs. *See e.g.*, Ex. E at 2. And Cisco also produced some sales data for these products during discovery, confirming Cisco's understanding that these have always been accused products in this case. Ex. L-M.

200G Pluggables (QSFP-200G-SR4-S, QSFP-200G-SL4-S, QDD-200G-FR4-S). Cisco cannot complain of any prejudice or surprise because these fall within the category of accused products in Ramot's PICs described as "50, 100, 200, and 400 Gbps SFP, QSFP, QSFP28, QSFP56, QSFP-DD and OSFP modules, including modules that employ PAM4 modulation or operate at speeds at or above 50Gbps per optical or electrical lane." Ex. A at 3, 15. And while they were not identified by PID prior to the FICs, that is only because they were released in January 2024.

Coherent Modules (AC100, 400G ULH, OSFP 800G ZR, QSFP 800G ZR). Cisco cannot complain of any prejudice or surprise because these too fall within, or are immediately adjacent to, the category of accused products in Ramot's PICs described as "100, 200, and 400 Gbps pluggable coherent modules, including … QSFP-DD or OSFP format 400G ZR modules", "Modules that communicate according to the 100GFR, 100G-LR, 400G-FR4, 400G-DR4, 400G-ZR, and 400G-ZR+ *and similar technical specifications*," and "Cisco transceiver modules developed by Acacia Communications… including without limitation…MSA Pluggable Modules." Ex. A at 3-4, 16-18.

NCS1K14-2.4T-K9 Line Card. Cisco cannot complain of any prejudice or surprise here either, as it has long known, and responded to discovery as if this product were in the case. Cisco has produced information showing pre-sales shipments of this line card to customers, as well as limited technical information describing the product. *See* Ex. G (Cisco-Ramot_10023171) (produced on 10/4/24). It was also listed, albeit with an inconsequential typo that still permitted identification of the product, in Ramot's Sept. 13, 2013 letter. Ex. A at 3 ("NCS1K4-2.4T-K9")

---

[4] While Ramot has similar arguments with respect to the remaining accused products, to simplify matters for the Court, Ramot will drop them from its FICs without prejudice to accusing them in post-trial proceedings and/or another lawsuit. Those include: 86-MPA-4FH-M, 86-MPA-14H2FH-M, NC57-MPA-1FH1D-S modular port adapters. *See* Ex. E, Ramot Sept. 13, 2023 Ltr.

{02075941;v1 }    3

***Pennypack factor #2 (ability to cure) and 3 (disruption)***. Since there is no surprise or prejudice from Ramot's disclosure, there is not much of a need to cure. Because the products at issue are largely variations on undisputed accused products and Ramot's infringement theories as to these products are the same as with the other products, they will cause no disruption to the schedule. Indeed, Cisco needs to produce only a few core technical documents (*e.g.*, concept commit, data sheets, configuration files), all of which it should have produced months ago, for each product, and possibly provide a witness for a short deposition. In the past week, the parties have taken several short remote depositions, and that process can be utilized again with little burden.[5] And with dispositive/daubert motions not due until May 6, 2025, there is sufficient time to conduct this discovery without causing any disruption to the Court's case schedule. *See* D.I. 131, 132.[6]

Cisco's suggestion that it would need third-party discovery from its OEMs in order to identify the key DSP chips in its modules is a red herring. To begin with, the AC100, 400G Ultra Long Haul, and two 800G ZR products ▇▇▇▇▇▇▇▇▇▇—that are in the same family as chips about which Ramot has deposed multiple ▇▇▇ witnesses. The QDD-400G-SR4.2-BD, QDD-400G-SR8, QDD-8X100G-FR and QDD-4X400G-FR4 modules are believed to each have ▇▇▇ DSPs in the same family as those for which Ramot has deposed multiple Cisco witnesses, and looked at documents and firmware source code from ▇▇▇ For these, and Cisco's 200G products, Cisco must have bill-of-materials (BOMs) or other documents and information about the identity of the chips in modules Cisco extensively qualifies and resells. It is simply not credible that Cisco does not know what chips are in its and Acacia's products.

Nor does Cisco's suggestion that it would need other discovery from third-parties have any merit. Cisco has not substantially pursued such discovery from any third-party OEMs, has not taken any depositions of such witnesses, and does not cite any third-party documents in its non-infringement contentions with respect to the undisputed accused products. *See e.g.*. Ex. O (Cisco's Suppl. Resp. to ROG 1 dated 6/12/24) at 14-39. Indeed, Cisco proffers fairly detailed non-infringement arguments therein based on the operation of its third-party components without using any such citations. *See id.* at 26-28. Cisco has not adequately explained what is different about the products at issue in its motion such that it would require any changes to those tactics.

***Pennypack factor #5 (importance)***. Most of the products at issue all relate to Cisco's newest and fastest pluggable modules, clocking in at 200, 400, and 800G speeds. According to a presentation at *Cisco Live 2024* by Mark Nowell, such speeds will grow to represent a majority of serviced ethernet ports over the remaining life of the asserted patents (set to expire in 2028).

---

[5] To the extent that Cisco seeks to invoke its corporate "shutdown" as a reason it cannot provide this overdue discovery quickly, Mr. Nering confirmed that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *See* Ex. N, Nering Tr. (Rough) at 39:6-11.

[6] *Cf. Lambda Optical Sols., LLC v. Alcatel-Lucent USA Inc.*, No. CIV.A. 10-487-RGA, 2013 WL 1776104, at *8 (D. Del. Apr. 17, 2013), *report and recommendation adopted*, No. CV 10-487-RGA, 2013 WL 12156799 (D. Del. May 13, 2013) (allowing some additional discovery that did not impact trial); *Lab. Skin Care, Inc. v. Ltd. Brands, Inc.*, 661 F.Supp.2d 473, 478 (D.Del.2009) (allowing additional third party discovery to cure any prejudice from allowing a supplement).



Ex. H at 5. Accordingly, these speeds are critical to any reasonable royalty damages calculation presented in this case as a lump sum in order to reflect the value of future infringement, ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ Such consideration is best done with clarity on whether the modules corresponding to those speeds—such as those at issue in the instant motion—infringe and the import of those products on the Cisco roadmap.

      The alternatives to addressing the products at issue—post trial motion practice and/or filing a new case—are less desirable for several reasons, including but not limited to further multiplying proceedings between these parties, and burdening the Court with another case and additional motion practice. *See e.g.*, *Vehicle Interface Techs., LLC v. Jaguar Land Rover N. Am., LLC*, No. CV 14-339-RGA, 2014 WL 3885939, at *1 (D. Del. Aug. 6, 2014) (after Court granted defendant's motion to strike additional accused products, plaintiff filed a new case thereon, only for the Court to then have to contend with another motion on grounds of claim splitting by defendant).

Respectfully,

/s/ *Andrew C. Mayo*

Andrew C. Mayo (#5207)

ACM/nlm
Attachments

cc:    All Counsel of Record w/attachments