IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CISCO SYSTEMS, INC. and ACACIA COMMUNICATIONS, INC., | ) ) ) | |
| Plaintiffs, | ) ) ) | C. A. No. 21-1365 (GBW) |
| v. | ) ) ) | **REDACTED – PUBLIC VERSION** |
| RAMOT AT TEL AVIV UNIVERSITY LTD., | ) ) ) ) | **Original Filing Date: December 20, 2024** **Redacted Filing Date: December 27, 2024** |
| Defendant. | ) | |
| CISCO SYSTEMS, INC. and ACACIA COMMUNICATIONS, INC., | ) ) ) | |
| Plaintiffs, | ) ) ) | C. A. No. 22-674 (GBW) |
| v. | ) ) ) | (CONSOLIDATED) |
| RAMOT AT TEL AVIV UNIVERSITY LTD., | ) ) ) ) | **REDACTED – PUBLIC VERSION** |
| Defendant. | ) | |

**PLAINTIFFS' REPLY LETTER TO THE HONORABLE GREGORY B. WILLIAMS IN SUPPORT OF THEIR MOTION TO STRIKE**

OF COUNSEL:

L. Norwood Jameson
Matthew C. Gaudet
Sajid Saleem
Daniel Mitchell
DUANE MORRIS LLP
1075 Peachtree Street NE, Suite 1700
Atlanta, GA 30309-3929
(404) 253-6900

Joseph A. Powers
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, PA 19103-4196
(215) 979-1000

December 20, 2024

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jying@morrisnichols.com

Holly E. Engelmann, P.C.
DUANE MORRIS LLP
Terrace 7
2801 Via Fortuna, Suite 200
Austin, TX 78746-7567
(214) 257-7226

*Attorneys for Plaintiffs Cisco Systems, Inc. and Acacia Communications, Inc.*

Dear Judge Williams:

Ramot attempts to distract the Court with a "compromise" Cisco never made, rather than addressing the clear Stipulation the parties did make, the purpose of which was to avoid this very scenario: Ramot taking advantage of the many extensions of the schedule, most of which Ramot requested, to expand the case's scope and include additional products. Ramot also ignores the requirement for diligence to add products into its contentions.

<u>First</u>, Ramot starts with a misleading portrayal of a compromise on a narrow discovery dispute: whether Cisco needed to supplement its interrogatory responses and documents to include a list of 13 products that Ramot identified in its Sept. 2023 letter. Cisco agreed to include "such products" if two conditions were satisfied. Ramot would now transform that compromise into carte blanche permission to add *every* optical product Cisco releases before expert reports (a date that still has not occurred), regardless of when or if Ramot served infringement contentions on them. To create this misimpression, Ramot ignores the words of the Sept. 2023 deficiency letter to which Cisco was responding, even though Cisco addressed that letter in its Opening. *See* C.A. No. 21-1365, D.I. 154, n.1. The relevant portion of the Sept. 2023 letter is below. *Id.*, Ex. 10 at 2.

> The following products are Accused Products according to the definitions and/or model number identifications in Ramot's counterclaim, disclosure of asserted patents, accused products, and damages model, and preliminary infringement contentions. Cisco has either refused or failed to include these products in its interrogatory responses and has not produced core technical documents with respect to these products:
>
> CIM8-C-K9, CIM8-L-K9 / CIM-8
> DP01QSDD-ZF1 / QDD-100G-ZR-S
> DP04QSDD-HE0, DP04QSDD-HK9, DP01QSDD-LK9 / QSFP-DD-400G (Bright)
> DP04CFP2-D15 / 400G CFP2 DCO BiDi
> DP04SFP8
> SFP-50G-SL
> SFP-50G-SR-S
> SFP-50G-LR-S
> QDD-8X100G-FR
> QDD-2X400G-FR4

Ramot asked Cisco to "include **these products** in its interrogatory responses" and produce "core technical documents **with respect to these products:**" Ramot then listed 13 such products. Cisco responded that "**the products you identify** were not identified in Ramot's preliminary infringement contentions" and that "in the spirit of compromise, [1] to the extent **such products** have been released or are expected to be released by opening expert reports in these cases and [2] to the extent **such products** contain either transmit DSP functionality and/or optical modulators, Cisco and Acacia will supplement their Interrogatory responses to identify **such products** and produce additional relevant documents . . ." *Id.*, Ex. 11 at 3. The references to "**such products**" was plainly to "the products you identify" in Ramot's letter. Moreover, Ramot never suggested that "such products" meant "*any* products" before it filed its Opposition. Instead, Ramot confirmed the opposite understanding in a Nov. 19, 2024 email (before serving its FICs), noting that Cisco's Mar. 2024 sales data did not include the products identified in Ramot's Sept. 2023 letter – but saying nothing about any other products that would have fallen within the scope of the new "such products" theory it propounds now. Ex. 12. This is because Cisco plainly had not made such an agreement. More fundamentally, Ramot never explains how it can add 15 products without violating the parties' Stipulation forbidding new discovery.

Second, Ramot's "Corrected Procedural History" does not change the fact that it was not diligent in supplementing its contentions. Ramot points to several products ("400G Pluggables," "800G Pluggables," and "NCS1K14-2.4T-K9") that it identified in its Sept. 2023 letter, but Ramot ignored Cisco's explanation on the only 2 products that overlap between that letter's list of 13 products and the FICs. Otherwise, this is just more proof that Ramot knew of these products for 14 months and did not supplement or amend its contentions. And Ramot does not contest that it knew about *all* of the 15 additional products long before the FICs, but did nothing until 2 weeks before close of discovery. Its actions confirm that it could have added these products much earlier, as Ramot received no new information from Cisco on these products during the intervening year.[1]

Nor can Ramot downplay the prejudice to Cisco by suggesting product similarities. Even if the products were similar, it remains Ramot's burden to identify additional accused products with specificity in its contentions. *See* D.I. 154 at 2. Ramot's identification of product categories (*e.g.*, based on various industry standards) also ignores that these products can *differ* in technical ways and that many are designed and manufactured by third parties from whom discovery was never sought. ▌ At least the following products are sourced from third parties from whom discovery has not been sought: ▌

▌ Cisco has not had the opportunity to inspect the code to determine if these chips' implementation of the accused functionality differ, requiring different sets of code be inspected for each chip. Also, the products that fall into the ▌ category use ▌ that differ from the other Acacia products in this case. ▌

▌ There is no time left for Cisco to fairly defend itself.

Third, the prospect of a future lawsuit will exist regardless of how the Court resolves this motion, because the patents have not expired and Cisco will keep producing new products. In any such lawsuit, the questions of claim and issue preclusion will be addressed, but that does not allow Ramot to ignore the requirements on contentions: "particularly when considering that this technology sector is continuously bringing new products to market, there comes a time when the parties must move forward with their case and get to trial on the products which have been timely identified." *EON Corp. IP Holdings, LLC v. FLO TV Inc.*, No. 10-812-RGA, 2013 WL 5890571, at *2 (D. Del. Aug. 28, 2013) (R&R adopted, 2013 WL 5883759 (D. Del. Oct. 30, 2013)).

---

[1] Ramot's other "proof" of an agreement or unstated "understanding" is Cisco's production of revenue data for the ▌ products in Mar. 2022 (Boyles Ex. 16). That was *before* Ramot served its Nov. 2022 initial contentions and *before* Cisco's Oct. 2023 letter. And Cisco's inclusion of any AC100 information was in error. On Dec. 10, 2024, Cisco produced an updated and corrected version of Boyles Ex. 16, on which Ramot questioned Cisco's 30(b)(6) witness. D.I. 168, Ex. J (Boyles Tr. at 112:7-18). Further highlighting the erroneous nature of the production, Ramot identified no corresponding ▌ technical documents in Cisco's production.

2

                                                  Respectfully,

                                                  */s/ Jennifer Ying*

                                                Jennifer Ying (#5550)

JY:lo  
Enclosures  
cc:    Clerk of the Court (via hand delivery)  
        All Counsel of Record (via e-mail)